UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT
OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY
PURSUANT TO 26 U.S.C. § 7429**

**Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)**

Plaintiff Robert T. Brockman, by and through his attorneys, alleges and states as follows in his Complaint against Defendant United States of America:

**NATURE OF THE ACTION**

1.      Pursuant to § 7429(b), Title 26 (Internal Revenue Code; hereinafter "IRC"), Mr. Brockman brings this civil action against the United States seeking a determination that a jeopardy assessment and jeopardy levy made by the Internal Revenue Service ("IRS") on or about September 9, 2021, are not reasonable under the circumstances and must be abated and released.

2.      IRC § 7429(b)(3) states in relevant part:  "*Within 20 days after a proceeding is commenced* . . . the court shall determine— (A) whether or not— (i) the making of the assessment  . . . is reasonable under the circumstances . . ." and "(B) whether or not the levy . . . is reasonable under the circumstances . . . ."[1]  (emphasis added).

---

[1] IRC § 7429(c) provides that an extension of this 20-day period may be granted for up to 40 additional

3.      The United States bears the burden to prove that the IRS acted reasonably in making the jeopardy assessment and issuing the jeopardy levy.  *See* 26 U.S.C. § 7429(g)(1).[2]

4.      IRC § 6861(a) provides that the IRS may make an immediate assessment of a tax liability "[i]f the [Treasury] Secretary believes that the assessment or collection of a deficiency . . . will be jeopardized by delay."

5.      IRC § 6331(a) provides that the IRS may commence tax collection by levy "[i]f the [Treasury] Secretary makes a finding that the collection of such tax is in jeopardy."

6.      On September 9, 2021, the IRS issued a Notice of Jeopardy Assessment and Rights to Appeal concerning Mr. Brockman's alleged individual income tax liability for taxable years 2004 through 2007, 2010, and 2012 through 2018 (the "Jeopardy Assessment").

7.      The IRS set out its purported basis for making the Jeopardy Assessment in the Jeopardy Recommendation Report that accompanied the Jeopardy Assessment  (the "Jeopardy Report").

8.      Also on September 9, 2021, the IRS issued a Notice of Jeopardy Levy and Right of Appeal for collection of the alleged liability set forth in the Jeopardy Assessment (the "Jeopardy Levy").

9.      The IRC and Treasury Regulations accord taxpayers the right to an examination by the IRS, *see* Treas. Reg. § 601.105(b)(4); an administrative review by the IRS Independent Office of Appeals ("IRS Appeals"), *see* Treas. Reg. § 601.106(b); and an opportunity to petition

---

days, based solely on the request of the taxpayer upon a showing of reasonable grounds.

[2] The issue of whether Mr. Brockman owes additional taxes is not before this Court for  determination in this case.  IRC § 6861(b) requires the IRS to issue a notice of deficiency setting out the asserted tax liability within 60 days of making a jeopardy assessment, which accords the taxpayer an opportunity to challenge the underlying tax liability by filing a petition in the United States Tax Court within 90 days. The IRS issued a notice of deficiency to Mr. Brockman on October 28, 2021.  Mr. Brockman plans timely to file a petition with the Tax Court.

the United States Tax Court, *see* IRC § 6213, before an assessment of tax liability may be made. The IRC and Treasury Regulations similarly accord taxpayers certain rights of review before the IRS may begin collection of an assessed tax.  *See* 26 U.S.C. §§ 6320, 6330.

10.     IRC §§ 6861(a) (jeopardy assessment) and 6331(a) (jeopardy levy) allow the IRS to circumvent those statutory rights and procedures under narrowly defined and extraordinary circumstances.

11.     Treasury Regulation § 301.6861-1(a) limits the basis on which the IRS may make a jeopardy assessment to the following conditions:

> (i)     The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;
>
> (ii)    The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or
>
> (iii)   The taxpayer's financial solvency is or appears to be imperiled.

Treas. Reg. § 301.6861-1(a) (incorporating by cross-reference the three conditions set forth in Treas. Reg. § 1.6851-1(a)(1)).

12.     In the Jeopardy Report, the IRS relied solely on the second condition set out in Treasury Regulation § 1.6851-1(a)(1)(ii), contending that Mr. Brockman is currently acting to move assets beyond the reach of the Government.  This contention is not demonstrated by the Jeopardy Report and is false.

13.     The IRS does not allege a single act that Mr. Brockman is "designing quickly" to place property beyond the reach of the Government.

14.     The IRS does not allege a single act that Mr. Brockman "designed quickly" to conceal, dissipate or transfer assets to others to place property beyond the Government's reach.

15.     As set forth below, the IRS's contention that Mr. Brockman is acting currently to move assets outside the United States is baseless for multiple reasons.  Foremost, central to the IRS's theory of liability is that the A. Eugene Brockman Charitable Trust (the "AEBCT") is a sham and that Mr. Brockman is the true owner of the assets held by the AEBCT.  Mr. Brockman denies those allegations.  If the IRS's position concerning the AEBCT were to prevail, however, then Mr. Brockman is the indirect owner of the Reynolds and Reynolds Company ("Reynolds"), an operating company located in Houston, Texas, and Dayton, Ohio.  The value of Reynolds significantly exceeds the purported tax liability against Mr. Brockman.  There is no allegation that any attempt has been made to move Reynolds beyond the reach of the IRS for collection purposes.  Nor as a practical matter could this be accomplished.  *See* ¶¶ 41, 103-104, *infra.* Under these circumstances, there is simply no jeopardy on which the IRS may justify its actions.

16.     As set forth more fully below, the IRS bases the Jeopardy Assessment on three allegations, none of which support its actions:

(a)     The IRS cited to four publicly recorded and duly reported real property transactions by Dorothy Brockman, Mr. Brockman's wife, specifically:  (i) the listing by Dorothy Brockman of the Brockmans' prior residence for sale; (ii) the sale by Dorothy Brockman of a vacant lot adjacent to the Brockmans' prior residence; (iii) a sale by Dorothy Brockman of a townhouse; and (iv) the purchase and gift by Dorothy Brockman to her daughter-in-law of the residence in which Mr. and Mrs. Brockman's son, daughter-in-law, and grandson currently reside.  As set forth further below, all four of these properties are or were the separate

property of Dorothy Brockman.  Nothing involving those transactions suggests that Mr. Brockman is acting to move his assets outside the reach of the IRS.  *See* ¶¶ 42-73, *infra.*

(b)      The IRS contended in the September 9, 2021 Jeopardy Report that Mr. and Mrs. Brockman "have litigation pending to appoint new trustees of the AEBCT," citing a case captioned *St. John's Trust Company (PVT) Limited vs. James Watlington, et al.* ("*SJTC v. Watlington*"), and further claimed that this litigation could "*potentially* grant[] [Mr. and Mrs. Brockman] control over the trust and ability to dispose or transfer trust assets." (emphasis added).  This allegation is also false.  First, contrary to the Jeopardy Report, neither Mr. nor Mrs. Brockman initiated *SJTC v. Watlington*, nor was either of them at any time a party to that action.  More significantly, as set forth further below, in February 2021, the Bermuda Court of Appeal in an entirely separate litigation ordered the appointment of BCT Limited ("BCT") as trustee of the AEBCT.  As determined by the Bermuda Court of Appeal, BCT is a wholly owned subsidiary of Maples FS Limited ("Maples"), a well-regarded, regulated trust company that routinely serves as an independent professional trustee.  *See* ¶¶ 74-86, *infra.*

(c)      The IRS cited to allegations in the Indictment in *United States v. Brockman*, No. 4:21-cr-00009 (SDTX) (Hanks, J.) (hereinafter "*U.S. v. Brockman*"), currently pending in this district.  Those allegations remain wholly unproven.  Moreover, nothing in those allegations supports the IRS's contention that Mr. Brockman is currently "designing quickly" to place assets beyond the reach of the Government, the sole basis on which the IRS contended the jeopardy assessment was made.  *See* ¶¶ 87-115, *infra.*

## PARTIES

17.      Plaintiff Robert T. Brockman, an individual, is a citizen of the United States of America.  He resides with his wife of 53 years, Dorothy Brockman, in Houston, Texas.

18.     Defendant is the United States of America.

19.     The IRS is an agency within the executive branch of Defendant United States of America and, at all times relevant to this Complaint, has had sole and exclusive authority for collecting revenue on behalf of the United States of America.

## JURISDICTION

20.     Mr. Brockman has exhausted all administrative remedies.  Accordingly, this Court has jurisdiction over this matter pursuant to IRC § 7429(b)(2)(A) and 28 U.S.C. § 1346(e).

21.     Pursuant to IRC § 7429(b), a taxpayer can seek judicial review in the United States District Court within ninety (90) days of the earlier of (1) the day the Secretary of the Treasury notifies the taxpayer of her determination of the administrative appeal or (2) the sixteenth (16) day after which such a request for administrative review by IRS Appeals was made.  *See* 26 U.S.C. § 7429(b)(1).

22.     On October 7, 2021, Mr. Brockman, through his attorneys, timely and separately requested administrative review of the Jeopardy Assessment and the Jeopardy Levy pursuant to IRC § 7429(a)(2).

23.     An administrative hearing before IRS Appeals was held on October 27, 2021, solely concerning the Jeopardy Assessment.  IRS Appeals orally denied the appeal shortly after the conclusion of the hearing, which was confirmed by a determination letter also dated October 27, 2021.

24.     With respect to the Jeopardy Levy, the IRS has not communicated with Mr. Brockman concerning his request for administrative review of the Jeopardy Levy; has failed to provide an administrative hearing before IRS Appeals as required by IRC §§ 7429(a)(2)-(3); has failed to respond to communications by counsel for Mr. Brockman, including failing to respond

to or return telephone calls on November 29, 2021, and December 1, 2021, or to respond to written communication made on December 7, 2021; and instead has engaged in collection activity, including seizing assets and obtaining liens on property belonging to Mr. Brockman, as well as seizing assets and liening properties owned by certain third parties.

25.     This Complaint for judicial review of the Jeopardy Assessment and Jeopardy Levy is timely filed in this Court.

## VENUE

26.     Venue is appropriate in this Court pursuant to IRC § 7429(e) and 28 U.S.C. § 1402(a)(1) because at all times relevant to this matter, Mr. Brockman lawfully resided in and currently resides in this district.

## FACTUAL BACKGROUND

27.     Pursuant to the Jeopardy Assessment, the IRS assessed $1,418,272,371.71, inclusive of tax, penalties, and interest, against Mr. Brockman for taxable years 2004 through 2007, 2010, and 2012 through 2018.

28.     In the Jeopardy Report, the IRS alleged that Mr. Brockman failed to report income that was earned by assets held in certain offshore trusts including (i) the AEBCT, (ii) the Alpheus Charitable Trust (the "ACT"), (iii) the Messery Charitable Trust (the "MCT"), and (iv) the Heraclides Charitable Trust (the "HCT"), and also purported to recharacterize a 2004 transaction as a taxable dividend from a U.S. entity to an offshore entity held in the AEBCT trust structure, and to charge Mr. Brockman with income from that transaction.

29.     Mr. Brockman denies that he failed to report any income, and further denies that any additional tax is due and owing.

### Mr. Brockman Is Not A Flight Risk

30.     The IRS does not and cannot contend that Mr. Brockman is designing quickly to depart the United States or to conceal himself.

31.     Mr. Brockman was released on bond in *U.S. v. Brockman*, pursuant to agreed-upon travel restrictions and the surrender of his passport.  *United States v. Brockman*, Minute Order, No. 4:21-cr-00009, Dkt. No. 1-2 at 49.

32.     Mr. Brockman has Parkinson's disease.

33.     Mr. Brockman has Alzheimer's disease.

34.     Parkinson's disease and Alzheimer's disease are progressive and incurable.

35.     Mr. Brockman has been diagnosed with dementia.

36.     Mr. Brockman is dependent on twenty-four hour, seven-day-a-week caregiver services.

37.     Mr. Brockman's competency to assist in his defense is at issue in *U.S. v. Brockman*.  Mr. Brockman incorporates by reference the evidence presented on his behalf at the hearing held in  *U.S. v. Brockman* on November 15, 2021, through November 24, 2021.  *See U.S. v. Brockman*, Minute Entries for Competency Proceedings, No. 4:21-cr-00009, Dkt. Nos. 203, 204, 208, 213, 216, 221-23; Def. Robert T. Brockman's Proposed Findings of Fact and Conclusions of Law, No. 4:21-cr-00009, Dkt. No. 239.

### Mr. Brockman Is Not At Risk Of Financial Insolvency

38.     The IRS does not and cannot contend that Mr. Brockman's financial solvency is imperiled.

39.     Treasury Regulation § 1.6851-1(a) requires that, in the context of a jeopardy assessment, a determination of solvency be made without regard to the tax liability at issue in the

proposed assessment.

40.     The Internal Revenue Manual requires that a taxpayer's financial solvency "*must be threatened . . . or there can be no jeopardy*."  I.R.M. 5.17.15.2.1(3) (emphasis added).  There are no facts to suggest that Mr. Brockman's financial solvency is imperiled:  Mr. Brockman has no open balance due accounts, no outstanding judgments, and has never filed for bankruptcy. *See* I.R.M. 5.17.15.2.1(3) and I.R.M. 4.15.1.9.1.3.

### Mr. Brockman Is Not "Designing Quickly" To Place Assets Beyond The Reach The Government

41.     If the IRS's position is correct (which Mr. Brockman disputes) there are assets in the United States that are readily available for collection.[3]  Specifically, as the IRS acknowledges, the AEBCT holds a greater than 99% interest in Universal Computer Systems Holding Inc. ("UCSH"), a Delaware entity.  UCSH in turn indirectly owns 100% of Reynolds, an Ohio company with operations in Houston, Texas and Dayton, Ohio.  Reynolds is estimated to be worth approximately $5 billion.  There are no allegations in the Jeopardy Report that anyone has taken any action to conceal, dissipate, transfer, or in any way diminish the value of Reynolds. If, as the IRS contends (and Mr. Brockman denies), Mr. Brockman is the owner of Reynolds, then there are assets worth a multiple of the asserted tax liability that are and will remain available in the United States.  Thus the IRS cannot make out a case that, even if the tax liability against Mr. Brockman were to be established, collection would be jeopardized.

### The IRS's Reference To Four Real Estate Transactions Does Not Support An Assertion that Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach Of The Government

42.     Mr. Brockman married his wife, Dorothy, in 1968, and together they have one

---

[3] To state the obvious, if the IRS's position is incorrect, then Mr. Brockman does not owe any additional tax, and accordingly there can be no assessment, either by jeopardy procedures or otherwise.

child, a son, Robert T. Brockman II.

43.     Mr. and Mrs. Brockman's son, Robert, married his wife, Elizabeth, in 2017, and Elizabeth gave birth to Mr. and Mrs. Brockman's only grandchild on April 20, 2020.

44.     During 2020 and 2021, Dorothy Brockman, using her sole and separate property, entered into real estate transactions designed to accommodate her and Mr. Brockman's advanced age and Mr. Brockman's cognitive impairment and mental and physical deterioration, and to put them closer in proximity to their son, daughter-in-law, and their growing family.

45.     These real estate transactions, all of which were publicly recorded, relate to four properties located in Houston, Texas, specifically:  (i) 333 West Friar Tuck Lane, (ii) 335 West Friar Tuck Lane; (iii) 1731 Sunset Boulevard, and (iv) 3702 Inwood Drive.

46.     Each of the four properties were or continue to be the sole and separate property of Dorothy Brockman, and, as such, were never within the "reach" of the IRS with respect to the collection of any tax liability that may be asserted against Mr. Brockman.  *See* Treas. Reg. § 1.6851-1(a)(1)(ii).

47.     The exercise of reasonable diligence by the IRS would have readily disclosed that these transactions were not part of any "design" by Mr. Brockman to place property beyond the reach of the Government.  Not only was Mr. Brockman not a party to any of these transactions, but these transactions do not in fact place any property beyond the reach of the IRS (to the extent that any may be subject to collection to satisfy any alleged tax liability of Mr. Brockman).

48.     **333 West Friar Tuck Lane:**  Mr. and Mrs. Brockman purchased residential property located at 333 West Friar Tuck Lane in Houston, Texas on July 2, 1997, and resided there until early 2021.

49.     On December 30, 1997, seven years prior to the earliest taxable year at issue in

the criminal proceeding, Dorothy Brockman purchased Mr. Brockman's one-half community

property interest in 333 West Friar Tuck Lane in exchange for shares of stock of equivalent

value.  This transaction was documented by a Special Warranty Deed that was filed with the

County Clerk of Harris County, Texas under County Clerk File Number S864991, and recorded

under Film Code Number 51696-3297.

50.     In early 2021, Mr. and Mrs. Brockman moved from 333 West Friar Tuck Lane to

a smaller and less expensive home in Houston that was located a shorter distance from the

residence of their son and his family.  As a result of this move, Dorothy Brockman publicly

listed 333 West Friar Tuck Lane for sale.  This property was registered on the Multiple Listing

Service ("MLS"), a public database in which property information is disseminated among real

estate professionals for listing and marketing purposes.  Dorothy Brockman continues to hold

333 West Friar Tuck Lane as her sole and separate property.

51.     Dorothy Brockman's listing of 333 West Friar Tuck Lane for sale was open and

notorious, and was not concealed from the IRS.

52.     Dorothy Brockman did not list 333 West Friar Tuck Lane as part of a "design" to

move assets outside of the reach of the Government.

53.     **335 West Friar Tuck Lane:**  On March 9, 2005, Dorothy Brockman purchased

335 West Friar Tuck Lane, a 1.6774 acre lot located adjacent to 333 West Friar Tuck Lane, as

her sole and separate property.  A general warranty deed was recorded with the County Clerk of

Harris County, Texas, evidencing Dorothy Brockman's acquisition of the property.

54.     Mr. Brockman has never held a property interest in or to 335 West Friar Tuck

Lane.

55.     In connection with her move from 333 West Friar Tuck Lane, Dorothy Brockman

sold 335 West Friar Tuck Lane in December 2020.  This property was registered on MLS, and the sale was publicly recorded with the Harris County Clerk in Texas.

56.     Dorothy Brockman's sale of 335 West Friar Tuck Lane was open and notorious, and was not concealed from the IRS.

57.     Dorothy Brockman did not list 335 West Friar Tuck Lane as part of a "design" to move assets outside of the reach of the Government.

58.     **1731 Sunset Boulevard:**  In or about 2011, Mr. and Mrs. Brockman purchased a townhouse located at 1731 Sunset Boulevard in Houston, Texas.

59.     Dorothy Brockman purchased Mr. Brockman's community property interest in 1731 Sunset Boulevard in exchange for cash.  That transaction was e-filed and e-recorded in the Official Public Record of Harris County, Texas on October 15, 2019, under RP-2019-460850.

60.     In May 2011, Mr. and Mrs. Brockman's son began residing at 1731 Sunset Boulevard, where he was joined by his wife, Elizabeth Brockman, in September 2017.  The townhouse at 1731 Sunset Boulevard was their residence until March 2020, shortly before the birth of their son.

61.     Dorothy Brockman has filed separate tax returns since tax year 1996.

62.     The fair market value of the rent for 1731 Sunset Boulevard was reported by Dorothy Brockman to the IRS on timely filed gift tax returns.

63.     After her son and daughter-in-law moved to 3702 Inwood Drive, *see* ¶¶ 67-73, *infra*, Dorothy Brockman sold 1731 Sunset Boulevard on May 14, 2021.  This property was registered on MLS, and the sale was publicly recorded with the Harris County Clerk in Texas.

64.     Dorothy Brockman's sale of 1731 Sunset Boulevard was open and notorious, and was not concealed from the IRS.

65.     Dorothy Brockman's sale of 1731 Sunset Boulevard was not part of a "design" to move assets outside of the reach of the Government.

66.     **3702 Inwood Drive**:  Dorothy Brockman purchased 3702 Inwood Drive, a residential property, on January 21, 2020, as her sole and separate property.

67.     Mr. and Mrs. Brockman's son and daughter-in-law moved into the home at 3702 Inwood Drive in March 2020.

68.     Dorothy Brockman formally gifted 3702 Inwood Drive to Elizabeth Brockman on November 12, 2020.  This gift from Dorothy Brockman to Elizabeth was e-filed and e-recorded in the Official Public Record of Harris County, Texas on November 12, 2020, under RP-2020-554920.

69.     Mr. Brockman has never held a property interest in or to 3702 Inwood Drive.

70.     Dorothy Brockman's gift of 3702 Inwood Drive to Elizabeth Brockman was open and notorious.

71.     Dorothy Brockman reported the gift of 3702 Inwood Drive to Elizabeth Brockman on a timely filed gift tax return.

72.     Dorothy Brockman's sale of 3702 Inwood Drive was not part of a "design" to move assets outside of the reach of the IRS.

### The IRS's Reference To *SJTC v. Watlington* Does Not Support An Assertion That Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach Of The Government

73.     The IRS contended in the September 9, 2021 Jeopardy Report that "[t]he Brockmans are currently pursuing litigation in Bermuda civil court to replace the current trustees of the [AEBCT] and to appoint new trustees, based in the Cayman Islands," citing  *SJTC v. Watlington.*  This contention is false or misleading in every respect:

(a)     Neither Robert nor Dorothy Brockman was a party to *SJTC v. Watlington* on September 9, 2021, or at any other time.

(b)     The appointment of a new trustee of the AEBCT was not addressed in *SJTC v. Watlington*.

(c)     The issue concerning the appointment of the trustee for the AEBCT was addressed and ***fully resolved in February 2021, over seven months prior to the issuance of the Jeopardy Assessment and the Jeopardy Levy,*** by the Bermuda Court of Appeal in *St. John's Trust Company (PVT) Ltd. v. Medlands (PTC) Ltd.,* Civil Appeal No. 8 of 2020, (Bermuda Court of Appeal), as a companion action to *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda) (hereinafter "Bermuda Court of Appeal Matter").

(d)     By Order dated March 26, 2021, ***nearly six months prior to the issuance of the Jeopardy Assessment and the Jeopardy Levy***, the Supreme Court of Bermuda formally appointed BCT as the trustee of the AEBCT, effective April 1, 2021 (hereinafter the "March 26, 2021 Order").

(e)     Although BCT, which was appointed by the March 26, 2021 Order as the trustee of the AEBCT, is a Cayman entity, in connection with its appointment, it expressly agreed to be subject to Bermuda law and the jurisdiction of the Bermuda courts.

74.     The Bermuda Court of Appeal held a three-day hearing in January 2021 to address, *inter alia*, the appointment of BCT as trustee for the AEBCT.

75.     Defendant United States was aware of the January 2021 hearing before the Bermuda Court of Appeal, and was in communication with the Bermuda Attorney General

during the proceedings.

76.     On February 2, 2021, the Clerk of the Bermuda Court of Appeal issued correspondence at the direction of the Court stating that the Court had made a determination that the then-trustee "shall be discharged as trustee of the [AEBCT] and replaced as trustee by BCT Ltd., a subsidiary of Maples FS" following remand to the Supreme Court of Bermuda (hereinafter the "February 2, 2021 Bermuda Court of Appeal Determination").

77.     In the March 26, 2021 Order, the Supreme Court of Bermuda formally appointed BCT as the trustee of the AEBCT, effective April 1, 2021.  The March 26, 2021 Order stated that BCT "irrevocably submits to the jurisdiction of this Court in relation to the administration of the [AEBCT]."

78.     On December 22, 2021, the Bermuda Court of Appeal entered an Approved Judgment setting out its findings in support of the February 2, 2021 Bermuda Court of Appeal Determination directing that BCT be appointed as trustee for the AEBCT (hereinafter the "December 22, 2021 Approved Judgement").

79.     Dorothy Brockman was appointed to represent the individual beneficiaries of the AEBCT in the Bermuda Court of Appeal Matter.

80.     Dorothy Brockman acted solely to support the appointment of an independent trustee of the AEBCT.

81.     The December 22, 2021 Approved Judgment summarized and accepted Dorothy Brockman's role, as representative of the individual beneficiaries in the AEBCT, in seeking the appointment of an independent trustee.  The December 22, 2021 Approved Judgment found that "BCT Limited is a subsidiary of Maples FS, a well-regarded, regulated international trust and corporate management business."

82.     The position taken by the IRS in the Jeopardy Report is in direct contradiction of the findings and rulings of the Bermuda courts.

83.     The IRS knew, or with the exercise of reasonable diligence, should have known, of the January 2021 hearing before the Bermuda Court of Appeal, the February 2, 2021 Bermuda Court of Appeal Determination, and the March 26, 2021 Order from the Supreme Court of Bermuda appointing BCT as trustee of the AEBCT, all of which predated the Jeopardy Assessment and Jeopardy Levy.

84.     The Jeopardy Report makes no mention of the January 2021 hearing before the Bermuda Court of Appeal, the February 2, 2021 Bermuda Court of Appeal Determination, or the March 26, 2021 Order from the Supreme Court of Bermuda appointing BCT as trustee of the AEBCT.

85.     Neither Mr. Brockman nor Dorothy Brockman took any steps in *SJTC v. Watlington* or the Bermuda Court of Appeal Matter that were intended to or did move assets beyond the reach of the Government.

### The IRS's Reference To The Allegations In *U.S. v. Brockman* Does Not Support An Assertion That Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach The Government

86.     The Indictment in *U.S. v. Brockman* was handed down on October 1, 2020, nearly one year before the IRS made the Jeopardy Assessment and issued the Jeopardy Levy.

87.     In the Jeopardy Report, as in the Indictment, the IRS contended that Mr. Brockman is the true owner of the assets of the AEBCT, ACT, MCT, and HCT, and should be charged with income earned by entities held in these trusts.

88.     The scope of the Indictment is limited solely to historic conduct alleged to have occurred between 2004 and 2018, and as such does not address whether Mr. Brockman is

currently "designing quickly" to move assets outside the reach of the IRS.

89.     Mr. Brockman has entered a plea of not guilty in *U.S. v. Brockman*.

90.     The Jeopardy Report also purported to recharacterize a 2004 transaction as a taxable dividend from a U.S. entity to an offshore entity held in the AEBCT trust structure, and to charge Mr. Brockman with income from that transaction.  This contention is unproven and denied by Mr. Brockman.

91.     The Jeopardy Report described the AEBCT as a non-grantor offshore discretionary trust with U.S. individuals and U.S., British, and Bermuda charities as beneficiaries.  There is nothing innately wrong with this structure.

92.     The grantor of the AEBCT was Mr. Brockman's father, A. Eugene Brockman, who settled the AEBCT in 1981.

93.     The beneficiaries of the AEBCT are Mr. Brockman, Dorothy Brockman, Mr. Brockman's brother and sister-in-law, and charities in the United States, Great Britain, and Bermuda.

94.     A. Eugene Brockman reported the transfer of assets to the AEBCT, a foreign trust, to the IRS on a Form 3520, filed in 1981.

95.     A. Eugene Brockman reported income earned from the AEBCT to the IRS during his lifetime.

96.     Upon the death of A. Eugene Brockman, the AEBCT became a non-grantor trust.

97.     No individual beneficiary has received any distribution from the AEBCT.

98.     Mr. Brockman has never received a distribution from the AEBCT, ACT, MCT, or HCT.

99.     On information and belief, no United States individual has received any

- 17 -

distributions from the AEBCT, ACT, MCT, or HCT.

100.    An individual beneficiary of a non-grantor offshore discretionary trust is not required to report his or her interest in such trust, or income received from such trust, to the IRS unless or until distributions are made to that beneficiary.

101.    The AEBCT has made charitable distributions.

102.    The AEBCT holds substantial assets in the United States, namely UCSH, a Delaware company, which in turn owns Dealer Computer Services, Inc. (hereinafter "DCS"), a Delaware company, that owns Reynolds.

103.    UCSH, DCS, and Reynolds file tax returns and pay taxes in the United States.

104.    In or about the late-1990s, the IRS examined the tax returns of Mr. and Mrs. Brockman and Universal Computer Consulting Holding Inc. (hereinafter "UCCHI"), the predecessor entity to UCSH, for taxable years 1992 through 1995.

105.    The indirect ownership of UCCHI by AEBCT through other offshore entities was disclosed to the IRS as part of its examinations of the tax returns of UCCHI and Mr. and Mrs. Brockman.

106.    The Jeopardy Report referenced a yacht, known as the Albula, which is owned 9% by Albula Acquisitions LLC, a Texas limited liability company.  Mr. Brockman reported his interest in Albula Acquisitions LLC to the IRS on IRS Form 8938 attached to Mr. Brockman's personal tax returns.

107.    The Jeopardy Report referenced Mountain Queen, a residential property located in Aspen, Colorado.  Mountain Queen is owned by Mountain Queen Inc., a U.S. company.

108.    The Jeopardy Report referenced Frying Pan Canyon Ranch, a riverfront property located in Eagle County, Colorado.  Frying Pan Canyon Ranch is owned by Henke Property

LLC, a U.S. company.

109.    The Jeopardy Report referenced the acquisition of an indirect interest in a corporate airplane by the Framfield Charitable Trust ("Framfield"), a Bermuda trust, in 2012, and the subsequent disposition of Framfield's interest in 2014.  Between 2012 and 2014, the plane was owned by Hardwicke Properties LLC ("Hardwicke"), a Delaware entity, which in turn was owned 99% by Red Plains Air Charter Inc. ("Red Plains"), a Delaware corporation, and 1% by Mr. Brockman.  Red Plains was indirectly owned by Framfield.  Red Plains sold its 99% interest in Hardwicke to UCSH in 2014.

110.    As U.S. entities, Hardwicke and Red Plains filed U.S. tax returns.

111.    Red Plains fully disclosed to the IRS that it was wholly owned by the Bermuda trust Framfield on its U.S. tax returns.

112.    Mr. Brockman paid fair market value for his use of the Albula, Mountain Queen, Frying Pan Canyon Ranch, and the corporate jet.

113.    Apart from the continuing and well-known existence of offshore entities, neither the Indictment nor the Jeopardy Report asserts current, ongoing activities to move assets out of the reach of the IRS.

114.    To the contrary, the most significant assets of the AEBCT—UCSH, DCS, and Reynolds—are U.S. companies that file U.S. tax returns.  Other assets cited in the Jeopardy Assessment—the Albula, Mountain Queen, the Frying Pan Canyon Ranch, and the corporate jet—were at all relevant times owned by entities located in the United States.  These assets were not concealed from the Government.

## CLAIM FOR RELIEF

115.    Incorporated by reference are paragraphs 1 to 115 above as if fully stated herein.

116.    The Jeopardy Assessment and the Jeopardy Levy are illegal and invalid, as such assessment and levy are based upon legal and factual error, as well as upon erroneous assumptions of fact, including as to matters that the IRS knew or, with the exercise of reasonable diligence, should have known.  As such, both the Jeopardy Assessment and the Jeopardy Levy are unreasonable under IRC § 7429(b)(3).

117.    The United States cannot meet its burden of proof set forth under IRC § 7429(g)(1) to establish the reasonableness of the Jeopardy Assessment and the Jeopardy Levy.

118.    The Jeopardy Assessment must be abated, the Jeopardy Levy must be released, any frozen bank accounts or other property subject to lien or levy must be fully restored, and Mr. Brockman's normal pre-assessment and pre-collection due process rights must be reinstated.

119.    Because, *inter alia*, the position of the United States in this matter is not and has not been substantially justified, Mr. Brockman is entitled to recover his costs and a reasonable attorney's fee, pursuant to 28 U.S.C. § 2412 and IRC § 7430.

WHEREFORE, Plaintiff Robert T. Brockman prays that this Court:

(a)    enter judgment in his favor;

(b)    determine that the Jeopardy Assessment and Jeopardy Levy made against him were not reasonable under the circumstances;

(c)    order the United States to abate the Jeopardy Assessment in full;

(d)    order the United States to release the Jeopardy Levy and all other liens and levies currently in force against Mr. Brockman;

(e)     reinstate Mr. Brockman's statutory pre-assessment and pre-collection due process rights;

(f)     order the United States to pay Mr. Brockman for his reasonable attorneys' fees and costs; and

(g)     grant such other and further relief as the Court deems just and proper.

Dated:  January 20, 2022

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
Julia N. Camp
Texas Bar No. 24123598
SDTX Ad. ID No. 3688104
Email: juliacamp@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*application for Pro Hac Vice admission forthcoming*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*application for Pro Hac Vice admission forthcoming*)
New York Bar No. 2870251
Email: fjackson@jonesday.com
Michael J. Scarduzio (*application for Pro Hac Vice admission forthcoming*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*application for Pro Hac Vice admission forthcoming*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939

Facsimile: 212-755-7306

Irina K. Bleustein (*application for Pro Hac Vice admission forthcoming*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Plaintiff Robert T. Brockman*