UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MOTION FOR DETERMINATION ON COMPLAINT FOR JUDICIAL REVIEW
AND ABATEMENT OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY
<u>PURSUANT TO 26 U.S.C. § 7429</u>**

**<u>Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ - 1 -

ARGUMENT .................................................................... - 5 -

I.    The IRS's Issuance Of The Jeopardy Assessment Was Unreasonable
Under The Circumstances ................................................. - 5 -

    A.    The IRS's Reference To Four Real Estate Transactions Does Not
Support An Assertion That Mr. Brockman Is "Designing
Quickly" To Place Assets Beyond The Reach Of The
Government ......................................................... - 5 -

    B.    The IRS's Reference To *SJTC v. Watlington* Does Not Support
An Assertion That Mr. Brockman Is "Designing Quickly" To
Place Assets Beyond The Reach Of The Government ..................... - 12 -

    C.    The IRS's Reference To The Allegations In *U.S. v. Brockman*
Does Not Support An Assertion That Mr. Brockman Is
"Designing Quickly" To Place Assets Beyond The Reach Of The
Government ......................................................... - 16 -

II.    The Government Cannot Meet Its Burden To Establish The
Reasonableness Of The Jeopardy Assessment And Jeopardy Levy.......... - 23 -

CONCLUSION ................................................................. - 24 -

## INTRODUCTION

On September 9, 2021, the Internal Revenue Service issued a Notice of Jeopardy Assessment and Rights to Appeal and a Notice of Jeopardy Levy and Right of Appeal to Robert T. Brockman pursuant to Internal Revenue Code ("IRC") §§ 6861(a) and 6331(a).[1] Mr. Brockman respectfully asks this Court to determine, pursuant to IRC § 7429(b)(4), that the making of the assessment and levy were unreasonable, and to abate the assessment and release the levy.  By statute, this determination must be made by the Court on an expedited basis—IRC § 7429(b)(3) requires that this determination be made "*[w]ithin 20 days after a proceeding is commenced*." (emphasis added).[2]

A jeopardy assessment allows the IRS to circumvent a taxpayer's substantial procedural and substantive rights and proceed to immediate collection of a taxpayer's assets.  For this reason, jeopardy assessments are regarded as "extraordinary measures" that are meant to be used "sparingly" and only in light of "exigent circumstances." *Fumo v. United States*, No. 13-3313, 2014 U.S. Dist. LEXIS 77082, at *45, *76 (E.D. Pa. 2014).

No exigency exists here.  There is no jeopardy.  The IRS's actions were baseless and wholly unreasonable, and must be immediately abated.

---

[1] A copy of the Notice of Jeopardy Assessment and Rights to Appeal (the "Jeopardy Assessment") is attached as Ex. 1 to the Declaration of Kathryn Keneally ("Keneally Decl."), and a copy of the Notice of Jeopardy Levy and Right of Appeal (the "Jeopardy Levy") is attached as Ex. 2 thereto (Exhibits 1 and 2 filed under seal).

[2] IRC § 7429(c) provides that an extension of this 20-day period may be granted for up to 40 additional days, based solely on the request of the taxpayer upon a showing of reasonable grounds.

Treasury Regulation § 301.6861-1(a)[3] limits the basis on which the IRS may make a jeopardy assessment to the following three conditions:

(i)     The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself;

(ii)    The taxpayer is or appears to be designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or

(iii)   The taxpayer's financial solvency is or appears to be imperiled.

*See McWilliams v. Comm'r*, 103 T.C. 416, 424 (1994) (the Treasury Regulation sets out the three exclusive conditions upon which a jeopardy assessment may be made); IRS Policy Statement 4-88 (same).

In the Jeopardy Recommendation Report that accompanied the Jeopardy Assessment (the "Jeopardy Report"), the IRS did not cite to either the first or third conditions set forth in the Treasury Regulation:  Mr. Brockman is not a flight risk, and his financial solvency is not imperiled.  *See* Keneally Decl. Ex. 3 (filed under seal).

Rather, the IRS relied solely on the second condition:  it contends that Mr. Brockman is or appears to be acting currently to move property beyond the reach of the Government.  The IRS has no support for this proposition, and it is in fact not true.

As set forth more fully below, the IRS based its determination on three allegations, none of which support its actions:

(a)     The IRS cited to four real property transactions by Dorothy Brockman, Mr.

---

[3] Treas. Reg. § 301.6861-1(a) incorporates by cross-reference Treas. Reg. § 1.6851-1(a)(1), which in turn sets out these three conditions.

Brockman's wife, specifically:  (i) the listing by Dorothy Brockman of the Brockmans' prior residence for sale; (ii) the sale by Dorothy Brockman of a vacant lot adjacent to the Brockmans' prior residence; (iii) the sale by Dorothy Brockman of a townhouse; and (iv) the purchase and gift by Dorothy Brockman to her daughter-in-law of the residence in which Mr. and Mrs. Brockman's son, daughter-in-law, and grandson currently reside. *See* Keneally Decl. Ex. 3 at 52.  All four of these properties are or were the separate property of Dorothy Brockman.  The Jeopardy Report did not and cannot contend that the proceeds from any of the four specific property transactions were moved outside the United States.  Nothing involving these transactions suggests that either Mr. or Mrs. Brockman is acting to move assets beyond the reach of the Government.

      (b)     The IRS contended that Mr. and Mrs. Brockman "have litigation pending to appoint new trustees" of the A. Eugene Brockman Charitable Trust (the "AEBCT"), citing a case captioned *St. John's Trust Company (PVT) Limited vs. James Watlington, et al.* ("*SJTC v. Watlington*"), which was filed in the Supreme Court of Bermuda in 2019, and further claimed that this litigation could "potentially grant[] [Mr. and Mrs. Brockman] control over the trust and ability to dispose or transfer trust assets."  *See* Keneally Decl. Ex. 3 at 52-53.  This allegation is false.  First, contrary to the Jeopardy Report, neither Robert nor Dorothy Brockman initiated *SJTC v. Watlington*, nor was either of them at any time a party to that action.  More significantly, in February 2021, the Bermuda Court of Appeal in an entirely separate litigation ordered the appointment of BCT Limited ("BCT") as trustee of the AEBCT.  As determined by the Bermuda Court of Appeal, BCT is a wholly owned subsidiary of Maples FS Limited ("Maples"), a

- 3 -

regulated trust company that routinely serves as an independent professional trustee.

(c)     The IRS referred to the Indictment in *United States v. Brockman*, No. 4:21-cr-00009 (SDTX) (Hanks, J.) ("*U.S. v. Brockman*"), currently pending in this District. Those allegations remain wholly unproven.  Moreover, nothing in those allegations supports the IRS's contention that Mr. Brockman is or appears to be "designing quickly" to place assets beyond the reach of the Government, the sole basis on which the IRS contended the Jeopardy Assessment was made.

Finally, under the IRS's theory of liability, there can be no jeopardy.[4]  Should the IRS ultimately prevail on the merits of the underlying tax case, then Mr. Brockman would be the indirect owner of the Reynolds and Reynolds Company ("Reynolds"), a U.S. company the value of which significantly exceeds the purported tax liability against Mr. Brockman.  *See, e.g.*, *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *97 (rejecting jeopardy when "the amount of money in Plaintiff's bank accounts alone is sufficient to pay the assessed taxes if the Tax Court ultimately finds them due and owing").  There is no allegation that any attempt has been made to move Reynolds beyond the reach of the Government.  Nor as a practical matter could this be accomplished.

Under these circumstances, there is simply no jeopardy, and thus no reasonable basis on which the IRS may justify its actions.

---

[4] The issue of whether Mr. Brockman owes additional taxes is not before this Court for determination in this case.  IRC § 6861(b) requires the IRS to issue a notice of deficiency setting out the asserted tax liability within 60 days of making a Jeopardy Assessment, which accords the taxpayer an opportunity to challenge the underlying tax liability by filing a petition in the United States Tax Court within 90 days. The IRS issued a notice of deficiency to Mr. Brockman on October 28, 2021.  Mr. Brockman plans timely to file a petition with the Tax Court.

## ARGUMENT

**I.     The IRS's Issuance Of The Jeopardy Assessment Was Unreasonable Under The Circumstances.**

Central to the issue of whether a jeopardy assessment is reasonable is the issue of exigency:  the IRS is accorded a statutory right to move quickly when it can show that the taxpayer is or appears to be "designing quickly" to move assets beyond the reach of the Government.  No such exigency exists here, and the IRS's actions were wholly unreasonable.

**A.     The IRS's Reference To Four Real Estate Transactions Does Not Support An Assertion That Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach Of The Government.**

Even the most minimal of reviews establishes that the four real estate transactions cited by the IRS do not provide any basis for a jeopardy assessment—none of the properties belonged to Mr. Brockman at the time of the cited transaction; none of the asserted actions with regard to these properties were undertaken by him; and none of the transactions were "designed" to place any assets beyond the reach of the Government.

The facts concerning the four properties are:

**333 West Friar Tuck Lane:**  Mr. and Mrs. Brockman purchased residential property located at 333 West Friar Tuck Lane in Houston, Texas, on July 2, 1997, and resided there until early 2021.  On December 30, 1997, seven years prior to the earliest taxable year at issue in either the jeopardy assessment or *U.S. v. Brockman*, Dorothy Brockman purchased Mr. Brockman's one-half community property interest in 333 West Friar Tuck Lane in exchange for shares of stock of equivalent value.  This transaction

was publicly recorded and a Special Warranty Deed was filed with the County Clerk of Harris County, Texas, under County Clerk File Number S864991, and recorded under Film Code Number 51696-3297. Keneally Decl. Ex. 4. In early 2021, Mr. and Mrs. Brockman moved from 333 West Friar Tuck Lane to a smaller, less expensive, and more easily maintained home in Houston that was located closer to the home of their son and his family. As a result of this move, Dorothy Brockman publicly listed 333 West Friar Tuck Lane for sale, including on the Multiple Listing Service ("MLS"), a public database in which property information is disseminated among real estate professionals for listing and marketing purposes. Keneally Decl. Ex. 5. No contract for sale was ever reached, and the property remains unsold. Dorothy Brockman continues to hold 333 West Friar Tuck Lane as her sole and separate property.

**335 West Friar Tuck Lane**: On March 9, 2005, Dorothy Brockman purchased 335 West Friar Tuck Lane, a 1.6774 acre lot adjacent to 333 West Friar Tuck Lane, as her sole and separate property. A General Warranty Deed was recorded with the County Clerk of Harris County, Texas, evidencing Dorothy Brockman's acquisition of the property. Keneally Decl. Ex. 6. Mr. Brockman has never held a property interest in or to 335 West Friar Tuck Lane.[5] In connection with her move from 333 West Friar Tuck Lane, Dorothy Brockman sold 335 West Friar Tuck Lane in December 2020. This

---

[5] The Jeopardy Report noted that the deed for the sale of 335 West Friar Tuck Lane indicated that Mr. Brockman was a "Grantor" of the property. *See* Keneally Decl. Ex. 3 at 36. This is not correct, and was inserted into the deed in error. The deed reflecting the conveyance of 335 West Friar Tuck Lane makes clear that Dorothy Brockman was the sole owner. *See* Keneally Decl. Ex. 6.

property was registered on MLS, and the sale was publicly recorded with the Harris County Clerk.  Keneally Decl. Exs. 7 & 8.

**1731 Sunset Boulevard**:  In or about 2011, Mr. and Mrs. Brockman purchased a townhouse located at 1731 Sunset Boulevard in Houston, Texas.  Dorothy Brockman subsequently purchased Mr. Brockman's community property interest in 1731 Sunset Boulevard in exchange for cash.  That transaction was e-filed and e-recorded in the Official Public Records of Harris County, Texas, on October 15, 2019, under RP-2019-460849.  Keneally Decl. Exs. 9 & 10.  In May 2011, Mr. and Mrs. Brockman's then-unmarried son, also named Robert, began residing at 1731 Sunset Boulevard, where he was later joined by his wife, Elizabeth Brockman, in September 2017.  The townhouse at 1731 Sunset Boulevard was their residence until March 2020, shortly before the birth of their son.  Dorothy Brockman sold the vacant townhouse in May 2021.  As with 335 West Friar Tuck Lane, this property was registered on MLS, and the sale was publicly recorded with the Harris County Clerk.  Keneally Decl. Exs. 11 & 12.  Additionally, Dorothy Brockman reported the fair market value of the rent for 1731 Sunset Boulevard on timely filed gift tax returns.

**3702 Inwood Drive**:  Dorothy Brockman purchased 3702 Inwood Drive, a residential property on January 21, 2020, as her sole and separate property.  Mr. Brockman has never held a property interest in or to 3702 Inwood Drive.  Mrs. Brockman's son and daughter-in-law moved into this home in March 2020, shortly before the birth of her first grandchild.  Dorothy Brockman formally gifted 3702 Inwood Drive to her daughter-in-law, Elizabeth Brockman, on November 12, 2020.  This gift

from Dorothy Brockman to Elizabeth Brockman was e-filed and e-recorded in the

Official Public Records of Harris County, Texas, on November 12, 2020, under RP-2020-

554920.  Keneally Decl. Exs. 13 & 14.  Dorothy Brockman reported the fair market value

of the rent between March and November 2020, and the gift of the property, on a timely

filed gift tax return.

None of these property transactions indicate that either Mr. Brockman or his wife

is attempting to place property beyond the reach of the Government.

*First*, at the time of listing or disposition (and for quite some time prior, if at all),

Mr. Brockman had no property right or interest in or to any of these four properties.  In

short, these are not his properties and, as such, were never within "reach" of the

Government for collection of his taxes.  Their dispositions or potential disposition is

completely irrelevant to the analysis as to whether a tax assessment against Mr.

Brockman would be "jeopardized by delay."

*Second*, none of these listings or dispositions demonstrate any jeopardy, as "the

jeopardy assessment statute in most cases contemplates the movements of property out of

reach of the government by means of underhanded maneuvering."  *Fumo*, 2014 U.S. Dist.

LEXIS 77082, at *92 (citing *George F. Harding Museum v. United States*, 674 F. Supp.

1323, 1329 (N.D. Ill. 1987)) (internal quotations omitted).  In each case, Dorothy

Brockman entered into transactions in a transparent manner, and in a manner that allowed

the IRS to trace the transfers by means of public databases and public records.  Each of

the properties was registered on a public database, and each transfer was publicly

recorded with the Harris County Clerk.  Keneally Decl. Exs. 4–14.  Dorothy Brockman

- 8 -

did not transfer the properties to any alter ego or shell corporation; the two sales and one gift were made to readily identifiable, openly disclosed parties, and the fourth property continues to be owned by her. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *86-87 (abating jeopardy assessment when the IRS was able to "trace Plaintiff's real property transfers using only public databases and public records" because "Plaintiff did not transfer real estate interests to alter ego or shell corporations, or parties unknown to Defendant who might be difficult to locate"). And in the case of her son's use of 1731 Sunset Boulevard and her gift of 3702 Inwood Drive to her daughter-in-law, she disclosed those transactions to the IRS on gift and personal tax returns. *See id.* at *64 (concluding that "[f]iling forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from all [of the taxpayer's] creditors, including the IRS") (internal quotations omitted).

*Third*, the listings and dispositions are not indicative that either Mr. Brockman or his wife is "designing quickly" to place property beyond the reach of the IRS. Instead, such activities were undertaken in the ordinary course, given the Brockmans' age and family circumstances. Dorothy Brockman has filed separate tax returns since 1996, and maintains property and investments separate from her husband. She has engaged in transfers similar to these over the course of her long marriage. Nothing in the record suggests that this conduct deviates from her previous conduct or that such transfers were in response to any potential collection of an as-yet undetermined tax assessment against her husband.

*Fourth*, with respect to the sales of the properties at 335 West Friar Tuck Lane and 1731 Sunset Boulevard (and in the event of a sale of 333 West Friar Tuck Lane), these dispositions were for reasonably equivalent value, and as such they do not "dissipate" assets. The Jeopardy Report cited that the 335 West Friar Tuck Lane property—a vacant 1.6774 acre lot—sold for $3,999,000, and that the 1731 Sunset Boulevard townhouse sold for $1,375,000. *See* Keneally Decl. Ex. 3 at 36. Both properties were transferred at arm's length to unrelated third parties, and the IRS did not contend in the Jeopardy Report that such assets were sold for less than their reasonably equivalent value. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *83 (rejecting jeopardy when a taxpayer has adequate property or "other assets for collection by the government"). Moreover, as the Jeopardy Report conceded, Dorothy Brockman acquired two additional properties in the same time period. *See* Keneally Decl. Ex. 3 at 37, 39. If, as the IRS alleged, Dorothy Brockman were Mr. Brockman's nominee (which she is not), then all she did was replace assets with other assets. Through the use of public records and information available to the IRS, the IRS was able to (or easily could) determine the amount of each sale and where the proceeds went, as well as the acquisitions of other properties. *See* Keneally Decl. Ex. 3 at 35–40 (Jeopardy Report citing the public recordings concerning the property transactions at issue); *see McWilliams*, 103 T.C. at 427 ("Petitioner did not attempt to transfer or hide the assets in another person's name . . . .").

The facts at hand are weaker even than those in *Burd v. United States*, 774 F. Supp. 903 (D.N.J. 1991), in which the court found a jeopardy assessment to be unreasonable. In *Burd*, the IRS alleged that the taxpayer "engaged in illegal business

- 10 -

activity" and had "failed to report substantial amounts of income." *Id.* at 906.  The IRS

also contended that it was informed that the taxpayer was planning to move to Japan, and

that she had listed her home—which was described as her "only known asset"—for sale

so that the property would be "converted" into cash.  The IRS made a jeopardy

assessment against the taxpayer.  The very next day, the taxpayer conveyed the home to

her daughter for an amount significantly below the listing price.  Eleven days after that,

the daughter sold the home to a third party for cash.  *Id.* at 905-08.

 Stating that the facts cannot be "looked at in a vacuum," *see id.* at 906, the court in

*Burd* found that even if the taxpayer had an "intention to misrepresent her income and

avoid paying taxes," that "this does not provide the IRS with justification for a jeopardy

assessment.  Rather, these are precisely the issues that are to be pursued in the United

States Tax Court."  *Id.* at 907.  The court further stated that "if the IRS had conducted a

simple investigation there would have been absolutely no basis for the jeopardy

assessment."  *Id.*  The court found that the allegation that the taxpayer was preparing to

leave the country was unsupported, and further concluded that the taxpayer "had a

rational justification for transferring the legal title of her home to her daughter," namely,

she was "engaged to be married and was planning on moving into her husband's home."

*Id.* at 908.  Because the IRS failed to conduct an "investigation to ascertain the

reasonableness of their fears that the tax payment was in jeopardy," the court found the

jeopardy assessment to be unreasonable under the circumstances.  *Id.* at 907.

 The IRS cannot base a finding of jeopardy upon uncorroborated information or

upon facts that it has ignored or failed to investigate.  *See id.* at 906 (A simple

investigation would have disclosed no basis for the jeopardy assessment.); *Fumo*, 2014 U.S. Dist. LEXIS  77082, at *19, *62–63 (same); *Hirschhorn v. United States*, 662 F. Supp. 887, 890-92 (S.D.N.Y. 1987) (same).  As in *Burd*, even a "simple investigation" into the four property transactions would have disclosed that none supports a basis for jeopardy assessment.  The bottom line with respect to all four real property transactions cited by the IRS is that there has been no attempt, or even the appearance of an attempt, to hinder or defeat collection by the IRS.  These transactions do not support the IRS's determination that collection is in jeopardy, and the IRS's reliance on them is not reasonable.

**B.     The IRS's Reference To *SJTC v. Watlington* Does Not Support An Assertion That Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach Of The Government.**

In the Jeopardy Report, the IRS argued that "[t]he Brockmans are currently [i.e., as of the September 9, 2021 date of the Jeopardy Report] pursuing litigation in Bermuda civil court to replace the current trustees of the [AEBCT] and to appoint new trustees, based in the Cayman Islands."  *See* Keneally Decl. Ex. 3 at 2.  The IRS further contended that this litigation could grant Mr. and Mrs. Brockman "greater control over the trust and ability to dispose of, or transfer, trust and company assets."  *See* Keneally Decl. Ex. 3 at 2.  The Jeopardy Report's sole reference in support of these contentions is to *SJTC v. Watlington*.  The IRS's contentions are false or misleading in every respect.  In brief:

(a)     Neither Robert nor Dorothy Brockman was a party to *SJTC v. Watlington* when the jeopardy assessment was made or at any other time.

(b)     The issue concerning the appointment of the trustee for the AEBCT

was not addressed in *SJTC v. Watlington*.

(c)     The issue concerning the appointment of the trustee for the AEBCT was addressed and fully resolved in February 2021, ***over seven months prior to the issuance of the Jeopardy Assessment and the Jeopardy Levy***, by the Bermuda Court of Appeal in *St. John's Trust Company (PVT) Ltd. v. Medlands (PTC) Ltd.*, Civil Appeal No. 8 of 2020 (Bermuda Court of Appeal), as a companion action to *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda) (the "Bermuda Court of Appeal Matter").  Keneally Decl. Ex. 15.  Dorothy Brockman was appointed to represent the position of the individual beneficiaries in the Bermuda Court of Appeal Matter, and acted solely to support the appointment of an independent trustee that was subject to the jurisdiction of the Bermuda courts.  *See* Keneally Decl. Ex. 16 at ¶¶ 4, 23–25, 59.

(d)     By Order dated March 26, 2021, ***nearly six months prior the issuance of the Jeopardy Assessment and the Jeopardy Levy***, the Supreme Court of Bermuda formally appointed BCT as the trustee of the AEBCT, effective April 1, 2021 (the "March 26, 2021 Order").  Keneally Decl. Ex. 17 at ¶ 2.

(e)     Although BCT is a Cayman entity, it agreed to be subject to Bermuda law and the jurisdiction of the Bermuda courts.  Keneally Decl. Ex. 17 at 2 (preamble).

The Bermuda Court of Appeal held a three-day hearing in January 2021 to

address, *inter alia*, the appointment of BCT as trustee for the AEBCT—a fact clearly known to the Government well before the IRS made its misstatements in the Jeopardy Report in September 2021, as the Department of Justice was in direct contact with the Bermuda Attorney General during this hearing.   Keneally Decl. Ex. 16 at ¶¶ 5, 20, 33; Ex. 17 at 2 (preamble).

On February 2, 2021, the Clerk of the Bermuda Court of Appeal issued correspondence at the direction of the Court stating that the Court had made a determination that "a new independent institutional trustee should be appointed" and that the then-trustee "shall be discharged as trustee of the [AEBCT] and replaced as trustee by Bermuda Trust Company Limited ('BCT Ltd')," a subsidiary of Maples following remand to the Supreme Court of Bermuda (the "February 2, 2021 Bermuda Court of Appeal Determination").  Keneally Decl. Ex. 15.

In the March 26, 2021 Order, the Supreme Court of Bermuda formally appointed BCT as the trustee of the AEBCT, effective April 1, 2021.  Keneally Decl. Ex. 17 at ¶ 2. The March 26, 2021 Order stated that BCT "irrevocably submits to the jurisdiction of this Court in relation to the administration of the [AEBCT]."  Keneally Decl. Ex. 17 at 2 (preamble).

On December 22, 2021, the Bermuda Court of Appeal entered an Approved Judgment setting out its findings in support of the February 2, 2021 Bermuda Court of Appeal Determination directing that BCT be appointed as trustee for the AEBCT (the

"December 22, 2021 Approved Judgement").[6]  In the December 22, 2021 Approved

Judgement, the Bermuda Court of Appeal accepted Dorothy Brockman's role as the

court-appointed representative of the individual beneficiaries of the AEBCT in the

Bermuda Court of Appeal Matter, and discussed how, throughout the proceedings, she

acted solely to support the appointment of an independent trustee of the AEBCT.

Keneally Decl. Ex. 16 at ¶¶ 4, 23–25, 59(e).  The Bermuda Court of Appeal also found

that "BCT Limited is a subsidiary of Maples FS, a well-regarded, regulated international

trust and corporate management business."  Keneally Decl. Ex. 16 at ¶ 59(g).

      The position taken by the IRS in the Jeopardy Report is in direct contradiction of

the findings and rulings of the Bermuda courts.  Neither Robert nor Dorothy Brockman

acted at any time in any of the Bermuda proceedings to move assets from the AEBCT, to

move the AEBCT to a different jurisdiction, or to gain control over the AEBCT's assets.

*Cf.*, Keneally Decl. Ex. 3 at 52–53 (Jeopardy Report wrongly contending that the *SJTC v.*

*Watlington* litigation could "*potentially* grant[] [Mr. and Mrs. Brockman] greater control

over the trust and ability to dispose or transfer trust assets.") (emphasis added).  To the

contrary, Dorothy Brockman, on behalf of the individual beneficiaries, supported the

appointment of an independent trustee subject to the jurisdiction of the Bermuda courts.

In short, nothing in the Bermuda court proceedings altered the location of the assets of

---

[6] In determining whether the IRS acted reasonably, the Court may consider events that occurred after the issuance of the Jeopardy Assessment and Jeopardy Levy.  *See Burd*, 774 F. Supp. at 906 ("In assessing the reasonableness of the IRS's actions, the Court is not limited to consideration of the information available to the IRS at the time of the assessment but must also consider any subsequently available information that might impact on the reasonableness of the determinations.") (internal quotations omitted); *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *52 (same).

the AEBCT, or was or appeared to be "designed" to move assets beyond the reach of the Government.

Tellingly, the Jeopardy Report makes no mention of the January 2021 hearing before the Bermuda Court of Appeal, the February 2, 2021 Bermuda Court of Appeal Determination, or the March 26, 2021 Order from the Supreme Court of Bermuda appointing BCT as trustee of the AEBCT, all of which predated the Jeopardy Assessment and Jeopardy Levy, and all of which would have been uncovered by a simple investigation. The IRS's decision to ignore these actions by the Bermuda courts—which were readily ascertainable and were known to the Department of Justice—in and of itself wholly demonstrates that the IRS's citation to *SJTC v. Watlington* is unreasonable, and indeed, utterly baseless.

### C. The IRS's Reference To The Allegations In *U.S. v. Brockman* Does Not Support An Assertion That Mr. Brockman Is "Designing Quickly" To Place Assets Beyond The Reach Of The Government.

In the Jeopardy Report, the IRS alleged that Mr. Brockman failed to report income that was earned by assets held in certain offshore trusts including (i) the AEBCT, (ii) the Alpheus Charitable Trust (the "ACT"), (iii) the Messery Charitable Trust (the "MCT"), and (iv) the Heraclides Charitable Trust (the "HCT"). These allegations track the charges made in the Indictment in *U.S. v. Brockman*.[7]

Mr. Brockman has entered a plea of not guilty to these charges, which remain

---

[7] The Jeopardy Report also purported to recharacterize a 2004 transaction as a taxable dividend from a U.S. entity to an offshore entity held in the AEBCT trust structure, and to charge Mr. Brockman with income from that transaction. *See* Keneally Decl. Ex. 3 at 43. This contention is unproven and denied by Mr. Brockman.

unproven.  It is axiomatic that a criminal defendant is presumed innocent until proven guilty.  *Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017).

The Indictment was handed down on October 1, 2020, nearly a year before the IRS made the jeopardy assessment.  The scope of the Indictment is limited solely to historic conduct alleged to have occurred between 2004 and 2018, and as such does not address whether Mr. Brockman is or appears to be currently "designing quickly" to move assets beyond the reach of the Government.  Apart from the continuing and well-known existence of offshore entities, neither the Indictment nor the Jeopardy Report speak to current, ongoing activities to move assets beyond the reach of the Government.

On facts that were stronger for the IRS, the district court in *Fumo* struck down a jeopardy assessment that followed a conviction—not merely an indictment—for tax evasion.  The IRS in *Fumo* started routine assessment procedures by mailing the taxpayer notices of proposed tax adjustments that were based on the criminal conviction.  2014 U.S. Dist. LEXIS 77082, at *3.  Five months later, despite the pendency of these procedures, the IRS issued a jeopardy assessment.  *Id*. at *4.  In its determination of jeopardy, the IRS relied upon the taxpayer's real estate transfers and the taxpayer's prior criminal conduct.  *Id*. at *87-88.  The court found that the IRS's determination was unreasonable, holding that the United States "has not explained what events occurred, or what actions [the taxpayer] took, between October 3, 2012 and March 21, 2013 that caused [the United States] to so alter its position regarding whether collection from [the taxpayer] was jeopardized."  *Id*. at *105-07.  The court in *Fumo* concluded that "prior

illegal activity . . . is not adequate to show that a taxpayer is or appears to be designing quickly to place assets beyond the reach of the government." *Id*. at 88-89, n.18.

Nothing in the pendency of the Indictment nor its allegations supports a conclusion that, were the prosecution able to prove the charges in the Indictment, and the IRS able to prove that there is additional tax liability, collection is in any way in jeopardy.  To the contrary, the Jeopardy Report itself made clear that collection can wait on the outcome of normal assessment procedures.

As set out in the Jeopardy Report, the AEBCT was settled in 1981 by Mr. Brockman's father.  *See* Keneally Decl. Ex. 3 at 8.  The beneficiaries of the AEBCT are Mr. Brockman, along with his wife, brother, and sister-in-law, and charities in the United States, Great Britain, and Bermuda.  *See* Keneally Decl. Ex. 3 at 8.  Although the IRS in the Jeopardy Report described distributions made by the AEBCT to U.S. charities, *see* Keneally Decl. Ex. 3 at 1, it did not and cannot assert that any U.S. person, including Mr. Brockman, has ever received any distribution.  The Jeopardy Report is similarly devoid of any suggestion that any U.S. individual received a distribution from any of the ACT, MCT or HCT.

As described by the Jeopardy Report, the AEBCT is a non-grantor offshore discretionary trust with U.S. individuals and U.S., British, and Bermuda charities as beneficiaries.  *See* Keneally Decl. Ex. 3 at 8.  There is nothing innately wrong with this structure.  *See, e.g.*, P.L.R. 201308016 (Feb. 22, 2013) (concluding that because discretionary beneficiaries cannot "be said to hold more than an expectancy in trust property," certain trust modifications will not result in such beneficiaries realizing

income from the trust); F.S.A. 199952014 (Sept. 23, 1999) (concluding that discretionary beneficiaries should not be treated under the grantor trust rules as the owner of foreign trusts).

The current asset structure of the AEBCT, as it is alleged by the IRS in the Jeopardy Report, refutes any contention that the IRS acted reasonably in contending that it is currently jeopardized in its ability to collect on any tax judgement that it may someday obtain against Mr. Brockman.  As the IRS stated in the Jeopardy Report, the AEBCT holds a greater than 99% interest in Universal Computer Systems Holding Inc. ("UCSH"), a Delaware entity.  *See* Keneally Decl. Ex. 3 at 2, 8.  UCSH in turn indirectly owns 100% of Reynolds, an Ohio company with operations in Houston, Texas and Dayton, Ohio.  *See* Keneally Decl. Ex. 3 at 3-4.  Reynolds is estimated to be worth approximately $5 billion.  *See* Keneally Decl. Ex. 16 at ¶ 25.  There are no allegations in the Jeopardy Report that anyone has taken any action to conceal, dissipate, transfer, or in any way diminish the value of Reynolds.  In other words, based on the IRS's theory that Mr. Brockman is the owner of Reynolds, there are assets worth a multiple of the asserted tax liability that are and will remain available in the United States.  Thus the IRS cannot make out a case that, even if the tax liability against Mr. Brockman were to be established, collection would be jeopardized.

Moreover, the AEBCT was not the secret that the IRS would make it out to be. The settlor, Mr. Brockman's father, reported the transfer of assets at the time of the formation of the AEBCT, as well as income earned from the AEBCT during his lifetime. *See* Keneally Decl. Ex. 18.  Moreover, Mr. and Mrs. Brockman, along with Universal

- 19 -

Computer Consulting Holding Inc. ("UCCI"), the predecessor entity to what is now UCSH, were examined by the IRS for taxable years 1992 through 1995.  *See* Keneally Decl. Ex. 19 at 3-17:25–3-19:8.  Contrary to the IRS's misleading statement in the Jeopardy Report, the ultimate ownership of UCCI by the offshore structure was indeed disclosed as part of that examination.  *Compare* Keneally Decl. Ex. 3 at 33 (Jeopardy Report disingenuously states:  "Information regarding Brockman's offshore activity was not disclosed by Brockman or his representative during the 2006-2007 examination") *with, e.g.,* Ex. 19 at 3-19:1-8 (witness at hearing to determine Mr. Brockman's competency testified that the IRS "gained visibility into the structure of the AEBCT" during the earlier IRS examinations).

Most tellingly, the main assets of the AEBCT—UCSH, DCS, and Reynolds—*are in the United States.*  This simply is not a case, as the IRS would make it out to be, where assets are being hidden offshore.  These are U.S. companies that file and pay taxes in this country.  Mr. Brockman sold the business that he founded to the AEBCT in the mid-1980s, and it grew in value to become Reynolds, along with other investments cited by the IRS, inside the AEBCT structure.

The IRS contended in the Jeopardy Report that Mr. Brockman used HCT to conceal his alleged ownership interest in real property and a yacht, and used the Framfield Charitable Trust ("Framfield") to conceal his alleged ownership interest in a corporate airplane.  *See* Keneally Decl. Ex. 3 at 1, 20-22, 30-31.  As much as the IRS would like to have some inference drawn from its citations to a summer home, fishing property, a yacht, and a plane, nothing in these allegations supports the one factor that the

IRS must prove here—that its ability to collect a tax assessment will be "jeopardized by delay."

In making these allegations, the IRS glossed over or ignored key facts:  Mr. Brockman paid fair market value for the use of all of these assets.  *See, e.g,* Keneally Decl. Ex. 19 at 3-5:23–3-6:24 (witness at hearing to determine Mr. Brockman's competency testified that Mr. Brockman paid fair market value for the use of the Colorado real properties).  The Jeopardy Report acknowledged that the real properties are located in the United States, and directly held by U.S. entities.  *See* Keneally Decl. Ex. 3 at 20-21.  And the Jeopardy Report supported its contention that Mr. Brockman has an interest in the yacht by citing to *Mr. Brockman's disclosure on IRS Form 8938 attached to Mr. Brockman's 2017 and 2018 personal tax returns*—hardly an effective means to keep something secret from IRS.  *See* Keneally Decl. Ex. 3 at 27.

Most glaring is the IRS's attempt to make something out of the nothingness of the circumstances concerning the corporate airplane.  As the Jeopardy Report stated, between 2012 and 2014, the plane was owned by Hardwicke Properties LLC ("Hardwicke"), a Delaware entity, which in turn was owned 99% by Red Plains Air Charter Inc. ("Red Plains"), a Delaware corporation, and 1% by Mr. Brockman.[8]  *See* Keneally Decl. Ex. 3 at 30–31.  The Jeopardy Report acknowledged that Hardwicke and Red Plains filed U.S. tax returns, and that Red Plains *fully disclosed that it was wholly owned by the Bermuda*

---

[8] As noted in the Jeopardy Report, Red Plains sold its 99% interest in Hardwicke to UCSH in 2014.  *See* Keneally Decl. Ex. 3 at 31.  Mr. Brockman sold his remaining 1% interest in Hardwicke to Reynolds in March 2021.

*trust Framfield*. *See* Keneally Decl. Ex. 3 at 31. The Jeopardy Report also acknowledged that Hardwicke was included as part of the IRS's examination of Mr. Brockman's 2006 and 2007 tax returns. *See* Keneally Decl. Ex. 3 at 33. These assets, and Mr. Brockman's relationship to them, were hardly hidden. Moreover, the events of 2012 through 2014 have no bearing on whether a jeopardy assessment was appropriate in 2021.

In fact, nothing in the Jeopardy Report's discussion of the Indictment or the underlying investigation has any relevance to the issue at hand—whether Mr. Brockman is "designing quickly" to place assets beyond the reach of the Government. This is the sole standard that matters to a determination here as to whether a jeopardy assessment may be sustained. Treas. Reg. § 1.6851-1(a)(1); *see also McWilliams*, 103 T.C. at 424 ("in our review of jeopardy assessment cases we have found no case in which an assessment was upheld that did not contain at least one of the three conditions listed in the regulations").

Recent proceedings in *U.S. v. Brockman* also bear on the unproven nature of the allegations in that case. Mr. Brockman raised the issue of his current competency in *U.S. v. Brockman*, which was the subject of an eight-day hearing and subsequent briefing and remains pending before the Court. *See U.S. v. Brockman*, Minute Entries for Competency Proceedings, No. 4:21-cr-00009, Dkt. Nos. 203, 204, 208, 213, 216, 221-23. Notably, during the competency hearing, the witness identified as Individual One in the Indictment testified that he believes that Mr. Brockman is "innocent" of the charges against him, and that, with respect to the AEBCT, Mr. Brockman "did everything

- 22 -

properly" and "never took a cent out of the trust."  Keneally Decl. Ex. 19 at 3-27:7–3-28:11; Ex. 20 at 3-171:1-4.  This witness also confirmed his belief that "information in the indictment is factually wrong."  Keneally Decl. Ex. 19 at 3-27:22-24.

## II.      The Government Cannot Meet Its Burden To Establish The Reasonableness Of The Jeopardy Assessment And Jeopardy Levy.

The Fifth Circuit has described a jeopardy assessment as "[a] weapon, little known and previously not too often employed, having atomic potentialities. . . ."  *Clark v. Campbell*, 501 F.2d 108, 110 (5th Cir. 1974).  When the IRS makes a jeopardy assessment, the Government bears the burden of proving that the IRS acted reasonably under the circumstances.  IRC § 7429(g)(1).  The reasonableness of the Jeopardy Assessment and Jeopardy Levy is subject to *de novo* review by this Court with no deference given to the IRS's administrative determination.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *49 (citing *George F. Harding Museum v. United States*, 674 F. Supp. 1323, 1326 (N.D. Ill. 2003)).

To carry its burden, the Government must show more than that a taxpayer's assets could easily be dissipated.  "It requires . . . a showing that the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government."  *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *100; *see Pircher v. United States*, No. 08-0835, 2008 U.S. Dist. LEXIS 101021, at *9 (W.D. Tex. 2008) ("without evidence, the jeopardy assessment . . .  is arbitrary or capricious and subject to release.").

Here, the Government fails to show that it acted reasonably in making the Jeopardy Assessment and Jeopardy Levy.  The IRS's determination in the Jeopardy

Report relied on a misrepresentation of facts with respect to the property transactions.  It relied on a misunderstanding of the Bermuda litigation.  And it relied on unproven allegations from the Indictment that the IRS knew about at least a year prior to the issuance of the Jeopardy Assessment and Jeopardy Levy.

There is a complete absence of any evidence that Mr. Brockman was or appeared to be "designing quickly" to move property beyond the reach of the Government.  No exigency exists here under §§ 6861(a) and 6331(a) and Treasury Regulation § 301.6861-1(a)(1).  As such, the making of the assessment and the making of the levy were unreasonable under the circumstances and should be abated and released.

## **CONCLUSION**

Mr. Brockman's Motion should be granted, the Jeopardy Assessment should be abated, and the Jeopardy Levy and any other liens and levies currently in force against Mr. Brockman or any third parties should be released.

Dated:  January 21, 2022                    Respectfully submitted,

                                        /s/ Jason S. Varnado
                                        Jason S. Varnado
                                        Texas Bar No. 24034722
                                        SDTX Ad. ID No. 32166
                                        Email: jvarnado@jonesday.com
                                        Julia N. Camp
                                        Texas Bar No. 24123598
                                        SDTX Ad. ID No. 3688104
                                        Email: juliacamp@jonesday.com
                                        JONES DAY
                                        717 Texas, Suite 3300
                                        Houston, TX  77002
                                        Telephone: 832-239-3939
                                        Facsimile: 832-239-3600

Kathryn Keneally (*application for Pro Hac Vice admission pending*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*application for Pro Hac Vice admission pending*)
New York Bar No. 2870251
Email: fjackson@jonesday.com
Michael J. Scarduzio (*application for Pro Hac Vice admission pending*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*application for Pro Hac Vice admission pending*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*application for Pro Hac Vice admission pending*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450
Facsimile: 202-626-1700

*Attorneys for Plaintiff*
*Robert T. Brockman*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of January, 2022 a true and correct copy of the foregoing instrument was served on the United States via the Court's CM/ECF system and pursuant to Fed. R. Civ. P. 4(i).

/s/ *Jason S. Varnado*
Jason S. Varnado

## CERTIFICATE OF CONFERENCE

Under 26 U.S.C. § 7429(b)(3), this Court has 20 days from the date of the Complaint to make a determination with respect to this Motion.  Due to these time constraints, Plaintiff has filed this Motion prior to the appearance of counsel for Defendant United States, and has therefore been unable to meet-and-confer regarding the substance of the relief requested.  Based on the administrative proceedings that give rise to the Complaint and this Motion, Plaintiff presumes that Defendant will oppose the dispositive relief requested herein.

*/s/ Jason S. Varnado*
Jason S. Varnado