UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

### DECLARATION OF KATHRYN KENEALLY

I, Kathryn Keneally, declare as follows:

1.     I am a member of the bar of the State of New York, the United States Supreme Court, and various other federal courts.  I am a partner of the law firm Jones Day, counsel for Plaintiff Robert T. Brockman.  I make this Declaration in support of Plaintiff Robert T. Brockman's Motion for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy Pursuant to 26 U.S.C. § 7429.

2.     Attached hereto as Exhibit 1 is a copy of the Notice of Jeopardy Assessment and Rights to Appeal, issued by the Internal Revenue Service (the "IRS") on September 9, 2021 **(FILED UNDER SEAL)**.

3.     Attached hereto as Exhibit 2 is a copy of the Notice of Jeopardy Levy and Right of Appeal, issued by the IRS on September 9, 2021 **(FILED UNDER SEAL)**.

4.     Attached hereto as Exhibit 3 is a copy of the Jeopardy Recommendation Report (without exhibits, which total nearly 3,000 pages) that was appended to the Notice of Jeopardy Assessment and Rights to Appeal **(FILED UNDER SEAL)**.

5.      Attached hereto as Exhibit 4 is a copy of a Special Warranty Deed, dated December 30, 1997, conveying Robert T. Brockman's 50 percent interest in 333 West Friar Tuck Lane, Houston, Texas 77024 to Dorothy K. Brockman.

6.      Attached hereto as Exhibit 5 is a copy of an HAR.com listing for sale of 333 West Friar Tuck Lane, Houston, Texas 77024, which makes reference to the property's MLS number (20114033).

7.      Attached hereto as Exhibit 6 is a copy of a General Warranty Deed, dated March 9, 2005, conveying 335 West Friar Tuck Lane, Houston, Texas 77024 to Dorothy K. Brockman.

8.      Attached hereto as Exhibit 7 is a copy of an HAR.com listing for 335 West Friar Tuck Lane, Houston, Texas 77024, which makes reference to the property's MLS number (54931128).

9.      Attached hereto as Exhibit 8 is a copy of a General Warranty Deed, dated December 11, 2020, conveying 335 West Friar Tuck Lane, Houston, Texas 77024 to a third-party.

10.      Attached hereto as Exhibit 9 is a copy of an Agreement Partitioning Certain Existing Community Property, dated October 15, 2019, by and between Robert and Dorothy Brockman, respecting 1731 Sunset Boulevard, Houston, Texas 77005.

11.      Attached hereto as Exhibit 10 is a copy of a General Warranty Deed, dated October 15, 2019, conveying Robert T. Brockman's 50 percent interest in 1731 Sunset Boulevard, Houston, Texas 77005 to Dorothy K. Brockman.

12.     Attached hereto as Exhibit 11 is a copy of an HAR.com listing for 1731 Sunset Boulevard, Houston, Texas 77005, which makes reference to the property's MLS number (32400123).

13.     Attached hereto as Exhibit 12 is a copy of a General Warranty Deed, dated May 11, 2021, conveying 1731 Sunset Boulevard, Houston, Texas 77005 to an unrelated third-party.

14.     Attached hereto as Exhibit 13 is a copy of a Gift General Warranty Deed, dated November 6, 2020, conveying 3702 Inwood Drive, Houston, Texas 77019 to Elizabeth Bellows Brockman.

15.     Attached hereto as Exhibit 14 is a copy of a Notice to Purchasers Deed Restrictions, dated November 6, 2020, by Dorothy K. Brockman and Elizabeth Bellows Brockman, with respect to 3702 Inwood Drive, Houston, Texas 77019.

16.     Attached hereto as Exhibit 15 is a copy of a correspondance dated February 2, 2021 by the Clerk of the Bermuda Court of Appeal in *St. John's Trust Company (PVT) Ltd. v. Medlands (PTC) Ltd.*, Civil Appeal No. 8 of 2020 (Bermuda Court of Appeal), a companion action to *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda).

17.     Attached hereto as Exhibit 16 is a copy of an Approved Judgment by the Bermuda Court of Appeal, dated December 22, 2021, in *St. John's Trust Company (PVT) Limited v. Medlands (PTC), et al*, 2018: No. 376.

18.     Attached hereto as Exhibit 17 is a copy of an Order of the Supreme Court of Bermuda, dated March 26, 2021, *In the Matter of the "B" Trust, Medlands (PTC) Limited v. St. John's Trust Company (PVT) Limited, et al*, 2018: No. 376 (Supreme Court of Bermuda) *and In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda).

19.     Attached hereto as Exhibit 18 is a copy of an IRS Form 3520, *Creation of or Transfers to Certain Foreign Trusts*, dated August 24, 1981, by Alfred Eugene Brockman.

20.     Attached hereto as Exhibit 19 are copies of excerpts from the transcript of the Competency Hearing, Afternoon Session, held on November 17, 2021, in the case of *United States v. Brockman*, No. 4:21-CR-00009.

21.     Attached hereto as Exhibit 20 are copies of excerpts from the transcript of the Competency Hearing, AM Session, held on November 17, 2021, in the case of *United States v. Brockman*, No. 4:21-CR-00009.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on January 21, 2022.

/s/ *Kathryn Keneally*
Kathryn Keneally

# EXHIBIT 1
# (SEALED)

# EXHIBIT 2
(SEALED)

# EXHIBIT 3
# (SEALED)

# EXHIBIT 4

S864991

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

## SPECIAL WARRANTY DEED

02/17/98   100676730  S864991          $35.00

| STATE OF TEXAS | § | |
|---|---|---|
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |



That Robert T. Brockman (joined herein by his wife, Dorothy Kay Brockman) (hereinafter referred to as "Grantor"), pursuant to the provisions of that certain Agreement Partitioning Community Property dated December 3 0, 1997, by and between the said Robert T. Brockman and Dorothy Kay Brockman, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED and CONVEYED, and by these presents does GRANT and CONVEY, unto the said Dorothy Kay Brockman (hereinafter referred to as "Grantee"), whose mailing address is 6700 Hollister, Houston, Texas 77024, as her sole and separate property, all of the undivided interest of Robert T. Brockman in the following:

Property:

(a)     That certain tract or parcel of land in Harris County, Texas, described in Exhibit A hereto, by reference made a part hereof (hereinafter referred to as the "Land");

(b)     An undivided one-fourth (1/4th) interest in that certain tract or parcel of land in Harris County, Texas, described in Exhibit B hereto, by reference made a part hereof (hereinafter referred to as the "Carter Lake Land");

(c)     Those two certain access easements described in Exhibit C hereto, by reference made a part hereof (hereinafter referred to as the "Access Easements");

(d)     All rights, benefits, privileges, easements, tenements, hereditaments and appurtenances in or appertaining to the Land, the Carter Lake Land and the Access Easements (hereinafter referred to collectively as the "Rights"), including, but not limited to, all easements and rights created by the following:

(i)     Easement and Boundary Line Agreement (hereinafter referred to as the "Borlenghi Agreement") dated June 26, 1997, by and among Alfred L. Deaton III and wife, Elizabeth Evans Deaton, and Georgio Borlenghi, filed for record with the County Clerk of Harris County under County Clerk's File No. S562547; and

HOU03A:505555.1                         - 1 -

Return to:
James L. Read
Baker & Botts
3000 One Shell Plaza
Houston, Texas 77002

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

(ii)    Boundary Line Agreement (hereinafter referred to as the "Robinson Agreement"), dated July 1, 1997, by an among Alfred L. Deaton III and wife, Elizabeth Evans Deaton, and Russ Robinson and wife, Leslie Weinstein Wein Robinson, filed for record with the County Clerk of Harris County, Texas, under County Clerk's File No. S541812, and refiled under No. S528628.

(e)    All structures, buildings, improvements and fixtures located on the Land and Easements (the "Improvements").

The Land, the Carter Lake Land, the Access Easements, the Rights and the Improvements are hereinafter referred to collectively as the "Property"),

it being hereby agreed that Dorothy Kay Brockman shall henceforth have, hold and possess, as her separate property and estate, free from any and all claims of Robert T. Brockman, 100% of the fee simple estate in the Property.

This conveyance, however, is made and accepted subject to the matters described on the attached <u>Exhibit D</u>, by reference made a part hereto, to the extent that the same apply to the Property and are valid and enforceable.

TO HAVE AND TO HOLD the Property and premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto Grantee, her heirs and assigns, forever; and Grantor does hereby bind Grantor, Grantor's heirs, and assigns, to warrant and forever defend all and singular the Property and premises unto the Grantee, her heirs, and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof, by, through or under Grantor, but not otherwise, subject, however, to the matters set forth in the attached <u>Exhibit D</u>.

EXECUTED as of the _30th_ day of December, 1997.

_R. T. Brockman_
Robert T. Brockman

_Dorothy Kay Brockman_
Dorothy Kay Brockman

HOU03A:505555.1

- 2 -

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

THE STATE OF TEXAS

COUNTY OF HARRIS

This instruments was acknowledged before me on _12/30_ , ~~1998~~ 1997,
by Robert T. Brockman.

_Nancy K. Hamilton_
Notary Public in and for the State of Texas
Name: NANCY K. HAMILTON

My commission expires:
_1-12-98_ .

THE STATE OF TEXAS

COUNTY OF HARRIS

This instruments was acknowledged before me on _12/30_ , ~~1998~~ 1997,
by Dorothy Kay Brockman.

_Nancy K Hamilton_
Notary Public in and for the State of Texas
Name: NANCY K HAMILTON

My commission expires:
_1-12 98_

**EXHIBIT A**

**FIELD NOTES**

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

4.0568 ACRE TRACT

All that certain 4.0568 acre tract of land situated in the E.B. Cogswell Survey, Abstract Number 785, Harris County, Texas; said 4.0568 acre tract of land being the same property described in Deed dated October 10, 1991 from Prentis B. Tomlinson, Jr. and wife, Sally Emsinger Tomlinson to Alfred L. Deaton, III and Elizabeth Evans Deaton as recorded under Harris County Clerk's File Number N-365621, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said 4.0568 acre tract of land being more particularly described by metes and bounds as follows:

**BEGINNING** at an old one inch iron pipe found for the most southerly corner of that certain 1.6774 acre tract (called) described in Deed dated May 14, 1992 from M. Russ Robinson to Leslie Weinstein Wein as recorded under Harris County Clerk's File Number N-670851, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; and being all of Lot 8, Sherwood Forest, Section "D", Subdivision, according to the plat thereof recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas; said point also being the most westerly northwest corner of Clubhouse Private Road (based on a width of 30.00) and the most northerly northeast corner of that certain 2.0024 acre tract (called) described in Deed dated December 5, 1975 to George G. Hancock and wife, Julia Hartman Hancock as recorded under Harris County Clerk's File Number E-633669, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

**THENCE** South 54° 26' 32" West, 234.56 feet along the northwesterly line of the said Hancock 2.0024 acre tract and the northwesterly right-of-way line of that certain 30.0 feet wide West Friar Tuck Lane easement described as Tract 3 in said Deed to Alfred L. Deaton, III and wife, Elizabeth Evans Deaton to a found "X" cut in pea gravel concrete driveway for corner of the 4.0568 acre tract herein described; said point also being the most westerly northwest corner of the said Hancock 2.0024 acre tract and the most easterly northeast corner of that certain 4.229802 acre tract (called) described as Tract Number 1 in Deed dated July 2, 1984 to Gay Alspaugh Roane and recorded under Harris County Clerk's File Number J-583942, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

**THENCE** South 53° 31' 36" West, along the northwesterly line of the said Roane 4.229802 acre tract (called) and the northwesterly right-of-way line of the said 30.00 foot wide West Friar Tuck Lane (private drive) easement at 5.00 feet passing a 5/8 inch iron rod set for the most westerly northwest corner of the said 30.00 foot wide West Friar Tuck Lane (private drive) easement and continuing along the northwesterly line of the said Roane 4.229802 acre tract (called) for a total distance of 59.17 feet to a 3/4 inch iron pipe found for corner of the 4.0568 acre tract herein described;

**THENCE** South 82° 17' 17" West, along the northerly line of the said Roane 4.229802 acre tract (called) at 316.41 passing a found one inch galvanized iron pipe and continuing for a total distance of 317.81 feet to the easterly water's edge of Carter Lake (based on the water level September 19, 1991) for the southwesterly corner of the 4.0568 acre tract herein described and for the northwesterly corner of the said Roane 4.229802 acre tract (called);

**THENCE** Northerly along the meanders of the water's edge of Carter Lake the following courses and distances:

        North 06° 41' 12" West - 48.09 feet
        North 35° 54' 32" West - 48.43 feet
        North 24° 38' 40" East - 21.63 feet
        North 21° 22' 44" West -  8.53 feet
        North 34° 04' 27" West - 20.03 feet
        North 21° 23' 07" West - 16.73 feet

-2-

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

```
North 13° 10' 33" West -  9.52 feet
North 39° 11' 33" West -  8.68 feet
North 03° 30' 14" West -  6.79 feet
North 26° 10' 48" East - 13.90 feet
North 13° 56' 04" West - 12.62 feet
North 55° 55' 10" West - 14.20 feet
North 01° 42' 38" West - 15.76 feet
North 86° 37' 46" West -  8.16 feet
North 11° 38' 18" West - 23.34 feet
North 16° 09' 31" East - 20.25 feet
North 41° 23' 40" East - 17.14 feet
North 29° 32' 31" East - 11.62 feet
North 38° 44' 13" East - 21.29 feet
North 05° 14' 20" East - 12.27 feet
North 18° 04' 16" West - 16.91 feet
North 13° 49' 08" East - 15.00 feet
North 30° 52' 21" East - 10.39 feet
North 20° 00' 00" East -  9.96 feet
North 36° 41' 45" East - 20.76 feet
North 28° 12' 52" East -  4.91 feet
North 80° 00' 38" East -  8.56 feet
South 74° 33' 36" East - 15.66 feet
South 61° 45' 02" East - 20.89 feet
North 89° 15' 59" East - 44.57 feet
North 64° 47' 17" East - 40.74 feet
North 73° 34' 59" East - 40.12 feet
North 62° 36' 44" East - 38.87 feet
```

**THENCE** North 18° 52' 03" East, 5.44 feet to the point of intersection of the southeasterly water's edge of Carter Lake (based on the water level September 19, 1991) with the southerly line of that certain tract of land described in Deed dated February 27, 1979 from Robert Adam Mosbacher and wife, Sandra Mosbacher to Giorgio Borlenghi as recorded under Harris County Clerk's File Number F-991504, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas and also being all of Lot 7, of said Sherwood Forest, Section "D", Subdivision, for the most northerly northwest corner of the 4.0568 acre tract herein described; from which point the called most westerly southwest corner of said Lot 7, bears: North 73° 50' 28" West, 38.51 feet;

**THENCE** South 73° 50' 28" East, along the southerly line of said Lot 7 at 126.93 feet passing a found old one inch iron pipe and continuing along the southerly line of said Lot 7 for a total distance of 228.83 feet to a 1/2 inch iron rod found for corner of the 4.0568 acre tract herein described; said point being the recognized common corner for Lot 7 and Lot 8, of said Sherwood Forest, Section "D", Subdivision;

**THENCE** South 46° 29' 30" East, 209.52 feet along the southwesterly line of said Lot 8 to the **POINT OF BEGINNING** and containing 4.0568 acres or 176,714 square feet.



Thomas R. Lyons
Registered Professional Land Surveyor
No. 1628

Job No. 97-10938-R
Revised: June 23, 1997

**EXHIBIT B**

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

FIELD NOTES

CARTER LAKE

4.0771 ACRE TRACT

All that certain 4.0771 acre tract of land situated in the E.B. Cogswell Survey, Abstract Number 785, Harris County, Texas; said 4.0771 acre tract of land being the same property called 4.563 acres as described in Exhibit "A" of Deed dated March 1, 1976 from Houston Realty Sales Company to Prentis B. Tomlinson, Jr., and wife, Barbara Tomlinson as recorded under Harris County Clerk's File Number E-707429, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said 4.0771 acre tract of land being now occupied by a lake created by the present dam on Niemann's Branch (also known as Carter Lake) and being more particularly described by metes and bounds as follows:

**COMMENCING** at an old one inch iron pipe found at the most southerly southwest corner of Lot 8, of said Sherwood Forest, Section "D", Subdivision, said Lot 8 being described in Deed dated May 14, 1992 (called 1.6774 acres) to Leslie Weinstein Wein as recorded under Harris County Clerk's File Number N-670851, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said point being the most easterly southeast corner of that certain 4.0568 acre tract of land described in Deed dated October 10, 1991, to Alfred L. Deaton, III and Elizabeth Evans Deaton as recorded under Harris County Clerk's File Number N-365621, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said point also being the most northerly northeast corner of that certain 2.0024 acre tract (called) described in Deed dated December 5, 1975, to George G. Hancock and wife, Julia Hartman Hancock as recorded under Harris County Clerk's File Number E-633669, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

**THENCE** North 46° 29' 30" West, 209.52 feet along the common property line between said Lot 8 and the said 4.0568 acre tract of land to a 1/2 inch iron rod found for the common property corner of said Lot 8 and Lot 7, of said Sherwood Forest, Section "D", Subdivision as described in Deed dated February 27, 1979 to Giorgio Borlenghi as recorded under Harris County Clerk's File Number F-991504, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

**THENCE** North 73° 50' 28" West, along the common property line between said Lot 7 and the said 4.0568 acre tract at 101.93 feet passing a found old one inch iron pipe and continuing along said line for a total distance of 228.83 feet to the **TRUE POINT OF BEGINNING** for the 4.0771 acre tract of land herein described; said point being at the intersection of the southeasterly water's edge of Carter Lake (based on the water level September 19, 1991) with the southerly line of said Lot 7; said point also being the most northerly northwest corner of the said 4.0568 acre tract of land;

**THENCE** southerly along the meanders of the water's edge of Carter Lake the following courses and distances:

```
South 18° 52' 03" West,  5.44 feet
South 62° 36' 44" West, 38.87 feet
South 73° 34' 59" West, 40.12 feet
South 64° 47' 17" West, 40.74 feet
South 89° 15' 59" West, 44.57 feet
North 61° 45' 02" West, 20.89 feet
North 74° 33' 36" West, 15.66 feet
South 80° 00' 38" West,  8.56 feet
South 28° 12' 52" West,  4.91 feet
South 36° 41' 45" West, 20.76 feet
South 20° 00' 00" West,  9.96 feet
South 30° 52' 21" West, 10.39 feet
```

-2-

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

```
South 13° 49' 08" West, 15.00 feet
South 18° 04' 16" East, 16.91 feet
South 05° 14' 20" West, 12.27 feet
South 38° 44' 13" West, 21.29 feet
South 29° 32' 31" West, 11.62 feet
South 41° 23' 40" West, 17.14 feet
South 16° 09' 31" West, 20.25 feet
South 11° 38' 18" East, 23.34 feet
South 86° 37' 46" East,  8.16 feet
South 01° 42' 38" East, 15.76 feet
South 55° 55' 10" East, 14.20 feet
South 13° 56' 04" East, 12.62 feet
South 26° 10' 48" West, 13.90 feet
South 03° 30' 14" East,  6.79 feet
South 39° 11' 33" East,  8.68 feet
South 13° 10' 33" East,  9.52 feet
South 21° 23' 07" East, 16.73 feet
South 34° 04' 27" East, 20.03 feet
South 21° 22' 44" East,  8.53 feet
South 24° 38' 40" West, 21.63 feet
South 35° 54' 32" East, 48.43 feet
```

**THENCE** South 06° 41' 12" East, 48.09 feet along the water's edge of Carter Lake to a point for the common property corner of the said 4.0568 acre tract (southwesterly corner) and the northwesterly corner of that certain 4.229802 acre tract (called) described as Tract Number 1 in Deed dated July 2, 1984 to Gay Alspaugh Roane as recorded under Harris County Clerk's File Number J-583942, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; from which point a found one inch galvanized iron pipe bears: North 82° 17' 17" East, 1.40 feet;

**THENCE** continuing along the meanders of the water's edge of Carter Lake the following courses and distances:

```
North 88° 51' 57" East, 31.67 feet
South 16° 07' 42" East, 37.02 feet
South 29° 10' 59" West, 11.84 feet
South 49° 04' 32" West, 30.62 feet
South 11° 49' 07" West, 56.88 feet
South 17° 00' 35" East, 34.17 feet
South 25° 24' 38" West, 12.71 feet
South 83° 32' 07" West,  7.47 feet
South 36° 19' 47" West, 11.10 feet
South 78° 13' 27" West, 22.10 feet
```

South 75° 46' 56" West, 26.73 feet to a point in the east side of the concrete spillway at water's edge of Carter Lake

South 80° 32' 22" West, 27.75 feet crossing to the west side of the concrete spillway at water's edge of Carter Lake

South 77° 36' 59" West, 13.63 feet to a point in the east side of the concrete dam at water's edge of Carter Lake

South 79° 21' 12" West, 12.25 feet crossing to the west side of the concrete dam at water's edge of Carter Lake

```
South 84° 00' 30" West, 64.27 feet
North 30° 14' 40" West, 72.10 feet
North 07° 00' 12" East, 36.30 feet
North 26° 58' 37" West, 52.36 feet
North 01° 40' 06" West, 38.55 feet
North 39° 26' 11" West, 27.15 feet
```

-3-

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

```
South 78° 05' 44" West, 39.42 feet
North 85° 01' 50" West, 77.87 feet
North 73° 45' 13" West, 53.41 feet
North 21° 42' 00" West, 28.24 feet
North 41° 27' 45" West, 18.64 feet
North 46° 46' 14" West, 40.36 feet
```

North 22° 18' 37" East, 61.80 feet found 1/2 inch iron pipe at water's edge of Carter Lake

```
South 67° 44' 00" East, 25.88 feet
South 22° 16' 51" East, 26.17 feet
South 73° 48' 14" East, 16.81 feet
South 46° 08' 25" East, 50.46 feet
South 85° 21' 51" East, 29.55 feet
North 84° 38' 10" East, 15.67 feet
North 32° 33' 34" East, 15.24 feet
North 28° 44' 55" East, 17.89 feet
North 24° 53' 32" West, 31.30 feet
North 11° 35' 13" East, 16.53 feet
North 28° 44' 26" West, 57.83 feet
North 24° 43' 11" East, 43.98 feet
North 28° 02' 37" West, 25.13 feet
North 65° 44' 46" West, 39.29 feet
North 19° 53' 13" East, 29.39 feet
South 77° 17' 54" East, 33.71 feet
South 45° 17' 11" East, 46.88 feet
South 12° 11' 55" East, 40.88 feet
South 38° 05' 10" East, 42.02 feet
North 49° 13' 49" East, 13.27 feet
North 15° 50' 33" East, 22.87 feet
North 30° 15' 15" East, 37.16 feet
North 27° 00' 30" East, 38.36 feet
North 54° 28' 45" East, 19.27 feet
North 44° 45' 55" East, 277.82 feet
North 04° 26' 29" West, 14.56 feet
North 36° 21' 48" East, 35.48 feet
North 83° 16' 08" East, 45.49 feet
South 70° 16' 12" East, 41.09 feet
South 37° 30' 19" East, 18.80 feet
South 45° 15' 43" East, 15.19 feet
South 04° 38' 56" East, 64.01 feet
```

**THENCE** South 73° 50' 28" East, 38.51 feet along the southerly line of said Lot 7 and the northeasterly water's edge of Carter Lake to the **TRUE POINT OF BEGINNING** and containing 4.0771 acres or 177,599 square feet of land.



Thomas R. Lyons
Registered Professional Land Surveyor
No. 1628

Job No. 97-10938-R-E
July 7, 1997

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

## EXHIBIT C

## ACCESS EASEMENTS

(a)     Access easement thirty feet (30') in width over and across the land described in Schedule I hereto, by reference made a part hereof, created by plat recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas, and by instrument recorded in Volume 2080, Page 499 of the Deed Records of Harris County, Texas; and

(b)     Access easement thirty feet (30') in width over and across the land described in Schedule II hereto, by reference made a part hereof, created by instrument recorded in Volume 2080, Page 503 of the Deed Records of Harris County, Texas, as amended by Quit-Claim Deed filed for record with the County Clerk of Harris County, Texas, under County Clerk's File No. J554478, affecting five feet (5') of the Northeasterly corner of a called 4.125 acre tract of land described in instrument filed for record with the County Clerk of Harris County, Texas under County Clerk's File No. E851484.

**FIELD NOTES**

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

30.00 FOOT WIDE CLUBHOUSE PRIVATE ROAD

0.2080 ACRE TRACT

All that certain 0.2080 acre tract of land situated in the E.B. Cogswell Survey, Abstract Number 785, Harris County, Texas; said 0.2080 acre tract of land being known as Clubhouse Private Road (based on a right-of-way width of 30.00 feet) as dedicated by Sherwood Forest, Section "D", Subdivision Plat recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas; said 0.2080 acre tract of land being more particularly described by metes and bounds as follows:

**BEGINNING** at an old one inch iron pipe found at the most southerly southwest corner of Lot 8, of said Sherwood Forest, Section "D", Subdivision; said Lot 8 being described in Deed dated May 14, 1992 (called 1.6774 acres) to Leslie Weinstein Wein as recorded under Harris County Clerk's File Number N-670851, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas, and being the most westerly northwest corner of said Clubhouse Private Road; said point being the most easterly southeast corner of that certain 4.0568 acre tract of land described in Deed dated October 10, 1991, to Alfred L. Deaton, III and Elizabeth Evans Deaton as recorded under Harris County Clerk's File Number N-365621, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said point also being the most northerly northeast corner of that certain 2.0024 acre tract (called) described in Deed dated December 5, 1975, to George G. Hancock and wife, Julia Hartman Hancock as recorded under Harris County Clerk's File Number E-633669, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

**THENCE** North 54° 30' 30" East, 50.00 feet along the northwesterly right-of-way line of said Clubhouse Private Road to a "P.K." nail set in asphalt driveway for corner of the 0.2080 acre tract of land herein described;

**THENCE** North 39° 14' 30" East, 150.00 feet along the northwesterly right-of-way line of said Clubhouse Private Road to a 5/8 inch iron rod set for corner of the 0.2080 acre tract of land herein described;

**THENCE** North 40° 04' 30" East, 45.00 feet along the northwesterly right-of-way line of said Clubhouse Private Road to a 5/8 inch iron rod set for corner of the 0.2080 acre tract of land herein described;

**THENCE** North 46° 24' 30" East, 63.07 feet along the northwesterly right-of-way line of said Clubhouse Private Road to a 5/8 inch iron rod found in the westerly right-of-way line of West Friar Tuck Lane (based on a right-of-way width of 60.00 feet at this point) for the most northerly northeast corner of the 0.2080 acre tract of land herein described; said point also being the most easterly southeast corner of said Lot 8;

**THENCE** in a southeasterly direction along the westerly right-of-way line of said West Friar Tuck Lane and a curve to the left having a radius of 406.05 feet, through a central angle of 04° 47' 36" for an arc distance of 33.97 feet (chord bearing and distance = South 16° 18' 57" East, 33.96 feet) to a 5/8 inch iron rod set for the most southerly southeast corner of the 0.2080 acre tract of land herein described; said point also being the most northerly northeast corner of Lot 9, of said Sherwood Forest, Section "D", Subdivision, said Lot 9 being described in Deed dated June 24, 1996, to Michael Lan Sy Tran and wife, Christine Hao Thi Dinh as recorded under Harris County Clerk's File Number S-000353, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas;

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

-2-

**THENCE** South 46° 24' 30" West, 44.34 feet along the southeasterly right-of-way line of said Clubhouse Private Road to a "P.K." nail set in asphalt driveway for corner of the 0.2080 acre tract of land herein described;

**THENCE** South 40° 04' 30" West, 43.56 feet along the southeasterly right-of-way line of said Clubhouse Private Road to a 5/ nch iron rod set for corner of the 0.2080 acre tract of land herein descri d;

**THENCE** South 39° 14' 30" West, 153.80 feet along the southeasterly right-of-way line of said Clubhouse Private Road to a 5/8 inch iron rod set for corner of the 0.2080 acre tract of land herein described;

**THENCE** South 54° 30' 30" West, 49.27 feet along the southeasterly right-of-way line of said Clubhouse Private Road to a 5/8 inch iron rod set in the southwesterly line of said Sherwood Forest, Section "D", Subdivision and the northeasterly line of the said 2.0024 acre tract (called) for the most southerly southwest corner of the 0.2080 acre tract of land herein described; said point also being the most westerly northwest corner of said Lot 9;

**THENCE** North 46° 29' 30" West, 30.64 feet along the northeasterly line of the said 2.0024 acre tract (called) and the southwesterly right-of-way line of said Clubhouse Private Road to the **POINT OF BEGINNING** and containing 0.2080 acres or 9,062 square feet of land.



Thomas R. Lyons
Registered Professional Land Surveyor No. 1628

Job No. 97-10938-R-A
June 23, 1997

## SCHEDULE II

### FIELD NOTES

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

WEST FRIAR TUCK LANE (PRIVATE DRIVE)
30.00 FOOT WIDE EASEMENT

0.1674 ACRE TRACT

All that certain 0.1674 acre tract of land situated in the E.B. Cogswell Survey, Abstract Number 785, Harris County, Texas; said 0.1674 acre tract of land also being known as West Friar Tuck Lane (Private Drive) based on a right-of-way width of 30.00 feet; said 0.1674 acre tract being out of and a part of that certain 2.0024 acre tract (called) described in Deed dated December 5, 1975, to George G. Hancock and wife, Julia Hartman Hancock as recorded under Harris County Clerk's File Number E-633669, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas, and that certain 4.229802 acre tract (called) described in Deed dated July 2, 1984 to Gay Alspaugh Roane as recorded under Harris County Clerk's File Number J-583942, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said 0.1674 acre tract of land being more particularly described by metes and bound as follows:

**BEGINNING** at an old one inch iron pipe found at the most southerly southwest corner of Lot 8, of Sherwood Forest, Section "D", Subdivision as recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas; said Lot 8 being described in Deed dated May 14, 1992 (called 1.6774 acres) to Leslie Weinstein Wein as recorded under Harris County Clerk's File Number N-670851, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said point being the most easterly southeast corner of the 4.0568 acre tract of land described in Deed dated October 10, 1991 to Alfred L. Deaton III and Elizabeth Evans Deaton as recorded under Harris County Clerk's File Number N-365621, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said point also being the most northerly northeast corner of the said 2.0024 acre tract (called);

**THENCE** South 46° 29' 30" East, 30.64 feet along the northeasterly line of the said 2.0024 acre tract (called) and the southwesterly right-of-way line of Clubhouse Private Road (based on a right-of-way width of 30.00 feet) as dedicated by said Sherwood Forest, Section "D", Subdivision Plat to a 5/8 inch iron rod set for the most southerly southeast corner of the 0.1674 acre tract of land herein described;

**THENCE** South 54° 26' 32" West, along the southeasterly right-of-way line of the 30.00 foot wide West Friar Tuck Lane (Private Drive) easement at 240.33 feet passing the common property line between the said 2.0024 acre tract (called and the said 4.229802 acre tract (called) and continuing for a total distance of 245.33 feet to a 5/8 inch iron rod set for the most southerly southwest corner of the said 0.1674 acre tract of land herein described;

**THENCE** North 35° 37' 45" West, 30.00 feet along the southwesterly right-of-way line for the said 30.00 foot wide roadway easement as established by that certain Quitclaim Deed dated June 12, 1984 from Prentis B. Tomlinson, Jr. and wife, Sally Tomlinson to Jasper Newton Warren as recorded under Harris County Clerk's File Number J-554478, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; to a 5/8 inch iron rod set in the southeasterly line of the said 4.0568 acre tract and the northwesterly line of the said 4.229802 acre tract (called) for the most westerly northwest corner of the 0.1674 acre tract of land herein described; from which point found an old 3/4 inch iron pipe bears: South 53° 31' 36" West, 54.17 feet;

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

-2-

**THENCE** North 53° 31' 36" East, 5.00 feet along the common property line of the said 4.0568 acre tract, the said 4.229802 acre tract (called) and the northwesterly right-of-way line of the said 30.00 foot wide roadway easement to a found "X" cut in pea gravel concrete driveway for corner of the 0.1674 acre tract herein described; said point also being the common property corner of the said 2.0024 acre tract (called) and the said 4.229802 acre tract (called);

**THENCE** North 54° 26' 32" East, 234.56 feet along the common property line between the said 4.0568 acre tract, the said 2.0024 acre tract (called) and the northwesterly right-of-way line of the said 30.00 foot wide roadway easement to the **POINT OF BEGINNING** and containing 0.1674 acres or 7,292 square feet of land.



Thomas R. Lyons
Registered Professional Land Surveyor No. 1628

Job No. 97-10938-R-B
June 23, 1997

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

# EXHIBIT D

1.     Restrictive covenants as set out in instrument recorded in Volume 2080, Page 499 of the Deed Records of Harris County, Texas, and in instrument recorded under Harris County Clerk's File No. E-707429.

2.     The terms and provisions of that certain agreement by and between Houston Realty Sales Company and Prentis B. Tomlinson, Jr., and wife, Barbara Tomlinson, as set out in instrument recorded under Harris County Clerk's File No. E-707429.

3.     Sanitary sewer easement five (5) feet along the easterly line of the land described in Schedules I and II to Exhibit C hereto, as set forth in instruments recorded under Harris County Clerk's File Nos. K-730883 and K-868381.

4.     Ordinance No. 85-1878 dated October 23, 1985, by the City of Houston, a certified copy of which was filed August 2, 1991, under Harris county Clerk's File No. N-253886, relating to rules, regulations, procedures and design standards for development and platting and providing for the establishing of building setback lines.

5.     The terms and provisions of the Borlenghi Agreement and the Robinson Agreement, as those terms are above defined.

6.     Easement for power line and transformer located in east corner of Tract One on Exhibit A hereto, granted by Houston Realty Sales Company to Houston Lighting & Power Company in instrument dated June 30, 1948.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas o

FEB 17 1998

*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

COUNTY CLERK
HARRIS COUNTY, TEXAS

98 FEB 17 PM 4:04

FILED

HOU03A:505555.1

RECORDERS MEMORANDUM
ALL BLACKOUTS, ADDITIONS AND CHANGES WERE PRESENT AT THE TIME THE INSTRUMENT WAS FILED AND RECORDED.

# EXHIBIT 5



# 333 W Friar Tuck Lane
## Houston, TX 77024



**$ 14,750,000**
For Sale

**Single-Family**

**6** Beds

**8** Bath

**17,192** Built Sqft./Appraisal District

**4** Acre(s)

**247** Days on Market



A magnificent colonial estate in the heart of Memorial one of Houston's most prestigious st.The 4 +acre secluded estate is 2 miles from The Galleria w/a private lake, tennis court & pool lot can be subdivided. Grounds have infrared beams surrounding home & security cameras. Soaring ceiling w/marble floors & self suspending staircase invites you into a foyer that floats into an exquisite formal dining room w/new Gracie wallpaper (morning room as well) All 3 floors have refinished walnut floors.Office/den is all mahogany panel w/ floor windows throughout the house that have shutters that close in case of a storm. Security and cooling system for the house is computer monitor & control. Home features 3 levels, 5 bedrooms, 4 full baths, 3 half baths, quest house w/large living area bedroom full kitchen & two bathrooms. Quarters apartment w/full kitchen, 7 cars garage a/c, 4 year old (200 Kilowatts)generator for entire house, 2 large storage buildings, a water well for the lawn

## General Description

| | | | |
|---|---|---|---|
| **MLS#:** | 20114033 (HAR) | **Listing Price:** | $ 14,750,000 ($857.96/sqft.) |
| | | | Reduced 3.91% |
| **Listing Status:** | For Sale | **Address:** | 333 W Friar Tuck Lane |
| | | **City:** | Houston |
| **State:** | TX | **Zip Code:** | 77024 |
| **County:** | Harris County | **Subdivision:** | Sherwood Forest |
| **Legal Description:** | TR 2 ABST 785 E B COGSWELL | **Property Type:** | Single-Family |
| **Bedrooms:** | 6 Bedroom(s) | **Baths:** | 8 Full & 4 Half Bath(s) |
| **Garage(s):** | 7 / Detached,Oversized,Tandem | **Stories:** | 3 |
| **Style:** | Colonial | **Year Built:** | 1945 / Appraisal District |
| **Building Sqft.:** | 17,192 /Appraisal District | **Lot Size:** | 4.06 Acres /Appraisal District |
| **Key Map©:** | 491F | **Market Area:** | Memorial Close In |

## Rooms/ Lot Dimensions

| | | | |
|---|---|---|---|
| **Living:** | 30 X 28.5, 1st | **Den:** | 20 X 12.6, 1st |
| **Dining:** | 27.5 X 20, 1st | **Kitchen:** | 19 X 16, 1st |
| **Breakfast:** | 21 X 15, 1st | **Primary Bedroom:** | 33 X 21.5, 2nd |
| **Bedroom:** | 19 X 15.5, 2nd | **Bedroom:** | 21.8 X 15, 2nd |
| **Bedroom:** | 19 X 15.5, 2nd | **Bedroom:** | 17 X 13.8, 1st |
| **Primary Bath:** | 29 X 26, 2nd | **Game Room:** | 35 X 18.8, 3rd |
| **Extra Room:** | 53 X 10, 1st | **Extra Room:** | 8 X 7, 3rd |
| **Quarters/Guest House:** | 32 X 19, Other | **Guest Suite:** | 31 X 29, 2nd |
| | | **Sunroom:** | 22 x 18, 1st |

**Room Description:** Breakfast Room, Den, Family Room,
Formal Dining, Formal Living,
Gameroom Up, Garage Apartment,
Guest Suite, Guest Suite w/Kitchen,
Living Area - 1st Floor, Living Area - 2nd
Floor, Living Area - 3rd Floor, Quarte,

## Interior Features

| | | | |
|---|---|---|---|
| **Fireplace:** | 6/Gaslog Fireplace | **Countertop:** | granite / marble |
| **Floors:** | Marble Floors, Wood | **Bedroom Description:** | All Bedrooms Up, En-Suite Bath, Primary Bed - 2nd Floor, Sitting Area, Wa k-In Closet |
| **Kitchen Description:** | Breakfast Bar, Instant Hot Water, Pantry, Pots/Pans Drawers, Under Cabinet Lighting | **Bathroom Description:** | Primary Bath: Double Sinks, Half Bath, Primary Bath: Separate Shower, Primary Bath: Soaking Tub, Two Pri |
| **Heating:** | Central Gas, Other Heating, Zoned | **Cooling:** | Central Electric, Central Gas, Other Cooling, Zoned |
| **Connections:** | Electric Dryer Connections, Washer Connections | **Ice Maker:** | Yes |
| | | **Microwave:** | Yes |
| **Oven:** | Double Oven | **Range:** | Gas Range |
| **Disposal:** | Yes | **Dishwasher:** | Yes |
| **Energy Feature:** | Attic Fan, Attic Vents, Ceiling Fans, Digital Program Thermostat, Energy Star Appliances, Generator, High-Efficiency HVAC, HVAC>13 SEER, Wind Turbine | **Interior:** | 2 Staircases, Alarm System - Owned, Balcony, Crown Molding, Drapes/Curtains/Window Cover, Elevator, Fire/Smoke Alarm, Formal Entry/Foyer, High Ceiling, Refrigerator Included |

## Exterior Features

| | | | |
|---|---|---|---|
| **Roof:** | Slate | **Foundation:** | Slab, Slab on Builders Pier |
| **Private Pool Desc:** | Gunite, Heated | **Private Pool:** | Yes |
| **Exterior Type:** | Brick, Other | **Lot Description:** | Cul-De-Sac, Water View |
| **Water Amenity:** | Lake View | **Garage Carport:** | Additional Parking, Auto Driveway Gate, Auto Garage Door Opener, Circle Driveway, Double-Wide Driveway, Driveway Gate, Golf Cart Garage, RV Parking |
| **Controlled Access:** | Automatic Gate, Driveway Gate | **Water Sewer:** | Public Sewer, Public Water, Well |
| **Unit Location:** | Cul-De-Sac, Water View | **Front Door Face:** | East |

## Neighborhood Information

2050 Subdivision Name   MLS Market Area Memorial Close In

| | | |
|---|---|---|
| Subdivision Name | Sherwood Forest (Houston) |  |
| County / Zip Code | 77024 | |
| Single Family Properties | 116 | |
| Average Bedrooms | 5.07 | |
| Average Baths | 6.91 | |
| Median Square Ft. | 8,488 | |
| Median Lot Square Ft. | 55,756 | |
| Median Year Built | 1999 | |
| Median Appraised Value | $3,537,521 | |
| Neighborhood Value Range | $2011 - $6406 K | |
| Median Price / Square ft. | $569.66 | |

## School Information

**Assigned Schools for this property**

| Elementary School | Middle School | High School | School District |
|---|---|---|---|
| HUNTERS CREEK Elementary School | SPRING BRANCH Middle School | MEMORIAL High School | Spring Branch |

School information is computer generated and may not be accurate or current. Buyer must independently verify and confirm enrollment. Please contact the school district to determine the schools to which this property is zoned.

Listing Broker

**Coldwell Banker Realty - Memorial Office**

(713) 722-6800



Listing Agent

**Norma Moore**

(713) 557-3061

Copyright© 2022, HOUSTON REALTORS® INFORMATION SERVICE, INC. All Rights Reserved. Data Not Verified/Guaranteed by MLS

Thu Jan 20 2022 4:19 pm

# EXHIBIT 6

Y316848
03/11/05  100737428      $22.00

*NOTICE OF CONFIDENTIALITY RIGHTS:*
*If you are a natural person, you may remove or strike any of the following*
*information from this instrument before it is filed for record in the public records:*
*your social security number or your driver's license number.*

### GENERAL WARRANTY DEED

THE STATE OF TEXAS          §

                                                 KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF HARRIS          §

That, M. Russ Robinson and Leslie W. Robinson (also known as Leslie Weinstein Robinson), husband and wife, of Harris County, Texas, (herein collectively called "Grantors"), for and in consideration of the sum of Ten and No/1OO Dollars ($10.00) and other good and valuable consideration paid to the Grantors by Grantee herein named, the receipt of which is hereby acknowledged, HAVE GRANTED, SOLD AND CONVEYED, and by these presents DO GRANT, SELL, AND CONVEY unto Dorothy K. Brockman, as her sole and separate property, whose address is 333 West Friar Tuck, Houston, Texas 77024 (herein called "Grantee") all of the following described real property (herein called "Subject Property") in Harris County, Texas, "as-is" and "where-is," to-wit:

1.6774 acres out of Lot Eight of Sherwood Forest, Section "I", an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas and being more particularly described by metes and bounds on Exhibit "A" attached hereto and incorporated herein for all purposes.

This conveyance is made and accepted subject to (i) all easements, ordinances, restrictions, encumbrances, access limitations, covenants, conditions, royalty and mineral reservations affecting the Subject Property and the use and ownership of the Subject Property, which appear on Exhibit "B" attached hereto and incorporated herein for all purposes, to the extent they are in effect and relate to the Subject Property, (ii) all matters a current inspection or survey of the Subject Property would reveal and (iii) current taxes and assessments not yet delinquent and taxes and assessments for subsequent years.

TO HAVE AND TO HOLD the Subject Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the Grantee, her heirs and assigns forever, and Grantors, individually and severally in regard to the undivided interest of Grantors in the Property and not with respect to the undivided interest of any other person therein, do hereby bind themselves and their heirs and assigns, to WARRANT AND FOREVER DEFEND all and singular the Subject Property unto the Grantee, her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

G720/GWD/MRR

AFTER RECORDING:
HOLD FOR
CHARTER TITLE COMPANY
GF _____
Closer: _____

BY ACCEPTANCE OF THIS DEED GRANTEE UNDERSTANDS AND AGREES THAT, SAVE AND EXCEPT FOR THE WARRANTIES OF TITLE PROVIDED HEREIN, NEITHER GRANTORS NOR ANYONE ON BEHALF OF GRANTORS IS MAKING, AND GRANTORS SPECIFICALLY DISCLAIMS, ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESS OR IMPLIED, WITH RESPECT TO THE ABOVE DESCRIBED PREMISES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OR REPRESENTATIONS AS TO MATTERS OF PHYSICAL OR ENVIRONMENTAL CONDITIONS, THE VALUE, MERCHANTABILITY, SUITABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE OF THE ABOVE DESCRIBED PREMISES, AND THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE ABOVE DESCRIBED PREMISES. GRANTEE HAS NOT RELIED UPON AND WILL NOT RELY UPON, EITHER DIRECTLY OR INDIRECTLY, ANY REPRESENTATION OR WARRANTY OF GRANTORS OR ANY AGENT OF GRANTORS.

GRANTEE REPRESENTS THAT IT IS A KNOWLEDGEABLE PURCHASER OF REAL ESTATE AND THAT IT IS RELYING SOLELY UPON ITS OWN EXPERTISE AND THAT OF GRANTEE'S CONSULTANTS IN PURCHASING THE ABOVE DESCRIBED PREMISES. GRANTEE HAS CONDUCTED SUCH INSPECTIONS AND INVESTIGATIONS OF THE ABOVE DESCRIBED PREMISES AS GRANTEE DEEMS NECESSARY, INCLUDING, BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AND SHALL RELY SOLELY UPON SAME. GRANTEE ACKNOWLEDGES AND AGREES THAT GRANTORS ARE SELLING AND CONVEYING TO GRANTEE, AND GRANTEE SHALL ACCEPT, THE ABOVE DESCRIBED PREMISES "AS IS" WHERE IS," WITH ALL FAULTS.

GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT THERE ARE NO ORAL AGREEMENTS, WARRANTIES OR REPRESENTATIONS, COLLATERAL TO OR AFFECTING THE ABOVE DESCRIBED PREMISES BY GRANTORS, ANY AGENT OF GRANTORS OR ANY THIRD PARTY.

Ad valorem taxes on the Subject Property for the calendar year 2005, which have been prorated, are hereby assumed by Grantee.

EXECUTED this 9 day of March, 2005.

Leslie W. Robinson

G720/GWD.MRR                    2

M. Russ Robinson by Leslie W. Robinson,
his attorney-in-fact

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

 This instrument was acknowledged before me on the 9th day of March, 2005, by Leslie W. Robinson, individually and as agent and attorney-in-fact for M. Russ Robinson.

Henrietta Gallo Alonzo
Notary Public in and for the
State of T E X A S

THE STATE OF TEXAS §
§
COUNTY OF HARRIS §

 This instrument was acknowledged before me on the ____ day of March, 2005, by Leslie W. Robinson as attorney-in-fact for M. Russ Robinson.

Notary Public in and for the
State of T E X A S

G720/GWD.MRR       3

Exhibit "A"

1.6774 acres out of Lot Eight (8), of SHERWOOD FOREST, Section "D", an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas and being more particularly described by metes and bounds as follows;

BEGINNING at a found 1/2 inch iron rod marking the northwesterly corner of said Lot 8;

Thence South 46 deg. 30 min. East-209.52 feet along the most westerly line of said Lot 8, to a found 3/4 inch iron pipe for corner;

Thence North 59 deg. 30 min. East-50.00 feet along the most southerly line of said Lot 8, to a found 5/8 inch iron rod for angle point;

Thence North 39 deg. 14 min. East-150.00 feet continuing along the most southerly line of said Lot 8, to a found 3/4 inch iron pipe for angle point;

Thence North 48 deg. 04 min. East-45.00 feet continuing along the most southerly line of said Lot 8 to a found 3/4 inch iron pipe for angle point;

Thence North 46 deg. 24 min. East-63.07 feet continuing along the most southerly line of said Lot 8, to a found 5/8 inch iron rod for corner being a point on a curve having a central angle of 16 deg. 28 min. 10 sec. and having a radius of 436.05 deg., the center of said curve being located on radial line bearing North 79 deg. 07 min. 39 sec. East from said point;

Thence in a northerly direction along the westerly right-of-way line of West Friar Tuck Lane (60 feet wide) for an arc distance of 125.34 feet to a found 3/4 inch iron rod for corner;

Thence North 84 dge. 25 min. West-150.00 feet along the most northerly line of said Lot 8, to a found 1/2 inch iron rod for corner;

Thence South 43 deg. 30 min. West-300.95 feet along the most southerly line of Lot 7, of said Section "D", Sherwood Forest, to the Point of Beginning and containing 1.6774 acres (73,067 square feet) of land, more or less.

UNOFFICIAL COPY



Exhibit "B"

1. Restrictions recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas. and in Volume 1493, Page 243 and in Volume 1881, Page 3 of the Deed Records of Harris County, Texas and filed under Harris County Clerk's File No. E985104.

2. An unobstructed easement 10 feet wide along the southwesterly property line and an unobstructed aerial easement 20 feet wide centered on the 10 foot wide easement, together with down guy anchor, granted to Houston Lighting and Power Company by instrument recorded in Volume 1811, Page 649 of the Deed Records of Harris County, Texas.

3. Terms, conditions and stipulations contained in that certain Boundary Line Agreement dated July 1, 1997, executed by and between Alfred L. Deaton III and wife, Elizabeth Evans Deaton and Russ Robinson and wife, Leslie Weinstein Robinson, filed for record under Harris County Clerk's File Nos. S528628 and corrected under S541812.

4. Building set back line of 50 feet along the front property line, as set out on plat thereof recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas.

5. Annual Maintenance Charge and Special Assessments payable to Sherwood Forest Home Owners Association as set forth in instrument recorded in Volume 1881, Page 3 of the Deed Records of Harris County, Texas and filed under Harris County Clerk's File No. E985104 and additionally secured by a Vendor's lien as set forth therein.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

MAR 11 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

RECORDER'S MEMORANDUM:
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

G720.Exhibit.B

# EXHIBIT 7



# 335 West Friar Tuck
Houston, TX 77024

**$3,830,001 - $4,418,000**

Recently Sold on:
**12/11/2020**

**Lots**

**67,518**  Lot Sqft./Survey

**1**  Day On Market



Absolutely a rare fine in one of Memorial's most prestigious streets. In a very private secluded street off W. Friar Tuck Lane that dead end. Fenced on three sides with a wrought iron fence and a partial driveway. Beautifully landscaped with majestic trees some with tree lights. Previously had a working sprinkler system on this approx. 1.55 acre lot.



## General Description

| | | | |
|---|---|---|---|
| **MLS#:** | 54931128 (HAR) | **Sold Price Range:** | $3,830,001 - $4,418,000 |
| **Listing Status:** | Sold | **Address:** | 335 West Friar Tuck |
| | | **City:** | Houston |
| **State:** | TX | **Zip Code:** | 77024 |
| **County:** | Harris County | **Subdivision:** | Sherwood Forest |
| **Legal Description:** | LT 8 SHERWOOD FOREST SEC D | **Property Type:** | Lots |
| **Lot Size:** | 67,518 Sqft. /Survey | **Maintenance Fee:** | $ 2377 / Annually |
| **Key Map©:** | 491G | **Market Area:** | Memorial Close In |

## Neighborhood Information

| | |
|---|---|
| Subdivision Name | Sherwood Forest (Houston) |
| County / Zip Code | 77024 |
| Single Family Properties | 116 |
| Average Bedrooms | 5.07 |
| Average Baths | 6.91 |
| Median Square Ft. | 8,488 |
| Median Lot Square Ft. | 55,756 |
| Median Year Built | 1999 |
| Median Appraised Value | $3,537,521 |
| Neighborhood Value Range | $2011 - $6406 K |
| Median Price / Square ft. | $569.66 |



## School Information

**Assigned Schools for this property**

| Elementary School | Middle School | High School | School District |
|---|---|---|---|
| HUNTERS CREEK Elementary School | SPRING BRANCH Middle School | MEMORIAL High School | Spring Branch |

School information is computer generated and may not be accurate or current. Buyer must independently verify and confirm enrollment. Please contact the school district to determine the schools to which this property is zoned.

Listing Broker

**Coldwell Banker Realty - Memorial Office**

(713) 722-6800



Listing Agent



**Norma Moore**

(713) 557-3061

Selling Broker

**Coldwell Banker Realty - Memorial Office**

(713) 722-6800

Selling Agent

**Lara Nesmith**

(713) 467-5712

Copyright© 2022, HOUSTON REALTORS® INFORMATION SERVICE, INC. All Rights Reserved. Data Not Verified/Guaranteed by MLS

# EXHIBIT 8

RP-2020-613131
12/14/2020   ER   $26.00

## GENERAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

STATE OF TEXAS              §
                           §
COUNTY OF HARRIS           §

    **DOROTHY K. BROCKMAN AND ROBERT THERON BROCKMAN, WIFE AND HUSBAND** (collectively "Grantor", whether one or more), for and in consideration of the sum of Ten and No/100 Dollars ($10.00), and other good and valuable consideration paid to Grantor by **CAROLE WALTER LOOKE AND CECIL JAMES LOOKE III** (collectively "Grantee", whether one or more), whose address is **1100 Louisiana, Suite 320, Houston TX. 77002** , the receipt and sufficiency of which are hereby acknowledged and confessed, subject to the exceptions, liens, encumbrances, terms and provisions hereinafter set forth and described, has **GRANTED, BARGAINED, SOLD and CONVEYED**, and by these presents does hereby **GRANT, BARGAIN, SELL and CONVEY**, unto Grantee that certain real estate consisting of the land situated in Harris County, Texas, and being more particularly described in Exhibit "A" attached hereto and incorporated herein by reference for all purposes and all fixtures and improvements situated thereon (such land and improvements being hereinafter referred to collectively as the "Property").

    **Consideration:** Ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

    **Exceptions to Conveyance and Warranty:** This conveyance is made subject and subordinate to all easements, restrictions, and other exceptions shown of record in Harris County, Texas ("Permitted Exceptions"), but only to the extent they affect or relate to the Property, and without limitation or expansion of the scope of the warranty herein contained.

    **TO HAVE AND TO HOLD** the Property, subject to the Permitted Exceptions, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors, to **WARRANT and FOREVER DEFEND,** all and singular, the Property, unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

    Ad valorem taxes and assessments for the current year having been prorated between Grantor and Grantee, and Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all ad valorem taxes and special assessments pertaining to the Property for the current calendar year and subsequent years.

RP-2020-613131

UNOFFICIAL COPY

CTT20734026

**EXECUTED** as of the 11th day of December 2020

GRANTOR:

*Dorothy K. Brockman*
_____
DOROTHY K. BROCKMAN

*Dorothy K. Brockman as Agent*
*and Attorney for Robert Theron Brockman*
_____
DOROTHY K. BROCKMAN as Agent and
Attorney in Fact for ROBERT THERON
BROCKMAN

STATE OF TEXAS      §
                         §
COUNTY OF HARRIS   §

      This instrument was acknowledged before me on the 11th day of December 2020, by DOROTHY K. BROCKMAN Individually, and as Agent and Attorney in Fact for ROBERT THERON BROCKMAN, personally known to me to be the person(s) whose name(s) is/are subscribed to the foregoing instrument.



_____
Notary Public in and for the State of Texas

ROBERT JAMES COLLIER
Notary Public, State of Texas
Notary ID # 125264202
Expires April 13, 2021

RP-2020-613131

## EXHIBIT A

### Legal Description of Real Property

1.6774 acres out of Lot Eight (8), of SHERWOOD FOREST, Section "D", an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 23, Page 4 of the Map Records of Harris County, Texas and being more particularly described by metes and bounds as follows;

BEGINNING at a found 1/2 inch iron rod marking the northwesterly corner of said Lot 8;

Thence:  South 46 deg. 30 min. East-209.52 feet along the most westerly line of said Lot 8, to a found 3/4 inch iron pipe for corner;

Thence:  North 54 deg. 30 min. East-50.00 feet along the most southerly line of said Lot 8, to a found 5/8 inch iron rod for angle point;

Thence:  North 39 deg. 14 min. East-150.00 feet continuing along the most southerly line of said Lot 8, to a found 3/4 inch iron pipe for angle point;

Thence:  North 40 deg. 04 min. East-45.00 feet continuing along the most southerly line of said Lot 8 to a found 3/4 inch iron pipe for angle point;

Thence:  North 46 deg. 24 min. East-63.07 feet continuing along the most southerly line of said Lot 8, to a found 5/8 inch iron rod for corner being a point on a curve having a central angle of 16 deg. 28 min. 10 sec. and having a radius of 436.05 deg., the center of said curve being located on radial line bearing North 79 deg. 07 min. 39 sec. East from said point;

Thence:  In a northerly direction along the westerly right-of-way line of West Friar Tuck Lane (60 feet wide) for an arc distance of 125.34 feet to a found 3/4 inch iron rod for corner;

Thence:  North 84 deg . 25 min. West 150.00 feet along the most northerly line of said Lot 8, to a found 1/2 inch iron rod for corner;

Thence:  South 43 deg. 30 min. West  300.95 feet, along the most southerly line of Lot 7, of said Section "D", Sherwood Forest, to the Point of Beginning and containing 1.6774 acres (73,067 square feet) of land, more or less.


UNOFFICIAL COPY

RP-2020-613131

RP-2020-613131

# Pages 4

12/14/2020 02:40 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees   $26.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 9

RP-2019-460848
10/17/2019   ER   $24.00

# AGREEMENT PARTITIONING CERTAIN
## EXISTING COMMUNITY PROPERTY

### (1731 Sunset Boulevard, Houston, Texas 77005)

WHEREAS, Robert Theron Brockman, a/k/a Robert T. Brockman ("**Husband**"), and Dorothy Kay Brockman ("**Wife**"), both residents of Harris County, Texas, now own as community property (in addition to other community property, which this agreement shall not affect) the following described real property interests together with all appurtenant rights including rents and profits therefrom (the "**Property**"):

> TRACT 1:
> Lot Nine (9), in Block One (1) of CHEYNE WALK SEC. 2, AMENDING PLAT NO. 1, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 587191 of the Map Records of Harris County, Texas.

> TRACT 2:
> Easement Rights and Benefits Appurtenant to Tract 1 as created in instrument filed under County Clerk's File No. X903766, as Annexed and amended by instrument filed under County Clerk's File No. Z140366, as further Annexed and Amended by instrument filed under County Clerk's File No. Z449270 and further Amended by instruments filed under Harris County Clerk's File Nos. 20070035960 and 20100184479.

WHEREAS, Husband and Wife desire to partition the Property between themselves so that each will own one half of the Property as his or her sole and separate property; and

NOW, THEREFORE, in consideration of the promises and other good and valuable consideration and pursuant to Section 4.102 of the Texas Family Code and Article 16, Section 15 of the Constitution of the State of Texas (Tex. Const. art. XVI, § 15), the Property is hereby partitioned between Husband and Wife into two equal shares, and each of Husband and Wife shall hold and possess, a fifty percent (50%) undivided interest in the Property together with rights to receive all future income and property derived from such interest, as his or her separate property, respectively.

Husband does hereby grant, release, and confirm unto Wife and to her heirs and assigns fifty percent (50%) of all rights, and interest in such Property, to have and to hold the same, together with all and singular, the hereditaments and appurtenances thereto belong forever, and Wife does hereby grant, release, and confirm unto Husband and to his heirs and assigns one-half of all rights, and interest in such property, to have and to hold the same, with all and singular, the hereditaments and appurtenances thereto belong forever.

Wife and Husband have agreed to prorate property taxes for the year 2019 as described herein. Responsibility for property taxes through and including the date of partitioning and conveyance shall remain with Husband and Wife's community estate, and Wife is responsible

1

for property taxes beginning the day following the partitioning and conveyance and thereafter. Funds from the community and funds from Wife shall be used in such proportions to pay the 2019 property tax bill, directly.

**EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES THAT HE OR SHE WAS PROVIDED A FAIR AND REASONABLE DISCLOSURE OF THE PROPERTY OR FINANCIAL OBLIGATIONS OF THE OTHER PARTY. EACH PARTY VOLUNTARILY AND EXPRESSLY WAIVES ANY RIGHT TO DISCLOSURE OF THE PROPERTY OR FINANCIAL OBLIGATIONS OF THE OTHER PARTY BEYOND THE DISCLOSURE PROVIDED. EACH OF THE PARTIES HEREBY RELEASES TO THE OTHER ALL OF HIS OR HER RIGHTS, TITLES, AND INTERESTS IN AND TO THE PROPERTY PARTITIONED AND SET APART TO THE OTHER PARTY UNDER THIS PARTITION AGREEMENT. EACH PARTY TO THIS AGREEMENT UNDERSTANDS THAT BY SIGNING THIS DOCUMENT HE OR SHE MAY PERMANENTLY SURRENDER PROPERTY RIGHTS OR CLAIMS HE OR SHE WOULD OTHERWISE HAVE UNDER TEXAS LAW.**

**Husband and Wife do hereby verify and acknowledge that they have carefully read this Agreement, and that they fully understand it. Each Party verifies and acknowledges that he or she has been advised of the potential conflict of interest between the Parties, has had ample opportunity to retain his or her own separate, independent legal counsel of his or her own choice, but has elected to waive any potential conflict of interest and to not retain separate, independent legal counsel. Each Party further verifies and acknowledges that he or she has either (i) been fully advised by the Parties' joint legal counsel of the meaning, terms and legal consequences of this Agreement or (ii) chosen to not be advised by legal counsel and hereby freely, expressly and voluntarily waives any right to claim any conflict of interest or his or her failure to obtain the advice of separate, independent legal counsel as the basis for setting aside, or challenging the validity or enforceability of, this Agreement.**

[REMAINDER OF PAGE BLANK; SIGNATURES FOLLOW]

2

IN WITNESS WHEREOF, the parties have executed this Agreement on the 15 day of October, 2019.

**Husband:**

_R. T. Brockman_
Robert Theron Brockman
a/k/a Robert T. Brockman

**Wife:**

_Dorothy Kay Brockman_
Dorothy Kay Brockman

STATE OF TEXAS                                   §
                                                 §
                                                 §
COUNTY OF HARRIS                                 §
This instrument was acknowledged before me on the 15 day of October, 2019, by
Robert Theron Brockman a/k/a Robert T. Brockman.

_Kasey Hirl_
Notary Public, State of Texas

KASEY TAYLOR HIRL
NOTARY ID #13066168-4
My Commission Expires
May 13, 2020

STATE OF TEXAS                                   §
                                                 §
                                                 §
COUNTY OF HARRIS                                 §
This instrument was acknowledged before me on the 15 day of October, 2019, by
Dorothy Kay Brockman.

_Kasey Hirl_
Notary Public, State of Texas



KASEY TAYLOR HIRL
NOTARY ID #13066168-4
My Commission Expires
May 13, 2020

Signature Page to Partition Agreement
(1731 Sunset Boulevard, Houston, TX 77005)

RP-2019-460848

UNOFFICIAL COPY

RP-2019-460848

RP-2019-460848

\# Pages 4

10/17/2019 09:07 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees   $24.00



RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 10

RP-2019-460849
10/17/2019  ER  $28.00

RP-2019-460849

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

<u>**GENERAL WARRANTY DEED**</u>

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARRIS | § | |

    **ROBERT T. BROCKMAN** ("**Grantor**") and spouse **DOROTHY KAY BROCKMAN**, whose address for notice purposes is 6700 Hollister, Houston, Texas 77040 ("**Grantee**"), acquired the following described real property, together with, all and singular, all rights, benefits, privileges, easements, tenements, hereditaments, appurtenances, and interests thereon or in anywise appertaining thereto, including, without limitation, the remainder, rents, issues and profits thereof, and with all fixtures, improvements and personalty located thereon as of the date of conveyance (said land, rights, benefits, privileges, easements, tenements, hereditaments, appurtenances, improvements, personalty and interests being hereinafter referred to as the "**Property**"), pursuant to that certain General Warranty Deed executed effective April 29, 2011, recorded as Document No. 20110175214 in the Official Public Records of Real Property of Harris County, Texas:

    TRACT 1:
Lot Nine (9), in Block One (1) of CHEYNE WALK SEC. 2, AMENDING PLAT NO. 1, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 587191 of the Map Records of Harris County, Texas.

    TRACT 2:
Easement Rights and Benefits Appurtenant to Tract 1 as created in instrument filed under County Clerk's File No. X903766, as Annexed and amended by instrument filed under County Clerk's File No. Z140366, as further Annexed and Amended by instrument filed under County Clerk's File No. Z449270 and further Amended by instruments filed under Harris County Clerk's File Nos. 20070035960 and 20100184479.

    Pursuant to that certain Agreement Partitioning Certain Existing Community Property, dated effective of even date with this instrument, Grantor and Grantee partitioned their interests in the Property into equal fifty percent (50%) undivided interests held by each of Grantor and Grantee, respectively, together with rights to all income and property produced therefrom, as his or her separate property.

    FOR AND IN CONSIDERATION OF cash and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, GRANTOR has GRANTED, BARGAINED, SOLD, and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, and CONVEY unto GRANTEE all of GRANTOR's fifty percent (50%)

1

RP-2019-460849

undivided interest in and to the Property, and all other interests of Grantor in and to the Property (the "**Grantor Property**"), to hold and possess one hundred percent (100%) of the Property together with all income and other property produced therefrom, as her sole and separate property free from any and all claims of Robert T. Brockman.

This conveyance is made subject to all matters of record listed on **Exhibit A** (the "**Permitted Exceptions**") attached hereto and made part hereof, but only to the extent same are validly in effect and apply to the Grantor Property.

TO HAVE AND TO HOLD the Grantor Property, as aforesaid, unto Grantee, and Grantee's heirs and assigns, forever, subject to the Permitted Exceptions; and Grantor does hereby bind himself and his heirs and assigns to WARRANT AND FOREVER DEFEND all and singular the Grantor Property unto Grantee, and her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

[REMAINDER OF PAGE BLANK; SIGNATURE PAGE FOLLOWS]

2

EXECUTED effective this 15 day of October , 2019.

**GRANTOR:**

*R. T. Brockman*

**ROBERT T. BROCKMAN**

**ACKNOWLEDGMENT**

STATE OF TEXAS §
§
COUNTY OF HARRIS §

This instrument was acknowledged before me on October 15 , 2019, by Robert T. Brockman.

Notary Public in and for
The State of TEXAS



**When recorded, return to:**

Andrews Myers, P.C.
1885 Saint James Place, 15th Floor
Houston, Texas 77056
Attn: Susan George

KASEY TAYLOR HIRL
NOTARY ID #13066168-4
My Commission Expires
May 13, 2020

RP-2019-460849

Signature Page to General Warranty Deed
(1731 Sunset Boulevard, Houston, TX 77005)

**EXHIBIT "A"**
**PERMITTED ENCUMBRANCES**

1. Restrictive covenants set forth in instrument recorded in Film Code No. 587191 of the Map Records of Harris County, Texas, and in instruments filed for record under Harris County Clerk's File Nos. X903766, Z140366, Z449270, 20070035960 and 20100184479.

2. The following matters reflected on the recorded plat filed under Film Code No. 587191 of the Map Records of Harris County, Texas:

    a. Building set back line ten (10) feet wide along the southerly property line.
    b. Garage building set back line seventeen (17) feet wide along the southerly property line.
    c. A utility easement five (5) feet in width located along the northerly property line.

3. Dedication of Homeowners Common Area Agreement, as set forth by instrument filed for record under Harris County Clerk's File No. Y718363.

4. Terms and provisions of Reciprocal Roadway/ Shared Drive Easements, as set forth by instruments filed for record under Harris County Clerk's File Nos. Z140367 and Z449271.

5. Cable Television Service & Right of Entry Agreement, by and between Texas and Kansas City Cable Partners, L.P. dba Time Warner Cable-Houston Division and Houston Sunset Development II LP, as set forth in instrument filed for record under Harris County Clerk's File No. Z150853.

6. Easement for minor encroachments created by construction settling and overhang of improvements as set out in instrument filed for record under Harris County Clerk's File No. X903766.

7. Maintenance charge, including special assessments for capital improvements, secured by a vendor's lien as set forth in instrument filed for record under Harris County Clerk's File No. X903766, payable to Cheyne Walk Community Association, Inc. (said lien being subordinated to purchase money and/or improvement liens therein).

8. Encroachment and Boundary Line Agreement dated April 27, 2011, by and among Carolyn Monroe aka Carolyn Jean Monroe, Jonathan B. Clark aka Jonathan Bailey Clark, David J. Fine and Susan G. Fine, filed or to be filed in the Official Public Records of Harris County, Texas.

9. The following matters as reflected on survey of the Property dated April 7, 2011, made by James M. Boswell, Registered Professional Land Surveyor No. 5794:

    a. Encroachment of brick walkway into five foot (5') utility easement along northerly property line of the Property; and
    b. Protrusion of wrought iron fence over the northerly property line of the Property.

RP-2019-460849

RP-2019-460849

\# Pages 5

10/17/2019 09:07 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees   $28.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 11



# 1731 Sunset Boulevard
Houston, TX 77005



**$1,242,001 - $1,425,000**

05/11/2021  Recently Sold on:

Townhouse/Condo - Townhouse

**3** Beds

**4** Bath

**4,394** Built Sqft./Appraisal District

**2,710** Lot Sqft./Appraisal District

**1** Day On Market

EXTENSIVE WORK RECENTLY COMPLETED: New master shower, all exterior stucco & balconies renovated.Repairs were driven by an inspection report.This stunning unique home w/a flare of London in a courtyard that offers a country setting inside a gated community.The stately English townhouses w/cobblestone drives & majestic oaks trees invite you to a truly meticulously 4 story home.The home has it own private driveway/garage entrance on the back street of complex. Min.from the medical center, prestigious Rice University & shopping.Has been extensively upgraded w/walnut floors & w/new designer Stark wool carpet on stairs. Barrier doors in master bedroom w/security camera & alarm. 3rd fl. features an exceptional recreational room w/wet bar. Generous outdoor terrace w/a breathtaking view of Rice University.The HOA covers exterior of the property: roof, gutters, painting, landscaping, security gates, exterminaing for the exterior, sprinkler system, trash pick up, water & all exterior lighting.



## General Description

| | | | |
|---|---|---|---|
| **MLS#:** | 32400123 (HAR) | **Sold Price Range:** | $1,242,001 - $1,425,000 |
| **Listing Status:** | Sold | **Address:** | 1731 Sunset Boulevard |
| | | **City:** | Houston |
| **State:** | TX | **Zip Code:** | 77005 |
| **County:** | Harris County | **Subdivision:** | Cheyne Wa k Sec 02 Amd Pla |
| **Legal Description:** | LT 9 BLK 1 CHEYNE WALK SEC 2 AMEND | **Property Type:** | Townhouse/Condo - Townhouse |
| | | **Bedrooms:** | 3 - 4 Bedroom(s) |
| **Baths:** | 4 Full & 1 Half Bath(s) | **Garage(s):** | 2 / Attached,Tandem |
| **Stories:** | 4 | **Style:** | English,French |
| **Year Built:** | 2006 / Appraisal District | **Building Sqft.:** | 4,394 /Appraisal District |
| **Lot Size:** | 2,710 Sqft. /Appraisal District | **Maintenance Fee:** | $ 8000 / Annually |
| **Key Map©:** | 532D | **Market Area:** | Rice/Museum District |

## Rooms/ Lot Dimensions

| | | | |
|---|---|---|---|
| **Kitchen:** | 17 X14, 2nd | **Primary Bedroom:** | 23 X 16, 3rd |
| **Bedroom:** | 14 X 10, 3rd | **Bedroom:** | 15 X 15, 4th |
| **Primary Bath:** | 3rd | **Study/Library:** | 15 X 10, 1st |
| **Room Description:** | 1 Living Area, Breakfast Room, Gameroom Up, Living Area - 3rd Floor, Study/L brary, Utility Room in House, | | |

## Interior Features

| | | | |
|---|---|---|---|
| **Fireplace:** | 2/Gaslog Fireplace | **Countertop:** | granite |

| **Floors:** | Carpet, Wood | **Bedroom Description:** | All Bedrooms Up, Primary Bed - 2nd Floor, Sitting Area, Walk-In Closet |
| **Kitchen Description:** | Pantry, Walk-In Pantry | **Bathroom Description:** | Double Sinks, Half Bath, Vanity Area, Whirlpool/Jetted Tub |
| **Cooling:** | Central Electric | **Heating:** | Central Gas |
| **Ice Maker:** | Yes | **Microwave:** | Yes |
| **Oven:** | Double Oven | **Range:** | Gas Cooktop |
| **Dishwasher:** | Yes | **Compactor:** | No |
| **Disposal:** | Yes | **Energy Feature:** | Attic Fan, Ceiling Fans |
| **Interior:** | Alarm System - Owned, Crown Molding, Elevator, High Ceiling, Refrigerator Included | | |

## Exterior Features

| **Roof:** | Composition | **Foundation:** | Slab |
| **Private Pool:** | No | **Exterior Type:** | Stucco |
| **Water Sewer:** | Public Water | **Area Pool:** | No |
| **Exterior:** | Patio/Deck | | |

## Neighborhood Information

| 2020 Subdivision Facts | | MLS Market Area Rice/Museum District |
| --- | --- | --- |
| Subdivision Name | Cheyne Walk |  |
| County / Zip Code | 77005 | |
| Single Family Properties | 25 | |
| Average Bedrooms | 3.16 | |
| Average Baths | 4.16 | |
| Median Square Ft. | 4,009 | |
| Median Lot Square Ft. | 2,310 | |
| Median Year Built | 2004 | |
| Median Appraised Value | $1,447,963 | |
| Neighborhood Value Range | $1282 - $1661 K | |
| Median Price / Square ft. | $337.63 | |

## School Information

**Assigned Schools for this property**

| Elementary School | Middle School | High School | School District |
| --- | --- | --- | --- |
| POE Elementary School | LANIER Middle School | LAMAR High School | Houston |

School information is computer generated and may not be accurate or current. Buyer must independently verify and confirm enrollment. Please contact the school district to determine the schools to which this property is zoned.

---

Listing Broker

**Coldwell Banker Realty - Memorial Office**

(713) 722-6800



Listing Agent

**Norma Moore**

(713) 557-3061



---

Selling Broker

**Coldwell Banker Realty - Memorial Office**

(713) 722-6800



Selling Agent

**Norma Moore**

(713) 557-3061



# EXHIBIT 12

RP-2021-266793
05/14/2021   ER   $26.00

## GENERAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

**DOROTHY KAY BROCKMAN** ("Grantor"), for and in consideration of the sum of Ten and No/100 Dollars ($10.00), and other good and valuable consideration paid to Grantor by **FRANCI NEELY** ("Grantee"), whose address is _1314 South Blvd. Houston, TX. 77006_, the receipt and sufficiency of which are hereby acknowledged and confessed, subject to the exceptions, liens, encumbrances, terms and provisions hereinafter set forth and described, has **GRANTED, BARGAINED, SOLD and CONVEYED**, and by these presents does hereby **GRANT, BARGAIN, SELL and CONVEY**, unto Grantee that certain real estate consisting of the land situated in Harris County, Texas, and being more particularly described in Exhibit "A" attached hereto and incorporated herein by reference for all purposes and all fixtures and improvements situated thereon (such land and improvements being hereinafter referred to collectively as the "Property").

**Consideration:** Ten dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged.

**Exceptions to Conveyance and Warranty:** This conveyance is made subject and subordinate to all easements, restrictions, and other exceptions shown of record in Harris County, Texas ("Permitted Exceptions"), but only to the extent they affect or relate to the Property, and without limitation or expansion of the scope of the warranty herein contained.

**TO HAVE AND TO HOLD** the Property, subject to the Permitted Exceptions, unto Grantee, and Grantee's successors and assigns, forever; and Grantor does hereby bind Grantor, and Grantor's successors, to **WARRANT and FOREVER DEFEND**, all and singular, the Property, unto Grantee, and Grantee's successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Ad valorem taxes and assessments for the current year having been prorated between Grantor and Grantee, and Grantee, by its acceptance hereof, does hereby assume and agree to pay any and all ad valorem taxes and special assessments pertaining to the Property for the current calendar year and subsequent years.

CHICAGO TITLE - MEMORIAL
GF _CT 21740534_

**EXECUTED** as of the _____ day of May, 2021

**GRANTOR:**

*Dorothy Kay Brockman*
DOROTHY KAY BROCKMAN

STATE OF TEXAS         §
                       §
COUNTY OF _HARRIS_     §

    This instrument was acknowledged before me on the _____ day of May 2021, by DOROTHY KAY BROCKMAN, personally known to me to be the person whose name is subscribed to the foregoing instrument.

ROBERT JAMES COLLIER
Notary ID #125264202
My Commission Expires
April 13, 2025

_____
Notary Public in and for the State of Texas

UNOFFICIAL COPY

RP-2021-266793

## EXHIBIT A

### Legal Description of Real Property

TRACT  1:

Lot Nine (9), in Block One (1) of CHEYNE WALK SEC. 2, AMENDING PLAT  NO. 1, a subdivision in Harris County, Texas according to the map or plat thereof recorded in Film Code No. 587191 of the Map Records of Harris County, Texas.

TRACT 2:

Easement Rights and Benefits Appurtenant to Tract I as created in instrument filed under County Clerk's File No. X903766, as Annexed and amended by instrument filed under County Clerk's File No. Z140366, as further Annexed and Amended by instrument filed under County Clerk's File No. Z449270, Z449271, and further Amended by instruments filed under Harris County Clerk's File Nos. 20070035960 and 20100184479.



RP-2021-266793

RP-2021-266793

RP-2021-266793

\# Pages 4

05/14/2021 10:12 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees  $26.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.



COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 13

RP-2020-554920

RP-2020-554920
11/12/2020   ER   $22.00

Charter Title **Company**
GF# 10160606020000463

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<u>**GIFT GENERAL WARRANTY DEED**</u>

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS |
| COUNTY OF HARRIS | § | |

THAT **DOROTHY KAY BROCKMAN** ("Grantor"), for and in consideration of love and affection for **ELIZABETH BELLOWS BROCKMAN**, a married individual with an address for notice purposes of 3702 Inwood Drive, Houston, Harris County, Texas 77019 ("Grantee"), the receipt and sufficiency of which consideration is hereby acknowledged, has GRANTED and CONVEYED, and by these presents does hereby GRANT and CONVEY, unto Grantee, as a gift to Grantee, as Grantee's sole and separate property, all of that certain real property more particularly described as follows:

> **LOT 10, BLOCK 85, OF RIVER OAKS, SECTION II, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 18, PAGE 14, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.**

This conveyance, however, is made and accepted subject to any and all validly existing encumbrances, conditions, and restrictions, relating to the hereinabove described property as now reflected by the records of the County Clerk of Harris County, Texas.

TO HAVE AND TO HOLD the above described premises, together with all the rights and appurtenances lawfully accompanying it, by the Grantee, Grantee's heirs, executors, administrators, successors, and/or assigns forever; and Grantor does hereby bind Grantor, Grantor's heirs, executors, administrators, successors, and/or assigns to WARRANT AND FOREVER DEFEND all the said premises unto the said Grantee, Grantee's heirs, executors, administrators, successors, and/or assigns, against every person whomsoever claiming or to claim the same or any part thereof.

Current ad valorem taxes on said property having been prorated, the payment thereof is assumed by Grantee.

When the context requires, singular nouns and pronouns include the plural.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows.]*

1

IN WITNESS WHEREOF, Grantor has executed this Gift General Warranty Deed on the date set forth in the acknowledgement.

GRANTOR:

**DOROTHY KAY BROCKMAN**

ACKNOWLEDGEMENT

STATE OF TEXAS §
§
COUNTY OF HARRIS §

The foregoing instrument was acknowledged before me on this 6 day of NOV, 2020 by **DOROTHY KAY BROCKMAN**.



Notary Public, State of Texas

X

**After Recording Return To:**

Elizabeth Bellows Brockman
3702 Inwood Drive
Houston, TX 77019

IRENE CALDWELL
Notary ID #129371339
My Commission Expires
April 27, 2021

UNOFFICIAL COPY

RP-2020-554920

2

RP-2020-554920

# Pages 3

11/12/2020 03:59 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

CHRIS HOLLINS

COUNTY CLERK

Fees   $22.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 14

RP-2020-554921
11/12/2020   ER   $18.00

Charter Title Company
CF# 10760cecb2000463

### NOTICE TO PURCHASERS
### DEED RESTRICTIONS

The real property described below, which are acquiring, is subject to deed restrictions recorded in Harris County, Texas:

Volume 1196, Page 162 of the Deed Records; Clerk's File No. B399087, B399088, B641344 and extended and/or modified by instruments executed in multiple counterparts, some of which are recorded under Clerk's File Nos. D908433, D908434, J433568, J828457, U150294, X128819, X846342, Z340035, Z346429, Z346431, 20060277545, 20100410036, 20100410037, 20110155204, 20110488010, 20110488011, 20130198665, of the Real Property Records of Harris County, Texas

THE RESTRICTIONS LIMIT YOUR USE OF THE PROPERTY. THE CITY OF HOUSTON IS AUTHORIZED BY STATUTE TO ENFORCE COMPLIANCE WITH CERTAIN DEED RESTRICTIONS. You are advised that, in the absence of a declaratory judgment that the referenced restrictions are no longer enforceable, the City of Houston may sue to enjoin a violation of such restrictions. ANY PROVISIONS THAT RESTRICT THE SALE, RENTAL OR USE OF THE REAL PROPERTY ON THE BASIS OF RACE, COLOR, RELIGION, SEX, OR NATIONAL ORIGIN ARE UNENFORCEABLE; however, the inclusion of such provisions does not render the remainder of the deed restrictions invalid.

The legal description and street address to the property you are acquiring are as follows:

Legal Description:    Lot 10, Block 85, of RIVER OAKS, Section II, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 18, Page 14, of the Map Records of Harris County, Texas.

Street Address:    3702 INWOOD DR., Houston, TX 77019

*Dorothy Kay Brockman*

**DOROTHY KAY BROCKMAN**

ACKNOWLEDGEMENT

STATE OF TEXAS
COUNTY OF HARRIS

§
§

The foregoing instrument was acknowledged before me on this 6 day of Nov, 2020 by DOROTHY KAY BROCKMAN.



Notary Public, State of Texas

The undersigned admits receipt of the foregoing notice at or prior to closing the acquisition of property above described.



IRENE CALDWELL
Notary ID #129371339
My Commission Expires
April 27, 2021

*Elizabeth Bellows Brockman*

**ELIZABETH BELLOWS BROCKMAN**

ACKNOWLEDGEMENT

STATE OF TEXAS
COUNTY OF HARRIS

§
§

The foregoing instrument was acknowledged before me on this 6 day of NOV, 2020 by ELIZABETH BELLOWS BROCKMAN.

*Irene Caldwell*

Notary Public, State of Texas

IRENE CALDWELL
Notary ID #129371339
My Commission Expires
April 27, 2021



RP-2020-554921

RP-2020-554921

\# Pages 2

11/12/2020 03:59 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

CHRIS HOLLINS

COUNTY CLERK

Fees   $18.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT 15



# The Court of Appeal for Bermuda

**BY EMAIL / BY HAND**

2 February 2021

Marshall Diel & Myers Ltd
31 Reid Street
Hamilton HM 12
<u>**Attn: Katie Tornari**</u>

Dear Counsel,

**Re:    Civil Appeal No. 8 of 2020 – St. John's Trust Company (PVT) Ltd. v Medlands (PTC) Ltd *et al***

I am directed by the Court of Appeal to issue the following correspondence.

The appeal in relation to Civil Appeal No. 8 of 2020 is dismissed with reasons to follow.

The Court is, however, satisfied that a new independent institutional trustee should be appointed and that this Court has power to, and should, make that appointment by this Order.

Accordingly, Medlands (PTC) Ltd shall be discharged as trustee of the B Trust and replaced as trustee by the Bermuda Trust Company Limited ("BTC Ltd") with effect from a date and on such terms as to BTC Ltd's appointment as may be directed by Subair Williams J, upon hearing from such of the 1st, 2nd, 3rd, 6th and 9th Respondents and BTC Ltd as wish to appear on such application (but with no other party to this appeal having standing to appear or present evidence or submissions in relation to the matter) at a hearing to be fixed at a time as soon as practicable which is convenient to Subair Williams J.

The Court will hear the parties as to the costs of the Appeal by way of written submissions not exceeding 15 pages to be submitted within 14 days of the delivery of the reasons for judgment.

The Court invites the parties to agree and submit a draft of the order which we now pronounce.

**Yours faithfully,**

**Audley Quallo**
**CLERK OF THE COURT OF APPEAL**

cc:    Conyers Ltd/ Jeffrey Elkinson, Ben Adamson (1st Respondent)
        AGs Chambers/ Shakira Dill-Francois, Lauren Sadler-Best (2nd Respondent)
        Cox Hallett Wilkinson Ltd/ David Kessaram, Matthew Watson (3rd Respondent)
        Carey Olson/ Kevin Richardson, Kyle Masters (4th & 7th Respondent)
        (Appleby (Bermuda) Ltd (Steven White) for the 5th Respondent
        Kennedys Chudleigh Ltd (Lewis Preston) for the 6th Respondent
        Canterbury Law Ltd/ Paul Harshaw, Julica Harvey (8th Respondent)
        Hurrion & Associates/ Sarah-Jane Hurrion (9th Respondent)

# EXHIBIT 16



<u>Neutral Citation Number: [2021] CA (Bda) 20 Civ</u>

<u>Case No: Civ/2020/8</u>

**IN THE COURT OF APPEAL (CIVIL DIVISION)**
**ON APPEAL FROM THE SUPREME COURT OF BERMUDA SITTING IN ITS**
**ORIGINAL CIVIL JURISDICTION**
**THE HON. JUSTICE SUBAIR WILLIAMS**
**CASE NUMBER 2018: No. 376**

Sessions House
Hamilton, Bermuda HM 12

Date: 22/12/2021

**Before:**

**THE ACTING PRESIDENT, JUSTICE OF APPEAL ANTHONY SMELLIE**
**JUSTICE OF APPEAL DAME ELIZABETH GLOSTER**
**and**
**JUSTICE OF APPEAL CHARLES-ETTA SIMMONS**
- - - - - - - - - - - - - - - - - - - -
**Between:**

**ST JOHN'S TRUST COMPANY (PVT) LIMITED**

**Applicant**

**- v -**

**(1) MEDLANDS (PTC) LIMITED**
**(2) THE ATTORNEY GENERAL**
**(3) ROBERT THERON BROCKMAN**
**(4) BERMUDA TRUST COMPANY LIMITED**
**(5) HSBC PRIVATE BANK (C.I.) LIMITED**
**(6) MARTIN LANG**
**(7) GROSVENOR TRUST COMPANY LIMITED**
**(8) EVATT ANTHONY TAMINE**
**(9) DOROTHY BROCKMAN**

**Respondents**

Edward Cumming QC, instructed by Mark Deil and Katie Tornari of Marshall Deil & Myers for the Appellant

Robert Ham QC instructed by David Kessaram of CHW Ltd for the First Respondent.

Shakira Dill-Francois, Deputy Solicitor General and Lauren Sadler-Best, Crown Counsel for the Second Respondent.

Keith Robinson of Conyers Olsen (Bermuda) Limited for the Fourth and Seventh Respondents

Steven James White and Sam Riihiluoma of Appleby (Bermuda) Limited for the Fifth Respondent

John Machell QC, instructed by Lewis Preston of Kennedy Chudleigh for the Sixth Respondent.

David Brownbill QC, instructed by Paul Harshaw of Canterbury Law Limited, for the Intervening Respondent.

Francis Treager QC, instructed by Sarah-Jane Hurrion of Hurrion and Associates Ltd, for the Ninth Respondent.

Hearing dates: 25th, 26th and 27th January 2021
- - - - - - - - - - - - - - - - - - - - -
**APPROVED JUDGMENT**

<u>Approved judgment by the Court for handing down</u>     St. John's Trust Company (PVT) Ltd v Medlands (PTC) Ltd & Ors

**SMELLIE JA:**

1.  The Appellant, St John's Trust Company (PVT) Limited ('**SJTC**"), acting at the directions or behest of the Intervening Respondent Mr Evatt Tamine ("**Mr Tamine**"), appealed against orders of the Supreme Court (per Subair Williams J), made in trust administration proceedings in Cause 2018: No. 376 instituted by the Appellant itself, then acting by Mr James Gilbert ("**Mr Gilbert**") as its sole director ("**the Administration Proceedings**"). The orders under appeal were made on 1 November 2019 and 19 December 2019 (respectively the "**November**" and "**December**" **Orders** or together "**the Orders**").

2.  Among other things, by the Orders the learned judge ordered that SJTC be replaced as trustee of a very valuable trust known as the A. Eugene Brockman Charitable Trust, ("**the Brockman Trust**") by Medlands (PTC) Limited, the 1ˢᵗ Respondent ("**Medlands**").

3.  Upon SJTC's appeal coming on for hearing, the Court, having read the Record of Appeal and the written submissions of all parties, invited the parties to address at the outset an issue which had been articulated in an email sent on behalf of the Court on 22 January 2021, in the following terms:

    "*The Court is concerned to be clear about what it is that the Appellant really seeks to achieve by the appeal, given that even if it succeeds in setting aside the November and December Orders, it has been resolved by the human beneficiaries of the Trust [charity also being a beneficiary] that another trustee shall be appointed in any event. Accordingly, at the start of the hearing, the Court intends to consider whether (the Court) should not simply proceed to make an order of the kind proposed by Mrs Brockman (the 9ᵗʰ Respondent) in the New Proceedings [(those filed by her on 3 December 2020 in Cause 2020:No. 476)] in keeping with section 8 of the Court of Appeal Act and as proposed in the 6ᵗʰ Respondent's (Mr Lang's, the Trust Protector's) Notice and Submissions*".

4.  The order proposed both by the 6ᵗʰ Respondent, Mr Lang (the Protector of the Brockman Trust) and Mrs Brockman,  is one appointing a new professional trustee, to be regarded objectively as independent and experienced, to take over the trusteeship of the Brockman Trust. In Cause 2020:No. 476 in the Supreme Court ("**the New Proceedings**"), Mrs Brockman had also applied for such an order and to be herself appointed to represent the interests of the human beneficiaries of the Brockman Trust.

5.  Arguments were heard over the course of three days on the 25, 26 and 27 January 2021 and, on 2 February 2021, judgment was delivered in the following terms:

    "*It is HEREBY ORDERED that:*
    *1.      The appeal against the Orders of Subair Williams J dated 1 November 2019 and 19 December 2019 be dismissed, with reasons to follow.*

    *2.      Medlands (PTC) Limited shall be discharged as trustee of the Trust and replaced as trustee by BCT Limited, Incorporation Number 368764, whose registered*

*office address is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands with effect from a date and on such terms as to BCT Limited's appointment and Medlands (PTC) Limited's discharge as may be directed by Subair Williams J, upon hearing from such of the 1st, 2nd, 3rd, 6th and 9th Respondents and BCT Limited as wish to appear (but with no other party to this appeal having standing to appear or present evidence or submissions in relation to the matter) at a hearing in the proceedings pending before the Supreme Court of Bermuda in Civil Jurisdiction Case No 2020: 476 to be fixed at a time as soon as practicable which is convenient to Subair Williams J.*

3.      *The Court will hear the parties as to costs of the appeal by way of written submissions, not exceeding 15 pages, to be submitted within 14 days of the delivery of reasons for judgment.*

4.      *...*"

6.      These are the reasons for our previous order.

**Background to the appeal**

7.      This appeal arises against a background of litigation in a number of jurisdictions, including Bermuda, the United States and England. In Supreme Court Cause 2019: No. 447 the action is between, on the one hand SJTC, Mr Tamine, Mr Glenn Ferguson ("**Mr Ferguson**") and Mr James Watlington ("**Mr Watlington**") and, on the other hand, Medlands and Mr Gilbert. ("**the Corporate Proceedings**").

8.      In the Corporate Proceedings, there is a dispute over control of SJTC and its role in relation to the Brockman Trust and ultimately over control of the Brockman Trust itself. However, it is a dispute which is relevant to this appeal, only insofar as it goes to the authority of Mr Gilbert to have acted on behalf of SJTC, by instituting the Administration Proceedings before Subair Williams J. which led to the making of the November and December Orders. As mentioned above, the Orders resulted, among other things, in the removal of SJTC and its replacement by Medlands as trustee of the Brockman Trust.

9.      SJTC's complaints which inform its grounds of appeal in this action are, to the effect, that Mr Gilbert had no authority to act on its behalf in the Administration Proceedings; that consequently it was not properly a party to those proceedings; that the Orders were therefore made in breach of its constitutional rights to a fair hearing;  and were therefore made in breach of natural justice and should be set aside. In this regard, SJTC lays great store by the fact that Mr Gilbert was ultimately later found by the learned Chief Justice in his judgment of the 26 March 2020 in the Corporate Proceedings, to have lacked authority to commence the Corporate Proceedings on 1 November 2019 on behalf of SJTC and to represent SJTC, not only in those proceedings but in the Administration Proceedings as well (see [87] of his

Judgment) [1]. It is therefore submitted that, by implication, Mr Gilbert also lacked authority acting alone as he did, to represent SJTC at any time after 25 October 2019 (when Messrs Watlington and Ferguson were appointed as directors of SJTC) in the Administration Proceedings.

10.   This all developed in a context where SJTC itself, purportedly acting by Mr Gilbert, had instituted the Corporate Proceedings to obtain, and had obtained ex parte on 6 November 2019, an injunction to prevent Messrs Ferguson and Watlington from purporting to act as directors of SJTC. By the writ instituting the Corporate Proceedings, SJTC acting by Mr Gilbert, also sought declarations that the appointment of Messrs Ferguson and Watlington as directors of SJTC, although purportedly effected by written resolution of Cabarita as the sole shareholder of SJTC on 25 October 2019, was void and of no effect and that Messrs Ferguson and Watlington had no authority to act on behalf of SJTC. By his judgment of 26 March 2020, the learned Chief Justice rejected those claims and ordered instead that the writ be struck out and that the ex parte injunction of 6 November 2019 restraining Messrs Ferguson and Watlington from acting as directors of SJTC, be discharged.

11.   A specific consequence of the judgment of the 26 March 2020 for which SJTC contends on this appeal, in relation to the Administration Proceedings after 25 October 2019 when Mr Gilbert acted in them without the knowledge or approval of Messrs Ferguson and Watlington, is that SJTC was not properly a party to those proceedings and so should not be bound by the Orders which, as we have seen, were made in them after that date.

12.   To the extent that further consideration of the dispute in the Corporate Proceedings will be of significance to the present appeal, it will be discussed below.

13.   At this juncture, the foregoing juxtaposition of the Corporate and Administration Proceedings sets the context for the framing of the first essential question for consideration on the appeal, which was whether SJTC as trustee (whether *de jure* or *de son tort*)[2], may seek to set aside orders otherwise validly made in the context of trust administration proceedings in exercise of the

---

[1] It is emphasized that at all material times the byelaws of SJTC stipulated that its directors can only act by a majority. On 25 October 2019 the sole member of SJTC, Cabarita (PCT) Ltd (**Cabarita**) (acting by Mr Tamine its sole shareholder) had appointed Mr Watlington and Mr Ferguson as directors alongside Mr Gilbert. The validity of all steps taken subsequently by Mr Gilbert acting alone in the Administration Proceedings are therefore impugned. However, for reasons which will become apparent below, the timing of steps taken in the Administration Proceedings is of some significance.

[2] This question about SJTC's true status as trustee arises in the context of historical issues in the administration of the Brockman Trust which were also raised for resolution in the Administration Proceedings and addressed in the Orders. As those historical issues are of tangential significance here, there will be no need to consider them in detail. It will suffice at this juncture to note that a detailed opinion from Mr Dakis Hagen QC and Emma Hargreaves of counsel ("**the Hagen/Hargreaves Opinion**") was obtained and presented in the Administration Proceedings. As Mr Gilbert explains at [24] to [29] of his affidavit, the need for it arose as a result of the discovery of various constitutional issues arising from documents disclosed by Mr Tamine pursuant to orders made against him in proceedings in England. The Hagen/Hargreaves opinion was presented to Justice Subair-Williams and helped to inform the provisions of the Orders granted by her to address those issues and hence the appointment of Medlands as trustee to replace and resolve any uncertainty about the status of SJTC's appointment as trustee.

longstanding supervisory jurisdiction and discretionary powers of the court and intended to protect and affect not SJTC's but the interests of the beneficiaries, on the basis that in those proceedings, its own rights as trustee (whether *de jure* or *de son tort*) to proper representation and a fair hearing, were allegedly breached.

14. However, a second and perhaps even more fundamental issue arose, and that which most directly led this Court to adopt the course it did at the outset, which was whether, if in any event, SJTC could not properly (and did not itself propose on this appeal that it should) be reappointed as trustee, there was any worthwhile purpose to be served in allowing it to prosecute this appeal, potentially at the expense, and to the detriment, of the proper ongoing administration of the Brockman Trust. It appeared to this Court, that even if SJTC could establish that it had a right to be heard in the Administration Proceedings which was breached, the real question nonetheless for this Court, this being an appeal from those proceedings, would be whether it is in the paramount interests of the beneficiaries of the Trust, rather than those of SJTC itself, for the Orders to be set aside as SJTC proposed.

15. By way of further background, it is also very relevant in this regard to record, that, in light of Mr Tamine's potential control of SJTC through his company Cabarita  (as will be discussed further below), there are serious and ongoing proceedings against Mr Tamine himself (in Cause 2018: No. 390,"**the Tangarra Proceedings**"), for misappropriation of trust funds. On 6 November 2018, SJTC (acting through Mr Gilbert in his then undisputed capacity as sole director of SJTC) commenced the Tangarra Proceedings against Mr Tamine.

16. The allegations underlying the  claim – allegations which Mr Tamine denies - are that he committed fraudulent breaches of fiduciary duty and/or breaches of trust by (among other things): (1) in March 2016, causing USD 5.395 million to be transferred from the Brockman Trust to his personal company, Tangarra Consultants Limited ("**Tangarra**"); (2) in August 2018, causing a further USD 16.8 million to be transferred from the Brockman Trust to Tangarra; and (3) in October 2018, failing to return USD 5 million of the Trust's money purportedly paid under SJTC's Bye-laws (when SJTC was trustee *de jure* or *de son tort*) into an account held by Mr Tamine's English solicitors. This Court was informed that Mr Tamine and Tangarra have agreed, on a without prejudice basis, to repay the sums referred to above (totalling USD 27.195 million).

17. While it was not necessary for resolution of this appeal for this court to pass comment upon the merits of the claim in the Tangarra Proceedings, it is worth noting Mr Tamine's assertion (at [13.1] and [67] of his Defence therein), that he caused USD15.4 million of the USD16.8 million payment referred to above to be paid "*as an advance in relation to services that it was envisaged [he] would provide in future (over a period of 6 years)*". As Mr Tamine had resigned as a director of SJTC on 28 September 2018, even on his pleaded case it is likely that SJTC (assuming it will continue to press the claim in light of the developments to be next discussed) and through it the Trust, will have a clear case for return of at least the bulk of these payments.

18. Cabarita is the sole shareholder of SJTC and Mr Tamine is Cabarita's sole shareholder. As the owner and controlling mind of the parent of SJTC, there were concerns raised by Mr Gilbert before Subair Williams J (and emphasized before this Court by both the Protector, Mr Lang and Mrs

Brockman) that Mr Tamine, although not himself a director, retains ongoing control of SJTC. As mentioned above, on 25 October 2019, Mr Tamine had procured Cabarita to appoint Mr Ferguson and Mr Watlington as additional directors of SJTC. While there are no imputations raised against these two professional men of good standing, the real concern, should SJTC be reappointed as trustee, is that Mr Tamine would retain the ability to remove them and appoint other directors who would do his bidding thereby, in effect, retaining control of SJTC.

19.   In this regard, it is therefore important to note that the third paragraph of the December Order records that Subair Williams J was of the opinion that SJTC was not a proper and appropriate candidate for appointment as trustee of the Brockman Trust and that "*any new trustee should be an entity unrelated and unconnected to Mr Tamine (against whom the new trustee of the Brockman) Trust will, if so advised, be continuing the current proceedings 2018:No. 390).*" That view clearly lead to her decision to remove SJTC and to replace it with Medlands.

20.   Also by way of background, the Court notes that there is an ongoing investigation by the United States Department of Justice ("DOJ") and Internal Revenue Service into allegations of tax fraud, relating to the way in which the Brockman Trust was operated at a time when SJTC was the trustee. Indeed, as the Appellate Record shows, the DOJ submitted to the Chief Justice in the Corporate Proceedings that SJTC was at the heart of the alleged fraud (see Judgment of 26 March 2020 at [15])[3]. Mr Tamine is a co-operating witness in the investigation, having testified before a Grand Jury in terms which may be regarded as opposed to the interests of the Brockman Trust.

21.   Finally, by way of background most relevant for present purposes, while the Brockman Trust has members of the Brockman family among its discretionary beneficiaries, significant distributions have been made only in furtherance of its charitable activities. These are extensive and involve ongoing commitments. It is averred by Mrs Brockman in her affidavit in the New Proceedings (which was also presented to this Court on the Appeal), that the current circumstances are impeding the proper operation of the Trust and, in particular, its charitable activities. Her stance taken on this appeal (through Counsel) is that the appeal is a waste of time, money and court resources.

22.   She describes the monthly rate of expenditure by the Trust on legal fees as "eye-watering" and submits that, while the appeal arises in trust litigation, the issues raised by the Appellant SJTC are of no direct interest or benefit to the Trust and the relief sought by SJTC promises nothing but uncertainty for the beneficiaries (as the outcome which SJTC seeks would return affairs to the status quo ante the November and December Orders), further legal costs and the promotion of only the interests of SJTC and Mr Tamine.

23.   The Court has paid particular regard to certain passages in Mrs Brockman's affidavit, together with the contents of the Notice by the Sixth Respondent filed pursuant to Order 2, Rule 13, in

---

[3] More especially, the DOJ alleges that the assets of Point Investment Limited (**PIL**), a company within the Trust structure formerly controlled by SJTC with assets worth some USD1.3 billion, in fact belong to Mr Robert Brockman and that he failed properly to report them to the United States Internal Revenue Service in evasion of tax obligations. Mr Brockman entered a plea of not guilty to the Indictment on 15 October 2020 (See affidavit of Dorothy Brockman filed in the New Proceedings at [34].

relation to the issue which the court required to be addressed at the outset of the hearing. Significant passages from Mrs Brockman's affidavit are the following; they address the purpose of the application made by her in the New Proceedings and the purposes and current state of affairs of the Brockman Trust itself:

> "*5. I am a discretionary beneficiary of the Trust, and I swear this affidavit in support of the orders applied for in the Originating Summons in my capacity as a discretionary beneficiary of the Trust for the replacement of the First Defendant, Medlands, as trustee of the Trust with BCT Limited (**BCT**), a wholly owned controlled subsidiary of Maples FS Limited (**Maples FS**), which is a well-regarded, regulated and professional institutional trustee.*
>
> *6. As described in more detail herein, I make this application in the vital interests of the Trust. Over the last two years, the Trust has become embroiled in costly, complex and acrimonious litigation culminating in, at its essence, a dispute over which, as between the current trustee, Medlands, and (SJTC), is the proper trustee of the Trust.*
>
> *7. As to Medlands, they were appointed as trustee pursuant (to the December Order) which was issued by Mrs Justice Subair Williams and which is under appeal. Also, and as I explain further below, on 2 December 2020, Medlands gave 90 days written notice of its resignation as trustee of the Trust to Martin Lang in his capacity as the Protector of the Trust (and the Third Defendant in these proceedings)(the Protector). Medlands' resignation is effective on 2 March 2021.*
>
> *8. As to SJTC, the circumstances leading up to the appointment of Medlands caused the individual human beneficiaries of the Trust to consider SJTC unsuitable as a trustee for the future. It is sufficient for these purposes to refer to the indictment against my husband, Robert Theron Brockman* [(a copy of which she exhibits to her affidavit and which bears out the concerns about SJTC mentioned at [19] above)].
>
> *9. This complicated situation has left the Trust in a state of illiquidity, jeopardizing its charitable operations and the overall management of the Trust's substantial assets. Having identified BCT to be a fit, proper and willing institutional trustee candidate to operate under the Maples FS global brand, I make this application to appoint BCT Limited to replace Medlands.*
>
> *10. BCT is a controlled subsidiary of Maples FS, which is a licensed trust company in the Cayman Islands and subject to the regulations of the Cayman Islands Monetary Authority (CIMA) and as such is authorized by CIMA to act as a trustee. BCT will be able to draw on the personnel, expertise and infrastructure of Maples FS. I understand that BCT can properly be considered as a part of Maples FS and to be fit to act as the trustee and as a fit and proper entity to be the trustee. As ([confirmed by letter from BCT which she exhibits] BCT is ready willing and able and has consented to act as trustee of the Trust.*

*11. The First Defendant, Medlands, is, I understand* [(an understanding confirmed to this Court by Counsel Mr Robert Ham QC appearing on the appeal for Medlands)] *supportive of the application and has agreed to assist in the transition to BCT of the administration of the Trust, if BCT is appointed as trustee.*

*12. The Second Defendant, the Attorney General, is named in the proceedings in view of the potential charitable beneficiaries of the Trust. My Bermuda attorneys, Hurrion & Associates Ltd (Hurrion), wrote to the Attorney General by letter dated 18 December 2020 inviting her to agree to the appointment of BCT as trustee of the Trust in place of Medlands. (exhibiting a copy of that letter.) On 22 December 2020, the Attorney General confirmed that she did not object to the application but, due to the narrow role the AG has in the proceedings, neither did she consent. (a copy of the Attorney General's letter is also exhibited).* [(At the hearing of the appeal Counsel appearing on behalf of the Attorney-General confirmed that the AG maintained the neutral position taken from the outset in the Administration Proceedings and had no objection to the appointment of BCT subject to assurances as to the independence of the MapleFS appointee being obtained)].

*13. The Third Defendant, Martin Lang in his capacity as Protector of the Trust, is, I understand, supportive of the application and entirely endorses the suitability and appointment of BCT.* [This understanding was confirmed to be correct at the hearing of the appeal by Mr John Machell QC on behalf of Mr Lang].*Given that Mr Lang's appointment as Protector is being challenged by SJTC and Mr Evatt Tamine (a former director of SJTC) in the current appeal in the (Administration Proceedings), I make this application for the Court to appoint BCT as the new trustee in place of Medlands rather than ask Mr Lang to exercise the protector's power to appoint a new trustee. If Mr Lang were to exercise his protector power to appoint BCT as the new trustee, that might simply open a further front of further litigation by SJTC and/or Mr Tamine.*

*14. ... at a recent hearing in the (Corporate Proceedings), counsel [(Mr Edward Cumming QC)] for James Watlington and Glen Ferguson (appointed by Mr Tamine as new directors of SJTC) accepted in principle – but without committing his clients to that course – that it was possible that "the best outcome is a properly regulated independent professional trust company to come in (in appropriately open considered circumstances. I commit my clients not at all in that regard, but one can see the obvious sense of it)" See page 377 of the transcript for that hearing....*

          *...*
*Representative Beneficiary*

*16. On 26 May 1981, A Eugene Brockman executed a Trust Indenture with Bermuda Trust Company Limited pursuant to which he settled assets on trust and created the trust which is the subject matter of these proceedings. The Trust is a discretionary trust and is governed by the laws of Bermuda. Bermuda Trust Company Limited was the original trustee...*

*17. The beneficiaries of the Trust are designated in Article V A of the Trust Deed as being "Robert Theron Brockman, Dorothy Kay Brockman, Thomas David Brockman, Victoria Brockman, and any organization qualifying as a charitable organization under the laws of Bermuda, the United States, or Great Britain."*

24.   Then follows Mrs Brockman's account of her discussions with her fellow beneficiaries on the issue of their participation in the New Proceedings and her election to represent them in such proceedings, with her averment that, while some were not inclined to become involved, others had expressed their wishes that she represent them, the basis, as she also avers, for her application to the Supreme Court in the New Proceedings for the making of a representation order. She was eventually, on 7 August 2020, appointed in the New Proceedings to represent them.

25.   Her affidavit then turns to discuss the Trust's assets and distributions in terms which also helpfully explain the impact of the litigation as a consideration for the timely disposition of this appeal:

> "25. *The assets of the Trust are significant and worth billions of US Dollars..*
> *A significant portion of the assets of the Trust structure is its indirect holding of close to 100% of the shares in United Computer Systems Holdings (UCSH), a holding company of a computer software and professional services company which may be worth in the region of US$5 billion.*
>
> *26. The Trust also owns 100% of the common shares (but not the sole management share) in an investment fund called Point Investment Ltd (PIL). PIL invested in a number of structured investments, and the assets controlled by PIL may be worth in the region of US$1.3 billion. The Trust structure also holds various amounts in bank accounts in Bermuda, Switzerland and Singapore. The accounts in Switzerland hold approximately US$1.4 billion and the accounts in Singapore approximately US$15 million. It appears from what I have been told by my legal advisers that in response to the uncertainty over the proper trustee of the Trust and its subsidiaries, these accounts were frozen and Medlands has been unable to draw funds from them for many months.*
>
> *27. The Trust also has accounts with the Bank of NT Butterfield. Those accounts hold only approximately US$2.5 million in liquid assets, which, I am told, will not be sufficient to satisfy the Trust's expenses in even the short term. I understand that the Bank of NT Butterfield recently gave the Trust 90 days' notice of its intention to close the accounts.*
>
> *28. To the best of my knowledge, all or nearly all of the Trust's distributions have been to charitable beneficiaries. The Trust has two charitable programs under the banner of the Brockman Foundation (which is a name and not a separate entity). The Brockman Scholars Program at Texas A&M University firstly provides academic scholarships in the fields of science, technology, engineering, mathematics and medical research to Texas A&M University students. The program is a merit-based full scholarship for five years of study at the University. The scholarship program currently supports 149 Brockman Scholars with funds from the Trust. The scholarships*

*cost the Trust approximately US$5 million in 2020 and the program was expected to add 50 students for each of the next two academic years.*

*29. The second significant philanthropic program is the medical research grants awarded to scientists with universities and eminent medical institutions. The Trust provides roughly US$10 million per year in grants for leading-edge medical research, especially innovative, preventative, therapeutic and interventional research. The operation of the Brockman Foundation involves significant operating expenses in the form of staff costs and the costs of expert advisers. In the past, the Trust has also supported other philanthropic endeavors in Bermuda and has significant philanthropic contributions to capital projects at universities in the United States. Without a change in circumstance, these important charitable programs will not be able to continue, let alone grow.*"

**The arguments and their analysis**

26.     The arguments for the Appellant SJTC may be summarized as follows, as taken from the speaking notes of counsel Mr Cumming QC:

- *SJTC seeks to set aside the November and December Orders to allow "proper judicial consideration and determination of the issues which they purport to resolve"*

- *Why does SJTC seek to achieve that?*

    (i)     *To safeguard properly the interest of all those who may be beneficially interested in the assets connected to the Trust (not just Mr and Mrs Brockman) particularly given the interests of charity, and in circumstances where the A-G does not support the course for which the hostile respondents contend. [Mr Cumming's contention here was clearly mistaken in light of the A-G's position actually taken on this appeal as explained above]*

    (ii)    *To ensure that matters that have (at the moment) purportedly been judicially determined are actually properly determined in accordance with the principles of natural justice.*

- *This is particularly important in the context of the DOJ investigation, and consequent indictment of Mr Brockman.  The DOJ opposes Mrs Brockman's proposed change of trustee. By contrast, the DOJ has no problem with SJTC or its directors.*

- *The matters purportedly decided by the November and December Orders need proper judicial scrutiny. The miscarriage of justice that took place at the hearings before Subair Williams J in November 2019 and December 2019 should be undone, and the matters she*

> *purportedly decided should be remitted for the proper scrutiny that they merit and demand at first instance."*

27. Mr Cumming in his submissions then proceeded to scrutinize the respective provisions of the November and December Orders to suggest that various findings in them were wrong in fact or principle, procedurally and substantively flawed and/or needed to be sent back to the Supreme Court for "proper scrutiny". He submitted that these findings included: (i) whether the proper law of the Brockman Trust had not in fact been effectively changed by the Deed of Retirement and Appointment and Indemnity ("**DORA**") of 1993 to that of Guernsey, although so decided at [2] of the November Order; (ii) whether Mr Lang had been properly appointed as Protector pursuant to declaration 17 and [27(2)] of the December Order; (iii) whether declaration 1 of the December Order- that the 1994 DORA was invalid and which carried the consequence of the validity of SJTC's subsequent appointment as successor trustee pursuant to the 1995 DORA being doubted at declaration 3 - was wrong; (iv) whether the discharge of SJTC and the appointment of Medlands to replace it as trustee at [18] of the December Order, and regarded by Subair Williams J as appropriate, among other things, to relieve the Brockman Trust of the historic uncertainties over doubtful appointments in the past, was nonetheless improperly premised.

28. It must be emphasised that the Orders were made in the Administration Proceedings in which all interested parties were notified or joined, including the Attorney General as protector of the charitable interests, as well as the former trustees whose past involvements with the Brockman Trust may have been clouded by uncertainty.

29. It was therefore immediately apparent that the submissions presented on the part of SJTC could hardly be regarded as presented in the interests of the beneficiaries of the Brockman Trust. If acceded to, the Orders would be set aside, SJTC would be restored however temporarily, as trustee and the Brockman Trust would be plunged back into to its former state of uncertainty. Accordingly, it was apparent that the arguments were being deployed, not in furtherance of perceived fiduciary obligations, but to buttress SJTC's primary complaint about breach of its right to a fair hearing in the Administration Proceedings, and thus, as the basis for the reconsideration by the Supreme Court in those proceedings of its removal and replacement by Medlands as trustee. It is trite law that a trustee does not have an entitlement to prolong his retention in his office as a trustee in his own interest.

30. Moreover, apart from SJTC's complaint about breach of its rights, there was no basis for any complaint that Subair Williams J, in the exercise of her otherwise undoubted jurisdiction validly invoked in the Administration Proceedings, had reached determinations which were other than properly open to her to reach. Rather, it was recognized and accepted that the learned judge had read, considered and was guided, not only by the submissions of all interested parties but also by the detailed and comprehensive Hagen/Hargreaves Opinion, which concluded in the following salient advisory terms:

> *"Next Steps*
> *140. In light of our conclusions herein that (among other things) SJTC is likely to be a trustee de son tort of a settlement which is (most probably still) a Bermuda trust, and*

> *given the further question as to the identity of the beneficiaries thereof and its protector, we have recommended that SJTC apply to the Supreme Court of Bermuda to obtain appropriate declarations, directions and other relief such as to place the trust on a proper and sustainable footing, and if acceptable to the court, to seek its appointment as trust. The scope and nature of that relief will be set out in the pleadings, evidence and argument advanced on the application in question."*

31.   As mentioned above, Subair Williams J had clear and compelling reasons for not affirming the appointment of SJTC as trustee, including the implications of Mr Tamine's ongoing ability to control SJTC (without, it must be noted, expressing any conclusions as to impropriety on his part). Indeed, SJTC had itself, through its counsel Mr Cumming, not proposed that it should be re-appointed, arguing instead that its "summary removal[4]" was wrong in principle, (citing *Lewin on Trusts, 20th ed* [14-084] and the case authorities discussed there) and that, like the other issues decided by the Orders, this subject also requires "proper scrutiny". And further, that it would be inappropriate without first instance adjudication by the Supreme Court, and beyond the statutory jurisdiction of this Court, for this Court to appoint BCT to replace Medlands, as proposed by Mrs Brockman with the support of the Protector and Medlands itself.

32.   Other concerns were raised *in arguendo* on behalf of Mr Tamine and SJTC about the suitability of BCT to be appointed trustee, such as whether it was sufficiently capitalized to meet the standards for appointment set in the Trust Deed and whether it physically carried on business in Bermuda so as to satisfy the domiciliary and governing law requirements of the Trust Deed and the concerns of the DOJ. These concerns, to the extent relevant for disposition of the appeal, were found by this Court to have been satisfactorily answered.

33.   For instance, it was explained by the BCT representatives, that trust administration would actually be carried out in Bermuda by Maples Trustee Services (Bermuda) Limited to comply with the strict requirements of the governing law provisions and in keeping with obligations arising under Bermuda law, including any which may arise as owing to the United States Government. Already, Mr Peter Goddard, a senior officer of Maples FS had offered, through U.S attorneys Cravath, Swaine & Moore LLP, to make himself available for interview by the DOJ, an offer to which, as at the date of the hearing before this Court, the DOJ had not yet responded. Against that background, the Court does not regard the issue of BCT's suitability for appointment as requiring further discussion here.

34.   And so, to the extent that it could complain in its own right (rather than seek to detract from the merits of BCT's appointment), the high-water mark of SJTC's arguments, was that its appeal should be allowed on the basis that Mr Gilbert had no authority to act on its behalf in the Administration Proceedings and on the basis also of its proclaimed right to a fair hearing in those Proceedings having been breached.

---

[4] Itself a patent mischaracterization of the process undertaken by Subair Williams J, involving as it did, hearing from all interested parties and the terms of the Orders having the support of all the parties (with the A-G maintaining a neutral stance). All of which is confirmed by a written ruling delivered by Subair Williams J on 23 July 2020 in the Administration Proceedings.

35.   In this regard, Mr Cumming presented rather fulsome arguments, citing authoritative and well-known (and indeed uncontroversial) dicta from the case law, only some examples of which it is necessary to mention here, and at that, only for the purpose of explaining the arguments themselves and considering the Respondents' in return. It was in the recognition of this true nature of SJTC's appeal, that this Court presented the issue to be addressed at the outset and those questions which we regard as being, in reality, engaged upon this appeal, as set out above at [13] and [14].

36.   Mr Cumming stressed that the right to a fair hearing is a cardinal principle of natural justice and that it is hard to conceive of a more fundamental right, or one that the courts are more careful to safeguard and vindicate. That any proposed interference with the principle merits exacting scrutiny and any determination tainted by a breach of natural justice should be set aside. Indeed, that it is a right which is enshrined at section 6(8) of the Constitution of Bermuda[5]. Further, that natural justice, and this constitutional right, mandates at its core, and as a bare minimum, that a party be afforded the opportunity to hear and, if it wishes to do so, rebut the case made against it.

37.   Reliance was placed upon Lord Neuberger's explanation of these facets of this right in ***Al Rawi v Security Service*** [2012] 1 AC 531 at [12], describing them as "*inherent*" in the principle of natural justice (emphasis added):

> "*Under the common law a trial is conducted on the basis that each party and his lawyers sees and hears all the evidence and all the argument seen and heard by the court. This principle is an aspect of the cardinal requirement that the trial process must be fair, and must be seen to be fair; it is inherent in one of the two fundamental principles of natural justice, the right to be heard (or audi alteram partem, the other rule being the rule against bias or nemo iudex in causa sua). As the Privy Council said in the context of a hearing which resulted in the dismissal of a police officer, in Kanda v Government of Malaya [1962] AC 322, 337: "If the right to be heard is to be a real right which is worth anything, it must carry withy it a right in the accused man to know the case which is made against him. He must know what evidence has been given and what statements have been made affecting him; and then he must be given a fair opportunity to contradict them.*"

38.   And further, upon Lord Kerr's explanation of the importance of the right to a fair trial and the effectiveness of the judicial task, also from ***Al Rawi*** at [93]:

> "<u>*To be truly valuable, evidence must be capable of withstanding challenge. I go further. Evidence which has been insulated from challenge may positively mislead.*</u> *It is precisely because of his that the right to know the case that one's opponent makes and to have the opportunity to challenge it occupies such a central place in the concept*

---

[5] Section 6(8) provides: "*Any court or other adjudicating authority prescribed by law for the determination of the existence or extent of any civil right or obligation shall be established by law and shall be independent and impartial; and where proceedings for such determination are instituted by any person before such a court or other adjudicating authority, the case shall be given a fair hearing within a reasonable time.*"

*of a fair trial. <u>However astute and assiduous the judge, the proposed procedure hands over to one party considerable control over the production of relevant material and the manner in which it is to be presented</u>. The peril that such a procedure presents to the fair trial of contentious litigation is both obvious and undeniable"* [as emphasized by Mr Cumming].

39.   Noting that this important dicta from ***Al Rawi*** has been endorsed and applied by this Court (per Kay JA) in ***Minister of Finance v AD*** [2015] CA (Bda) 18 Civ (12 June 2015), Mr Cumming then proceeded to urge its application to the present case, in the following terms from his written submissions, as the basis for setting aside the Orders:

> "*Kay JA's and Lord Kerr's concerns [(to ensure that a party affected has access to all relevant evidentiary material)] have obvious parallels to the present case. Plainly, <u>as the Appellant was not before the Court at either of the hearings</u>, the Appellant had no opportunity to (1) adduce evidence which it considered to be in the best interests of the Brockman Trust, or in its own interest, or (2) make any submissions of its own at the hearings at which the Orders were made or to respond to or scrutinize the material advanced before the Court by Mr Gilbert and/or Conyers [(who were joined as the former advisers to another predecessor trustee or trustee de son tort)] or the other parties before the Court for the benefit of both the Appellant, the Brockman Trust, and the Court*" [emphasis added]

40.   Leaving aside for present purposes any question of whether the right of any other party to a fair hearing might have been impaired (none complains), this proposition that SJTC's right to a fair hearing in the Administration Proceedings was breached, pivots narrowly - as the words in emphasis immediately above reveals - upon the proposition that Mr Gilbert participated only in his personal capacity, rather than on behalf of SJTC itself, in those proceedings. This is properly described as a precarious proposition on which to depend for the simple reason that (as Mr Machell QC submitted and this Court accepted), as at the date when the Administration Proceedings were commenced by summons issued by SJTC under Order 85 of the Rules of the Supreme Court (22 July 2019), it did so acting through its then sole director Mr Gilbert and at a time when he unquestionably had the requisite authority. Mr Gilbert became the sole director of SJTC on 28 September 2018, after Mr Tamine's resignation of the same date.

41.   The jurisdiction of the Supreme Court was, therefore, validly invoked and the 22 July 2019 summons was before the Court at the hearings on 1 November 2019 and 1 December 2019 when the Orders were made. This is in fact the case notwithstanding that the relief sought by way of removal of SJTC and its replacement by Medlands, was specifically the subject of a separate summons filed by Mr Gilbert on 10 December 2019, then purportedly acting on behalf of SJTC and even while failing to disclose his actions to Messrs Ferguson and Watlington (who had been by then appointed as directors of SJTC on 25 October 2019).

42.   And so, while this Court appreciates why the learned Chief Justice was troubled by Mr Gilbert's seemingly clandestine conduct[6], this Court could not accept that SJTC was not itself properly and effectively enjoined before the Supreme Court in the Administration Proceedings because Mr Gilbert's status as a director of SJTC (whether sole or together with Messrs Ferguson and Watlington), was subsequently brought into question by the determinations in the Judgment of 26 March 2020, as discussed above.

43.   SJTC, having effectively instituted the Administration Proceedings by Mr Gilbert on 22 July 2019, was bound by the outcome, which included the Orders. This must be so whether Subair Williams J was acting in those proceedings in the exercise of the statutory jurisdiction under the Trustee Act 1975, (the **"Trustee Act"**) or the inherent jurisdiction for the supervision of trusts, as will be examined below.

44.   This conclusion could be sufficient to dispose of SJTC's appeal, narrowly premised as this Court found it to be, upon the alleged breach of its right to a fair hearing. But there is more that needs to be said, if only briefly, given the true nature of the Administration Proceedings and the questions raised about the jurisdiction of this Court on an appeal from such proceedings.

45.   The issues of concern which prompted the institution of the Administration Proceedings were those discussed in the Hagen/Hargreaves opinion. The issues concerned (i) the true identity of the trustee of the Brockman Trust (ii) the proper law of the Trust and (iii) the true identity of the protector of the Trust.  It was therefore clearly imperative that the uncertainty about those issues be resolved.

46.   That uncertainty was resolved by the Orders by the exercise of the Supreme Courts' supervisory jurisdiction over trusts and, as regards the removal of SJTC and its replacement by Medlands, the statutory jurisdiction was also engaged. In considering this appeal against the Orders, this Court is also exercising similar jurisdiction over trusts and submissions to the contrary made on behalf of Mr Tamine by Mr Brownhill QC, were misplaced, for reasons to be further explained below. In arriving at the decision not only to dismiss the appeal but also to appoint BCT as trustee in place of Medlands, this Court considered that the following arguments, as presented by Mr Machel QC, on behalf of the Protector, Mr Lang, and Mr Treagear QC, on behalf of Mrs Brockman, were persuasive.

47.   By virtue of section 31(1) of the Trustee Act the court may, "*whenever it is expedient to appoint a new trustee or new trustees, and it is found inexpedient, difficult or impracticable to do so without the assistance of the court, make an order appointing a new trustee or new trustees..*" And, by section 31(2), the court "*may make an order appointing a new trustee in substitution for a trustee who is incapable... of exercising his functions as trustee ... or who for any reason whatsoever appears to the court to be undesirable as a trustee.*"

---

[6] Including, as the Chief Justice expressed, for the reason that the immediate commercial result achieved by the removal of SJTC and its replacement by Medlands appeared to be that Mr Gilbert would continue in his role as before but by means of his control of Medlands of which he was, at the time, the sole director and sole shareholder. See in this regard, the findings of the Chief Justice at [34] of his judgment of 14 December 2020 in the Corporate Proceedings.

48.     Under section 49 of the Trustee Act an application for an order appointing a new trustee may be made "*on an application of any person beneficially interested*" or "*on the application of any person duly appointed trustee*".

49.     These are the provisions invoked by Mrs Brockman in seeking the appointment of BCT by this Court on the basis that, in the circumstances of this case, it is obviously difficult and impractical for a new trustee to be appointed without the assistance of the Court for the purposes of section 31 of the Trustee Act. This is submitted to be so especially because the power to appoint new trustees lies with a resigning trustee (article VII-A) of the Trust Deed or the Protector (article VII-B). The appointment of the current trustee, Medlands, is challenged by the Appellant SJTC, as is the appointment of the Protector, Mr Lang. The only way to achieve the appointment of a trustee whose appointment puts the Trust on an unshakable footing and provides a solid datum point for the proper administration of the Trust going forward is, submitted Mr Tregear, by an application under section 31.

50.     The circumstances presented here, in the view of the Court, justify the invocation of the statutory power. This is a power which has been invoked on several occasions in the past in this jurisdiction; the authorities show that, in order to make an appointment, the court requires it to be demonstrated that the exercise of the power is "*expedient for the trust as a whole*". See, for instance ***In the Matter of the C Trust*** [2019] SC (BDA) 44 App (22 July 2019) per Hargun CJ at [17] and the cases cited there.

51.     The Court also has an indisputable inherent jurisdiction as part of its supervisory jurisdiction over trusts and which extends to the appointment and removal of trustees – see ***The Supervisory Jurisdiction over Trust Administration*** by Daniel Clarry[7], for an in depth commentary on the origins and evolution of the jurisdiction. The principles developed in the case law are instructive.

52.     In the exercise of the supervisory jurisdiction, the Court's principal duty is to see that the trusts are properly executed for the welfare of the beneficiaries. This has been settled principle for at least 137 years: see the judgment of the Privy Council in ***Lettersdedt v Broers (1884) 9 App. Cases 371,*** a case in which the question was whether the court should exercise its equitable supervisory jurisdiction to remove and replace trustees.

53.     The supervisory jurisdiction has been more recently reaffirmed at the highest level by the Privy Council in ***Schmidt v Rosewood Trust Ltd*** [2003] 2 AC 709, such that its existence ought now properly to be regarded as indisputable - the court has an inherent jurisdiction to supervise and, if necessary, intervene in the administration of trusts, (per Lord Walker at [51]).

54.     Accordingly, this appeal might not have been allowed by the Court to proceed as being only about SJTC's personal interests: trustees exist for the benefit of those to whom the creator of the trust has given the trust estate: see again ***Lettersdedt v Broers (***at 386) where the trustee was removed, not because allegations of fraud were found to be substantiated but because a history of friction

---

[7] Oxford University Press, First Edition.

with the beneficiaries was deemed likely to impede the proper administration of the trust. And, as was immemorially stated by Lord Nottingham in *Uvedale-v-Ettrick* (1682) 2 Ch Cas 130; 22 ER 880, addressing the recalcitrant trustee who seeks to cling to office against the wishes of the beneficiaries, as SJTC might be perceived to be doing here: "*I like not that a man should be ambitious of a Trust, when he can get nothing but trouble by it.*"

55.   And so the real question – indeed, the governing principle whenever the supervisory jurisdiction is invoked– is what is required for the welfare of the beneficiaries: *Letterstedt v Broers* at 389. See also, as so concluded in this jurisdiction in *Re X Trust [2018] SC (Bda) 56 Civ (12 July 2018)* per Kawaley CJ at [24] and [25] and in England and Wales in *The Pensions Regulator v Dalriada Trustees Ltd and others [2013] EWCH 4346 (Ch), [2013] WL 6229578* per Nugee J, at [28].

56.   It is also to be emphasized that the dispute enjoined in the Administration Proceedings is not ordinary adversarial litigation: see again, for instance *The Pensions Regulator v Dalriada* at [28]-[30].  And, from *Schumacher v Clarke* [2019] EWHC 1031 (Ch) per Chief Master Marsh at [18] in terms which this Court is content to approve and adopt: "*The jurisdiction is quite unlike ordinary inter partes litigation in which one party, of necessity, seeks to prove the facts (of) its cause of action against another party.*"

57.   And further, as to the *sui generis* nature of trust proceedings, from *Schumacher v Clarke* at [21(i)]: "*The claim is between the executors and trustees and the beneficiaries, but it is only in part about them. It is primarily about the estate, seen separately from the persons who are the custodians and the beneficiaries. As I have said, the claim* is *not an ordinary in personam claim*".

58.   The procedure to be adopted in trust administration proceedings is in the discretion of the Court and informed by the interests of the beneficiaries. The Court proceeds in a pragmatic way. This will mean avoiding what may fairly be regarded as an expensive and protracted battle, given the history of litigation attending the Brockman Trust. See *Schumacher* at [20] and [24], citing the decision of Lawrence Collins J (as he then was) in *Green and Others v Gaul and Others* [2005] WTLR 1325 at [199] and Evans-Lombe J in *Dobson v Hayman* [2010] WTLR 1151 at [26].  And further from *Schumacher* at [33] and [34]: "*As to the mode of trial, it hardly needs to be emphasised that it is for the court to control the way in which claims are disposed of, whether at a trial or a more limited hearing. It is not open to the parties to demand a full trial, or to demand a certain number of days for a trial ... When dealing with such issues, the court firmly has in mind the provisions of the overriding objective. These include, of course, the importance of the case and its complexity. These also include, however, the desirability of expedition and the need for fairness.*"

59.   Taking the foregoing principles in mind, I can fairly summarise the realities in the present case as follows:

a. There was a protracted litigation or a "battle royal" between, on the one hand, SJTC, Mr Tamine, Mr Ferguson and Mr Watlington and, on the other, Medlands and Mr Gilbert enjoined in the Corporate Proceedings. Given the questions raised over the validity of Medlands' appointment as trustee, it was clearly in the interests of the Trust and its

beneficiaries as a whole that Medlands be replaced. Medlands agreed with this proposition.

b. There are serious and ongoing proceedings by the trust against Mr Tamine for misappropriation. Yet, if SJTC were reinstated as trustee of the Brockman Trust, Mr Tamine, despite being obviously conflicted, could potentially regain control of SJTC through his control of Cabarita.

c. There is also the DOJ investigation into tax fraud that includes matters relating to the way in which the trust was operated at a time when SJTC was the trustee. The DOJ submitted to the Chief Justice in the Corporate Proceedings that SJTC was at the heart of the alleged fraud. Mr Tamine is encamped against the interests of the Brockman Trust in the investigation.

d. The current circumstances are impeding the proper operation of the Trust and its charitable activities, as explained by Mrs Brockman.

e. Objectively, the situation cried out for the appointment of a new independent professional trustee. As Mr Machell QC on behalf of the Protector, Mr Lang, and Mr Treager QC on behalf of Mrs Brockman, submitted, that was what the welfare of the beneficiaries demands. The contrary was not properly arguable. Indeed, it was notable that, throughout, SJTC was conspicuously silent about its own reappointment. Nor was it likely to be more assertive in this regard, in light of the concessionary tone of Mr Cumming's remarks before the Chief Justice on 3 November 2020 in the Corporate Proceedings, recognizing even then, that a new appointment would be in the best interests of the Trust.

f. As a matter of record, it should be noted as well that the human beneficiaries support BCT Limited's appointment - Mrs Brockman, who as mentioned above, was eventually appointed to act as representative by order in the New Proceedings, speaks for them.

g. BCT Limited is a subsidiary of Maples FS, a well-regarded, regulated international trust and corporate management business: this, as shown above, is as averred by Mrs Brockman in her first affidavit. On her behalf, Hurrion & Associates wrote to Marshall Diel & Myers (who act on behalf of SJTC) on 30 December 2020, giving notice of the New Proceedings (without prejudice as to whether SJTC was entitled to such notice) in the following terms:

> "*You will see [(from the enclosed pleadings)] that our client makes the application in her capacity as a discretionary beneficiary of the Trust for the replacement of the First Defendant, Medlands, as trustee of the Trust with BCT Limited (**BCT**). BCT is a company incorporated in the Cayman Islands and is a controlled subsidiary of Maples FS (**Maples FS**). Maples FS is a well-regarded, regulated and professional institutional trustee licensed in the Cayman Islands and subject to the regulation of the Cayman Islands Monetary Authority (**CIMA**). The Protector and the Attorney General have also been joined as Defendants. Your client has not been joined because it is a stranger to the Trust. Without prejudice to that fact, we will provide you with reasonable notice of the hearing date for our client's application.*

*We have previously invited your client to take a realistic position in relation to this application and we now urge your client to accept and agree that the appointment of BCT is overwhelmingly and obviously in the best interests of the Trust. The Trust is presently in a state of illiquidity. This jeopardises its charitable operations and the overall management of the Trust's substantial assets. The position needs to be rectified as quickly as is reasonably possible. Now that BCT has been identified as a fit, proper and willing institutional trustee to operate under the Maples FS global brand, it is demonstrably in the best interests of the Trust for our client's application to proceed consensually. We do not consider there could be any reasonable basis on which your client could object to such an appointment.*

*Without prejudice to the fact that your client's views as to the identity of a replacement trustee are immaterial, we nevertheless request confirmation that your client supports or, at least has no objection to the appointment of BCT as trustee of the Trust. In the unlikely event that your client does object to BCT, we request that you provide a detailed explanation and legal basis for the objection. Obviously, a mere desire by your client to cling to its office and be reappointed as trustee would not constitute a reasonable or principled basis for objection to BCT. As we have previously explained, there are no circumstances in which our client could consent to your client having any future connection of any kind with the Trust.*"

60.    At the hearing, the Court was informed by Mr Machell QC that, up until then, SJTC had not stated a position despite having received that letter.

61.    The Court proceeded on the basis that, in all the attendant circumstances, it had the jurisdiction to determine that it is in the interests of the beneficiaries that BCT Limited is appointed as trustee and to do so without having to find one way or the other whether SJTC (or for this purpose Mr Tamine or Medlands itself), has acted inappropriately.

62.    The Court determined, especially in light of the following, that it was clearly not appropriate that SJTC be the trustee in the circumstances which have arisen:

(i)     It is contrary to the interests of the beneficiaries for Mr Tamine to have any control or influence over the trust. This would be possible, despite his protestations and undertakings (belatedly proffered in these proceedings in his 3rd affidavit at [9]), not to interfere with the appointments of Mr Ferguson and Mr Watlington.  Mr Tamine has control or at least influence over SJTC, and the fact that Mr Ferguson and Mr Watlington its current directors, are professionals of good standing, is the Court accepted, beside the point. Mr Tamine, through Cabarita, has control or influence over hiring and firing and remuneration, and, as sole director of Cabarita (SJTC's shareholder), he remains in a position where he could expect to discuss trust matters with Mr Ferguson and Mr Watlington and be provided with information. An undertaking of the kind very belatedly proffered does not meet the fundamental issue of Mr Tamine's potential influence.

(ii)    In any event, as the Court also accepted, Messrs Ferguson and Watlington are simply

strangers and newcomers to the trust, having no relevant experience or knowledge. As a new trustee had to be engaged to administer the trust, it was clearly better that they are independent and uninfected by the "battle royal".

63.   And further as regards Mr Tamine personally:

(i)    There are outstanding claims against him in the Tangarra proceedings, which puts him in a position of hopeless conflict of interests.

(iii)   It is understandably a matter of concern to the Protector and Mrs Brockman, that, on his own evidence filed in the Administration Proceedings, he would regard his actions formerly taken in the administration of the affairs of the Brockman Trust (when he was director of SJTC) as having lacked independence for having been taken at the behests of Mr Brockman and so bringing into question SJTC's independence as trustee and perhaps implicitly, the true discretionary nature of the Trust: see his 1st affidavit, for example at paragraphs 62, 78, 97, 99 and 142.

64.   With the foregoing conclusions explained, it remains only for the Court to address the issue of jurisdiction as raised by Mr Brownbill QC on behalf of Mr Tamine. He did so, despite the well-known and settled principles discussed above, in the following terms taken (albeit excerpted only in part) from his written submissions:

"*No jurisdiction to entertain an application to appoint a new trustee*

*1.  Even if there had been a properly constituted application supported by evidence made to this Court for the appointment of a new trustee, this Court has no jurisdiction to entertain that application.*

*2.  When is s 8(1) [f the Court of Appeal Act] engaged and what is its purpose? The section provides as follows:*

"*Subject to this Act and any Rules, in the determination of appeals before it, the Court of Appeal shall have all the powers and duties conferred or imposed on the Supreme Court in the exercise of its original or appellate jurisdiction.*" *[Mr Brownbill's emphasis]*

*3.  The wording of the subsection makes it clear that although the range of powers that may be exercised by the Court of Appeal is just as broad as those which may be exercised by the Supreme Court, the jurisdiction to exercise those powers is being granted for a specific purpose and is not entirely at large.*

*4.  Thus, the exercise of the powers defined in section 8(1) arises only "in the determination of appeals before it". The powers can be used only for the purpose of determining the instant appeal. In the present case, if the appointment of BCT were to go ahead in the manner proposed, the Court of Appeal would not be*

*determining the appeal but avoiding it.*

5. *It follows that the powers conferred on the Court of Appeal by section 8(1) must be exercised for matters which are ancillary and incidental to the particular appeal before it. The section does not provide an unlimited jurisdiction for the Court of Appeal to take control of and determine any issue which might arise generally in the proceedings giving rise to the appeal.*

6. *The jurisdiction has not been granted to enable the Supreme Court to be bypassed or to avoid having to consider the substance of an appeal, which is what Mr Lang and Mrs Brockman are asking the Court of Appeal to do [(by way of appointing BCT now)]."*

65. Mr Brownbill QC then cited a judgment of the English Court of Appeal in **Ocean Software v Kay** [1992] QB 583 (CA) dealing with the revocation and remaking of ex parte injunctions, a case which this Court regarded as having no bearing on the appeal. The reason will be apparent from the very summary of that decision provided by Mr Brownbill himself at [23] of his submissions:

*"In **Ocean Software v Kay** the plaintiff successfully appealed the refusal of its application for an ex parte injunction, and obtained the injunction, ex parte, from the Court of Appeal. Thereafter, the plaintiff made a further application to the Court of Appeal for additional injunctive relief and the respondent applied directly to the Court of Appeal for a full discharge of the injunction. The Court of Appeal refused to entertain either application on jurisdictional grounds and also for reasons of practicality".*

66. And further, from the judgment of Scott LJ given on behalf of the Court of Appeal:

*"Where the Court of Appeal has granted an injunction, whether ex parte or inter partes, it may very well be necessary for one or other of the parties to the appeal to come back to the Court of Appeal for some point of clarification or variation of the terms of the order that has been made. I would suppose that the Court of Appeal's jurisdiction to deal with such matters falls within section 15(3) of the [(Supreme Court)] Act. But, on the other hand, <u>an application for relief which arises out of an order that the Court of Appeal has made but which is not strictly ancillary to the appellate function that the Court was exercising in making the order and which cannot be described as either the amendment or the execution or the enforcement of the order ought not, in my opinion, to be made to the Court of Appeal. In such a case the Court of Appeal, as it seems to me, would not have jurisdiction to entertain the application."</u>* [emphases added by Mr Brownbill QC].

67. The words from Lord Justice Scott's judgment emphasized by Mr Brownbill QC above, explain why the issue engaged and the reasoning in the case has no applicability upon this appeal. What this Court is engaged upon, is not an application for relief arising from an earlier order of the Court itself which is "*not strictly ancillary to the appellate function*", but an appeal from determinations

below in the Supreme Court taken in the context of the exercise of the special and unique jurisdiction of the Courts for the supervision of trusts. As regards the appointment of BCT, the question is whether this Court has the jurisdiction to make that appointment while otherwise dismissing the appeal.

68.     The position contended for by Mr Brownbill QC on behalf of Mr Tamine would be one where, although this Court would undoubtedly have the jurisdiction to dismiss SJTC's appeal, (as it did), it would be obliged to do so while leaving Medlands in place as trustee because of a supposed lack of jurisdiction to appoint a new trustee (BCT). This would be so even while Medlands had given notice of its resignation and even while, as Mr Tamine himself contends, it would be inappropriate to do so while Mr Gilbert, himself embroiled in the battle royal in the Corporate Proceedings, remained in charge of Medlands.

69.     Such an outcome would clearly be untenable and not at all in the interests of the Trust and its beneficiaries in whose interests the supervisory jurisdiction ought properly to be exercised.

70.     And so, for the sake of completeness and in final answer to this jurisdictional argument, it is to be noted that under section 8 of the Court of Appeal Act 1964, this Court, (like the English Court of Appeal under the Supreme Court Act of 1981) in the determination of appeals before it, has all the powers and duties conferred or imposed on the Supreme Court in the exercise of its original or appellate jurisdiction.

71.     The manner of the exercise of the powers is explained by Court of Appeal Rules, rule 25:

> "*The Court shall have power to give any judgment or make any order that ought to have been made, and **to make such further or other order as the case may require** including any order as to costs. These powers may be exercised by the Court, notwithstanding that the appellant may have asked that part only of a decision may be reversed or varied, and **may also be exercised in favour of all or any of the respondents or parties**, although such respondents or parties may not have appealed from or complained of the decision.*" (Emphases added)

72.     The Court therefore accepted that it could - as both Mr Machell QC and Mr Treager QC argued - determine that it is in the interests of the beneficiaries and the Trust as a whole, for BCT to be appointed as trustee in place of Medlands and made the appointment order, to that effect in exercise of the trust supervisory jurisdiction as well as the powers under the Trustee Act.

73.     The Court also concluded that SJTC had been effectively removed as trustee of the Brockman Trust by the 19 December 2019 Order and became a stranger to the Trust having no further right of audience or relief thereafter in the Administration Proceedings. SJTC could not therefore properly invoke the jurisdiction of this Court on an appeal from those proceedings for the vindication of personal rights to a fair hearing which it claims were breached in those proceedings for want of effective representation in them – a claim which, in any event, was found to have no basis in fact.

74.    Accordingly, these are the reasons for our dismissal of the appeal and our previous order. We have previously directed that we will hear the parties as to costs of the appeal by way of written submissions, not exceeding 15 pages, to be submitted within 14 days of the delivery of these reasons.

**GLOSTER JA:**

75.    For the reasons expressed by my Lord the Acting President, I agree.

**SIMMONS JA:**

76.    I also agree.

# EXHIBIT 17

IN THE SUPREME COURT OF BERMUDA
CIVIL JURISDICTION

THE HONOURABLE JUSTICE SUBAIR WILLIAMS (IN CHAMBERS)

FRIDAY 26 MARCH 2021

2018: NO. 376

IN THE MATTER OF THE "B" TRUST

BETWEEN

(1)  MEDLANDS (PTC) LIMITED
(in its capacity as Trustee of the B Trust)

<u>Plaintiff</u>

and

(1)    ST JOHN'S TRUST COMPANY (PVT) LIMITED
(2)    THE ATTORNEY GENERAL
(3)    ROBERT THERON BROCKMAN
(4)    BERMUDA TRUST COMPANY LIMITED
(5)    HSBC PRIVATE BANK (CI) LIMITED
(6)    MARTIN LANG
       (in his capacity as Protector of the B Trust)
(7)    GROSVENOR TRUST COMPANY LIMITED
(8)    EVATT ANTHONY TAMINE
(9)    DOROTHY KAY BROCKMAN

<u>Defendants</u>

(the **"376 proceedings"**)

2020: no. 476

IN THE MATTER OF THE TRUST SETTLED BY A EUGENE BROCKMAN ON 26 MAY 1981 FOR
THE BENEFIT OF HIS CHILDREN AND CHARITIES

AND IN THE MATTER OF THE TRUSTEE ACT 1975

BETWEEN:

DOROTHY KAY BROCKMAN

<u>Plaintiff</u>

and

(1)    MEDLANDS (PTC) LIMITED
       (in its capacity as Trustee of the B Trust)
(2)    THE ATTORNEY GENERAL
(3)    MARTIN LANG
       (in his capacity as Protector of the B Trust)
(4)    BCT LIMITED

<u>Defendants</u>

(the **"476 proceedings"**)

## ORDER

UPON the Court of Appeal having directed (on the appeal of the 1st Defendant in the 376 proceedings) that Medlands (PTC) Limited ("**Medlands**") be discharged as trustee of the above-mentioned (the "**Trust**") and replaced by BCT Limited (a company incorporated in the Cayman Islands with company number 368764 – "**BCT**"") with effect from such date and on such terms as might be directed by Justice Subair Williams

AND the application of the Plaintiff in the 476 proceedings ("**Mrs Brockman**") by Originating Summons dated 31 December 2020 for the appointment of BCT in place of Medlands having been superseded by such direction of the Court of Appeal

AND UPON HEARING counsel for Medlands, the Attorney General, Martin Lang, Mrs Brockman and BCT (together the "**parties**")

AND BCT by its counsel confirming that it is willing to be appointed as trustee of the Trust on such terms as this Court shall direct and that it irrevocably submits to the jurisdiction of this Court in relation to the administration of the Trust

**IT IS HEREBY ORDERED** that:

**Representation Order**

1.   The Plaintiff be appointed pursuant to Order 15, rule 13 of the Rules of the Supreme Court 1985 to represent the interest in these proceedings of:

> (a)  Thomas David Brockman;
>
> (b)  Victoria Brockman;
>
> (c)  Robert Theron Brockman;
>
> (d)  Robert Theron Brockman II and his minor son.

**Date and terms of transfer of trusteeship**

2.   The date on which Medlands shall be discharged as trustee of the Trust and replaced as trustee by BCT pursuant to the direction of the Court of Appeal of shall be 1 April 2021 (the "**Transfer Date**").

3.   The terms on which Medlands is to be discharged as trustee of the Trust and replaced as trustee by BCT are as set out below and in the Schedule to this Order subject to such further directions as may be given by Subair-Williams J on her determination of the issues which were the subject of submissions made to her at the hearing on 26 March 2021.

4.      Nothing in this order shall have the effect of waiving, limiting or excluding any rights (including its equitable lien and the right to enforcement thereof) which Medlands has or may in future have as former trustee of the Trust.

**Transfer of assets to BCT Limited**

5.      With effect from the Transfer Date, there shall vest in BCT Limited (to be held by it upon the terms of, subject to and on behalf of the Trust):

> (a)  all property held on the terms of, subject to, and on behalf of the Trust standing in the name of Medlands and the right to receive any dividends or other income now due and to accrue thereon, and

> (b)  the right to sue and recover any thing in action held by Medlands upon the terms of, subject to, and on behalf of, the Trust

6.      All trust funds held to the order of Medlands as trustee of the Trust by any third party, including without limitation any law firm or service provider, shall from the Transfer Date be held to the order of BCT

7.      Medlands shall take all reasonable steps necessary to give effect to this Order and to transfer any assets held for or on behalf of the Trust to BCT (as trustee of the Trust).  BCT shall reimburse Medlands for its reasonable costs incurred in complying with its obligations under this paragraph.

**Future of the proceedings**

8.      Subject to paragraph 11, the 476 proceedings are stayed.

**Costs**

9.      All parties' costs of this hearing shall be paid from the Trust.

10.     BCT shall be entitled to raise and pay from the Trust the costs and expenses incurred by BCT in preparation for its appointment as trustee of the Trust.

**Liberty to Apply**

11.     The parties shall have liberty to apply.

*By Order*

**DATED** this          *day of*  March 202

*The Court*

*Registrar*

**The Honourable Justice Subair Williams**

## SCHEDULE

1.    **Interpretation**

In this Schedule where the context so admits:

1.1    **Advice:** any advice reasonably requested by Medlands following the date of the Order, whether under an agreement or engagement dated prior to, or after, the date of the Order, in respect of anything done or omitted to be done by Medlands as trustee of the Trust (including for the avoidance of doubt any advice reasonably sought after the date of the Order on the enforceability or scope of this Schedule or the rights generally of Medlands, and any legal advice or representation reasonably required for the purposes of enforcing or seeking to enforce the terms of this Schedule or any other rights of Medlands against the New Trustee or its successors or in respect of any Trust property, including any non-possessory lien);

1.2    **Advice Costs:** all costs reasonably incurred for any Advice obtained by Medlands;

1.3    **Assistance Costs:** any fees, costs and expenses due to Medlands under paragraph 2.2 of this Schedule but subject to the condition in paragraph 2.3 of this Schedule.

1.4    **Business Day:** any day other than a Saturday, Sunday or public holiday in Bermuda;

1.5    **Capital Amount:** the capital of the Trust Fund or any part thereof that is transferred to a Transferee in excess of an aggregate limit of $1 billion over the six years following the date of this Order;

1.6    **Claim:** any action, claim or proceedings in any jurisdiction brought against Medlands as trustee of the Trust in relation to or any way connected with the Trust including any action, claim or proceedings which may be brought against Medlands by St John's Trust Company Limited, Evatt Tamine, Glenn Ferguson, James Watlington or any person associated with or connected to them;

1.7    **Claim Costs:** the reasonable legal and other costs and expenses incurred by Medlands in respect of any Claim, including, for the avoidance of doubt, any orders for costs or other relief (whether interim or final) made by a court in the course of or by way of final determination of the action, claim or proceedings;

1.8    **Conyers Indemnity:** the indemnity dated 7 July 2020 provided by Medlands to Conyers Dill & Pearman Limited;

1.9    **Directors:** means the present directors of Medlands, Kiernan Jane Bell and Darren Stainrod;

1.10    **Director Indemnities**: the indemnity agreements entered into by Medlands on 26 October 2020 for the benefit of the Directors;

1.11    **Gilbert Indemnity**: the indemnity dated 5 June 2020 provided by Medlands to James Gilbert;

1.12    **Indemnities**: the Conyers Indemnity, the Director Indemnities and the Gilbert Indemnity only to the extent that each is a valid, effective and enforceable obligation;

1.13    **Indemnity Costs**: in respect of the Indemnities, any sums properly payable by Medlands instead of the New Trustee;

1.14    **Indemnified Persons**: Medlands and the Directors and their respective personal representatives, heirs and estates;

1.15    **Investigation**: the investigation by the Department of Justice of the United States (the "**DoJ**") against Mr Robert Brockman, the indictment and prosecution of Mr Brockman, any possible civil actions by the DoJ or the Internal Revenue Service of the United States (the "**IRS**") against Mr Brockman, and all related matters including enquiries made by the DoJ or IRS of Medlands or the New Trustee or any of its or their past, present or future directors, officers or employees;

1.16    **Investigation Costs**: insofar as not covered by Advice Costs, any costs arising in respect of the Investigation reasonably incurred by Medlands;

1.17    **Liabilities**: all actions, proceedings, accounts, claims and demands (and all costs and expenses incurred in connection therewith) which may be brought or made, or threatened to be brought or made, by any person in connection with the trusts of the Trust or in any way relating thereto or to the capital or income of the Trust Fund from time to time, in respect of a period or event falling wholly or partly after or prior to the date hereof, including without prejudice to the generality of the foregoing:

    1.17.1    any claims or demands arising or made at any time for taxes, duties or other fiscal liabilities by the revenue or other authorities of any government in any part of the world (including interest, penalties, costs, charges and expenses or other sums incurred in connection therewith) on or in respect of the capital or income of the Trust Fund or any part thereof, or in respect of any property transferred by or to or under the control of the trustee or trustees from time to time of the Trust or any person interested under the Trust;

    1.17.2    any Advice Costs;

    1.17.3    any Investigation Costs;

    1.17.4    any Claim Costs;

1.17.5      any Assistance Costs;

1.17.6      any claims by the Directors under the Director Indemnities, including any Indemnity Costs provided that the Director Indemnities are valid, effective and enforceable obligations;

1.17.7      any payments or sums due under the Gilbert Indemnity, including any Indemnity Costs provided that the Gilbert Indemnity is a valid, effective and enforceable obligation;

1.17.8      any payments or sums due under the Conyers Indemnity, including any Indemnity Costs provided that the Conyers Indemnity is a valid, effective and enforceable obligation;

1.17.9      subject to the provisos in  1.12, 1.17.7 and 1.17.8, any threatened or actual actions, claims or proceedings against Medlands for breach of the Gilbert Indemnity or the Conyers Indemnity;

1.17.10     any matters arising out of distributions to charitable commitments previously made by Medlands;

1.17.11     all actions, liabilities and costs arising from the proceedings before the Supreme Court of Bermuda known as the 2018: No. 376 proceedings; and

1.17.12     all actions, liabilities and costs arising from the proceedings before the Supreme Court of Bermuda known as the 2019: No. 447 proceedings,

provided that Liabilities shall not include any liabilities arising as a result of actual fraud, intentional wrongdoing or negligence on the part of Medlands.

1.18    **New Trustee:** BCT Limited;

1.19    **Order:** the above Order

1.20    **Transferee:** any person receiving any transfer of capital of the Trust Fund as a beneficiary or to hold as a trustee, and for the purposes of this Schedule:

1.20.1      a person shall be taken as receiving a transfer of capital of the Trust Fund as a beneficiary or as a trustee if there is any kind of disposition of or devolution of or vesting of that capital to or in that person or a nominee for that person (whether or not previously acting as a nominee for the New Trustee) or any other person at the direction of that person or if capital of the Trust Fund becomes held by the New Trustee in the capacity of trustee of another trust (whether alone or together with any other trustee of that trust), and references in this Schedule to transfer of any capital of the Trust Fund shall be construed accordingly;

1.20.2      if, upon an appointment of a trustee of the Trust in addition to the New Trustee or in place of the New Trustee, capital is transferred (within the meaning of paragraph 1.20.1) to the New Trustee and that additional trustee, the Transferee shall be taken as being the New Trustee and that additional trustee;

1.20.3      upon any capital of the Trust Fund being transferred (within the meaning of paragraph 1.20.1) to the New Trustee as trustee of another trust (whether alone or together with any other trustee of that trust), the Transferee shall be taken as being the New Trustee or, as the case may be, the New Trustee and the other trustee of that trust;

1.21      expressions defined in the Trust Deed have the same meanings;

## 2      Acts on and following Transfer Date

2.1      Medlands shall execute or procure the execution of all documents and take all such other action as is necessary for the vesting of the Trust Fund in the New Trustee on or as soon as reasonably practicable after the Transfer Date;

2.2      Subject to the condition set out in 2.3, Medlands shall provide reasonable assistance to the New Trustee upon request including, where reasonably possible, providing documents or information orally or in writing, providing witness statements or affidavits or attending any court or equivalent hearing and giving evidence, or engaging with or meeting with the DoJ;

2.3      Medlands shall only be obliged to comply with paragraph 2.2. if the New Trustee agrees to pay a reasonable fee for this work and to paid its reasonable costs and expenses (including the costs of obtaining such legal advice as is reasonably necessary) incurred in connection that work;

2.4      Nothing in paragraph 2.2 shall limit in any way the duty as a matter of Bermuda law on the part of Medlands to provide information and documents to the New Trustee.

## 3      Indemnity

3.1      BCT and its successors will at all times hereafter fully and effectually indemnify and keep indemnified and hold harmless the Indemnified Persons and each of them against all and any Liabilities provided that:

3.1.1      this paragraph 3 shall not apply in respect of Liabilities of which Medlands first notifies the New Trustee after the sixth anniversary of the date of the Order;

3.1.2      subject to paragraph 3.1.4 the extent of the liability of the New Trustee under this paragraph 3 shall be limited to the value of the assets of the Trust Fund in the possession of or under the control of the New Trustee from time to time;

3.1.3        this paragraph 3 shall not apply to Liabilities in respect of which Medlands does not substantially comply with the requirements contained in paragraph 3.2, so far as it is reasonably practicable for Medlands to do so;

3.1.4        if a Capital Amount is transferred to a Transferee, the liability of the New Trustee shall extend (in addition to the value referred to in paragraph 3.1.2) to the value at the date of the transfer of the Capital Amount concerned, unless:

        3.1.4.1      the Transferee is owed an obligation which has arisen before the date of the Order and which is properly dischargeable from the Trust and a Capital Amount is transferred in satisfaction of that obligation;

        3.1.4.2      the Transferee is a trustee of the Trust and indemnifies and keeps indemnified and holds harmless the Indemnified Persons, whether by way of direct covenant with Medlands or by way of covenant with the New Trustee or any other person for the benefit of the Indemnified Persons, on terms substantially similar to those contained in this paragraph 3 and the provisos to it with ancillary provisions substantially similar to those contained in paragraphs 3.2, 3.3, 3.4, and 5.3 (as though references to the New Trustee were references to the Transferee giving that indemnity), or on such other terms as may be approved in writing by Medlands, such approval not to be unreasonably withheld;

        3.1.4.3      the Transferee is a trustee of another trust and indemnifies and keeps indemnified and holds harmless the Indemnified Persons, whether by way of direct covenant with Medlands or by way of covenant with the New Trustee or any other person for the benefit of the Indemnified Persons, on terms substantially similar to those contained in this paragraph 3 and the provisos to it with ancillary provisions substantially similar to those contained in paragraphs 3.2, 3.3, 3.4, and 5.3, as though references herein to the Trust Fund were references to the trust fund of that other trust so far as consisting of or derived from the Capital Amount concerned (and as though references herein to the New Trustee were references to the Transferee giving that indemnity), or on such other terms as may be approved in writing by Medlands or its successors, such approval not to be unreasonably withheld;

3.1.4.4    the Transferee is a beneficiary and indemnifies and keeps indemnified and holds harmless the Indemnified Persons, whether by way of direct covenant with Medlands or by way of covenant with the New Trustee or any other person for the benefit of the Indemnified Persons, on terms substantially similar to those contained in this paragraph 3 with ancillary provisions substantially similar to those contained in paragraphs 3.4 and 5.3, to the extent of the value of the Capital Amount concerned at the date of the transfer to the Transferee and subject to further limitations substantially similar to those contained in paragraph and 3.1.1 as though the reference in paragraph 3.1.1 to the New Trustee were a reference to that beneficiary and his successors or personal representatives at his or their last known address (but without any limitations of the kind contained in paragraphs 3.1.2 to 3.1.5), or on such other terms as may be approved in writing by Medlands or its successors, such approval not to be unreasonably withheld; or

3.1.4.5    such arrangements other than those mentioned in any of paragraphs 3.1.1 and 3.1.2 are entered into for the protection of the Indemnified Persons in relation to the Capital Amount concerned as may be agreed in writing between the New Trustee or its successors, Medlands or its successors and the Transferee;

3.1.5    if a Capital Amount is transferred to a Transferee, the New Trustee shall use all reasonable endeavours to ensure that the respective indemnities or direct covenants from the Transferee set out in paragraph 3.1.4.2-5 above are provided to or for the benefit of Medlands;

3.1.6    the New Trustee or its successors shall as soon as reasonably practicable notify the Outgoing Trustee or its successors of the existence of:

3.1.6.1    any appointment of a trustee of the Trust in place of (or in addition to) the New Trustee;

3.1.6.2    any Capital Amount other than any Capital Amount which falls within paragraph 3.1.4; and

3.1.6.3    any indemnities or arrangements entered into under paragraph 3.1.3 or paragraph 4.1.4;

and, subject to such confidentiality undertakings by Medlands or its successors as the New Trustee or any other trustee of the Trust for the time being may reasonably require, shall provide Medlands or its successors on request with certified copies of the documents containing them and such other information relating to them as Medlands or its successor, may reasonably require.

3.2     The requirements referred to in paragraph 3.1.3 are as follows:

    3.2.1     Medlands notifies the New Trustee of Liabilities in respect of which Medlands may be entitled to indemnity hereunder as reasonably practicable after becoming aware of the same;

    3.2.2     Medlands makes no admission of liability of any sort nor gives any undertaking, offer or promise in respect thereof nor makes any payment in respect thereof, nor enters into any correspondence or negotiations in respect thereof, without the prior written consent of the New Trustee, such consent not being unreasonably withheld or delayed; and

    3.2.3     the New Trustee is allowed, on providing Medlands with such security as Medlands may reasonably require for its potential liability in respect thereof, if it so desires to take over the conduct and defence thereof (together with any other person who may be so entitled and so desire pursuant to any indemnities or arrangements entered into under paragraph 3.1.4.1, 3.1.4.3 and 3.1.4.5).

3.3     Furthermore:

    3.3.1     the New Trustee and its successors shall automatically be discharged from all liability to Medlands under this Schedule to the extent that:

        3.3.1.1     they comply with their obligations under this Schedule in favour of the Indemnified Persons;

        3.3.1.2     any one or more of the conditions referred to in paragraph 3.1.4.1 to 3.1.4.5 are satisfied in relation to all Capital Amounts; and

        3.3.1.3     they have notified Medlands or its successors of such compliance (and satisfaction);

    3.3.2     paragraph 3.3.1 does not prejudice the continuing application of the obligations of the New Trustee under this Schedule in relation to any part of the Trust Fund which may for the time being remain in the possession or under the control of the New Trustee; and

3.3.3     if the New Trustee has been discharged under paragraph 3.3.1 and the whole of the Trust Fund has ceased to be under the control or in the possession of the New Trustee, paragraph 3.1.3 and paragraph 3.2 shall cease to have effect, but without prejudice to any successor to those provisions taking effect by virtue of indemnities or arrangements entered into pursuant to paragraph 3.1.4.1, 3.1.4.3 and 3.1.4.5.

3.4     The Indemnified Persons may each in their own right enforce the foregoing provisions for indemnity notwithstanding that they are not all parties to the 476 proceedings and shall have liberty to apply for that purpose pursuant to paragraph 11 of the Order.

**4     Notice**

4.1     Any notice or other communication given in connection with the terms set out in this Schedule shall:

4.1.1     be in writing, in the English language;

4.1.2     in the case of a notice to Medlands, sent by email to the Zobec Group at AEBCT@zobec.bm, the Directors at kiernanbell@me.com and Darren@marbury.ky, and Macfarlanes LLP at medlands@macfarlanes.com, or such other address or email address as Medlands may give notice of to the New Trustee; and

4.1.3     in the case of a notice to the New Trustee, sent by email to Peter Goddard at Peter.Goddard@maples.com and Errin.Echenique@maples.com, or such other address or email address as the New Trustee may give notice of to Medlands.

4.2     Any notice provided in accordance with this paragraph 4 shall be deemed to have been served the following Business Day after sending by email.

4.3     It shall be enough:

4.3.1     to show that any notice was correctly addressed, to determine whether that notice reached the recipient; and

4.3.2     to show the date on which a notice was emailed, to determine the day on which it was despatched or sent.

**5     General**

5.1     No failure to exercise and no delay in exercising on the part of either party any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the

exercise of any other power or right.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law.

5.2     The terms of this Schedule may be varied by agreement between Medlands and BCT. No variation of this Schedule shall be considered valid unless such variation shall have been made in writing and signed by or on behalf of Medlands and BCT.  The expression "variation" shall include any variation, supplement, deletion or replacement however effected.

5.3     For the avoidance of doubt, nothing in this Schedule shall prejudice any non-possessory lien which Medlands might have or acquire.

**IN THE SUPREME COURT OF BERMUDA**
**CIVIL JURISDICTION**

**THE HONOURABLE JUSTICE SUBAIR WILLIAMS (IN CHAMBERS)**

**FRIDAY 26 MARCH 2021**

2018: NO. 376

IN THE MATTER OF THE "B" TRUST

BETWEEN

(5)  MEDLANDS (PTC) LIMITED
(in its capacity as Trustee of the B Trust)                          Plaintiff

and

(6)     ST JOHN'S TRUST COMPANY (PVT) LIMITED
(7)     THE ATTORNEY GENERAL
(8)     ROBERT THERON BROCKMAN
(9)     BERMUDA TRUST COMPANY LIMITED
(10)    HSBC PRIVATE BANK (CI) LIMITED
(11)    MARTIN LANG
        (in his capacity as Protector of the B Trust)
(12)    GROSVENOR TRUST COMPANY LIMITED
(13)    EVATT ANTHONY TAMINE
(14)    DOROTHY KAY BROCKMAN                           Defendants

(the "376 proceedings")

2020: No. 476

IN THE MATTER OF THE TRUST SETTLED BY A EUGENE BROCKMAN ON 26 MAY 1981 FOR THE BENEFIT OF HIS CHILDREN AND CHARITIES

AND IN THE MATTER OF THE TRUSTEE ACT 1975

BETWEEN:

DOROTHY KAY BROCKMAN

<u>Plaintiff</u>

and

| | | |
|---|---|---|
| (15) | MEDLANDS (PTC) LIMITED | |
| | (in its capacity as Trustee of the B Trust) | |
| (16) | THE ATTORNEY GENERAL | |
| (17) | MARTIN LANG | |
| | (in his capacity as Protector of the B Trust) | |
| (18) | BCT LIMITED | |

<u>Defendants</u>

(the "476 proceedings")

ORDER



**Hurrion & Associates Ltd**
The Waterfront, 94 Pitts Bay Road
Pembroke, HM 08, Bermuda
T (441) 405-2068
**Attorneys for the Plaintiff**

# EXHIBIT 18

| Form **3520** (Rev. Nov 1974) Department of the Treasury Internal Revenue Service | United States Information Return **Creation of or Transfers to Certain Foreign Trusts** (Under section 6048 of the Internal Revenue Code) (See instructions on reverse   Attach additional sheets if more space is needed.) | All information must be in the English language. Show amounts in **United States dollars.** |
|---|---|---|

Name of United States person(s) filing return

Alfred Eugene Brockman

Identifying number(s)

Address of person filing return (Number and street)

1922 Woodvine

City or town, State and ZIP code

Houston, Texas  77055

1  Title of person filing return (Check applicable box.)
   X Grantor  ☐ Transferor  ☐ Fiduciary of an estate in the case of testamentary trust

2  If fiduciary of an estate, give name and social security number of the decedent

3  Name of the trust
   A. Eugene Brockman Children's Trust

4  Foreign country under whose laws the trust was created
   Bermuda

5  Name and business address of foreign trustee(s)
   Bermuda Trust Company United
   Hamilton, Bermuda

| 6  Name of beneficiary | Address of beneficiary | Date of birth (see instructions) | Identifying number, if any |
|---|---|---|---|
| (a) Robert Theron Brockman | 903 Oak Valley HouTx 024 | 5-28-41 | |
| (b) Dorothy Kay Brockman | 903 Oak Valley HouTx 024 | 5-29-42 | |
| (c) Thomas David Brockman | 9738 Kempwood HouTx 77055 | 8-7-47 | |
| (d) Victoria Brockman | 9738 Kempwood HouTx 77055 | 7-26-50 | |
| (e) Any charitable organization under the laws of Bermuda, United States, or Great Britain | | | |
| (f) | | | |
| (g) | | | |

7  Date of the creation of the trust . . . . . . . . . . . . . . . . . . . . .   May 26, 1981
8  (a) Date of transaction for which return is being filed . . . . . . . . . . .   May 26, 1981
   (b) Amount of money or value of property transferred . . . . . . . . . . . .   $25,000.00

9  Name and address of the person(s) creating the trust
   Alfred Eugene Brockman
   1922 Woodvine
   Houston, Texas  77055

10  Date of termination, or if no date determinable, attach a statement describing the conditions which will cause the trust to terminate.
   See Statement #1

11  Is trustee required to distribute all trust income currently? . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☒ No
   If "Yes," the information required on line 12 need not be furnished.

12  Attach statement with respect to **each** beneficiary showing his right to receive income or corpus, or both, his proportionate interest in the income or corpus, or both, and any condition governing the time a distribution to him may be made, such as a specific date or age. In lieu of such a statement, a copy of the trust instrument may be submitted.   See Statement #2

13  Attach statement showing a detailed list of the property transferred to the foreign trust in the transaction for which the return is being filed, containing a complete description of each item transferred, its adjusted basis and fair market value on the date transferred, and the consideration, if any, paid by the foreign trust for such transfer.   See Statement #3

Form **3520** (Rev. 11-74)

Form 3520 (Rev. 11-74)

**14** Name and address (Number and street, city or town, country) of person(s) having custody of the books of account and records of the foreign trust

Bermuda Trust Company, Ltd.
Hamilton, Bermuda

**15** Location of the books of account and records if different than above

---

**Signature and Verification.—**Under penalties of perjury, I declare that I have examined this return, including any accompanying reports, schedules, or statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Date ▶ Aug 24    Signature ▶ C. Eugene Brockman    Title ▶ Grantor

## Instructions

**Who must file.—**Except as stated in section 16.3-1(d)(4) of the regulations governing payments to foreign trusts for employees, the grantor in the case of an inter vivos trust, the fiduciary of an estate in the case of a testamentary trust, or the transferor, as the case may be, must file this form on or before the 90th day after (1) the creation of any foreign trust by a United States person or (2) the transfer of any money or property to a foreign trust by a United States person.

If any person is not the real party in interest as to the money or property transferred but is merely acting for a United States person, the information required shall be furnished in the name of and by the actual owner of such money or property, except that a fiduciary of an estate shall file information relating to the decedent.

**Definitions.—**A "United States person" includes a citizen or resident of the United States, a domestic corporation, a domestic partnership, and any estate or trust (other than a foreign estate or foreign trust the income of which, from sources without the United States which is not effectively connected with the conduct of a trade or business within the United States, is not includible in gross income under subtitle A of the Internal Revenue Code).

The term "transferor" refers to any United States person other than the person who is the grantor or the fiduciary, who transfers money or property to or for the benefit of a foreign trust. It does not refer to a person who transfers money or property pursuant to a sale or an exchange which is made for full and adequate consideration.

**Identifying number.—**Social security numbers identify individual persons and estates of decedents. Employer identification numbers identify trusts, partnerships, corporations, and similar nonindividual persons. If an estate is required to file Form 1041, please report the employer identification number in addition to the decedent's social security number.

**Beneficiaries.—**Information must be furnished with respect to each beneficiary who is either named in the instrument or whose identity is definitely ascertainable at the time the return is filed. The date of birth must be furnished only for beneficiaries who are United States persons and whose rights under the trust are determined, in whole or in part, by reference to their age.

**Where to file.—**Unless an extension of time to file is received, this return must be filed on or before the 90th day after the creation of or the transfer of any money or property to any foreign trust with the Internal Revenue Service Center, 11601 Roosevelt Boulevard, Philadelphia, Pennsylvania 19155.

**Returns jointly made.—**If two or more persons are required to file this return with respect to the joint creation of a foreign trust or the joint transfer of any money or property to a foreign trust, any two or more of such persons may, in lieu of filing several returns, jointly execute and file one return.

**Multiple transfers.—**If a United States person creates more than one foreign trust or transfers money or property to more than one foreign trust, separate returns must be filed with respect to each foreign trust when returns are required. If a United States person transfers money or property to a foreign trust at different times, separate returns must be filed with respect to each transfer when returns are required, except that he may file a single return with respect to all transfers made by him during any 90-day period, so long as the return is filed on or before the 90th day after the earliest transfer in any such period, and includes the information with respect to each transfer.

**Penalties.—**A 5% penalty, not to exceed $1,000, is imposed by section 6677 for failure to file timely, or failure to report the required information, unless due to reasonable cause. Criminal penalties for failure to file timely and for filing a false or fraudulent return are provided by sections 7203, 7206, and 7207.

**Signature.—**If this return is filed by an individual (including a fiduciary), it must be signed by such individual. If filed by a partnership, it must be signed by one of the partners. If filed by a corporation, it must be signed either by the president, vice president, treasurer, assistant treasurer, chief accounting officer, or by any other corporate officer (such as tax officer) who is authorized to sign.

☆ U.S. GOVERNMENT PRINTING OFFICE: 1974—O—548-205    73—0768032

A. Eugene Brockman Children's Trust
Supporting Statements
Form 3520

Statement #1, Line 10

The Trust period expires twenty-one (21) years after the death of
the last survivor of the settlor, the persons specifically identified
by name in Article V in the Trust, and all descendants of his late
Majesty King George V of England living on the date of the trust.

Statement #2, Line 12

Each beneficiary is a discretionary beneficiary having no right
to receive income or corpus and having no ascertainable proportionate
interest in income or corpus.  Distributions to the beneficiaries are
wholly within the discretion of the Trustee.

Statement #3, Line 13

Property contributed was $25,000.00 in cash.

# EXHIBIT 19

1      **IN THE UNITED STATES DISTRICT COURT**
       **FOR THE SOUTHERN DISTRICT OF TEXAS**
2               **HOUSTON DIVISION**

3    UNITED STATES OF AMERICA      )        NO. 4:21-CR-09
                                   )
4                                  )
     VS.                           )        Houston, Texas
5                                  )     1:06 p.m. to 5:10 p.m.
                                   )
6    ROBERT T. BROCKMAN            )        NOVEMBER 17, 2021

7

8        ********************************************************

9                    **COMPETENCY HEARING**

10                   **AFTERNOON SESSION**

11       **BEFORE THE HONORABLE GEORGE C. HANKS, JR.**

12              **UNITED STATES DISTRICT JUDGE**

13                       **DAY 3**

14

15       ********************************************************

16   APPEARANCES:

17   FOR THE GOVERNMENT:

18       Mr. Corey J. Smith
         Mr. Lee F. Langston
19       Mr. Boris Bourget
         Mr. Christopher Magnani
20       U.S. Department of Justice
         Tax Division
21       150 M Street NE
         Room 2208
22       Washington, DC 20002
         Tel:  202-514-9623
23       Email: Corey.smith@usdoj.gov
         Email: Lee.f.langston@usdoj.gov
24              Boris.bourget@usdoj.gov
                Christopher.magnani@usdoj.gov
25

```
 1  FOR THE DEFENDANT:

 2       Mr. Jason Scott Varnado
         Jones Day
 3       717 Texas
         Suite 3300
 4       Houston, TX 77002
         Tel:  832-239-3694
 5       Email:  Jvarnado@jonesday.com

 6       Mr. James P. Loonam
         Ms. Kathryn Keneally
 7       Jones Day
         250 Vesey Street
 8       New York, NY 10281
         Tel:  212-326-3939
 9       Email: Jloonam@jonesday.com
                Kkeneally@jonesday.com
10

11  COURT REPORTER:

12       Ms. Kathleen K. Miller, CSR, RMR, CRR
         515 Rusk, Room 8004
13       Houston, Texas  77002
         Tel:  713-250-5087
14

15  Proceedings recorded by mechanical stenography.

16  Transcript produced by computer-assisted transcription.

17

18

19

20

21

22

23

24

25
```

1                              INDEX

2  **EVATT TAMINE**

3          Cross by Mr. Varnado                         5
           ReDirect by Mr. Langston                    28
4          ReCross by Mr. Varnado                      53

5
   **THOMAS WISNIEWSKI, M.D.**
6
           Direct by Mr. Loonam                        55
7          Cross by Mr. Magnani                        90
           ReDirect by Mr. Loonam                     161
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PM 3-5

*EVATT TAMINE - CROSS BY MR. VARNADO*

1    **A.**   That's correct.

2    **Q.**   And I'm correct that an entity named Regency owns

3    those properties in Colorado?

4    **A.**   That is correct.

01:07:13   5    **Q.**   And you are the director of the trust company that

6    serves as the trustee for the entity that owns Regency; is

7    that fair?

8    **A.**   Yes.

9    **Q.**   Okay.  Now, the companies within Regency that own

01:07:23   10   these properties in Colorado are U.S. companies.  Correct?

11   **A.**   That's right.

12   **Q.**   All right.  And the Mountain Queen is owned by

13   Mountain Queen, Inc., a Colorado company?

14   **A.**   That's correct.

01:07:33   15   **Q.**   All right.  And the other Colorado properties are

16   owned by Hinkey Property, LLC, which is owned by Hinkey

17   Holdings, both of which are Colorado companies?

18   **A.**   Yes.

19   **Q.**   All right.  And, as U.S. companies, these entities

01:07:44   20   are known and have exposure to the Internal Revenue

21   Service?

22   **A.**   That's correct.

23   **Q.**   Now, at one point after you assumed role of trustee

24   for the AEBCT, Mr. Brockman was paying rent on a per-usage

01:07:58   25   basis for the Mountain Queen.  Correct?

PM 3-6

*EVATT TAMINE - CROSS BY MR. VARNADO*

1   **A.**   That's correct.

2   **Q.**   All right.  And, as trustee for the AEBCT, you told

3   Mr. Brockman that he actually needed to pay rent on these

4   properties year-round instead of on a per-use basis

01:08:10   5   because no one else was using those properties.  Correct?

6   **A.**   One part of that is incorrect.  You said trustee, the

7   AEBCT.  That has nothing to do with those properties.

8   That trust has no part in the ownership of those -- of

9   those properties.

01:08:24   10   **Q.**   Thank you for that clarification.  That was a

11   misstatement on my part.  I appreciate that.

12              So, for the trust entity that does own

13   those properties, in any -- which is not the AEBCT, as we

14   just established.

01:08:38   15   **A.**   That's correct.

16   **Q.**   But you had informed Mr. Brockman that it would be

17   appropriate for him to pay year-round rent on that

18   property, the Mountain Queen, instead of just on a per-use

19   basis.  Correct?

01:08:48   20   **A.**   That's correct.

21   **Q.**   All right.  And he agreed to this requirement?

22   **A.**   Yes.

23   **Q.**   And the rent is based on a fair market value?

24   **A.**   Yes.  Assessed -- we re-assess it every year.

01:09:01   25   **Q.**   That was my next question --

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

*EVATT TAMINE - CROSS BY MR. VARNADO*

1    other people to use?

2    **A.**   Yes.

3    **Q.**   Okay.  All right.  So, I want to -- I think you made

4    some statements both to the Grand Jury and in your

01:18:04   5    meetings with the government.  It's fair to say that

6    Mr. Brockman has some level of distrust with certain

7    agencies within the federal government?

8    **A.**   That's correct.

9    **Q.**   And in particular the IRS?

01:18:12  10    **A.**   Yes.

11    **Q.**   And I think you said that, in your view, Mr. Brockman

12    viewed the IRS as part of the deep state?

13    **A.**   I'm not sure about the phrase "deep state."  He -- he

14    viewed them with distrust.  He didn't believe that the IRS

01:18:25  15    is an organization that behaved properly, or at times,

16    lawfully.

17    **Q.**   And, in fact, believed that the IRS may seek to

18    inappropriately assess income tax that he, in his mind,

19    believed did not owe income tax on?

01:18:38  20    **A.**   That's correct.

21    **Q.**   All right.  And I guess the fact that Mr. Brockman

22    has a distrust of the IRS is not, in and of itself, a

23    crime itself.

24    **A.**   No, not that I'm aware of.

01:18:48  25    **Q.**   And do you have an understanding that Mr. Brockman 's

PM 3-18

*EVATT TAMINE - CROSS BY MR. VARNADO*

1    distrust of the IRS may have stemmed from an audit

2    experience that Mr. Brockman had in the 1990s?

3    **A.**   I believe it's stemmed -- well, in my experience, in

4    discussions with him, from two things:  certainly an audit

01:19:03   5    experience in the 1990s, and the experience of someone he

6    worked with at Reynolds and Reynolds who had a bad

7    experience with them.

8    **Q.**   In an audit of their affairs?

9    **A.**   I believe it was in an audit of their affairs, yes.

01:19:15   10   **Q.**   And, in fact, your first introduction to Mr. Brockman

11   stems from that audit that I referenced from the 1990s.

12   Is that fair?

13   **A.**   That's correct.  Yes.

14   **Q.**   And that's when you were a lawyer working for Cox

01:19:25   15   Hallett when you first learned of or met Mr. Brockman in

16   around 1999 or 2000?

17   **A.**   Yes.

18   **Q.**   All right.  And part of your duties for the law firm

19   at that time:  You helped respond to requests for

01:19:36   20   information concerning the AEBCT as a result of that audit

21   that was going on back in the '90s?

22   **A.**   Yes.  It was an information request from the IRS.

23   **Q.**   And part of your job was to respond with information

24   that should be turned over as a result of that inquiry?

01:19:51   25   **A.**   Yes.

*EVATT TAMINE - CROSS BY MR. VARNADO*

1    **Q.**   All right.  And one of the documents you said that

2    should be turned over to the IRS was the trust indenture

3    document setting up the AEBCT?

4    **A.**   That's correct.

01:20:00    5    **Q.**   And in connection with this audit, then, the IRS

6    gained visibility into the structure of the AEBCT at that

7    time?

8    **A.**   Yes.

9    **Q.**   So, you were asked some questions about some

01:20:12   10    donations and some questions about Baylor University and

11    Baylor Medical College, and want to be just very clear on

12    the timing of some of those discussions.  All right?

13    Because I think you were shown a document -- a particular

14    government exhibit that had a 2015 date on it and then we

01:20:28   15    jumped back in time to the establishment of the actual

16    25-million-dollar donation.  So, I just want to orient you

17    in time.  Okay?

18              So, I am showing you what's been marked as

19    Government's Exhibit 16 -- I am just going to put it on

01:20:39   20    the ELMO here -- and it's dated June 5th of 2011.  And can

21    you see it on -- I am not going to ask you a lot of

22    questions.  You don't need to be looking at the binder if

23    you can read it --

24    **A.**   Just my eyesight is not great; so, I'll get up close.

01:20:57   25    **Q.**   As long as you can see it.

*EVATT TAMINE - CROSS BY MR. VARNADO*

1          MR. VARNADO:  I can ask him if he said this,

2  Your Honor.

3          THE COURT:  You can ask him and you can always

4  use it for impeachment.

01:27:52  5          MR. VARNADO:  Sure.

6  BY MR. VARNADO:

7  **Q.**   Mr. Tamine, did you state, "At no time while I was

8  working for Mr. Brockman did I believe that Mr. Brockman

9  was engaged in criminal tax evasion as alleged in the

01:28:00  10  indictment?"

11  **A.**   Yes.

12  **Q.**   And just this weekend did you tell the United States

13  government that you believed that Mr. Brockman is, quote,

14  innocent of the charges?

01:28:07  15  **A.**   Yes.

16  **Q.**   And did you tell the United States government that,

17  quote, Mr. Brockman did everything properly?

18  **A.**   I believe so, yes.

19  **Q.**   And that he, I quote, never took a cent, end quote,

01:28:19  20  from the AEBCT?

21  **A.**   That's right.

22  **Q.**   And you also told the government that some of the

23  information in the indictment is factually wrong?

24  **A.**   To my mind, yes.

01:28:28  25  **Q.**   And did you tell the United States Government that

*EVATT TAMINE - REDIRECT BY MR. LANGSTON*

1   the bank fraud case against Mr. Brockman is, and I quote,

2   crap?

3   **A.**   I don't think I used the word "crap."

4   **Q.**   It's in the memo I received.

01:28:37  5   **A.**   Oh, I am -- I might have said something else.  A lot

6   of bunk or something.  I don't think I used -- I might

7   have said crap.  I don't recall saying it.

8   **Q.**   Crap or bunk?

9   **A.**   Yeah.

01:28:46  10  **Q.**   One of the two?

11  **A.**   Yes.

12          MR. VARNADO:  Okay.  Pass the witness.

13          THE COURT:  Redirect?

14          MR. LANGSTON:  Yes, Your Honor.

01:28:54  15                  **REDIRECT EXAMINATION**

16  By MR. LANGSTON:

17  **Q.**   Mr. Tamine, let's explore your belief that you

18  believed everything that you did was legal.

19              And if I understand your testimony, you

01:29:14  20  believed it was legal both in Bermuda and in the United

21  States?

22  **A.**   I -- I don't know about the U.S.  I can only talk

23  about Bermuda.

24  **Q.**   Okay.  But you didn't view yourself as a criminal?

01:29:25  25  **A.**   No.

PM 3-167

```
 1              COURT REPORTER'S CERTIFICATE

 2

 3      I, Kathleen K. Miller, certify that the foregoing is a

 4 correct transcript from the record of proceedings in the

 5 above-entitled matter.

 6

 7 DATE: 11/20/21            /s/    _Kathleen K. Miller

 8                           Kathleen K. Miller, RPR, RMR, CRR

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

05:10:11

# EXHIBIT 20

07:57:22

1              UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF TEXAS

3                      — — —

   THE HONORABLE GEORGE C. HANKS, JR., JUDGE PRESIDING
4
   ──────────────────────────────────────────────────
   USA,                        No. 4:21-CR-00009-1
5
                   Plaintiff,
6
   vs.
7
   ROBERT T. BROCKMAN,
8
                   Defendant.
9
   ──────────────────────────────────────────────────
        COMPETENCY HEARING -- DAY 3 AM SESSION
10
      OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS
11
                  Houston, Texas
12
            WEDNESDAY, NOVEMBER 17, 2021
13
   ──────────────────────────────────────────────────
14 APPEARANCES:
   For the Plaintiff:   COREY J. SMITH, DOJ
15
                        CHRISTOPHER MAGNANI, DOJ
16
                        LEE F. LANGSTON, DOJ
17
                        BORIS BOURGET, DOJ
18
   For the Defendant:   JASON S. VARNADO, ESQ., Attorney
19                       at Law

20                       COLLEEN O'CONNOR, ESQ., Attorney
                         at Law
21
                         JAMES P. LOONAM, ESQ., Attorney
22                       at Law

23                       KATHRYN KENEALLY, ESQ., Attorney
                         at Law
24

25 For the              n/a
   Interpreter:

1
   Reported by:       Sean Gumm, RPR, CRR
2
                   Official Court Reporter
                   United States District Court
3
                   Southern District of Texas
                   sean_gumm@txs.uscourts.gov
4

5
Proceedings recorded by mechanical stenography.
 Transcript produced by Reporter on computer.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    INDEX OF WITNESSES

 2

 3                                                    PAGE

 4  ROBERT DENNEY, (For the Government)

 5       Cross-Examination Resumed By Mr. Loonam:       12

 6  CRAIG MOSS, (For the Government)

 7       Direct Examination By Mr. Langston:            60

 8       Cross-Examination By Ms. Keneally:             84

 9  EVATT TAMINE, (For the Government)

10       Direct Examination By Mr. Langston:            92

11       Cross-Examination By Mr. Varnado:             153

12

13

14

15                      --o0o--

16

17

18

19

20

21

22

23

24

25

26

27

28
```

SEAN W. GUMM, CSR #13168, RPR, CRR

PEOPLE vs ROBERT T. BROCKMAN, CASE NO. 4:21-CR-00009-1
*** Reproduction only per Govt. Code §69954(d) ***

12:10:55  1    Q.   In fact, you told the Government this weekend

12:10:57  2    that Mr. Brockman, and I quote, "Never took a cent

12:11:01  3    out of the trust," the AEBCT?

12:11:03  4    A.   That's correct.

12:11:04  5    Q.   Now, the most significant asset of the AEBCT is

12:11:07  6    Reynolds and Reynolds; correct?

12:11:08  7    A.   Yes.

12:11:09  8    Q.   That's a US-based company?

12:11:10  9    A.   Yes.

12:11:11  10   Q.   And it's owned by Universal Computer Systems

12:11:15  11   Holdings; right?

12:11:16  12   A.   Yes.

12:11:16  13   Q.   You are aware that entity files US taxes?

12:11:18  14   A.   Yes.

12:11:19  15   Q.   And the same for Reynolds and Reynolds; it

12:11:22  16   files US taxes also?

12:11:23  17   A.   Yes.

12:11:24  18   Q.   And then, again, Dealer Computer Services,

12:11:27  19   which is in the hierarchy, that is also a US entity?

12:11:30  20   A.   Yes.

12:11:31  21   Q.   That files US taxes?

12:11:32  22   A.   Yes.

12:11:32  23   Q.   All right.  So while you were a director at

12:11:35  24   St. John's Trust Company, during the last eight

12:11:38  25   years or so is when you had the director position --

1                    C E R T I F I C A T E

2

3

4            I hereby certify that pursuant to Title 28,

5   Section 753 United States Code, the foregoing is a

6   true and correct transcript of the stenographically

7   reported proceedings in the above matter.

8            Certified on 11/17/2021.

9

10

11   Sean Gumm, RPR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25