# GOV

# EXHIBIT

# 31

## Form 668(Y)
(Rev. February 2004)

**Department of the Treasury - Internal Revenue Service**

# Notice of Federal Tax Lien

| Area: 5 | Serial Number 438676221 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517182
09/09/2021   RP1   $11.00

**Name of Taxpayer**
ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357.38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

| Place of Filing COUNTY CLERK HARRIS COUNTY HOUSTON, TX 77251 | Total | $1,418,272,371.71 |
|---|---|---|

This notice was prepared and signed at FORT WORTH, TX, on this, 2nd day of SEPTEMBER, 2021

| Signature V.C. SANDLES *V.C. Sandles* Employee # 1000229640 | Title REVENUE OFFICER Phone # 817-232-6316 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Internal Revenue Svc
8701 S. Gersner 5434 HAL
Houston, TX 77074

Part 1 - Recording Office

Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

**Government Exhibit 31**

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
   I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris
County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

# Form 668(Y)(c)
(Rev. February 2004)

**Department of the Treasury — Internal Revenue Service**

## Notice of Federal Tax Lien

| Area: 5 | Serial Number 438762921 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517183
09/09/2021   RP1   $11.00

**Name of Taxpayer**
DOROTHY K. BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357.38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

The lien(s) identified on this special condition Notice of Federal Tax Lien attaches/attach to the following property: see attachment.

| Place of Filing COUNTY CLERK HARRIS COUNTY HOUSTON, TX 77002 | Total | $1,418,272,371.71 |
|---|---|---|

**This notice was prepared and signed at FORT WORTH, TX, on this, 9th day of SEPTEMBER, 2021**

| Signature V.C. SANDLES Employee #2504-3436 | *V.C. Sandles* | Title REVENUE OFFICER Phone # 817-232-6316 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office     Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

IRS
8701 S. Gessner 5434 IRL
Houston, TX 77074

## ATTACHMENT TO NOTICE OF FEDERAL TAX LIEN

This exhibit is an attachment to the Notice of Federal Tax Lien, dated September 9, 2021 for DOROTHY K. BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN.

Description of Property:

The property to which the federal tax lien attaches includes, but is not limited to, real properties listed below, as well as all proceeds, increases, substitutions, replacements, additions, and accessions to those assets:

COMMON ADDRESS:  3465 OVERBROOK LANE, HOUSTON, TX 77027

LEGAL DESCRIPTION:

Lots One (1) and Two (2), LESS the Easterly ten (10) feet of Lot Two (2), in Block Sixty-two (62) of RIVER OAKS, SECTION SEVEN (7), a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 14 Page 38 of the Map Records of Harris County, Texas. 

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

# Form 668(Y)(c)
(Rev. February 2004)

**Department of the Treasury - Internal Revenue Service**

## Notice of Federal Tax Lien

| Area: 5 | Serial Number 438762221 | *For Optional Use by Recording Office* |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517184
09/09/2021 RP1 $11.00

**Name of Taxpayer**
DOROTHY K. BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357,38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

The lien(s) identified on this special condition Notice of Federal Tax Lien attaches/attach to the following property: see attachment.

| **Place of Filing** COUNTY CLERK HARRIS COUNTY HOUSTON, TX 77002 | **Total** | $1,418,272,371.71 |
|---|---|---|

This notice was prepared and signed at FORT WORTH, TX, on this, 9th day of <u>September,</u> 2021.

| **Signature** V.C. SANDLES   *V.C. Sandles* Employee #2504-3436 | **Title** REVENUE OFFICER Phone # 817-232-6316 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

/125
8761 S. Gessner 5434(pn) L
Houston TX 77074

Part 1 – Recording Office    Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

ATTACHMENT TO NOTICE OF FEDERAL TAX LIEN

This exhibit is an attachment to the Notice of Federal Tax Lien, dated September 9, 2021 for DOROTHY K. BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN.

Description of Property:

The property to which the federal tax lien attaches includes, but is not limited to, real properties listed below, as well as all proceeds, increases, substitutions, replacements, additions, and accessions to those assets:

COMMON ADDRESS:  333 WEST FRIAR TUCK LANE, HOUSTON, TX 77024

LEGAL DESCRIPTION:

All that certain 4.0568 acre tract of land situated in the E.B. CogswellSurvey, Abstract Number 785, Harris County, Texas; said 4.0568 acre tract of land being the same property described in Deed dated October 10, 1991 from Prentis B. Tomlinson, Jr. and wife, Sally Emsinger Tomlinson to Alfred L. Deaton, III and Elizabeth Evans Deaton as recorded under Harris County Clerk's File Number N-365621, Film Code Number 004- 94-1666 in the Official Public Records of Real Property in Harris County, Texas;  and

All that certain 4.0771 acre tract of land situated in the E.B. Cogswell Survey, Abstract Number 785, Harris County, Texas; said 4.0771 acre tract of land being the same property called 4.563 acres as described in Exhibit "A " of Deed dated March 1, 1976 from Houston Realty Sales Company to Prentis B. Tomlinson, Jr., and wife, Barbara Tomlinson as recorded under Harris County Clerk's File Number E-707429, Film Code Number 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 in the Official Public Records of Real Property in Harris County, Texas; said 4.0771 acre tract of land being now occupied by a lake created by the present darn on Niernann's Branch (also known as Carter Lake); further described by metes and bounds documented under instrument 516973297, recorded 2/17/1998, with Harris County, Clerk, Houston, Texas

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
  I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris
County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

# Form 668(Y)(c)
(Rev. February 2004)

Department of the Treasury — Internal Revenue Service

## Notice of Federal Tax Lien

| Area: 5 | Serial Number 438765021 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517185
09/09/2021   RP1   $11.00

**Name of Taxpayer**
ELIZABETH BELLOWS BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357,38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

The lien(s) identified on this special condition Notice of Federal Tax Lien attaches/attach to the following property: see attachment.

| Place of Filing COUNTY CLERK HARRIS COUNTY HOUSTON, TX 77002 | Total | $1,418,272,371.71 |
|---|---|---|

This notice was prepared and signed at FORT WORTH, TX, on this, 9th day of SEPTEMBER, 2021

| Signature V.C. SANDLES *V.C. Sandles* Employee #2504-3436 | Title REVENUE OFFICER Phone # 817-232-6316 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office          Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

rhs
Ret: 8701 S. Gessner S484 HAL
Houston, TX 77074

## ATTACHMENT TO NOTICE OF FEDERAL TAX LIEN

This exhibit is an attachment to the Notice of Federal Tax Lien, dated September 9, 2021 for ELIZABETH BELLOWS BROCKMAN AS NOMINEE OF ROBERT T. BROCKMAN.

Description of Property:

The property to which the federal tax lien attaches includes, but is not limited to, real properties listed below, as well as all proceeds, increases, substitutions, replacements, additions, and accessions to those assets:

COMMON ADDRESS: 3702 INWOOD DRIVE, HOUSTON, TX 77019

LEGAL DESCRIPTION:

LOT 10, BLOCK 85, OF RIVER OAKS, SECTION II, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 18, PAGE 14, OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
   I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

**Form 668(Y)(c)**
(Rev. February 2004)

Department of the Treasury – Internal Revenue Service

# Notice of Federal Tax Lien

| Area: 5 | Serial Number 438756521 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517186
09/09/2021   RP1   $11.00

**Name of Taxpayer**
FISHERIES RESEARCH FOUNDATION Ltd. AS ALTER-EGO OF ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357,38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

| Place of Filing COUNTY CLERK HARRIS COUNTY HOUSTON, TX 77002 | Total | $1,418,272,371.71 |
|---|---|---|

This notice was prepared and signed at FORT WORTH, TX, on this, 9th day of SEPTEMBER, 2021

| Signature V.C. SANDLES *V.C. Sandles* Employee #2504-3436 | Title REVENUE OFFICER Phone # 817-232-6316 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office          Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

IRS
Ret: 8701 S Gessner 5434 HAL
Houston, TX 77041

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris
County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

Case 4:22-cv-00202  Document 21-8  Filed on 01/31/22 in TXSD  Page 15 of 84

# Form 668(Y)(c)
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service
## Notice of Federal Tax Lien

| Area:<br>5 | Serial Number<br>438758221 | *For Optional Use by Recording Office* |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of $1,418,272,371.71 these taxes, and additional penalties, interest, and costs that may accrue.

RP-2021-517187
09/09/2021  RP1  $11.00

**Name of Taxpayer**
HARDWICKE PROPERTIES L.L.C. AS ALTER-EGO OF ROBERT T. BROCKMAN

**Residence**
333 W. FRIAR TUCK LN
HOUSTON, TX 77024

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period Ending<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 200412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $302,227,035.55 |
| 1040 | 200512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $112,440,309.09 |
| 1040 | 200612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $123,514,274.31 |
| 1040 | 200712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $7,487,357,38 |
| 1040 | 201012 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $283,762,611.22 |
| 1040 | 201212 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $52,109,560.33 |
| 1040 | 201312 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $86,034,881.48 |
| 1040 | 201412 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $31,997,046.09 |
| 1040 | 201512 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $116,960,668.21 |
| 1040 | 201612 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $50,280,143.49 |
| 1040 | 201712 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $217,901,484.52 |
| 1040 | 201812 | XXX-XX-3444 | 09/07/2021 | 10/07/2031 | $33,557,000.04 |

| Place of Filing<br>COUNTY CLERK<br>HARRIS COUNTY<br>HOUSTON, TX 77002 | **Total** | $1,418,272,371.71 |
|---|---|---|

**This notice was prepared and signed at FORT WORTH, TX, on this, 9th day of SEPTEMBER, 2021**

| Signature<br>V.C. SANDLES  *V.C. Sandles*<br>Employee #2504-3436 | Title<br>REVENUE OFFICER<br>Phone # 817-232-6316 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office          Form **668(Y)(c)** (Rev. 2-2004) CAT. NO 60025X

Ret.  IRS
8701 S. Gessner  5434 HAL
Houston, TX 77074

FILED FOR RECORD

11:23:14 AM

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK, HARRIS COUNTY, TEXAS

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time
stamped hereon by me; and was duly RECORDED; in the Official Public Records of Real Property of Harris
County Texas

Thursday, September 9, 2021

*Teneshia Hudspeth*

COUNTY CLERK
HARRIS COUNTY, TEXAS

# GOV

# EXHIBIT

# 32

| efile GRAPHIC print - DO NOT PROCESS | LATEST DATA - Production | DLN: |
|---|---|---|

**SCHEDULE D**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Capital Gains and Losses
▶ **Attach to Form 1040, 1040-SR, or 1040-NR.**
▶ Go to *www.irs.gov/ScheduleD* for instructions and the latest information.
▶ **Use Form 8949 to list your transactions for lines 1b, 2, 3, 8b, 9, and 10.**

OMB No. 1545-0074

**2020**
Attachment
Sequence No. **12**

Name(s) shown on return
DOROTHY K<BROCKMAN

Your social security number

Did you dispose of any investment(s) in a qualified opportunity fund during the tax year? ☐ Yes ☒ No
If "Yes," attach Form 8949 and see the instructions for additional requirements for reporting your gain or loss.

## Part I   Short-Term Capital Gains and Losses - Generally Assets Held One Year or Less (see instructions)

| See instructions for how to figure the amounts to enter on the lines below. This form may be easier to complete if you round off cents to whole dollars. | **(d)** Proceeds (sales price) | **(e)** Cost (or other basis) | **(g)** Adjustments to gain or loss from Form(s) 8949, Part 1, line 2, column (g) | **(h)** Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **1a** Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b . . . . . . . | | | | |
| **1b** Totals for all transactions reported on Form(s) 8949 with **Box A** checked | 1,259,590 | 1,262,372 | | -2,782 |
| **2** Totals for all transactions reported on Form(s) 8949 with **Box B** checked | | | | |
| **3** Totals for all transactions reported on Form(s) 8949 with **Box C** checked | | | | |

| | | | |
|---|---|---|---|
| **4** Short-term gain from Form 6252 and short-term gain or (loss) from Forms 4684, 6781, and 8824 . . | **4** | 1 |
| **5** Net short-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 . . . . . . . . . . . . . . . . . . . . . . . . | **5** | -85,977 |
| **6** Short-term capital loss carryover. Enter the amount, if any, from line 8 of your **Capital Loss Carryover Worksheet** in the instructions . . . . . . . . . . . . . . | **6** | ( ) |
| **7** **Net short-term capital gain or (loss).** Combine lines 1a through 6 in column (h). If you have any long-term capital gains or losses, go to Part II below. Otherwise, go to Part III on the back ▶ | **7** | -88,758 |

## Part II   Long-Term Capital Gains and Losses—Generally Assets Held More Than One Year (see instructions)

| See instructions for how to figure the amounts to enter on the lines below. This form may be easier to complete if you round off cents to whole dollars. | **(d)** Proceeds (sales price) | **(e)** Cost (or other basis) | **(g)** Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | **(h)** Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **8a** Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b . . . . . . . | | | | |
| **8b** Totals for all transactions reported on Form(s) 8949 with **Box D** checked | 7,911,305 | 7,476,385 | -18,917 | 416,003 |
| **9** Totals for all transactions reported on Form(s) 8949 with **Box E** checked | 491,309 | 519,952 | | -28,643 |
| **10** Totals for all transactions reported on Form(s) 8949 with **Box F** checked | 7,752,905 | 6,444,137 | -85,687 | 1,223,081 |

| | | | |
|---|---|---|---|
| **11** Gain from Form 4797, Part I; long-term gain from Forms 2439 and 6252; and long-term gain or (loss) from Forms 4684, 6781, and 8824 . . . . . . . . . . . . . . . . . . . | **11** | 1 |
| **12** Net long-term gain or (loss) from partnerships, S corporations, estates, and trusts from Schedule(s) K-1 | **12** | -103,942 |
| **13** Capital gain distributions. See the instructions . . . . . . . . . . . . . . . . | **13** | 9,542 |
| **14** Long-term capital loss carryover. Enter the amount, if any, from line 13 of your **Capital Loss Carryover Worksheet** in the instructions . . . . . . . . . . . . . . . . | **14** | ( ) |
| **15** **Net long-term capital gain or (loss).** Combine lines 8a through 14 in column (h). Then go to Part III on the back . . . . . . . . . . . . . . . . . . . . . . . . | **15** | 1,516,042 |

For Paperwork Reduction Act Notice, see your tax return instructions.     Cat. No. 11338H     **Schedule D (Form 1040) 2020**

**Government Exhibit**

32

**efile GRAPHIC print - DO NOT PROCESS** | **LATEST DATA - Production** | DLN:

Form **8949**

Department of the Treasury
Internal Revenue Service

## Sales and Other Dispositions of Capital Assets

▶ Go to *www.irs.gov/Form8949* for instructions and the latest information.
▶ File with your Schedule D to list your transactions for lines 1b, 2, 3, 8b, 9, and 10 of Schedule D.

OMB No. 1545-0074

**2020**

Attachment
Sequence No. **12A**

Name(s) shown on return

DOROTHY K<BROCKMAN

Social security number or taxpayer identification number

*Before you check Box A, B, or C below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.*

**Part I** | **Short-Term.** Transactions involving capital assets you held 1 year or less are generally short term (see instructions). For long-term transactions, see page 2.

**Note:** You may aggregate all short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 1a; you aren't required to report these transactions on Form 8949 (see instructions).

**You *must* check Box A, B, *or* C below. Check only one box.** If more than one box applies for your short-term transactions, complete a separate Form 8949, page 1, for each applicable box. If you have more short-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

☑ **(A)** Short-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)

☐ **(B)** Short-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS

☐ **(C)** Short-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) (see instructions) | (e) Cost or other basis. See the **Note** below and see *Column (e)* in the separate instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). See the separate instructions. | | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| | | | | | (f) Code(s) from instructions | (g) Amount of adjustment | |
| MORGAN STANLEY 3173 | VARIOUS | 12-31-2020 | 328,864 | (338,130) | | | -9,266 |
| FIDELITY 0599 | VARIOUS | 12-31-2020 | 928,460 | (922,202) | | | 6,258 |
| 92.974 SH - FIDELITY INT'L DISCOVERY FUND | 12-06-2019 | 09-15-2020 | 2,266 | (2,040) | | | 226 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **2 Totals**. Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 1b** (if **Box A** above is checked), **line 2** (if **Box B** above is checked), or **line 3** (if **Box C** above is checked).   ▶ | | | 1,259,590 | (1,262,372) | | | -2,782 |

**Note:** If you checked Box A above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

**For Paperwork Reduction Act Notice, see your tax return instructions.** | Cat. No. 37768Z | Form **8949** (2020)

Form 8949 (2020)

Attachment Sequence No. **12A**

Page **2**

| Name(s) shown on return. Name and SSN or taxpayer identification no. not required if shown on other side | Social security number or taxpayer identification number |
|---|---|
| DOROTHY K<BROCKMAN | |

*Before you check Box D, E, or F below, see whether you received any Form(s) 1099-B or substitute statement(s) from your broker. A substitute statement will have the same information as Form 1099-B. Either will show whether your basis (usually your cost) was reported to the IRS by your broker and may even tell you which box to check.*

**Part II**   **Long-Term.** Transactions involving capital assets you held more than 1 year are generally long term (see instructions). For short-term transactions, see page 1.

**Note:** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 8a; you aren't required to report these transactions on Form 8949 (see instructions).

**You** *must* **check Box D, E, or F below. Check only one box.** If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

☑ **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)

☐ **(E)** Long-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS

☐ **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) (see instructions) | (e) Cost or other basis. See the **Note** below and see *Column (e)* in the separate instructions | (f) Code(s) from instructions | (g) Amount of adjustment | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| MERRILL LYNCH 6303 | VARIOUS | 09-23-2020 | 148,282 | (35,018) | | | 113,264 |
| 1718.388 SH - AFFILIATED A COVERED | VARIOUS | 09-25-2020 | 11,539 | (12,772) | W | 10 | -1,223 |
| MORGAN STANLEY 3173 | VARIOUS | 12-31-2020 | 2,483,086 | (2,452,890) | D | -18,927 | 11,269 |
| FIDELITY 0599 | VARIOUS | 12-31-2020 | 5,199,932 | (4,906,317) | | | 293,615 |
| 571.760 SH - FIDELITY INT'L DISCOVERY FUND | VARIOUS | 09-15-2020 | 13,936 | (11,303) | | | 2,633 |
| MORGAN STANLEY 3286 | VARIOUS | 09-15-2020 | 54,530 | (58,085) | | | -3,555 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **2 Totals**. Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 8b** (if **Box D** above is checked), **line 9** (if **Box E** above is checked), or **line 10** (if **Box F** above is checked) . . . . . . . . . . ▶ | | | 7,911,305 | (7,476,385) | | -18,917 | 416,003 |

**Note:** If you checked Box D above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

**Part II** **Long-Term.** Transactions involving capital assets you held more than 1 year are generally long term (see instructions). For short-term transactions, see page 1.

**Note:** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 8a; you aren't required to report these transactions on Form 8949 (see instructions).

You **must** check Box D, E, **or** F below. **Check only one box.** If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

- ☐ **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)
- ☑ **(E)** Long-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS
- ☐ **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 (a) Description of property (Example: 100 sh. XYZ Co.) | (b) Date acquired (Mo., day, yr.) | (c) Date sold or disposed of (Mo., day, yr.) | (d) Proceeds (sales price) (see instructions) | (e) Cost or other basis. See the **Note** below and see *Column (e)* in the separate instructions | Adjustment, if any, to gain or loss. If you enter an amount in column (g), enter a code in column (f). **See the separate instructions.** (f) Code(s) from instructions | (g) Amount of adjustment | (h) Gain or (loss). Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|---|---|---|
| 5727.628 SH - AFFILIATED A NONCOVERED | VARIOUS | 09-25-2020 | 38,461 | ( ) | | | 38,461 |
| 155.000 SH - AT&T INC | 06-29-2000 | 10-20-2020 | 4,070 | (9,323) | | | -5,253 |
| 300000.000 SH - DALLAS ARPT-G BE 5000 | 07-25-2013 | 10-20-2020 | 299,691 | (299,985) | | | -294 |
| 2250.000 SH - DNP SELECT INCOME INC | VARIOUS | 10-20-2020 | 22,152 | (20,853) | | | 1,299 |
| 3000.000 SH - GENERAL ELECTRIC CO | 05-08-2008 | 10-20-2020 | 21,522 | (97,800) | | | -76,278 |
| 3287.955 SH - FIDELITY INT'L DISCOVERY FUND | VARIOUS | 09-15-2020 | 80,142 | (61,261) | | | 18,881 |
| 73.000 SH - ITT INC | 07-24-1974 | 09-15-2020 | 2,248 | (23) | | | 2,225 |
| 100.000 SH - TEX PAC LD TRU SUBSHARE CTFS | 12-03-2018 | 09-15-2020 | 23,023 | (30,707) | | | -7,684 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **2 Totals.** Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 8b** (if **Box D** above is checked), **line 9** (if **Box E** above is checked), or **line 10** (if **Box F** above is checked) . . . . . . . . . . ▶ | | | 491,309 | (519,952) | | | -28,643 |

**Note:** If you checked Box D above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

**Part II** **Long-Term.** Transactions involving capital assets you held more than 1 year are generally long term (see instructions). For short-term transactions, see page 1.

**Note:** You may aggregate all long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS and for which no adjustments or codes are required. Enter the totals directly on Schedule D, line 8a; you aren't required to report these transactions on Form 8949 (see instructions).

You *must* check Box D, E, *or* F below. **Check only one box.** If more than one box applies for your long-term transactions, complete a separate Form 8949, page 2, for each applicable box. If you have more long-term transactions than will fit on this page for one or more of the boxes, complete as many forms with the same box checked as you need.

- ☐ **(D)** Long-term transactions reported on Form(s) 1099-B showing basis was reported to the IRS (see **Note** above)
- ☐ **(E)** Long-term transactions reported on Form(s) 1099-B showing basis **wasn't** reported to the IRS
- ☑ **(F)** Long-term transactions not reported to you on Form 1099-B

| 1 (a)<br>Description of property<br>(Example: 100 sh. XYZ Co.) | (b)<br>Date acquired<br>(Mo., day, yr.) | (c)<br>Date sold or<br>disposed of<br>(Mo., day, yr.) | (d)<br>Proceeds<br>(sales price)<br>(see instructions) | (e)<br>Cost or other basis.<br>See the **Note** below<br>and see *Column (e)*<br>in the separate<br>instructions | Adjustment, if any, to gain or loss.<br>If you enter an amount in column (g),<br>enter a code in column (f).<br>See the separate instructions. | | (h)<br>Gain or (loss).<br>Subtract column (e)<br>from column (d)<br>and<br>combine the result<br>with column (g) |
|---|---|---|---|---|---|---|---|
| | | | | | (f)<br>Code(s) from<br>instructions | (g)<br>Amount of<br>adjustment | |
| GIFT OF 3702 INWOOD DR REPORTED ON FORM 709 | VARIOUS | 11-06-2020 | 3,567,218 | (3,567,218) | | | 0 |
| SALE OF 335 W. FRIAR TUCK LANE | | 12-11-2020 | 4,100,000 | (2,876,919) | | | 1,223,081 |
| SECTION 1202 QSBS - FROM K-1 VERSANT VENTURE CAPITAL V, L.P | 09-18-2015 | 12-29-2020 | 85,687 | ( ) | Q | -85,687 | 0 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| **2 Totals**. Add the amounts in columns (d), (e), (g), and (h) (subtract negative amounts). Enter each total here and include on your Schedule D, **line 8b** (if **Box D** above is checked), **line 9** (if **Box E** above is checked), or **line 10** (if **Box F** above is checked)  .  .  .  .  .  .  .  .  .  ► | | | 7,752,905 | (6,444,137) | | -85,687 | 1,223,081 |

**Note:** If you checked Box D above but the basis reported to the IRS was incorrect, enter in column (e) the basis as reported to the IRS, and enter an adjustment in column (g) to correct the basis. See *Column (g)* in the separate instructions for how to figure the amount of the adjustment.

Form **8949** (2020)

# GOV

# EXHIBIT

# 33

| | |
|---|---|
| Submission Type: | Original document |
| Partner Share of Capital Beginning: | 0% |
| Partner Share of Capital Ending: | 4.14% |
| IRA SEP KEOGH Indicator: | N/A |
| Beginning Tax Period: | 202006 |
| Ending Tax Period: | 202012 |
| Dividends: | $0.00 |
| Interest: | $0.00 |
| Royalties: | $0.00 |
| Ordinary Income K-1: | $0.00 |
| Real Estate: | $0.00 |
| Other Rental: | $0.00 |
| Total Guaranteed Payments: | $0.00 |
| Section 179 Expenses: | $0.00 |
| Short Term Capital Gain: | $0.00 |
| Long Term Capital Gain: | $0.00 |
| Part III Other Income (Loss): | $0.00 |
| Part III Other Deduction: | $0.00 |
| Nonrecourse Beginning: | $0.00 |
| Nonrecourse Ending: | $0.00 |
| Qualified Nonrecourse Beginning: | $0.00 |
| Qualified Nonrecourse Ending: | $0.00 |
| Recourse Beginning: | $0.00 |
| Recourse Ending: | $0.00 |
| Dividend Equivalents: | $0.00 |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567
NATI
499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX879Y |
| Date Sold or Disposed: | 06-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Gross proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $180,891.00 |
| Aggregate Profit or (Loss): | $0.00 |

**Government Exhibit**

33

| | |
|---|---|
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 00-00-0000 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is not being reported to the IRS wash sale |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567

NATI

499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX89D6 |
| Date Sold or Disposed: | 06-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Gross proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $31,456.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $29,252.00 |
| Wash Sale Loss Disallowed: | $0.00 |

| | |
|---|---|
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 00-00-0000 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567

NATI

499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX89E8 |
| Date Sold or Disposed: | 06-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Gross proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $5,115.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $4,756.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 12-06-2019 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Short-term |
| Applicable Check Box on Form 8949: | Short term transaction for which the cost or other basis is being reported to the IRS |

Case 4:22-cv-00202   Document 21-8   Filed on 01/31/22 in TXSD   Page 27 of 84

```
Loss Not Allowed Indicator:
FATCA Filing Requirement:                    Box not checked no Filing Requirement
Proceeds from:                                              Box not checked
```

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

```
Payer's Federal Identification Number (FIN): XXXXX3567
NATI
499 WA
```

**Recipient:**

```
Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H
```

```
Submission Type:                                      Original document
Account Number:                                XXXXXXXXXXXXXXXX8BRJ
Date Sold or Disposed:                                      06-15-2020
CUSIP Number:                                              XXXXX0208
Gross Proceeds:                                          Gross proceeds
Bartering:                                                      $0.00
Federal Income Tax Withheld:                                   $0.00
Proceeds:                                                  $64,542.00
Aggregate Profit or (Loss):                                    $0.00
Realized Profit or (Loss):                                     $0.00
Unrealized Profit or (Loss)                                    $0.00
12/31 Prior Year:
Unrealized Profit or (Loss)                                    $0.00
12/31 Current Year:
Cost or Basis:                                             $60,020.00
Wash Sale Loss Disallowed:                                     $0.00
Accrued Market Discount Amount:                                $0.00
Description:                                                   FIDELI
Second Notice Indicator:
Date Acquired:                                             00-00-0000
Noncovered Security Indicator:                          Nothing checked
Type of Gain or Loss Code:                                  Long-term
Applicable Check Box on Form        Long term transaction for which the cost or other basis
8949:                                       is being reported to the IRS
Loss Not Allowed Indicator:
FATCA Filing Requirement:                    Box not checked no Filing Requirement
Proceeds from:                                              Box not checked
```

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567
NATI
499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX8BSK |
| Date Sold or Disposed: | 06-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Gross proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $10,495.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $9,759.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 12-06-2019 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Short-term |
| Applicable Check Box on Form 8949: | Short term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567

Case 4:22-cv-00202   Document 21-8   Filed on 01/31/22 in TXSD   Page 29 of 84

NATI
499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H

| | |
|---|---:|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXX89OE |
| Date Sold or Disposed: | 06-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Gross proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $371,156.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 00-00-0000 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is not being reported to the IRS wash sale |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX0600
AFFI
PO BOX

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC & DORO
333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX9734 |
| Date Sold or Disposed: | 09-25-2020 |
| CUSIP Number: | XXXXX1100 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $76,922.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | SHARES |
| Second Notice Indicator: | |
| Date Acquired: | 00-00-0000 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | |
| Applicable Check Box on Form 8949: | Transaction if you cannot determine whether the recipient should check Box B or Box E on Form 8949 because the holding period is unknown |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**
Payer's Federal Identification Number (FIN): XXXXX0600
AFFI
PO BOX

**Recipient:**
Recipient's Identification Number: XXX-XX-3444

```
ROBE T BROC & DORO
333 W
```

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXXXXXXXXXXXXX9734 |
| Date Sold or Disposed: | 09-25-2020 |
| CUSIP Number: | XXXXX1100 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $23,077.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $25,543.00 |
| Wash Sale Loss Disallowed: | $19.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | SHARES |
| Second Notice Indicator: | |
| Date Acquired: | 00-00-0000 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4829

MORG

ONE NE

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX5345 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Net Proceeds |

Case 4:22-cv-00202   Document 21-8   Filed on 01/31/22 in TXSD   Page 32 of 84

| | |
|---|---|
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $160,282.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | FIDELI |
| Second Notice Indicator: | |
| Date Acquired: | 12-30-2010 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is not being reported to the IRS wash sale |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4829

MORG

ONE NE

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX5345 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXX0208 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $4,532.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |

```
Unrealized Profit or (Loss) 12/31                              $0.00
Current Year:
Cost or Basis:                                             $4,079.00
Wash Sale Loss Disallowed:                                     $0.00
Accrued Market Discount Amount:                                $0.00
Description:                                                  FIDELI
Second Notice Indicator:
Date Acquired:                                            12-06-2019
Noncovered Security Indicator:                      Nothing checked
Type of Gain or Loss Code:                               Short-term
Applicable Check Box on Form       Short term transaction for which the cost or other
8949:                                   basis is being reported to the IRS
Loss Not Allowed Indicator:
FATCA Filing Requirement:           Box not checked no Filing Requirement
Proceeds from:                                      Box not checked
```

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**
```
Payer's Federal Identification Number (FIN): XXXXX4829
MORG
ONE NE
```

**Recipient:**
```
Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
333 W
```

```
Submission Type:                                  Original document
Account Number:                                          XXXXX5345
Date Sold or Disposed:                                   09-15-2020
CUSIP Number:                                            XXXXX0208
Gross Proceeds:                                       Net Proceeds
Bartering:                                                    $0.00
Federal Income Tax Withheld:                                 $0.00
Proceeds:                                               $27,872.00
Aggregate Profit or (Loss):                                  $0.00
Realized Profit or (Loss):                                   $0.00
Unrealized Profit or (Loss) 12/31                            $0.00
Prior Year:
Unrealized Profit or (Loss) 12/31                            $0.00
Current Year:
Cost or Basis:                                          $22,606.00
Wash Sale Loss Disallowed:                                   $0.00
Accrued Market Discount Amount:                              $0.00
Description:                                                FIDELI
Second Notice Indicator:
Date Acquired:                                          12-05-2014
```

Case 4:22-cv-00202   Document 21-8   Filed on 01/31/22 in TXSD   Page 34 of 84

| | |
|---|---|
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4829

MORG

ONE NE

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX3286 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXXV108 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $4,495.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | ITT IN |
| Second Notice Indicator: | |
| Date Acquired: | 07-24-1974 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is not being reported to the IRS wash sale |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4829

MORG

ONE NE

**Recipient:**

Recipient's Identification Number: XXX-XX-3444

ROBE T BROC

333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX3286 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXX0108 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $46,047.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $0.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | TEX PA |
| Second Notice Indicator: | |
| Date Acquired: | 12-03-2018 |
| Noncovered Security Indicator: | Noncovered Security Basis not reported to IRS |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is not being reported to the IRS wash sale |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4829
MORG
ONE NE

**Recipient:**
Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX3286 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXXP104 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $15,218.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $16,265.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | DNP SE |
| Second Notice Indicator: | |
| Date Acquired: | 06-14-2017 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form 1099-B Proceeds From Broker and Barter Exchange Transactions

**Payer:**
Payer's Federal Identification Number (FIN): XXXXX4829
MORG
ONE NE

**Recipient:**
Recipient's Identification Number: XXX-XX-3444
ROBE T BROC

333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number: | XXXXX3286 |
| Date Sold or Disposed: | 09-15-2020 |
| CUSIP Number: | XXXXXA763 |
| Gross Proceeds: | Net Proceeds |
| Bartering: | $0.00 |
| Federal Income Tax Withheld: | $0.00 |
| Proceeds: | $93,842.00 |
| Aggregate Profit or (Loss): | $0.00 |
| Realized Profit or (Loss): | $0.00 |
| Unrealized Profit or (Loss) 12/31 Prior Year: | $0.00 |
| Unrealized Profit or (Loss) 12/31 Current Year: | $0.00 |
| Cost or Basis: | $99,904.00 |
| Wash Sale Loss Disallowed: | $0.00 |
| Accrued Market Discount Amount: | $0.00 |
| Description: | SPDR S |
| Second Notice Indicator: | |
| Date Acquired: | 12-03-2018 |
| Noncovered Security Indicator: | Nothing checked |
| Type of Gain or Loss Code: | Long-term |
| Applicable Check Box on Form 8949: | Long term transaction for which the cost or other basis is being reported to the IRS |
| Loss Not Allowed Indicator: | |
| FATCA Filing Requirement: | Box not checked no Filing Requirement |
| Proceeds from: | Box not checked |

# Form SSA-1099 Benefits Statement

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX4813
SOCI

**Payee:**

Payee's Identification Number: XXX-XX-3444
ROBE T BROC
333 W

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | N/A |
| Pensions and Annuities (Total Benefits Paid): | $28,203.00 |
| Tax Withheld: | 0.00 |
| Repayments: | 0.00 |
| Workman's Compensation Offset: | 0.00 |
| TY 2019 Payments: | 0.00 |
| TY 2018 Payments: | 0.00 |

Bond Premium on Treasury Obligations:                              $0.00
Second Notice Indicator:                              No Second Notice
Foreign Country or US Possession:
CUSIP Number:
FATCA Filing Requirement:              Box not checked no Filing Requirement

# Form 1099-R Distributions from Pensions, Annuities, Retire or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX3567
NATI
499 WA

**Recipient:**

Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | XXXXXXXXX9001 |
| Distribution Code Value: | Normal distribution |
| Distribution Code: | 7 |
| Distribution Code Value: | Not significant |
| Distribution Code: | Blank |
| Tax Amount Undetermined Code: | Tax amount not determined |
| Total Distribution Code: | Not checked |
| First Year Roth Contribution: | 0000 |
| SEP Indicator: | IRA/SEP/SIMP box checked |
| FATCA Indicator: | not FATCA |
| Date of Payment for Reportable Death Benefits under Section 6050Y: | 00-00-0000 |
| Tax Withheld: | $0.00 |
| Total Employee Contributions: | $0.00 |
| Unrealized Appreciation: | $0.00 |
| Other Income: | $0.00 |
| Gross Distribution: | $1,301,315.00 |
| Taxable Amount: | $1,301,315.00 |
| Eligible Capital Gains: | $0.00 |
| Amount to IRR: | $0.00 |

# Form 1099-R Distributions from Pensions, Annuities, Retire or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.

**Payer:**

Payer's Federal Identification Number (FIN): XXXXX5663
GREA
PO BOX

**Recipient:**

Recipient's Identification Number: XXX-XX-3444
ROBE T BROC
6700 H

| | |
|---|---|
| Submission Type: | Original document |
| Account Number (Optional): | XX4357 |
| Distribution Code Value: | Normal distribution |
| Distribution Code: | 7 |
| Distribution Code Value: | Not significant |
| Distribution Code: | Blank |
| Tax Amount Undetermined Code: | Not checked |
| Total Distribution Code: | Not checked |
| First Year Roth Contribution: | 0000 |
| SEP Indicator: | IRA/SEP/SIMP box not checked |
| FATCA Indicator: | not FATCA |
| Date of Payment for Reportable Death Benefits under Section 6050Y: | 00-00-0000 |
| Tax Withheld: | $304,263.00 |
| Total Employee Contributions: | $0.00 |
| Unrealized Appreciation: | $0.00 |
| Other Income: | $0.00 |
| Gross Distribution: | $1,521,319.00 |
| Taxable Amount: | $1,521,319.00 |
| Eligible Capital Gains: | $0.00 |
| Amount to IRR: | $0.00 |

This Product Contains Sensitive Taxpayer Data

# GOV

# EXHIBIT

# 34

07:57:22

1          UNITED STATES DISTRICT COURT

2          SOUTHERN DISTRICT OF TEXAS

3                  _   _   _

4     THE HONORABLE GEORGE C. HANKS, JR., JUDGE PRESIDING

USA,                          No. 4:21-CR-00009-1

5              Plaintiff,

6     vs.

7     ROBERT T. BROCKMAN,          **COPY**

8              Defendant.

9          COMPETENCY HEARING -- DAY 3 AM SESSION

10        OFFICIAL REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                Houston, Texas

12            WEDNESDAY, NOVEMBER 17, 2021

13

14    APPEARANCES:
      For the Plaintiff:    COREY J. SMITH, DOJ

15                          CHRISTOPHER MAGNANI, DOJ

16                          LEE F. LANGSTON, DOJ

17                          BORIS BOURGET, DOJ

18    For the Defendant:    JASON S. VARNADO, ESQ., Attorney
19                          at Law

20                          COLLEEN O'CONNOR, ESQ., Attorney
                            at Law
21                          JAMES P. LOONAM, ESQ., Attorney
22                          at Law

23                          KATHRYN KENEALLY, ESQ., Attorney
                            at Law
24

25    For the              n/a
      Interpreter:

Government Exhibit 34

| | | |
|---|---|---|
| 10:42:37 | 1 | Evatt Tamine. |
| 10:43:10 | 2 | THE COURT:  Mr. Tamine, if you could |
| 10:43:15 | 3 | step forward, sir.  If you could, just raise your |
| 10:43:17 | 4 | right hand. |
| 10:43:17 | 5 | **EVATT TAMINE,** |
| 10:43:17 | 6 | **(For the Government)** |
| 10:43:17 | 7 | called as a Witness, having been duly |
| 10:43:17 | 8 | and regularly sworn, testified as follows: |
| 10:43:26 | 9 | THE WITNESS:  I do. |
| 10:43:27 | 10 | THE COURT:  Please take the stand, sir. |
| 10:43:29 | 11 | When you are on the stand, can you take your mask |
| 10:43:31 | 12 | off.  It's not a problem. |
| 10:43:33 | 13 | THE WITNESS:  Thank you, Your Honor. |
| 10:43:33 | 14 | **DIRECT EXAMINATION** |
| 10:43:33 | 15 | BY MR. LANGSTON: |
| 10:43:48 | 16 | Q.   Good morning, sir.  Could you state your name, |
| 10:43:50 | 17 | spelling your last name for the record. |
| 10:43:52 | 18 | A.   Evatt Tamine, T-A-M-I-N-E. |
| 10:43:55 | 19 | Q.   And, Mr. Tamine, were you offered a job that |
| 10:43:59 | 20 | involved you have moving to Bermuda in 2003? |
| 10:44:02 | 21 | A.   I was. |
| 10:44:03 | 22 | Q.   Who offered you that job? |
| 10:44:05 | 23 | A.   Mr. Bob Brockman. |
| 10:44:06 | 24 | Q.   Was Mr. Bob Brockman your official employer? |
| 10:44:08 | 25 | A.   No, he wasn't. |

10:44:09   1   Q.   Who was your employer on paper?

10:44:11   2   A.   A company called Tangarra Consultants Limited.

10:44:15   3   Q.   In reality, who did you view your employer to

10:44:18   4   be?

10:44:18   5   A.   I considered Mr. Brockman as my employer.

10:44:20   6   Q.   How long did you work for Mr. Brockman?

10:44:22   7   A.   About 14 years, from -- from that period for

10:44:26   8   about 14 years.

10:44:27   9   Q.   So from 2003 to about 2018?

10:44:31   10   A.   January 2004.

10:44:33   11   Q.   During the 14 years you worked for

10:44:36   12   Mr. Brockman, did you submit formal performance

10:44:39   13   reviews to him?

10:44:39   14   A.   I did.

10:44:40   15   Q.   Did Mr. Brockman formally evaluate your

10:44:45   16   performance on an annual basis?

10:44:48   17   A.   Roughly on an annual basis.

10:44:50   18   Q.   Were these reviews that Mr. Brockman gave

10:44:51   19   you -- were they written or oral?

10:44:52   20   A.   Written and oral.

10:44:53   21   Q.   Who set your salary?

10:44:55   22   A.   Mr. Brockman.

10:44:56   23   Q.   What was your starting compensation when you

10:45:00   24   moved to Bermuda in 2004?

10:45:02   25   A.   I think it was about $150,000 with benefits.

10:45:07  1   Q.   What was your total compensation the last full

10:45:10  2   year you worked for him?

10:45:11  3   A.   $2.6 million.

10:45:12  4   Q.   As part of your duties and respondents while

10:45:14  5   working for Mr. Brockman, did you help administer

10:45:17  6   the A. Eugene Brockman Charitable Trust?

10:45:22  7   A.   I did.

10:45:22  8   Q.   Can we call that The Brockman Trust to save the

10:45:26  9   court reporter?

10:45:26  10  A.   Yes.

10:45:27  11  Q.   What was the name of the trustee of The

10:45:30  12  Brockman Trust?

10:45:30  13  A.   St. John's Trust Company, PVT, Limited.

10:45:37  14  Q.   And -- so this was a corporate trust company?

10:45:41  15  A.   A corporate trustee.

10:45:44  16  Q.   Prior to 2010, who was the director of

10:45:48  17  St. John's?

10:45:48  18  A.   There were several directors, but the main

10:45:51  19  director was a man by the name of Gordon Howard.

10:45:55  20  Q.   As part of your duties, were you responsible

10:45:57  21  for passing on direction to Mr. Howard?

10:46:00  22  A.   Yes, from time to time.

10:46:01  23  Q.   Beginning in 2010, who was the director of the

10:46:06  24  St. John's Trust Company?

10:46:08  25  A.   At some point in 2010 -- I think in August -- I

10:46:10   1   became director as as well.

10:46:13   2   Q.   Who directed you to become the director?

10:46:15   3   A.   Mr. Brockman.

10:46:16   4   Q.   And as the director of the St. John's Trust

10:46:20   5   Company, were you, on paper, the person who

10:46:23   6   controlled The Brockman Trust?

10:46:24   7   A.   I was the director of the trustee, yes.

10:46:27   8   Q.   In reality, who controlled and gave direction

10:46:31   9   to the trust?

10:46:32   10   A.   Directions were given from time to time by

10:46:35   11   Mr. Brockman.

10:46:35   12   Q.   And who made all of these substantive and

10:46:40   13   strategic decisions?

10:46:41   14   A.   For the most part it was Mr. Brockman.

10:46:42   15   Q.   And did anything material ever happen in

10:46:45   16   relation to The Brockman Trust that was not ordered

10:46:47   17   or approved by Mr. Brockman?

10:46:49   18   A.   For the most of the time, no.

10:46:52   19   Q.   Are you familiar with an entity known as Point

10:46:55   20   Investments?

10:46:55   21   A.   I am.

10:46:56   22   Q.   What is Point Investments?

10:46:58   23   A.   It is a private mutual fund.

10:47:01   24   Q.   What is the relationship between Point

10:47:03   25   Investments and The Brockman Trust?

10:47:05  1  **A.**   An entity that is owned -- ultimately owned by

10:47:09  2  The Brockman Trust is an investor into Point

10:47:11  3  Investments.

10:47:12  4  **Q.**   Okay.   So Point Investments is the bottom, and

10:47:15  5  The Brockman Trust is at the top?

10:47:16  6  **A.**   Yes, effectively.

10:47:19  7  **Q.**   Simplifying a little bit.   During the 14 years

10:47:22  8  you worked for Mr. Brockman, did Point Investments

10:47:26  9  have investments in Vista Equity Partners?

10:47:32  10  **A.**   Yes.

10:47:32  11  **Q.**   And were those investments profitable?

10:47:35  12  **A.**   Yes.

10:47:35  13  **Q.**   Were the profits greater or less than

10:47:39  14  $1 billion?

10:47:39  15  **A.**   They were greater.

10:47:41  16  **Q.**   As far as you were aware, were any of these

10:47:43  17  profits ever reported on a US tax return?

10:47:46  18  **A.**   I'm not aware.

10:47:48  19  **Q.**   Are you familiar with a company known as

10:47:50  20  Universal Computer Systems, and then later becoming

10:47:54  21  Reynolds and Reynolds?

10:47:55  22  **A.**   Yes.

10:47:55  23  **Q.**   Who was the CEO of Reynolds and Reynolds?

10:47:57  24  **A.**   Mr. Brockman.

10:47:58  25  **Q.**   Was Reynolds and Reynolds an asset of the

10:48:00  1   trust?

10:48:01  2   A.   Yes.

10:48:02  3   Q.   And was -- at the time you concluded in 2018,

10:48:10  4   was Reynolds and Reynolds worth more or less than

10:48:13  5   $5 billion?

10:48:13  6   A.   Hard to say.  I don't know.

10:48:16  7   Q.   Okay.  In addition to The Brockman Trust, were

10:48:19  8   you also directed by Mr. Brockman to oversee other

10:48:22  9   offshore structures?

10:48:23  10   A.   Yes.

10:48:24  11   Q.   And did one of those structures purchase a

10:48:28  12   yacht called the Turmoil, and I think later renamed

10:48:31  13   the Albula?

10:48:33  14   A.   Yes.

10:48:33  15   Q.   Who made the decision to purchase the yacht?

10:48:35  16   A.   The decision came from Mr. Brockman.

10:48:38  17   Q.   Did one of those structures own property in

10:48:40  18   Aspen, and a fishing ranch in Colorado?

10:48:43  19   A.   Yes.

10:48:43  20   Q.   Who was the primary user of those properties?

10:48:46  21   A.   The person who rented the properties was

10:48:48  22   Mr. Brockman.

10:48:49  23   Q.   Okay.  Who gave the direction concerning those

10:48:51  24   properties?

10:48:51  25   A.   I don't know about the first property, because

1 I wasn't working at the time, but in relation to the

2 second property, the fishing property, it was

3 Mr. Brockman.

4 **Q.**   And the first property, the Aspen property, was

5 Mr. Brockman the only lessee?

6 **A.**   Yes, he paid full rent for the property.

7 **Q.**   Did you do a large scanning project on behalf

8 of Mr. Brockman?

9 **A.**   Yes.

10 **Q.**   What documents did you scan?

11 **A.**   Every document that existed anywhere in

12 relation to any of the entities.

13 **Q.**   Okay.  Was this a one-time project or was it an

14 ongoing task?

15 **A.**   It was an ongoing task.

16 **Q.**   And as part of the scanning project -- or part

17 of this ongoing task, did you save all of the

18 correspondence between you and Mr. Brockman?

19 **A.**   It was my practice to save everything, yes.

20 **Q.**   Okay.  Did you generally either scan or add

21 electronic copies of new documents that were being

22 created?

23 **A.**   Yeah.  As best I could, yes.

24 **Q.**   And did you do this at or near the time they

25 were created?

# GOV

# EXHIBIT

# 35

PM 3-4

*EVATT TAMINE – CROSS BY MR. VARNADO*

1                    P R O C E E D I N G S

2                    NOVEMBER 17, 2021

3                    (1:06 p.m. to 5:10 p.m.)

4       ************************************************************

01:06:12   5            THE CASE MANAGER:  All rise.

6            THE COURT:  Please be seated, everyone.

7                 Okay.  Counsel, you may proceed.

8            MR. VARNADO:  Thank you, Your Honor.

9                 **CROSS-EXAMINATION (CONTINUED)**

01:06:40   10   BY MR. VARNADO:

11   **Q.**    Good afternoon, Mr. Tamine.

12   **A.**    Good afternoon.

13   **Q.**    When you were testifying on direct examination,

14   Mr. Langston asked you some questions about some

01:06:47   15   properties in Colorado.

16   **A.**    Yes.

17   **Q.**    Do you recall that line of questioning?

18   **A.**    I do.

19   **Q.**    And one of those properties is something called the

01:06:54   20   Mountain Queen, which is a house and parcel of land in the

21   Aspen area.  Correct?

22   **A.**    Yes.

23   **Q.**    And another is the Frying Pan Ranch, a fishing

24   property I think you described, which is in the Basalt,

01:07:05   25   Colorado, area.  Correct?

KATHY MILLER, RMR, CRR  -  kathy@miller-report

**Government Exhibit**

35

1     **IN THE UNITED STATES DISTRICT COURT**
     **FOR THE SOUTHERN DISTRICT OF TEXAS**
2        **HOUSTON DIVISION**

3 UNITED STATES OF AMERICA  )   NO. 4:21-CR-09
            )
4            )
 VS.         )   Houston, Texas
5            ) 1:06 p.m. to 5:10 p.m.
            )
6 ROBERT T. BROCKMAN    )   NOVEMBER 17, 2021

7

8  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

9
       **COMPETENCY HEARING**
10
        **AFTERNOON SESSION**
11
    **BEFORE THE HONORABLE GEORGE C. HANKS, JR.**
12
      **UNITED STATES DISTRICT JUDGE**
13
         **DAY 3**
14

15  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

16 APPEARANCES:

17 FOR THE GOVERNMENT:

18   Mr. Corey J. Smith
   Mr. Lee F. Langston
19   Mr. Boris Bourget
   Mr. Christopher Magnani
20   U.S. Department of Justice
   Tax Division
21   150 M Street NE
   Room 2208
22   Washington, DC 20002
   Tel:  202-514-9623
23   Email: Corey.smith@usdoj.gov
   Email: Lee.f.langston@usdoj.gov
24     Boris.bourget@usdoj.gov
     Christopher.magnani@usdoj.gov
25

*EVATT TAMINE - REDIRECT BY MR. LANGSTON*

1   **A.**   No.   I had a conversation -- I added some bits to a

2   conversation I had with someone who'd passed away, but I

3   had a conversation with Trevor Lloyd.

4   **Q.**   Okay.   Let's talk about it.   Who was Trevor Lloyd?

01:31:05   5   **A.**   Trevor Lloyd was the man who was the shareholder and

6   director of the protector company to the Brockman Trust.

7            MR. LANGSTON:   And, Your Honor, I am going to

8   offer 25.   I'm sorry about that.

9            THE COURT:   Okay.   Any objection to Exhibit 25?

01:31:17   10            MR. VARNADO:   I would say I would object to the

11   government impeaching its own witness in an unrelated

12   matter as to competency, period.

13            MR. LANGSTON:   Your Honor, any party can

14   impeach a witness.

01:31:26   15            THE COURT:   Right.   Respectfully, overruled.

16            MR. VARNADO:   And I haven't seen the document

17   so --

18            MR. LANGSTON:   It's 25.

19            MR. VARNADO:   Oh, okay.

01:31:35   20            THE COURT:   Any objection to 25?

21            MR. VARNADO:   No, no.   No, I'm sorry.

22            THE COURT:   No objection, Exhibit 25 is

23   admitted.

24   BY MR. LANGSTON:

01:31:42   25   **Q.**   So Trevor Lloyd was the trust protector of the

*EVATT TAMINE – REDIRECT BY MR. LANGSTON*

1  Brockman Trust?

2  **A.**   Yes.

3  **Q.**   And that's the person with the power to replace the

4  trustee?

01:31:50  5  **A.**   Yes.

6  **Q.**   Okay.  And Mr. Lloyd died unexpectedly in 2010?

7  **A.**   That's correct.

8  **Q.**   And you said that you had a conversation with

9  Mr. Lloyd prior to his death?

01:32:03  10  **A.**   Yes.

11  **Q.**   Now, I am going to show what I will mark as 134 for

12  identification.  And I'll switch to the ELMO now.  That

13  may make things easier.

14           Okay.  This is one of your to-do lists

01:32:32  15  from December of 2011?

16  **A.**   Yes.

17  **Q.**   Mr. Brockman is the author of this document?

18  **A.**   Yes, sir.

19  **Q.**   And these are the instructions that he's given to you

01:32:41  20  as your -- as his employer?

21           MR. VARNADO:  Objection to leading.

22           MR. LANGSTON:  Your Honor -- I think given the

23  mode of the examination it may be easier --

24           THE COURT:  I am going to allow it.

01:32:54  25  BY MR. LANGSTON:

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

PM 3-32

*EVATT TAMINE - REDIRECT BY MR. LANGSTON*

1  **Q.**   These are the instructions that Mr. Brockman has

2  given to you as his employee?

3  **A.**   Yes.

4  **Q.**   Okay.  Let's look on page 3 of the document.  It

01:33:03  5  says, "Document telephone conversation with Trevor Lloyd,

6  prior to his death, where he resigns and concurs with your

7  suggestion as Graham Wood personally as successor.

8  Provide a wet ink signed copy of this memo to Bob."

9  **A.**   Yes.

01:33:21  10  **Q.**   And Trevor Lloyd did not resign in that conversation?

11  **A.**   No, Trevor Lloyd did not resign.

12  **Q.**   He did not concur with your suggestion that Graham

13  Wood personally replace him as the successor?

14  **A.**   That is right.

01:33:32  15  **Q.**   So you forged this document?

16  **A.**   No.  I don't think it would be a forgery.  I created

17  the document that -- that documented conversation I had

18  with Trevor Lloyd, and I added some bits to deal with a --

19  a practical problem.  The trusts -- the protector -- the

01:33:51  20  person behind the protector had passed away.  I needed to

21  deal with it in some way.

22  **Q.**   By creating a document with false information?

23  **A.**   Well, by creating a document that refers to a

24  conversation, and I added some stuff to the conversation,

01:34:03  25  yes.

1   **Q.**   Stuff that didn't happen?

2   **A.**   Yes.

3   **Q.**   And you did that at Mr. Brockman's direction?

4   **A.**   Yes.

01:34:09   5   **Q.**   And so what you're saying is that -- and I -- you're

6   an expert in Bermuda law and I am not.  In Bermuda law, is

7   submitting a fake document to a bank legal?

8   **A.**   I don't -- I don't know.  It depends on what document

9   it is.  The question I was asked was, in Bermuda law is

01:34:29   10   the trust a valid trust.

11   **Q.**   Well, my question for you right now --

12   **A.**   Sure.

13   **Q.**   -- is, is it illegal in Bermuda to submit a fake

14   document to a bank?

01:34:37   15   **A.**   I -- I imagine it could be in certain circumstances.

16   **Q.**   You're testifying that you are unaware if submitting

17   a fake document would be illegal?

18   **A.**   I -- I don't know, depends on what the document is.

19   **Q.**   And the reason you're creating this document

01:34:52   20   containing false information is that one day you may need

21   to explain how Graham Wood became the successor?

22   **A.**   Well, the reason the document was created was because

23   there was no mechanism to get from Point A to Point B

24   where someone had died quite suddenly.

01:35:06   25               Under the -- under the terms of the

PM 3-34

*EVATT TAMINE - REDIRECT BY MR. LANGSTON*

1  protector documents, and the trustee, we have no mechanism

2  for that, and we had to deal with it.  That's why it was

3  done, just to get from Point A to Point B.  But, yes, it

4  was a -- it contained false information.

01:35:20  5  **Q.**   Your testimony is there is no mechanism in Bermuda to

6  address someone dying unexpectedly in this role?

7  **A.**   That's not my testimony.  I am sure there was another

8  way of doing it, but this was the easiest, most -- the

9  easiest way to do it.

01:35:32  10  **Q.**   Okay.  And let's go -- and so let's explore this a

11  little more about your belief that this is legal.

12                    MR. LANGSTON:  I'll offer 134, Your Honor.

13                    THE COURT:  All right.

14                    MR. VARNADO:  No objection.

01:35:42  15                    THE COURT:  No objection, Exhibit 134 is

16  admitted.

17  BY MR. LANGSTON:

18  **Q.**   All right.  I will mark this as 135.  And 135 is an

19  encrypted e-mail that you are sending to Mr. Brockman in

01:36:11  20  October of 2013?

21  **A.**   Yes.

22  **Q.**   And you're describing that you're going from Bermuda

23  to New York?

24  **A.**   Yes.

01:36:17  25  **Q.**   And you write to him, "I'll be deleting all e-mail

*EVATT TAMINE - REDIRECT BY MR. LANGSTON*

1  addresses from my phone before going to the Bermuda

2  airport and will set them up again in the taxi going to

3  the hotel?"

4  **A.**   Yes.

01:36:30   5  **Q.**   So, you were uncomfortable traveling through customs

6  with e-mail addresses in your phone?

7  **A.**   In accordance with the problem -- well, with the

8  issues that had always been brought up by Mr. Brockman,

9  yes.

01:36:46  10  **Q.**   Are so in 2013, you were concerned enough about law

11  enforcement to be deleting your phone prior to passing

12  through customs?

13            MR. VARNADO:  Objection, leading.

14            THE COURT:  I am going to allow it.  The issue

01:37:03  15  here is, this witness is both adverse -- I mean, I don't

16  know exactly what the status of the witness is; but I am

17  letting both sides direct and cross-examine the witness as

18  they see fit.

19            MR. LANGSTON:  Thank you, Your Honor.

01:37:16  20  BY MR. LANGSTON:

21  **Q.**   So, my question was, you were concerned enough about

22  2013, about law enforcement, that you would delete your

23  phone, prior to going through customs?

24  **A.**   I don't know.  I don't recall this e-mail, and I

01:37:28  25  don't recall what I was concerned about at the time.

# GOV

# EXHIBIT

# 36



# Facsimile Transmission

250 Vesey Street ● New York, NY 10281-1047 ● 212/326-3939
Facsimile: 212/755-7306

Please hand deliver the following facsimile to:

To:        18774777972
Company:
Fax:       18774777972

Date:      10-07-2021
Pages:     16

From:      Scarduzio, Michael J.
Phone:     +12123263939

Subject: Request for Administrative Review of Notice of Jeopardy Assessment and Rights to Appeal: Robert T. Brockman

Message:

Dear Ms. Stevens,

On behalf of Robert T. Brockman, enclosed please find a copy (without exhibits) of our Request for Administrative Review of the Notice of Jeopardy Assessment and Rights to Appeal. The original (attaching Exhibits A through K) was sent to you by USPS Certified Mail, and a copy of the same was overnight to you by UPS.

Should you have any questions or issues, please do not hesitate to contact me directly at 845-664-1460.

Thank you,

Mike

Michael J. Scarduzio
Associate
JONES DAY® - One Firm Worldwide℠
250 Vesey Street
New York, NY 10281



**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Please call the sender immediately if the facsimile you receive is incomplete or illegible.

ALKHOBAR ● AMSTERDAM ● ATLANTA ● BEIJING ● BOSTON ● BRISBANE ● BRUSSELS ● CHICAGO ● CLEVELAND ● COLUMBUS ● DALLAS
DETROIT ● DUBAI ● DUSSELDORF ● FRANKFURT ● HONG KONG ● HOUSTON ● IRVINE ● LONDON ● LOS ANGELES ● MADRID ● MELBOURNE
MEXICO CITY ● MIAMI ● MILAN ● MINNEAPOLIS ● MOSCOW ● MUNICH ● NEW YORK ● PARIS ● PERTH ● PITTSBURGH ● RIYADH
SAN DIEGO ● SAN FRANCISCO ● SÃO PAULO ● SHANGHAI ● SILICON VALLEY ● SINGAPORE ● SYDNEY ● TAIPEI ● TOKYO ● WASHINGTON



# Facsimile Transmission

250 Vesey Street ● New York, NY  10281-1047 ● 212/326-3939
Facsimile: 212/755-7306

Please hand deliver the following facsimile to:
Office  +1.212.326.3638

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

NOTICE: This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

Please call the sender immediately if the facsimile you receive is incomplete or illegible.

ALKHOBAR  ·  AMSTERDAM  ·  ATLANTA  ·  BEIJING  ·  BOSTON  ·  BRISBANE  ·  BRUSSELS  ·  CHICAGO  ·  CLEVELAND  ·  COLUMBUS  ·  DALLAS
DETROIT  ·  DUBAI  ·  DUSSELDORF  ·  FRANKFURT  ·  HONG KONG  ·  HOUSTON  ·  IRVINE  ·  LONDON  ·  LOS ANGELES  ·  MADRID  ·  MELBOURNE
MEXICO CITY  ·  MIAMI  ·  MILAN  ·  MINNEAPOLIS  ·  MOSCOW  ·  MUNICH  ·  NEW YORK  ·  PARIS  ·  PERTH  ·  PITTSBURGH  ·  RIYADH
SAN DIEGO  ·  SAN FRANCISCO  ·  SÃO PAULO  ·  SHANGHAI  ·  SILICON VALLEY  ·  SINGAPORE  ·  SYDNEY  ·  TAIPEI  ·  TOKYO  ·  WASHINGTON

# JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

DIRECT NUMBER: (212) 326-8329
FJACKSON@JONESDAY.COM

October 7, 2021

*VIA USPS CERTIFIED MAIL (WITH EXHIBITS), UPS OVERNIGHT, AND*
*FACSIMILE (WITHOUT EXHIBITS) (877) 477-7972*

Janice C. Stevens
Internal Revenue Service
1919 Smith Street 4020HOU
Houston, Texas 77002

RE:     **Request for Administrative Review of Notice of Jeopardy Assessment and**
        **Rights to Appeal: Robert T. Brockman (TIN 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)**

Dear Ms. Stevens:

Pursuant to I.R.C. § 7429(a)(2), Robert T. Brockman requests administrative review of
the Notice of Jeopardy Assessment and Rights to Appeal, dated September 9, 2021 (the
"Jeopardy Assessment").[1]

The Jeopardy Assessment totals $1,418,272,371.71, inclusive of tax, penalties, and
interest, for taxable years 2004 through 2007, 2010, and 2012 through 2018. In its Jeopardy
Recommendation Report (the "Jeopardy Report")[2], the IRS alleges the amount assessed is due to
Mr. Brockman's purported failure to report approximately $2.7 billion of income on his tax
returns. In short, the IRS alleges that Mr. Brockman is the owner of assets held by the
A. Eugene Brockman Charitable Trust ("AEBCT"), the Alpheus Charitable Trust ("ACT"), the
Messery Charitable Trust ("MCT"), and the Heraclides Charitable Trust ("HCT"), and should
have reported income earned by the AEBCT, ACT, MCT, and HCT over a fifteen-year period.
Ex. B at 1, 10, 14-15, 17-18. Similar allegations against Mr. Brockman were made in an

---

[1] Attached as Exhibit A is a copy of the Jeopardy Assessment (without enclosures). The Jeopardy
Assessment, as issued to Mr. Brockman by the IRS, enclosed (i) IRS Form 4549-A, *Report of Income Tax
Examination Changes,* (ii) a 78-page Jeopardy Recommendation Report (with attachments lettered A through D and
totaling roughly 3,000 pages), (iii) IRS Publication 1, *The Taxpayer Bill of Rights,* (iv) IRS Notice 609, *Privacy Act
Notice,* (v) IRS Publication 1660, *Collection Appeal Rights,* (vi) IRS Publication 594, *The IRS Collection Process,*
and (vii) IRS Form 12153, *Request for a Collection Due Process or Equivalent Hearing.*

[2] Attached as Exhibit B is a copy of the Jeopardy Report (without attachments). Certain items referenced
within the Jeopardy Report were missing. Counsel for Mr. Brockman contacted the IRS examiners regarding those
missing items and was promised copies would be provided. As of the date of this Request for Administrative
Review of Notice of Jeopardy Assessment and Rights to Appeal, neither Mr. Brockman nor his counsel has been
provided with the missing items.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Janice C. Stevens
October 7, 2021
Page 2

indictment in *United States v. Brockman*, docketed as No. 4:21-cr-00009 in the Southern District of Texas ("*United States v. Brockman*").

Importantly, if the IRS's position is correct (which Mr. Brockman disputes) there are assets in the United States that are readily available for collection. As the IRS acknowledges, the AEBCT holds a greater than 99% interest in Universal Computer Systems Holding Inc. ("UCSH"), a Delaware entity. Ex. B at 2, 8. UCSH in turn indirectly owns 100% of The Reynolds and Reynolds Company ("R&R"), an Ohio company with operations in Houston, Texas and Dayton, Ohio. Ex. B at 3-4, 8.[3] R&R is estimated to be worth approximately $5 billion. Ex. C at ¶¶ 25-27.[4] There are no allegations in the Jeopardy Report that anyone has taken any action to conceal, dissipate, transfer, or in any way diminish the value of R&R. In other words, based on the IRS's theory that Mr. Brockman is the owner of R&R, there are assets worth a multiple of the asserted tax liability that are and will remain available in the United States. Thus the IRS cannot make out a case that, even if the tax liability against Mr. Brockman were to be established, collection would be jeopardized.

The IRS can only immediately assess an amount of tax due when it determines that such an assessment will be "jeopardized by delay." I.R.C. § 6861(a). Such an assessment, however, is an "extraordinary measure" that is meant to be used "sparingly" and only in light of "exigent circumstances." *See e.g.*, *Fumo v. United States*, No. 13-3313, 2014 U.S. Dist. LEXIS 77082, at *45, *76 (E.D. Pa. 2004). Accordingly, such an assessment may be subject to administrative review to determine whether: (i) the assessment was reasonable under the circumstances, and (ii) the amount assessed was appropriate. I.R.C. § 7429(a)(3). Where jeopardy is not found to exist, the Secretary must abate the assessment. I.R.C. § 6861(g).

Wholly ignoring its own position that Mr. Brockman is the owner of R&R, the IRS, in support of its determination that collection would be "jeopardized by delay," alleges that Mr. Brockman is or appears "to be designing quickly to place [his] property or property controlled by [him] beyond the reach of the government by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons." Ex. A at 1. To this end, the IRS relies on (i) certain transfers of real property owned as separate property by his spouse and (ii) legal proceedings in Bermuda concerning the appointment of a trustee of the AEBCT. Ex. A at 1; Ex. B at 52-53. As discussed in detail below, none of these activities in any way dissipated or

---

[3] Throughout the Jeopardy Report, the IRS refers to the assets and activities of the offshore trusts as belonging to or having been undertaken by Mr. Brockman. Thus the Jeopardy Report flatly contends that Mr. Brockman is the true owner of the U.S. companies UCSH and R&R, stating: "Brockman currently owns 99.173% of his company, UCS Holding Inc. and its subsidiaries, though [*sic*] his ownership of the A. Eugene Brockman Charitable Trust, formed in Bermuda." Ex. B at 2.

[4] Attached as Exhibit C is the First Affidavit of Dorothy Kay Brockman dated December 30, 2020 ("DKB Affidavit"), filed *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities*, Case No 476 of 2020 (Bermuda Supreme Court).

JONES DAY

Janice C. Stevens
October 7, 2021
Page 3

diminished the value of any of Mr. Brockman's assets or moved any assets outside the reach of the United States.

Apart from the two pages setting out the recent transfers of real property and noting (but incorrectly describing) the Bermuda litigation, the balance of the 78-page Jeopardy Report details the allegations in the indictment brought in *United States v. Brockman.* As discussed below, two key points refute the IRS's citation to the indictment as a basis for the Jeopardy Assessment. First and foremost, those allegations remain unproven. Second, the indictment was brought over one year ago, and the activity charged in the indictment is alleged to have taken place long before that. There is simply nothing about the pendency of the indictment or its allegations to support a current basis for the Jeopardy Assessment.

It is also important to note, as the IRS fails to do, that Mr. Brockman was diagnosed with Parkinson's disease and dementia in early 2019, and that his physical and cognitive condition has declined greatly since his diagnosis. As detailed more extensively below, Mr. Brockman's cognitive impairment renders him incapable of engaging in the type of machinations that the IRS speculates are occurring here.

For the reasons set forth herein, the Jeopardy Assessment was not reasonable under the circumstances and must be abated. Jeopardy does not exist in this matter. There are no facts or circumstances supporting a reasonable determination that collection is in danger or that Mr. Brockman is designing quickly to place property outside the reach of the government. In fact, there is no evidence that Mr. Brockman has taken any acts, directly or indirectly, to impede collection, and there is no evidence that any of his assets have been "moved" – whether by concealment, dissipation, or transfer – outside the reach of the government. *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *83 ("An element to analyzing the reasonableness of a jeopardy assessment is whether the taxpayer placed property beyond the reach of the government, *leaving inadequate or no property or other assets for collection by the government.*") (emphasis added). Instead, the IRS misconstrues the facts and circumstances to give the appearance that collection is in danger to justify its assessment. That positon is not supported by the circumstances and is further undermined by the IRS's own position that Mr. Brockman has assets located in the United States that exceed the purported assessment by a factor of five or greater.

**The IRS's issuance of the Jeopardy Assessment was unreasonable under the circumstances.**

In determining whether a jeopardy assessment is reasonable, one of three conditions set forth in the Treasury Regulations must be present. These conditions are: (i) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself; (ii) the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; and (iii) the taxpayer's financial solvency is or appears to be imperiled. Treas. Reg. § 1.6851-1(a)(1). Those are the only three conditions that justify a valid

JONES DAY

Janice C. Stevens
October 7, 2021
Page 4

jeopardy assessment. *McWilliams v. Comm'r*, 103 T.C. 416, 424 (1994). The IRS bears the burden of proving the reasonableness of the Jeopardy Assessment. I.R.C. § 7429(g).

In the Jeopardy Report, the IRS is silent as to the first (risk of flight) and third (financial solvency) conditions. As such, the IRS has apparently conceded that neither of these conditions exist in this case. For completeness, however, we include information below demonstrating that neither condition exists. The Jeopardy Assessment, therefore, turns on whether the IRS can show that there are actions taken by Mr. Brockman that reasonably demonstrate that his property is being placed beyond the reach of the government.

> **1. Mr. Brockman is not (nor appears to be) "designing quickly" to depart from the United States or to conceal himself.**

The IRS does not and cannot assert, based on the circumstances, that Mr. Brockman is or appears to be a flight risk. Mr. Brockman has Parkinson's disease and dementia. He has been hospitalized four times this year: in March for five days in connection with a urinary tract infection and resultant sepsis; for another twelve days in late May and early June, again for a urinary tract infection and sepsis; overnight in late June in connection with surgery to alleviate the cause of the infections; and most recently for four days in September for yet another urinary tract infection. He is now wholly dependent on round-the-clock caregivers.

Mr. Brockman is a frail, sick, cognitively impaired 80 year-old man. He is a United States citizen and has a history of military service. He and Dorothy Brockman, his wife of 53 years, have lived in Houston, Texas, for more than five decades. They have one son, a daughter-in-law, and an eighteen-month old grandson, who also live in Houston.

Perhaps even more to the point, the Court in *United States v. Brockman* released Mr. Brockman on bond, and he surrendered his passport and agreed to certain travel restrictions.[5] Mr. Brockman's health makes it a near-impossibility that he could flee the United States, and in any case he lacks the means to do so. He simply is not and could not be "designing quickly to depart from the United States or to conceal himself."

> **2. Mr. Brockman's financial solvency is not and does not appear to be imperiled.**

The IRS fails to demonstrate or even allege in the Jeopardy Report that Mr. Brockman's financial solvency is or appears to be imperiled. A taxpayer's solvency must be considered in determining whether a jeopardy assessment is reasonable. Under the IRS's own guidance, a

---

[5] The indictment in *United States v. Brockman* was originally filed in the Northern District of California, and transferred to the Southern District of Texas on Mr. Brockman's motion. Conditions of release were set by the Magistrate Judge in the Northern District of California prior to transfer. Case No. 3:20-cr-00371-WHA, Dkt. No. 10.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 5

taxpayer's financial solvency "*must be threatened . . .* or there can be *no jeopardy.*" I.R.M. 5.17.15.2.1(3) (12-29-2009) (emphasis added); *see also* Treas. Reg. § 1.6851-1(a). When evaluating a taxpayer's solvency, the Treasury Regulations require that such an evaluation be made without regard to the tax assessment. Treas. Reg. § 1.6851-1(a)(1). In other words, Mr. Brockman's solvency must be evaluated without taking into account the Jeopardy Assessment of approximately $1.4 billion.

There is no evidence that Mr. Brockman's solvency is imperiled. In particular, IRS guidance identifies certain factors to consider when evaluating a taxpayer's solvency, including whether (a) there are balance due accounts open with respect to the taxpayer, (b) a search of the local court records, or other resources, would reveal outstanding judgments against the taxpayer, and/or (c) the taxpayer has at some time in the past filed for bankruptcy. *See* I.R.M. 5.17.15.2.1(3) (12-29-2009) and I.R.M. 4.15.1.9.1.3 (07-26-2021). None of these factors are present in this matter – Mr. Brockman has no open balance due accounts, no outstanding judgments, and has never filed for bankruptcy. To the contrary, Mr. Brockman's assets exceed known liabilities and he has always met his debts. Moreover, Mr. Brockman's lifestyle and expenses fall well within and are readily met by the income that he has earned and reported on his tax returns, both from his employment at R&R and through personal investments.

Indeed, the IRS's own position in this matter – that Mr. Brockman "controls" assets well in excess of the tax assessment – supports a conclusion that his solvency is not imperiled. The IRS effectively alleges that Mr. Brockman is the owner of assets valued at approximately $8 billion. This amount is well in excess of any outstanding alleged liabilities, including the approximately $1.4 billion allegedly due and owing under the Jeopardy Assessment. Ex. C at ¶¶ 25-27. Further, of the $8 billion in assets, approximately $5 billion is attributable to R&R, an operating company located domestically in Ohio and Texas. The IRS cannot have it both ways. It cannot take the position that, on the one hand, Mr. Brockman's solvency is imperiled, and on the other, he is the true owner of $8 billion in assets, the vast majority of which are located in the United States. As such, "there can be no jeopardy" here.

### 3. The IRS intentionally misconstrues the underlying circumstances to justify the Jeopardy Assessment.

Because the IRS cannot contend that Mr. Brockman is a flight risk or is insolvent, the IRS alleges that he is attempting to move assets outside the reach of the government. In support of this contention, the IRS relies on certain allegations that purportedly establish that Mr. Brockman is "designing quickly" to place property out of the reach of the government. *First,* the IRS focuses on certain dispositions of real property, none of which was owned by Mr. Brockman, to third parties entered into in the ordinary course. *Second,* the IRS alludes to Bermuda litigation involving the AEBCT as having the effect of "moving the activities and transferring the assets" of the trust. Ex. A at 1. Such arguments are erroneous and contradict the very facts set out in the Jeopardy Assessment and facts of which the government is aware.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 6

> **i.  Recent real property transactions by Mrs. Brockman do not demonstrate that property is being placed outside the reach of the government.**

The Jeopardy Assessment improperly asserts that the sale or gift of three separate properties by Mrs. Brockman, along with the listing for sale of a fourth property, demonstrate that Mr. Brockman is placing property outside the reach of the government. Ex. B at 52. This assertion is false, and is belied by the very facts in the Jeopardy Report that establish that all four properties were (and for some time have been) the sole and separate property of Mrs. Brockman.

The four properties are each located in Houston, Texas, and the transactions may be described as follows:

1. **333 West Friar Tuck Lane.** Until earlier this year this property was Mr. and Mrs. Brockman's primary residence. It has been the sole and separate property of Mrs. Brockman since shortly after it was purchased in 1997. Mr. Brockman has not had any property right or interest in or to it since 1998. In January 2021, on account of their advanced age and Mr. Brockman's declining health, as well as to reduce costs, Mrs. Brockman bought a smaller and less expensive home in Houston located at 3465 Overbrook Lane, where she and Mr. Brockman now reside. Mrs. Brockman listed the 333 West Friar Tuck Lane property for sale on May 17, 2021 for $15,350,000. The property has not yet been sold and remains the property of Mrs. Brockman.[6]

2. **335 West Friar Tuck Lane.** This property is a vacant 1.55 acre lot lying adjacent to 333 West Friar Tuck Lane, described above. It was sold for $3,999,000 on December 11, 2020, in connection with the intended sale of 333 West Friar Tuck Lane and a move to a smaller residence. The Jeopardy Assessment erroneously states that the property was jointly owned by Mr. and Mrs. Brockman, and that it was sold by Mrs. Brockman, acting on behalf of Mr. Brockman as his power of attorney. That is not true. It was not owned by Mr. Brockman. Mrs. Brockman purchased this property in 2005 as her sole and separate property. *See* Ex. D.[7]

3. **1731 Sunset Boulevard.** This property is a four-story townhouse that Mr. and Mrs. Brockman acquired in 2011. The Jeopardy Assessment states that "shortly thereafter" it was partitioned and became the sole and separate

---

[6] *333 West Friar Tuck Ln, Houston, TX MLS #20114033*, ZILLOW (Oct. 6, 2021, 9:10 PM), https://www.zillow.com/homedetails/333-W-Friar-Tuck-Ln-Houston-TX-77024/27806386_zpid/.

[7] Attached as Exhibit D are the underlying property records establishing Mrs. Brockman as the sole owner of 335 West Friar Tuck Lane since it was purchased in 2005.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 7

      property of Mrs. Brockman. Ex. B at 52. Mr. and Mrs. Brockman's son,
      Robert, resided at this property prior to and after his marriage to his wife,
      Elizabeth. After Elizabeth Brockman became pregnant, they moved to 3702
      Inwood Drive, discussed below. On May 12, 2021, after her son and
      daughter-in-law moved from the townhouse, Mrs. Brockman sold it for
      $1,375,000. Mr. Brockman had no property right or interest in or to the
      property at the time of its disposition. *See* Ex. B at 36.

    **4. 3702 Inwood Drive.** This property is a four-bedroom home and is the current
      residence of Mr. and Mrs. Brockman's son, daughter-in-law, and toddler
      grandson. Mrs. Brockman acquired it as her sole and separate property on
      January 21, 2020, and at no point did Mr. Brockman ever hold any property
      right or interest in or to it. Ex. B at 37. Mrs. Brockman gifted this property to
      her daughter-in-law on November 12, 2020.

    None of these property transactions indicate that either Mr. Brockman or his wife is
attempting to place property outside the reach of the government.

    *First*, at the time of disposition or listing (and for quite some time prior), Mr. Brockman
had no property right or interest in or to any of these four properties. In short, these are not his
properties and, as such, were never within "reach" of the government. Their dispositions or
potential disposition is completely irrelevant to the analysis as to whether assessment against Mr.
Brockman would be "jeopardized by delay."

    *Second*, none of these dispositions or listings demonstrate any jeopardy, as "the jeopardy
assessment statute in most cases contemplates the movements of property out of reach of the
government by means of underhanded maneuvering." *Fumo*, 2014 U.S. Dist. LEXIS 77082, at
*92 (citing *George F. Harding Museum v. United States*, 674 F. Supp. 1323, 1329 (N.D. Ill.
1987). In this case, Mrs. Brockman entered into transfers in a transparent manner, and in a
manner that allowed the IRS to trace the transfers using only public databases and public records.
*See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *87. For example, each of the properties was
registered on a Multiple Listing Service or MLS (a public database in which property
information is disseminated among real estate professionals for listing and marketing purposes)
and each such transfer was publicly recorded with the Harris County Clerk in Texas. Mrs.
Brockman neither transferred the properties to any alter ego or shell corporation, nor to parties
unknown to the IRS who might be difficult to locate. *Id.* at *86.

    *Third*, such transfers are not indicative that Mr. Brockman or his wife is "designing
quickly" to place property beyond the reach of the IRS. Instead, such transfers were entered into
in the ordinary course, given the Brockmans' age and family circumstances. Mrs. Brockman has
filed separate tax returns since 1996, and maintains property and investments separate from her
husband. Mrs. Brockman has engaged in transfers similar to these over the course of her long

JONES DAY

Janice C. Stevens
October 7, 2021
Page 8

marriage to Mr. Brockman. Nothing in the record suggests that this conduct deviates from her previous conduct or that such transfers were in response to any government investigation.

*Fourth*, with respect to the sales of the properties at 335 West Friar Tuck Lane and 1731 Sunset Boulevard (and in the event of a sale of 333 West Friar Tuck Lane), these dispositions were for reasonably equivalent value, and as such they do not "dissipate" assets. The 335 West Friar Tuck Lane property – a vacant 1.55 acre lot – sold for $3,999,000. The 1731 Sunset Boulevard townhouse sold for $1,375,000. Both properties were transferred at arm's length to unrelated third parties, and the IRS does not contend that such assets were for less than their reasonably equivalent value. *See id.* at *83. Moreover, as the Jeopardy Report concedes, Mrs. Brockman acquired two additional properties in the same time period. If, as the IRS alleges, she were Mr. Brockman's nominee (which she is not), then all she did was replace real property assets with other real property assets. Ex. B at 37, 39. Through the use of public records and information provided to the IRS, the IRS was able to (or easily could) determine the amount of each sale and where the proceeds went, as well as the acquisitions of other properties. Ex. B at 35, 37, 39. *See McWilliams*, 103 T.C. at 427 ("Petitioner did not attempt to transfer or hide the assets in another person's name . . . .").

The bottom line with respect to all four real property transactions is that there has been no attempt to hinder or defeat collection by the IRS. These transactions do not support the IRS's determination that collection is in jeopardy. Reliance on these transactions is not reasonable, and the Jeopardy Report misstates and ignores relevant facts.

> ### ii. The appointment of a new and independent institutional trustee by the Bermuda courts did not jeopardize the IRS's ability to collect any liability assessed against Mr. Brockman.

The Jeopardy Report contends that Mr. and Mrs. Brockman "have litigation pending in Bermuda to appoint new trustees" of the AEBCT. Ex. B at 52-53. The Jeopardy Report cites to a case captioned as *St. John's Trust Company (PVT) Limited vs. James Watlington, et al.*, filed in the Supreme Court of Bermuda in 2019 ("*SJTC v. Watlington*"), and states that "Mrs. Brockman is acting on Mr. Brockman's behalf in the trust proceedings pursuant to the power of attorney granted to her by Brockman." Ex. B at 52-53. This speculative contention misstates the facts, wholly misconstrues the Bermuda litigation, and ignores the determinations that have been made by the Bermuda courts.

Contrary to the Jeopardy Report, Mr. and Mrs. Brockman did not initiate and were not parties to *SJTC v. Watlington*. Moreover, the appointment of an independent trustee of the AEBCT is not, as the Jeopardy Report states, pending in *SJTC v. Watlington*, but rather has been fully resolved by the Bermuda Court of Appeal in an entirely separate litigation. Nonetheless, the IRS now baselessly contends that this litigation could "*potentially* grant[] [Mr. and Mrs. Brockman] greater control over the trust and ability to dispose or transfer trust assets." Ex. B at 52 (emphasis added).

JONES DAY

Janice C. Stevens
October 7, 2021
Page 9

By way of background, St. John's Trust Company (PVT) Limited ("SJTC") served as the trustee of the AEBCT for a number of years. SJTC had no other business apart from this role. In December 2019, the Supreme Court of Bermuda replaced SJTC with Medlands (PTC) Ltd. ("Medlands"), which similarly was a bespoke trust company that had no purpose other than to serve as the trustee of the AEBCT. Prior to and following the appointment of Medlands, multiple disputes, including *SJTC v. Watlington*, were pending in Bermuda courts between SJTC and its directors, and Medlands and its directors and counsel, concerning which was the proper trustee for the AEBCT. As a result, the AEBCT was exposed to the payment of management and litigation fees for all sides of these disputes. It was also, in many ways, paralyzed from functioning, and was effectively hindered from meeting its charitable commitments. Ex. C at ¶¶ 6, 9, 29-31, 47-49, 53.

During the pendency of the various disputes in Bermuda, Mr. Brockman's health was deteriorating and his cognitive impairment was worsening. Citing these health concerns (and not acting through any power of attorney, as erroneously alleged in the Jeopardy Report), Mrs. Brockman sought and was granted authorization by the Bermuda courts to present the views of the individual human beneficiaries of the AEBCT.[8] Ex. C at ¶ 1; Ex. E at ¶ 1.[9] Mrs. Brockman made clear that it was her position that the trustee of the AEBCT should be an independent, experienced trust company, and not either of SJTC or Medlands. Ex. C at ¶ 54.

Through her counsel, Mrs. Brockman investigated appropriate trust companies. Ex. C at ¶ 54. Maples FS Limited ("Maples"), a well-regarded, regulated trust company that routinely serves as an independent professional trustee, presented as the most qualified and prepared trust company. Ex. C at ¶ 54; Ex. F at ¶ 6, MF-2[10]; Ex. G at ¶¶ 6-12[11]. Maples in turn decided to form BCT Limited ("BCT"), a wholly owned subsidiary, to serve as the AEBCT trustee. In late

---

[8] The interests of the charitable beneficiaries were represented by the Bermuda Attorney General.

[9] Attached as Exhibit E is the Order of the Honorable Justice Subair Williams dated March 26, 2021 ("March 26 Order"), filed *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities*, Case No 476 of 2020 (Bermuda Supreme Court) as well as *In the Matter of the "B" Trust*, Case No. 376 of 2018 (Bermuda Supreme Court).

[10] Attached as Exhibit F is a copy of the Second Affidavit of Miriam Fisher, with exhibits thereto, submitted in *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda).

[11] Attached as Exhibit G is a copy of the Third Affidavit of Miriam Fisher, with exhibits thereto, submitted in *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda).

JONES DAY

Janice C. Stevens
October 7, 2021
Page 10

2020, Mrs. Brockman filed an application before the Bermuda Court of Appeal for BCT to be appointed as trustee. Ex. H at ¶ 3.[12]

Noting that Maples and BCT are Cayman-based entities, the IRS postures that the appointment of BCT would have the "effect . . . of moving the activities and transferring assets to yet another offshore location." Ex. A at 1. Again the record in the Bermuda proceeding wholly refutes the IRS's rank conjecture: BCT made a commitment during the proceedings before the Bermuda Court of Appeal to submit to Bermuda law. Ex. G at MF-3 at 2.

On February 2, 2021, following a three-day hearing of an appeal by SJTC of the appointment of Medlands to serve as trustee of the AEBCT, the Clerk of the Bermuda Court of Appeal informed the parties that the Bermuda Court of Appeal determined that Medlands should be relieved as trustee of the AEBCT, that all claims by SJTC were to be dismissed, and that the lower court should appoint BCT as trustee on a date and upon terms to be set by that court. Ex. I.[13] By Order dated March 26, 2021, the Supreme Court of Bermuda formally appointed BCT as the trustee of the AEBCT, effective April 1, 2021. Ex. E at ¶ 2.

The reasons for the appointment of BCT – to bring an end to the costly internecine battle between SJTC and Medlands and thereby enable the AEBCT to meet its charitable purposes – and the qualifications of Maples, acting through BCT, as an independent, professional trust company, were fully presented to and vetted by the Bermuda courts.

Ignoring (or perhaps inexcusably ignorant of) this record,[14] the IRS conjectures that the Bermuda litigation was intended to or somehow did give Mr. and Mrs. Brockman some ability to transfer some unidentified property of Mr. Brockman to a foreign trust, or to establish a new trust for some unspecified purpose, or to amend trust documents to accomplish some uncertain and unstated result. Ex. B at 2, 52. In this mix, the IRS also suggests that Mrs. Brockman would somehow use the durable power of attorney granted to her by her ailing husband to effect this amorphous scheme. Ex. B at 53. Such a conclusion is illogical and unreasonable.

---

[12] Attached as Exhibit H is a copy of the Originating Summons dated December 31, 2020, filed *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities*, Case No 476 of 2020 (Bermuda Supreme Court).

[13] Attached as Exhibit I is a copy of the February 2, 2021 letter from the Clerk of the Bermuda Court of Appeal ("February 2, 2021 Bermuda Court of Appeal Letter"), issued in *St. John's Trust Company (PVT) Ltd. v. Medlands (PTC) Ltd.*, Civil Appeal No. 8 of 2020, Bermuda Court of Appeal), as a companion action to *In the Matter of the Trust Settled by A Eugene Brockman on 26 May 1981 for the Benefit of his Children and Charities and in the Matter of the Trustee Act 1975, Dorothy Kay Brockman v. Medlands (PTC) Limited, et. al.*, 2020: No. 476 (Supreme Court of Bermuda). The February 2, 2021 Bermuda Court of Appeal Letter stated the Court would provide "reasons to follow." To date the Court has not done so.

[14] The Jeopardy Report misleadingly creates the impression that a determination as to the appointment of a new trustee is still pending before the Bermuda Court of Appeal. *See* Ex. B at 2, 53. The appointment of BCT was fully resolved by the Bermuda courts many months before the September 9, 2021 Jeopardy Assessment, as set out in the February 2, 2021 Bermuda Court of Appeal Letter and the March 26 Order. *See* Ex. E and Ex. I.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 11

The IRS offers nothing, not even a hint, how or why the appointment of BCT could or did give Mr. and Mrs. Brockman any ability to influence the actions of the AEBCT, or why Maples, a long-established independent trust company and the sole owner of BCT, would permit this outcome. To the contrary, the record in the Bermuda litigation reflects extensive and thoughtful oversight by the Bermuda courts concerning the operation and governance of the AEBCT.

Moreover, the mere existence of a durable power of attorney allowing Mrs. Brockman to act on behalf of her husband, which the IRS acknowledges was publicly recorded, *see* Ex. B at 7, adds nothing to the IRS's futile attempt to stir up a vision of potential nefarious future conduct by her. The durable power of attorney played no role in the future is not grounds for issuing a jeopardy litigation. Mr. Brockman has Parkinson's disease and dementia. He has been hospitalized four times in six months—twice for extended periods to treat life-threatening sepsis. In addition to the durable power of attorney cited by the IRS, Mrs. Brockman also holds medical power of attorney for her husband of fifty-three years. At this point, given Mr. Brockman's health issues and especially his mental incapacity, to omit these measures would be irresponsible.

The IRS's speculations are without a shred of foundation. In any case, speculation as to what either Mr. or Mrs. Brockman may do in the future is not grounds for issuing a jeopardy assessment. *See, e.g., Pircher v. United States*, No. 08-0835, 2008 U.S. Dist. LEXIS 101021, at *9 (W.D. Tex. 2008) ("without evidence, the jeopardy assessment . . . is arbitrary or capricious and subject to release."). "[T]he necessary showing requires more than a showing that a taxpayer's assets could easily be dissipated. It requires . . . a showing that the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government." *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *100. After all, as set forth in *Fumo*, "Any taxpayer could easily dissipate their assets, but that would not justify finding a jeopardy assessment reasonable without also finding that the applicable standards were met." *Id.*

**The IRS's discussion of the allegations in *United States v. Brockman* are not relevant and cannot justify the Jeopardy Assessment.**

The IRS seeks to bolster the shortfalls in its position by tracking and elaborating on the allegations made against Mr. Brockman in the indictment in *United States v. Brockman*. In the Jeopardy Report, as in the indictment, the government contends that Mr. Brockman is the true owner of the assets of the AEBCT, ACT, MCT, and HCT, and should be charged with income earned by entities held in these trusts. Ex. B at 1, 43, 59-62. Mr. Brockman has entered a plea of not guilty to these charges, which remain unproven.[15] It is axiomatic that a criminal defendant is presumed innocent until proven guilty. *Nelson v. Colorado*, 137 S. Ct. 1249, 1255-56 (2017). The Jeopardy Report would also recharacterize a 2004 transaction as a taxable dividend from a

---

[15] A hearing is scheduled in *United States v. Brockman* for the week of November 15, 2021, to determine whether Mr. Brockman is competent to understand the proceedings against him and to assist in his defense.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 12

U.S. entity to an offshore entity held in the AEBCT trust structure, and charge Mr. Brockman with income from that transaction as well.[16] Ex. B at 1, 43.

The indictment was handed down on October 1, 2020, nearly a year before the IRS took the precipitous action of making the Jeopardy Assessment. Apart from the continuing and well-known existence of offshore entities, neither the indictment nor the Jeopardy Report speaks to current, ongoing activities to move assets out of the reach of the IRS. More specific to the issue to be decided now, nothing in the pendency of the indictment nor its allegations supports a conclusion that, were the government able to prove the charges in the indictment, and the IRS able to prove that there is additional tax liability, collection is in any way in jeopardy. To the contrary, the Jeopardy Report itself makes clear that collection can wait on the outcome of normal assessment procedures.

As set out in the Jeopardy Report, the AEBCT was settled in 1981 by Mr. Brockman's father. The beneficiaries of the AEBCT are Mr. Brockman, along with his wife, brother, and sister-in-law, and charities in the United States, Great Britain, and Bermuda. Ex. B at 8. Although the IRS describes distributions made by the AEBCT to U.S. charities, *see* Ex. B at 1, it does not, and cannot, assert that any U.S. person, including Mr. Brockman, has ever received any distribution. The Jeopardy Report is similarly devoid of any suggestion that any U.S. individual received a distribution from any of the ACT, MCT or HCT.

As described by the Jeopardy Report, the AEBCT is a non-grantor offshore discretionary trust with U.S. individuals and U.S., British, and Bermuda charities as beneficiaries. Ex. B at 8. There is nothing innately wrong with this structure. *See, e.g.*, P.L.R. 201308016 (Feb. 22, 2013) (concluding that because discretionary beneficiaries cannot "be said to hold more than an expectancy in trust property[,]" certain trust modifications will not result in such beneficiaries realizing income from the trust); F.S.A. 199952014 (Sept. 23, 1999) (concluding that discretionary beneficiaries should not be treated under the grantor trust rules as the owner of foreign trusts). Nor was the AEBCT the secret that the IRS would make it out to be. The settlor, Mr. Brockman's father, reported the transfer of assets at the time of the formation of the AEBCT, as well as income earned from the AEBCT during his lifetime.[17] Ex. J. Moreover, Mr.

---

[16] The Jeopardy Report repeatedly states that Mr. Brockman "received distributions" from investments made by entities owned by the AEBCT, ACT, MCT, or HCT. *See, e.g.*, Ex. B at 13, 16, 19. Nowhere, however, does the indictment or the Jeopardy Report contend that any funds left these trust structures. To the contrary, the Jeopardy Report bases its contentions on transfers into bank accounts that were in turn also held by the respective trusts. *See* Ex. B at 13, 16, 19. Similarly, by the IRS's theory, the proceeds in the 2004 transaction remained within the AEBCT trust structure. Ex. B at 61-62. In other words, the IRS's basis for charging Mr. Brockman with alleged unreported income depends solely on treating the offshore entities as shams; there is no allegation anywhere that Mr. Brockman received any distribution from any of the trusts, or of any of the funds at issue directly.

[17] Attached as Exhibit J is a Form 3520, *Creation of or Transfers to Certain Foreign Trusts*, filed by Mr. Brockman's father, Alfred Eugene Brockman, disclosing the formation of the AEBCT in 1981, and Forms 1040, *U.S. Individual Income Tax Returns*, filed by jointly by Alfred and Pearl Brockman for their taxable years 1981 through 1986, reporting income earned from the AEBCT.

Janice C. Stevens
October 7, 2021
Page 13

and Mrs. Brockman, along with Universal Computer Consulting Holding Inc., the predecessor entity to what is now UCSH, were examined by the IRS for taxable years 1992 through 1995. Contrary to the IRS's current contention, we understand from the counsel who represented Mr. and Mrs. Brockman and Universal Computer Consulting Holding Inc. that the ultimate ownership of Universal Computer Consulting Holding Inc. by the offshore structure was indeed disclosed as part of that examination. *Cf.* Ex. B at 33.

Most tellingly, the main assets of the AEBCT – UCSH, R&R, and related companies – *are in the United States.* This simply is not a case, as the IRS would make it out to be, where assets are being hidden offshore. These are U.S. companies that file and pay taxes in this country. Mr. Brockman sold the business that he founded to the AEBCT in the mid-1980s, and it grew in value, along with the investments that the IRS describes, inside the AEBCT structure.

The IRS contends that Mr. Brockman used HCT to conceal his alleged ownership interest in real property and a yacht, and used the Framfield Charitable Trust ("Framfield") to conceal his alleged ownership interest in a corporate airplane. Ex. B at 1, 20-22, 30-31. As much as the IRS would like to have some inference drawn from its citations to a summer home, fishing property, a yacht, and a plane, nothing in these allegations supports the one factor that the IRS must prove here – that its ability to collect will be "jeopardized by delay."

In making these allegations, the IRS glosses over or ignores key facts: Mr. Brockman paid fair market value for the use of all of these assets. The real properties are located in the United States, and directly held by U.S. entities. Ex. B at 20-21. And the Jeopardy Report supports its contention that Mr. Brockman has an interest in the yacht by citing to *Mr. Brockman's disclosure on IRS Form 8938 attached to Mr. Brockman's 2017 and 2018 personal tax returns* – hardly an effective means to keep something secret from IRS. Ex. B at 27.

Most glaring is the IRS's attempt to make something out of the nothingness of the circumstances concerning the corporate airplane. As the Jeopardy Report states, between 2012 and 2014, the plane was owned by Hardwicke Properties LLC ("Hardwicke"), a Delaware entity, which in turn was owned 99% by Red Plains Air Charter Inc. ("Red Plains"), a Delaware corporation, and 1% by Mr. Brockman.[18] Ex. B at 30. The Jeopardy Report acknowledges Hardwicke and Red Plains filed U.S. tax returns, and that Red Plains *fully disclosed that it was wholly owned by the Bermuda trust Framfield.* Ex. B at 31. These assets, and Mr. Brockman's relationship to them, were hardly hidden.[19] Moreover, the events of 2012 through 2014 have no bearing on whether a jeopardy assessment is appropriate in 2021.

---

[18] As noted in the Jeopardy Report, Red Plains sold its 99% interest in Hardwicke to UCSH in 2014. Ex. B at 31. Mr. Brockman sold his remaining 1% interest in Hardwicke to R&R in March 2021.

[19] The Jeopardy Report also acknowledges that Hardwicke was included as part of the IRS's examination of Mr. Brockman's 2006 and 2007 tax returns. Ex. B at 33.

JONES DAY

Janice C. Stevens
October 7, 2021
Page 14

In fact, nothing in the indictment has any relevance to the issue at hand – whether Mr. Brockman is "designing quickly" to place assets outside the reach of the IRS. This is the sole standard that matters to a determination here as to whether a jeopardy assessment may be sustained. Treas. Reg. § 1.6851-1(a)(1); *see also, McWilliams*, 103 T.C. at 424 ("in our review of jeopardy assessment cases we have found no case in which an assessment was upheld that did not contain at least one of the three conditions listed in the regulations"); *see also* Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, H.R. Doc. No. 10612, 94th Cong., 2d Sess. 361 n. 1 & 7 (1976) ("Congress believes that [one of the three conditions] which must exist before a jeopardy... assessment is made are reasonable.").

## Conclusion

As set forth above, a jeopardy assessment is an extraordinary measure that is meant only for exigent circumstances and should only be used sparingly. It effectively strips a taxpayer of the protections of an IRS examination, a normal Appeals process, and pre-assessment access to the Tax Court. Nothing in the record supports that any assessment by the IRS is in jeopardy, and accordingly, the normal assessment procedures should not be circumvented. The assessment was not reasonable under the circumstances and there is no jeopardy. As such, the assessment must be abated.

An executed Form 2848, *Power of Attorney*, is enclosed as Exhibit K. We have prepared the foregoing on behalf of Mr. Brockman and believe the facts alleged to be true and correct. We reserve the right to supplement this Request for Administrative Review.

Sincerely,

Frank J. Jackson

Enclosures

# GOV

# EXHIBIT

# 37

**Internal Revenue Service**                          **Department of the Treasury**

Independent Office of Appeals

8701 S Gessner Road                                   **Person to Contact:**
Suite 750, Stop 8000HAL                                 Bridget J Lewis
Houston, TX  77074-2944                                 Employee ID Number: 1000699398
                                                        Tel:   281-721-7112
                                                        Fax:  855-790-2980
Date:  October 27, 2021                                 Contact Hours: 7:30-4:00
                                                      **Refer Reply to:**
                                                        AP:EX:HOU:BJL
KATHRYN KENEALLY                                      **In Re:**
JONES DAY                                               ROBERT T. BROCKMAN
250 VESEY STREET                                     **Tax Period(s) Ended:**
NEW YORK NY  10281-1047                                 200412 through 201812


Dear Ms. Kathryn Keneally:

Appeals has determined that the jeopardy assessment is reasonable and that the amount assessed is appropriate under the circumstances.

You may request judicial review of a jeopardy assessment. The request must be made within 90 days after the earlier of: (1) the day the IRS Appeals Officer notifies you of the determination of the administrative review (the date of this letter); or (2) the 16th day after you file the request for the administrative review.

Jurisdiction for the judicial review lies exclusively in federal district court unless the assessment includes a tax year which is already a case pending before the Tax Court.


Sincerely,

Bridget J Lewis
Appeals Team Case Leader


**Government Exhibit**

37

# GOV

# EXHIBIT

# 38

DATE: October 6, 1994

TO:   PETER GODDARD

FROM: DON JONES

       PETERS INVESTMENTS, LTD. HAS AN $8,000,000 (U.S.) LOAN TO DATA
BASED ADVERTISING B.V.(DBA) IN AMSTERDAM.  DBA HAS PAID INTEREST ON
THAT LOAN ANNUALLY SINCE THE FIRST DUE DATE BY WIRE TRANSFER TO
ACCOUNT █████████ 031 AT CITCO BANK NEDERLAND WITH FURTHER
INSTRUCTIONS    TO    CREDIT    PETERS    INVESTMENTS,    LTD    ACCOUNT
██████████.005.   I UNDERSTAND THAT THE ACCOUNT AT CITGO BANK
NEDERLAND WAS ESTABLISHED BY CITCO TRUST CORP. LTD.

       TODAY THE MANAGEMENT COMPANY FOR DBA, WHICH IS TMF MANAGEMENT
B.V., ATTEMPTED TO PAY THIS LOAN IN FULL INCLUDING ACCUMULATED
INTEREST BY THE SAME TYPE OF WIRE TRANSFER.



RECEIVED
OCT 0 6 1994
159263

**Government
Exhibit**

38

DATE: October 6, 1994



TO:   PETER GODDARD

FROM: DON JONES

    PETERS INVESTMENTS, LTD. HAS AN $8,000,000 (U.S.) LOAN TO DATA BASED ADVERTISING B.V.(DBA) IN AMSTERDAM.  DBA HAS PAID INTEREST ON THAT LOAN ANNUALLY SINCE THE FIRST DUE DATE BY WIRE TRANSFER TO ACCOUNT �as███████031 AT CITCO BANK NEDERLAND WITH FURTHER INSTRUCTIONS TO CREDIT PETERS INVESTMENTS, LTD ACCOUNT ███████005.  I UNDERSTAND THAT THE ACCOUNT AT CITGO BANK NEDERLAND WAS ESTABLISHED BY CITCO TRUST CORP. LTD.

    TODAY THE MANAGEMENT COMPANY FOR DBA, WHICH IS TMF MANAGEMENT B.V., ATTEMPTED TO PAY THIS LOAN IN FULL INCLUDING ACCUMULATED INTEREST BY THE SAME TYPE OF WIRE TRANSFER.  UNFORTUNATELY, THEY WERE INFORMED BY CITCO BANK NEDERLAND THAT THE ACCOUNT ███████031 HAD BEEN CLOSED BY CITCO TRUST CORP. LTD., AND THERE WAS NO INFORMATION AVAILABLE ON A POSSIBLE NEW ACCOUNT.

    I NEED TO ASK THAT YOU IMMEDIATELY CONTACT DATA BASED ADVERTISING B.V. IN CARE OF TMF MANAGEMENT TO GIVE THEM THE PROPER WIRE TRANSFER INSTRUCTIONS SO THAT THIS PAYMENT CAN BE COMPLETED. THE FAX NUMBER FOR TMF MANAGEMENT IN AMSTERDAM IS: 011-31-206-730016 AND THE TELEPHONE NUMBER IS: 011-31-205-755600.

    PLEASE COPY ME ON YOUR MESSAGE TO TMF.  ALSO, WHEN THE PAYMENT IS RECEIVED, PLEASE NOTIFY TURNEY RANKINE AT BUTTERFIELD BANK IN GRAND CAYMAN SO THAT THE PROPER ACCOUNTING ENTRIES CAN BE MADE.

DON JONES

*Sherry - please notify of new a/c.*

*please copy to Don Jones.*

## Edge Investment Fund, Ltd.

**Share Register for  Entity Code: 2180**

**Authorised Share Capital is  USD 100,000**

| Certificate No. | Date | No. Shares Distinctive Nos. | Amt. Paid per Share | Shareholder | Date Cancelled | No. Shares Held |
|---|---|---|---|---|---|---|
| Redeemable Preference Shares at USD 0.010 each | | | | | | |
| B27 | 01 January 2001 | | 104.360 | Peters Investments Limited<br>PricewaterhouseCoopers<br>167 Merchants Street<br>Valetta<br>MALTA | | 445324.9430 |
| B28 | 01 January 2001 | 5272.1410 | 104.360 | Spanish Steps Holdings LLC<br>P.O. Box 61 CMR 01<br>167 Merchants Street<br>Valletta VLT 03<br>Malta | | 5272.1410 |
| D1 | 16 January 2001 | 46458.5156 | 1000.000 | Providian Enterprises Limited<br>Price Waterhouse Coopers<br>167 Merchant Street<br>Valetta<br>Malta | | 46458.5156 |
| D2 | 16 January 2001 | 11700 | 1000.000 | Providian Enterprises Limited<br>Price Waterhouse Coopers<br>167 Merchant Street<br>Valetta<br>Malta | | 11700 |
| | | | | | **Share Class Total:** | 756383.1232 |



# ATU Fund Administrators (BVI) Limited

**3076 SIR FRANCIS DRAKE'S HIGHWAY, P. O. BOX 3463
ROAD TOWN, TORTOLA, BRITISH VIRGIN ISLANDS
TEL. +1 (284) 494-1100,   FAX +1 (284) 494-1199**

## Fax

May we draw your attention to the possibility of telefax misuse. With the exception of gross negligence, the company excludes any liability for damages which arise from the use of telefax, e.g. from garbling, duplication or miscarriage and disclosure by unauthorized person.

14 March 2001ak

Ms. Francesca Dimech
PRICEWATERHOUSE COOPERS                  **URGENT**
167 Merchants Street
VLT 03, Valetta
MALTA

Class D file

*By Fax :*      011-356-244-768      **#2180**          Pages including cover page:  3

Dear Francesca,

**Re: Edge Investments Fund, Ltd., Class D Share
Subscriptions on behalf of Providian Enterprises Limited (formerly Peters Investments Limited) Current NAV price per Class D Share**

Thank you for your two faxes dated 12th March 2001 and as requested we attach our confirmations for the two subscriptions on behalf of Providian Enterprises Limited (formerly Peters Investments Limited) into the Edge Investments Fund, Ltd., Class D Shares. These Class D Shares are allocated at the Initial Offer Price of US$1,000 per Class D Share.

Please note that in accordance with the Class D Private Placement Memorandum (a copy of which was couriered to you on 25th January 2001) the calculation of Class D Shares is undertaken on a semi-annual basis (ie: next NAV at 30th June 2001). Therefore we recommend for the purposes of your bookeeping that you show the investment at US$1,000 per Class D Share held until the June 2001 NAV price is advised to you. Furthermore, the NAV price should not expect to move significantly in the short-term as investments are in private equity investments or held on interest bearing cash deposit. Private equity investments will likely be valued at "cost" until investments are realised or underlying investment becomes a listed tradeable stock.

For your information, the present position of the Class D Share account is US$45,566,440.89 in cash deposit and US$13,095,025.00 in investment into the Vista Equity Fund II, L.P. for two underlying private equity investments, therefore a present asset total of US$58,661,465.89.

If there are any queries, please do not hesitate to contact us and by copy of this fax we are informing Mr. Don Jones of these matters.

With Best Regards
Yours sincerely
**ATU Fund Administrators (BVI) Limited**

Andrew Keuls                      Gerard Murphy
Deputy General Manager            Fund Accountant

*cc For information, Mr. Don Jones, Fax: [1] 441-292-1963 (3 pages)*

# ATU Fund Administrators (BVI) Limited

Ms. Francesca Dimech
PRICEWATERHOUSECOOPERS
167 Merchants Street
P.O. Box 61, CMR 01
Valetta, VLT 03
MALTA

Wednesday, March 14, 2001

**Fax: 011 356 244 768         #2180**

Attn: **Fransesca Dimech,**

We acknowledge receipt of your duly completed subscription agreement dated 24 January 2001 for

46,458.5156                    (Number of Redeemable Class D shares subscribed for)

Redeemable Class D shares in

Edge Investment Fund, Ltd.                    (Name of investment company)

registered in the name of

Providian Enterprises Limited (formerly Peters Investments Limited)     (Name of shareholder)

at a price per share of

US$ 1,000.00                    (NAV per share-15-01-01)

and receipt of funds in the amount of

US$ 46,458,515.56                    (Total amount of subscription received)

Accordingly, please be advised that your holding of the above mentioned number of shares has been entered into the company's share register in the name of the shareholder detailed above.

Yours faithfully,

ATU Fund Administrators (BVI) Limited
Administrator

A member of the VP Bank and the
ATU Group of Liechtenstein.
Vaduz, Zurich, Luxembourg, Munich,
Berlin, Breda, Grand Cayman,
Montevideo.

3076 Sir Francis Drake's Highway
P.O. Box 3463
Road Town
Tortola
British Virgin Islands

Tel +1  (284) 494 11 00
Fax +1 (284) 494 11 99
Internet: www.atubvi.com
e-mail: atu@atubvi.com

## ATU Fund Administrators (BVI) Limited

Ms. Francesca Dimech
PRICEWATERHOUSECOOPERS
167 Merchants Street
P.O. Box 61, CMR 01
Valetta, VLT 03
MALTA

Wednesday, March 14, 2001

**Fax: 011 356 244 768**          **#2180**

Attn: **Fransesca Dimech**,

We acknowledge receipt of your duly completed subscription agreement dated 12 February, 2001
for

11,700.0000                          (Number of Redeemable Class D shares subscribed for)

Redeemable Class D shares in

Edge Investment Fund, Ltd.                          (Name of investment company)

registered in the name of

Providian Enterprises Limited (formerly Peters Investments Limited)          (Name of shareholder)

at a price per share of

US$ 1,000.00                          (NAV per share-15-01-01)

and receipt of funds in the amount of

US$ 11,700,000.00                          (Total amount of subscription received)

Accordingly, please be advised that your holding of the above mentioned number of shares has been
entered into the company's share register in the name of the shareholder detailed above.

Yours faithfully,

ATU Fund Administrators (BVI) Limited
Administrator

A member of the VP Bank and the
ATU Group of Liechtenstein.
Vaduz, Zurich, Luxembourg, Munich,
Berlin, Breda, Grand Cayman,
Montevideo.

3076 Sir Francis Drake's Highway
P.O. Box 3463
Road Town
Tortola
British Virgin Islands

Tel +1 (284) 494 11 00
Fax +1 (284) 494 11 99
Internet: www.atubvi.com
e-mail: atu@atubvi.com

```
                        *********************
                        ***   TX REPORT   ***
                        *********************


        TRANSMISSION OK

        TX/RX NO              4844
        CONNECTION TEL              00356 244768
        CONNECTION ID
        ST. TIME             03/14 12:15
        USAGE T              02'38
        PGS. SENT               3
        RESULT               OK
```