# EXHIBIT

# A-61

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Redish [redfish@lambdaprime.org] |
| **Sent**: | 6/1/2010 12:29:03 PM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | RE: |

Bob,

Does that include the stock investments as well?

Evatt

---

**From:** Permit [mailto:permit1@lambdaprime.org]
**Sent:** Tuesday, 1 June 2010 9:30 AM
**To:** redfish@lambdaprime.org
**Subject:** RE:

Evatt,

I am good with your recommendation for at least a month.

Bob

---

**From:** Redish [mailto:redfish@lambdaprime.org]
**Sent:** Monday, May 31, 2010 5:03 PM
**To:** permit1@lambdaprime.org
**Subject:**

Bob,

I have a deadline of 2.00 pm tomorrow (Swiss time) to place an order on the placement of the proceeds of Ventyx.

This presumes that the funds hit the account tomorrow afternoon.

The recommendation is that we go into bank deposits spread over a number of strong banks with a mix of US treasury bills.

This would give us a safe short term strategy with some return while you consider what you wish to do.

The best approach is considered about 1/2 to 3/4 of the funds in US treasury bills, which are considered safer than banks right now with the balance in the bank deposits of $50 to $100 million in a number of banks.

The returns will not be great – about 20 -40 basis points, depending on which banks and the maturity of the t-bills, however it will be safe and better than nothing.

There was also a push today from Mirabaud to go into stocks as all the opportunities for good returns exist right now.

They are recommending blue chip stocks with a goal to track the MCSI World index.

Evatt

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Redish [redfish@lambdaprime.org] |
| **Sent**: | 6/5/2010 9:30:02 AM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | |

Bob,

So that you can access the Mirabaud accounts for Point and SSH Ltd, the user ID and passwords are:

Point:

User ID:
Password:

SSH Ltd:

User ID:
Password:

The website is very basic, read only account access.  You need to click on the "My Portfolios" button on the left panel to access statements.  Values are updated each day.

Evatt

ET_0000044218

Exhibit A-61

Message

**From**: Permit [permit1@lambdaprime.org]
**Sent**: 4/26/2011 1:18:47 PM
**To**: redfish@lambdaprime.org
**Subject**:

Evatt,

For the Schwab accounts for Edge and Cabot, the Schwab fund is ok.

For the Schwab account for the AEBCT structure, please transfer those funds to Switzerland and at the same time convert them to Canadian dollars.

Reasoning – using the Schwab fund will create taxable gains assuming the USD continues to weaken.  If it goes the other way, the losses are not useful.  This is undesirable.  Moving the Schwab funds in the AEBCT structure should be easy.

Moving Edge and Cabot Schwab funds – we would not want to do to Mirabaud – and getting set up with another Swiss bank will take too long.

Bob

ET_0001791574

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Redfish [redfish@lambdaprime.org] |
| **Sent**: | 6/6/2012 5:19:51 PM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | |
| **Attachments**: | 2012.03.31.xls; rept20120331 Point Investments Ltd Combined Financial Statements.pdf |

Bob,

Attached are the Point financials for March 31st, 2012.  I've also attached the NAV report for that date.

You will notice a new cash account "Vista Receivable."

This works almost like a bank account.  On 29 March, Vista paid out a distribution after the 4th closing of VEPF IV.  The money did not hit the account until April 2nd.

The Vista financials for March 31, however, accounted for the payment.

Given the convoluted system that I am using, this is the only way I could make all the numbers add up.

On 4th April, the Vista Receivables balances were "transferred" to the Mirabaud account.

I should have April finished I the next few hours.  I am missing some May account statements (Bristol and HSBC) which might slow down that report.

Evatt

ET_0000054557

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Redfish [redfish@lambdaprime.org] |
| **Sent**: | 3/8/2013 7:38:56 PM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | |

Bob,

In the past months we discussed the possibility of moving the big deposits in Bermuda to a safer bank.  In addition to your question mark over how Bermuda Commercial Bank offers interest rates that we see no other bank offering (almost 1% for a one year FD and over 2% for 5 years), both Butterfield Bank and Mirabaud have suggested that BCB must have a risky investment strategy.  It is no surprise that the head of private banking at Butterfield is critical of BCB's interest rates since they are in direct competition.

The main account with cash is Edge though Regency also has a fair bit of cash.  Cabot is largely invested in debt.

I have already applied to open an account for Edge at Butterfield however that doesn't address the other concern that in Bermuda asset freezing orders can now be made without court order.

Below is Mirabaud's proposal for an account.

The problem with Mirabaud is that they charge very high fees – 10 basis points.  I have asked them to waive that.  As you see below they would be prepared to do so provided that they can make a share of return on investing the deposits with a liquid and safe investment strategy.  They would actually make more money this way so they are doing us no favors.

Having regard to the response below, could we discuss the best way forward?

At this stage I propose getting the Butterfield account open and at least being in a more conservative bank.

Evatt

---

**From:** Etienne D'Arenberg [mailto:Etienne.DArenberg@mirabaud.com]
**Sent:** Thursday, March 07, 2013 12:03 PM
**To:** etamine@tangarra.com
**Subject:** An idea

Dear Evatt

I hope this email finds you well.

As discussed last on the telephone we would be happy to bill no custody fee to accommodate your current status quo, but as discussed we would like to be able to provide services for that portfolio.

I kept in mind two key points you made: **liquidity** and **safety**.

To keep money on the current account of a lending bank (Butterfield or Commercial Bank Bermuda) includes the risk that the bank goes bankrupt because of its lending activities. Usually, the higher the interest offered on deposits, the more the bank taking the deposits needs the deposits. The question is then how do they achieve such returns, with your money, to be able to pay such high rates and still be profitable. We all have the recent risk derailment catastrophies and Ponzi schemes in mind.
Mirabaud has no lending, no proprietary trading and no investment banking activity, hence one could argue no balance

Exhibit A-61

sheet risk. On the other hand, keeping money on our current accounts bring no interest (as we do not "resell" deposits into mortages or loans).

So how are we going to try and meet both objectives: make some money, charge no custody fees ? A very short term and good quality bond portfolio. Liquid, safe, and that can be kept to maturity. We also propose **zero** transaction costs, **zero** custody costs (except the costs we are billed by our correspondents, which are minimal) and simply to share the yield.

I hope this might become a possibility for you to consider. I quite understand if this is not what you expect in the first place and would be delighted to try and find another solution with a mixed portfolio (bonds and equities), if we have a longer time frame and without this wish to keep the total invested at very similar levels whatever the market conditions and allowing some volatility. And we could apply any of the above suggestions to Point and Spanish Steps if you felt this was acceptable.

I would welcome a call anytime !

All best wishes

Etienne


**************************************************************************
Etienne d'ARENBERG
Delphine Seemann, Assistant to Etienne d'Arenberg
delphine.seemann@mirabaud.com

D +41 58 816 24 01/ 25 43
M +41 79 287 01 84
F  +41 58 816 34 01

MIRABAUD & Cie Banquiers Privés
29, boulevard Georges-Favon
1204 Geneva
www.mirabaud.com

Save a tree...please don't print this e-mail unless you really need to !
Sauvez un arbre... n'imprimez ce courrier électronique qu'en cas de besoin !

Disclaimer:
- This message is confidential and intended for the use of the named person only. Any disclosure, copying, distribution or any action in reliance on its contents is strictly prohibited. This message does not represent a formal commitment by Mirabaud & Cie, banquiers privés, who is neither liable for its proper and complete transmission nor for any delay in its receipt.
- Ce message est confidentiel et s'adresse uniquement à la personne à laquelle il est destiné. Toute divulgation, copie, distribution ou action en rapport avec son contenu est strictement interdite. Ce message ne représente pas un engagement formel de Mirabaud & Cie, banquiers privés, qui ne peut être tenue pour responsable en cas de transmission incorrecte ou incomplète ni du retard dans sa réception.

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Permit [permit@proventusconstans.com] |
| **Sent**: | 3/25/2013 11:57:13 PM |
| **To**: | redfish@proventusconstans.com |
| **Subject**: | RE: |

Evatt,

I think the more important issue is to leave BCB – as opposed to 10 basis points worth of fees.

Bob

---

**From:** Redfish PC [mailto:redfish@proventusconstans.com]
**Sent:** Monday, March 25, 2013 4:36 PM
**To:** permit@proventusconstans.com
**Subject:**

Bob,

Based on the Bloomberg article below, the fees being charged by Mirabaud are not as bad as I thought.

I was also interested to see that Mirabaud manages CHF 23 billion, which was far greater than I thought.

In terms of getting an account open for Edge, it would be quicker to go through Mirabaud because I am known to them.  I could then take more time (which will be needed) to open an account at another Swiss bank for Edge with a smaller balance; perhaps a few million.  It will be easier to get an account open with a small balance without having to explain source of funds in great detail.

This would reduce our exposure in Bermuda quickly and have time to look at other Swiss banks.

Evatt

http://www.bloomberg.com/apps/news?sid=aLTge9kTG0xo&pid=newsarchive

ET_0001943933

Exhibit A-61

Message

| | |
|---|---|
| **From**: | Permit [permit@proventusconstans.com] |
| **Sent**: | 4/19/2013 10:20:10 PM |
| **To**: | redfish@proventusconstans.com |
| **Subject**: | RE: |

Evatt,

I am surprised and happy that you were able to transfer such a large sum out of BCB with so little hassle.

Bob

---

**From:** Redfish PC [mailto:redfish@proventusconstans.com]
**Sent:** Thursday, April 18, 2013 4:05 AM
**To:** 'Permit'
**Subject:**

Bob,

Edge's bank account is now open at Mirabaud and I have transferred $80 million to that account, leaving a small sum at BCB. I thought it prudent to keep the BCB accounts open in case we need them in the future.

I will be working on opening the Cabot account this week, though the process will be a lot simpler.

As far as Mirabaud is concerned, the two principal investors in Edge and Cabot – Cascade and Addington – are owned by charitable trusts that were put in Gordon Howard's control years ago when certain businesses wound down in Bermuda. These charitable trusts were created and handed to Gordon as "gifts" after very successful business operations. I know very little about the original businesses except what little Gordon told me.

It took some time, but Mirabaud are comfortable with the explanations.

Evatt

ET_0001943978

# EXHIBIT

# A-62

Exhibit A-62

Message

| | |
|---|---|
| **From**: | Redfish [redfish@lambdaprime.org] |
| **Sent**: | 12/15/2012 7:47:22 PM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | RE: |

Bob,

I understand the reasons for taking this course.  The benefits you have outlined in fact also give me a very valid and logical explanation as to why the AEBCT wants to acquire the aircraft.

Since I do not need to disguise the source of funds – in fact I would readily disclose it – I can use a SSH Ltd bank account.

I have Mirabaud ready to fund and can proceed once you have the bank account opened for Red Plains.  They have told me that they can fund on the same day I give instructions provided it is earlier enough.

Evatt

---

**From:** Permit [mailto:permit1@lambdaprime.org]
**Sent:** Saturday, December 15, 2012 3:02 PM
**To:** redfish@lambdaprime.org
**Subject:** RE:

Evatt,

The current setup is the way to go – except Hardwicke Properties LLC has to be the bottom box on the chart.

The logic is as follows:

-Hardwicke will continue to be involved with Reynolds and with me
-therefore it is likely to get involved in any audit
-the questions that will arise are:
    -what is the business reason for its existence
    -where did the money come from

-the answers as to the business reason are several
    -currently the RJ is on the books for about $2M
    -the presence of the jet in the business is not a positive to buyers
    -currently the asset value of the RJ gets no credit for any kind of offer by a PE firm
    -the PE firms look at valuation as an EBITDA multiple less outstanding debt
    -the AEBCT then can buy the RJ for $11M, which Reynolds will use to pay down debt
    -the AEBCT will then get back the $11M because the proceeds of sale will be $11M greater due to there being less outstanding debt when the sale transaction happens – which whether it
        actually happens or not – we have plenty of factual specifics such that we are justified in thinking it will happen
    -further according to GAAP, Reynolds will realize $9M more EBITDA in 2012, which will provide some cushion for any year end E&Y audit adjustments that could affect the total proceeds
        of sale which are likely based on EBITDA multiple at the end of 2012
    -therefore the RJ disposition has a very real business purpose for the AEBCT
    -there is no need to make a secret of where the money comes from
    -the AEBCT decided to set up a purpose trust and put the money in there for the transaction because the AEBCT has charitable purposes in its original Deed and can do so whenever it wants
    -the successor in ownership of 99% of Hardwicke is in the air charter business – which as commercial air line service continues to decay – is a growth business

Exhibit A-62

This is as slick a wall as we can get.  To be technically correct, SSH should be used in place of AEBCT.

The reason not to involve Cascade – is that this is an entity that has been involved in other areas that would be needlessly exposed.

Please confirm that you have gotten this email and agree with my logic and getting banking set up.  I am proceeding with getting tax ID and bank account set up for Red Plains Air Charter Inc. set up at Amegy.


Bob

---

**From:** Redfish [mailto:redfish@lambdaprime.org]
**Sent:** Wednesday, December 12, 2012 7:21 PM
**To:** permit1@lambdaprime.org
**Subject:**

Bob,

I tried calling you today to discuss an idea I have for the acquisition of Hardwicke Properties LLC and a short cut for banking facilities at the offshore funding level.

CURRENT SET-UP

To put this in context, I have attached a chart setting out the way all the current trusts/companies have been set up.  This file is called AIR CHARTER – RED PLAINS AIR CHARTER CORP – CURRENT SETUP.  Of course, this structure has been superseded and the Delaware LLC is no longer necessary.

All of the companies are in place and the trusts are just awaiting a witness to my signature.  There are other minor matters which I can address later such as share certificates etc.

Hitherto, I have worked on the assumption that the money will come from SSH Ltd. If that is your preference then I have a plan for that.  I'll address that plan at the end of this email.

OPTION A

If, however, you have no preference as to the source of funds, then I suggest we consider taking the money from Cascade's investment at Edge.  Cascade is the biggest investor in Edge.

Since the re-structuring, Cascade has lived under the Alpheus trust.  Both Cascade and Alpheus (PTC) Limited have bank accounts.

Since Cascade does nothing outside its Edge investment (even its own BCB account balance of approx. $56K hasn't changed for years), there has been no disclosure of the structure.

If we take the money from Edge on a redemption from Cascade and pay it into Cascade or Alpheus PTC, then we can fund the acquisition of Hardwicke without disclosing SSH Ltd or Edge (or any of the associated trusts).

The structure I envisage is the attached file "AIR CHARTER – RED PLAINS AIR CHARTER CORP – OPTION A."

The advantages are that:

-        we would have instantaneous use of banking facilities
-        we stay away from connecting key entities to the arrangement through funding, i.e. SSH Ltd or Edge itself
-        we obviate the need for a number of additional entities, i.e. the whole ownership structure for Framfield Assets

ET_0001932931

Exhibit A-62

OPTION B

If you would prefer that the money did come from SSH Ltd, then in order to have immediate banking facilities, I would move Cascade out from under the Alpheus structure and place it under the Framfield structure.  It would be an anomaly that a company exists under the Alpheus structure called "Framfield Assets Ltd", while we have a different, unconnected structure with the Framfield name, however that matters little.

The structure is set out in the attached file "AIR CHARTER – RED PLAINS AIR CHARTER CORP – OPTION B."

I am available any time that suits you to discuss these structures.

Evatt

Exhibit A-62

Message

| | |
|---|---|
| **From**: | Redfish [redfish@lambdaprime.org] |
| **Sent**: | 12/19/2012 11:04:36 AM |
| **To**: | 'permit1@lambdaprime.org' [permit1@lambdaprime.org] |
| **Subject**: | RE: |

Bob,

I have managed to get Mirabaud to agree to open a bank account for Framfield Assets Ltd by Friday on the promise of a bunch of material.  I'll be working on that material today.

The funds will then transfer from SSH Ltd's account at Mirabaud to Framfield Assets Ltd.  Then from Framfield Assets to Red Plains.  This will remove us one further level from connecting SSH Ltd and Red Plains.

If it is OK with you, I suggest transferring the full $15 million from SSH Ltd to Framfield and then $12.5 million from Framfield to Red Plains.

That will give us some money in reserve.

Once I have this material the bank needs, I'll get onto the other documents and order the transfers to the Red Plains account.

Evatt

---

**From:** Permit [mailto:permit1@lambdaprime.org]
**Sent:** Tuesday, December 18, 2012 10:27 PM
**To:** redfish@lambdaprime.org
**Subject:** RE:

Evatt,

I agree – please start writing the supporting materials.  Send me copies.

The bank account for Red Plains Air Charter Inc has been set up at Amegy Bank – account number 0030212296.

I think that the initial funding should be $12,500,000.

There needs to be additional documentation that shows ownership of its 100 shares at say $100 per share with the rest being Additional Paid In Capital.

This would initially be Spanish Steps as the owner.

I would start the process moving to get these funds transferred.

I plan for the purchase to take place the last thing on 12/31 so that there will not be a short period return for Hardwicke (reincarnated).

I also recommend that the transfer of ownership from Spanish Steps to Framfield Assets LTD be done as of 1/1/2013 – so that the the tax returns for Red Plains never shows Spanish Steps and the AEBCT as the ultimate beneficial owner.

I am building up the whole documents file on Red Plains that I will send back to you for inclusion in the documents database.

Bob

ET_0001932966

Exhibit A-62

---

**From:** Redfish [mailto:redfish@lambdaprime.org]
**Sent:** Sunday, December 16, 2012 4:47 PM
**To:** permit1@lambdaprime.org
**Subject:**

Bob,

I should have added to the last email how it is that we get from point A (the AEBCT providing funding) to point B (Red Plains Air Charter Inc is owned by a new charitable trust structure).

We have done something similar before when we  moved money to Regency.

Here is how I see it going:

The AEBCT determines that there are very good benefits for its main asset - Reynolds – not owning the aircraft.  These are the reasons you set out yesterday.

The Trust does not want to own the aircraft either for various reasons:  e.g. liability in event of accident/negligence; the charter business will operate in the US as will the aircraft for most of the time etc.

Since the AEBCT will receive a financial benefit that might exceed the price it pays to acquire Hardwicke, it is prepared to appoint the funds to  buy the company into a new charitable trust.

Therefore, an asset that might cause loss through negligence etc. as well as creating an administrative burden and potential US tax issues, is ring fenced and no longer part of the AEBCT assets.

There is a bunch of documentation to support this, e.g. trustee resolutions, corporate resolutions, but nothing complicated.

This transaction is all offshore and stays private unless we have a real push to disclose the background.

Evatt

ET_0001932967

# EXHIBIT

# A-63

| | |
|---|---|
| **From:** | Permit |
| **To:** | "Redfish" |
| **Subject:** | RE: |
| **Date:** | Sunday, August 13, 2017 4:23:00 PM |

Evatt,

I concur with all of these.

Bob

**From:** Redfish [mailto:redfish@hannah.com]
**Sent:** Sunday, July 30, 2017 6:05 AM
**To:** 'Permit'
**Subject:**

Bob,

Here is a memorandum of issues to consider following BCB freezing accounts.

One think I did not consider, but which Sophie raised with me after my account was frozen, is her fear that BCB will try to justify their stupidity by reporting us to a regulator.  They could try to cover themselves and allege suspicions about the operation of the accounts.

We need to get away from the bank as quickly as possible.

Evatt

MLATSW_020952

# EXHIBIT

# A-64

Exhibit A-64

MEMORANDUM

From:        Evatt Tamine

To:          File

Date:        July 29th, 2017

Subject:     BCB's decision to freeze accounts

---

The recent decision of BCB to freeze accounts has highlighted some shortcomings in current operations.

This memo addresses the problems and provides possible solutions. After stating the problems and solutions, I'll detail issues we'll encounter in achieving the solutions.

**PROBLEM 1:**        Having all bank accounts held at the same bank has led BCB to freeze all accounts where I am a signatory. AEBCT, Cabot, Edge and Regency as well as Tangarra and my personal accounts have all been frozen.

**SOLUTION:**        Establish accounts at separate banks for each group.

**PROBLEM 2:**        Having all accounts and operations in a jurisdiction places us at risk of having everything in that jurisdiction frozen if a regulator takes action. The risk of this is real. If BCB tries to justify their decision to freeze accounts all they need to is allege a belief that there is something suspicious about the accounts to the BMA. That could lead to a freezing of all accounts wherever held in Bermuda.

**SOLUTION:**        Set up additional banking relationships for AEBCT, Cabot, Edge and Regency in separate jurisdictions, e.g. keep Point in Switzerland and Singapore, but

**MLATSW_020907**

move Edge to Guernsey and Cayman Islands; Cabot to Jersey and Nevis; and Regency to the BVI and the Isle of Man.  There is a problem with Caribbean banks given I can't travel through the US to get there.

**PROBLEM 3:**      The legacy relationships at BCB and Butterfield Bank place all accounts as being connected to Don Jones and, in the case of Butterfield Bank, to RTB.

**SOLUTION:**      As we have done in Switzerland and Singapore, set up accounts in places where we get to write our own history.  Kill off all reference to RTB and Don Jones.

**PROBLEM 4:**      We lack a real fighting fund for legal fees and living costs.  If all accounts are frozen, as BCB did, then we are restricted in accessing cash.  Right now I cannot pay my American Express bill, the builder's invoices and school fees because most of my funds are held in BCB.  Similarly, I could not retain a lawyer to bring an action to free the money.  If we are caught like this again, in accessing accounts elsewhere, we would be disclosing where other accounts are held, possibly alerting a regulator as to where they should seek to freeze money.

**SOLUTION:**      The solutions above would go part of the way to addressing this problem, but we need a hidden fund, which has nothing to do with either me or RTB, but which we could control.  Glenn Ferguson, a lawyer in Australia who I know and can trust, would be a prospect to hold funds in a trust and make a "loan" for legal fees and living expenses.

**PROBLEM 5:**      We don't have an escape jurisdiction with back up computer systems so that we can "flick the switch" and keep operating after a day or two.

MLATSW_020908

**SOLUTION:**        I made an attempt in setting up a mirror St John's in Singapore; however that fell apart when the service provider wanted full financials for all entities associated with St. John's.  We need to set up redundant systems in a few places with shell companies holding operating bank accounts and, if possible, residency rights.  The shell companies would be mirrors of existing companies, e.g. another St John's.

In relation to computer systems, we can set up a complete copy of the secure system at the apartment (if there is space) in the UK.  Nobody would connect me to that property, which is in the name of Sophie's personal family trust.  I can dismantle everything here and we can turn on the system there.

We could also look at setting up a company in Guernsey or Jersey with a residence right and a small apartment.  That would make getting bank accounts easier since we have a presence.  The reason I need to look at the Channel Islands is that I cannot readily travel to the Caribbean while I cannot travel through the US, which could be some years yet.  Even if Robert Smith clears up his problems, the target is well fixed on me and we need to anticipate that we'll be audited at some point.

We would keep the focus on Bermuda with the Foundations established and operating here.  They would be active, hopefully drawing the attention of any regulator, while we have low key back up places for me to slip into with the non-Foundation work.  As long as everyone pegs me as entirely engaged by the Foundations in Bermuda, we can cover our tracks elsewhere.

**PROBLEM 6:**        Jurisdictions like Bermuda, where the employee gene pool is very limited, have weak people who have lost any sense of a robust reaction to the KYC requirements being rammed down their throats.  They don't care about business, only about compliance.

MLATSW_020909

**SOLUTION:**      Stronger jurisdictions such as Switzerland are doing all they can to comply, but they have stronger people who can still deliver a service to clients.  We should look to strong jurisdictions, including considering accounts in the UK, Malta, Canada, Australia, Hong Kong etc.  We might be exposed to taxation on some returns, but we could be a lot safer.

**PROBLEM 7:**      The target on me is a lot larger than it was some time ago both because of Robert Smith and the Albula, which also draws a lot of attention.  I don't have the sort of name that can be hidden, even though I try to maintain a very low key existence with no social media, little contact with professional people etc.

**SOLUTION:**      I need to muddy the waters about where I am located.  With establishing a presence in additional places such as the Channel Islands, I might be able to avoid being locked into one place.  It becomes harder to track me down.  This would particularly be the case since the Foundations tie me so closely to Bermuda as does being married to a Bermudian.  Regulators will come to Bermuda looking for me, while we build and maintain connections elsewhere.

In addressing the issues above, there are a few things to consider:

- We need strong jurisdictions where they will comply, but still be robust about not taking silly actions such as BCB did in freezing the accounts.

- The time differences are important so we can maintain efficient communications.

- Need to be somewhere we I don't have to travel through the US.  Even if the fear of detention is lifted, we should be careful about my traveling into the US.

MLATSW_020910

Certainly, I would never again do it with a computer or telephone (if the later is possible).  I could keep all I need at Stuart Yudofsky's office including a phone.

- We must have a good cover story as to why I would like to establish new relationships.  In the Channel Islands, Switzerland, Malta, Cyprus etc, this should be because my daughters will soon have to go to school outside Bermuda and I wish to be nearer to them.  That is not our plan, but it is something that is readily understood and accepted by all people who work those places.

- Once I gain Bermuda status after October 21st, 2017 (though the application could take up to a year to process), I can establish many of these new relationships on the back of a Bermuda passport.

MLATSW_020911

# EXHIBIT

# A-65

Exhibit A-65

| | |
|---|---|
| **From:** | Redfish |
| **To:** | "Permit" |
| **Date:** | Saturday, August 11, 2018 7:55:09 PM |
| **Attachments:** | 20150713 Compensation Memo.doc |

Bob,

I have taken advice on my resident tax position in the UK.

The legal position is quite clear.  There are two possibilities right now.  I am either a:

1.      a non-domiciled resident of the UK from April 5th, 2018 (the start of the UK tax year),
2.      a Bermuda resident until September, 2018 when the girls start their new school year.  I then "split" the tax year and thereafter become a non-domiciled resident.

My position is that I have remained a Bermuda resident, but that will change at the start of the new school year in September.  While the lawyer agrees with that position, to be on the safe side, I have not taken any income since April 1st.

As a resident non-dom, I can reside in the UK and be liable to tax on income I have earned in the UK or income earned anywhere in the world, which I have remitted to the UK.

If however, I remit capital, i.e. funds which I already possess, I am not subject to income tax on the remittance.

The advice of the lawyer is to live off capital.  He says I should have the capital as "clean funds", i.e. show that I had the money before I become a UK resident.  This will help resist an argument that the remittance is from income.

What I ask you to consider is the following:

1.      My current package was set in July 2015.  Salary of $750,000, bonus potential of $850,000 and retirement allowance of $1,000,000.  This is a total of $2,600,000.  The memo of July 13, 2015 is attached.
2.      We anticipate that Eloise and Poppy will be ready for boarding school when Poppy turns 11 years old:  six years from now.  After they go into boarding school, Sophie and I will return to Bermuda as full time residents.
3.      Working on the assumption that I am still a full time Bermuda resident at this stage, I ask that you allow me to receive the next six years of my package now – before I become a UK resident.  That is, I ask that you allow me to take $15,600,000 into my account now.  Of course, if you considered a salary/bonus increase appropriate, then this figure would be adjusted.
4.      These funds would be considered clean capital that I could remit to the UK as needed without paying tax on the remittance.
5.      As a matter of practice, I would only have access to the annual salary in the year earned and the bonus once you have declared it.  The annual salary and bonus for subsequent years would not be touched until that year or until you declare the bonus.  The retirement allowance, of course, does

# Exhibit A-65

not vest and would not be used at all except to be invested.

If you are in agreement with this proposal, I suggest the funds come from Point Investments and through Spanish Steps.  The bankers would readily accept that I am redeeming a share of the investment in Point.  That would take out any report to the UK HMRC.  Right now the banks accept me as a Bermuda resident.

There is a time pressure with this as I must have this clear before the start of September.

Evatt

Exhibit A-65

Memo to:        Evatt Tamine

Date:           July 13, 2015

Subject:        Compensation Memorandum

Your performance self-evaluation described in detail an outstanding performance for 2014.

Accordingly your bonus will be $800,000 plus another $100,000 for your excellent efforts on the workout of the Founding Partners investment.

Your salary will be increased from $700,000 to $750,000 per year.
Your bonus potential for 2015 will be $850,000.

A $1,000,000 contribution to your retirement fund should have already been made as of the end of December, 2014.

Your formal performance review for 2014 and annual goals for 2015 will be forthcoming shortly.


On Behalf of St. John's Trust Company (PVT) Ltd.

# EXHIBIT

# A-70

Exhibit A-70

| | |
|---|---|
| **From:** | Permit |
| **To:** | "redfish@proventusconstans.com" |
| **Subject:** | RE: |
| **Date:** | Tuesday, June 11, 2013 5:17:00 PM |

Evatt,

The principal issue is that we will be needing to have $250M in cash to give to Centre College prior to getting $2B plus back shortly afterwards.

As long as we have that much dry powder in SSHLTD, we are interested.

Bob

**From:** Redfish PC [mailto:redfish@proventusconstans.com]
**Sent:** Monday, June 10, 2013 6:00 PM
**To:** permit@proventusconstans.com
**Subject:**

Bob,

Robert Smith has asked whether we are interested in buying into Websense debt.  I have said we'd be interested subject to terms.

Evatt

# EXHIBIT

# A-75

Exhibit A-75

Message

**From**: Redfish [redfish@lambdaprime.org]
**Sent**: 3/6/2013 5:54:06 PM
**To**: 'permit1@lambdaprime.org' [permit1@lambdaprime.org]
**Subject**:

Bob,

As part of the clean up ahead of the many changes brought in by FATCA and other increased KYC scrutiny, I have moved the ownership of the common shares (i.e. non-investment shares) in Edge, Cabot and Point to new charitable purpose trusts.

In each case this takes out any connection to Melissa Jones' parents.

We had discussed this some months back.  I also spoke to Don who was in complete agreement and would prefer not to have the Massengill name associated with potential IRS scrutiny.

The changes have minimal impact as there is no value attached to the common shares.

I will bring hard copies of the signed trust deeds to Houston for filing.

Evatt

ET_0001959205

# EXHIBIT

# A-78

Exhibit A-78

Don,
Evatt,

Given the continuing noise from the Congress regarding the Wyly situation, I think that the name of the AEBCT should have "Children's" removed and replaced with "Charitable".

Evatt, hopefully you can find authority within the trust document to allow this to be done.

I would  think that Gordon would have no problem with this.

Other than that I can think of nothing else we can do to prepare for the onslaught - other than be vigorously pursuing the document retention policy already in place as Don prepares to leave Bermuda.

Bob

ET_0001462221

# EXHIBIT

# A-80

Exhibit A-80

To:          Bob Brockman

From:        Evatt Tamine

Date:        June 16th, 2016

Subject:     2015 Performance Evaluation


I believe 2015 was a very successful year as we solidified a closely controlled, streamlined method of operation.  There has been further improvement in my accounting skills.


**What went well?**


1.    After a great deal of work, I have established a banking relationship with the Bank of Singapore.  I did this with the most trying KYC process to which I have been subjected.  I managed to establish the account without disclosing the AEBCT trust deed.  That is really a major achievement these days.


2.    A great deal of time was spent developing the Brockman Scholars.  The method of running the scholarships is modeled on that of the Jefferson Scholars.  I have developed a very good relationship with Jimmy Wright (whom you met in Bermuda).  I have found other great resources, which means that we do not need to re-invent the wheel.  I have built on the Centre College experience to avoid mistakes.


3.    This year I successfully worked through improving financial reporting, particularly for Point Investments Ltd.  I am now very confident in the financial reporting and can efficiently produce reports.  An area where I have further built on a successful 2014 is that I have been able to successfully set up far more logical

ET_0000024254

Exhibit A-80

accounts and produce informative and accurate financial reports.  In fact, I proposed, and implemented, a number of changes to the method of accounting which have been highly helpful in producing better accounts.

4.     I have implemented the strategy to repatriate Don Jones's offshore assets (to the great relief of Melissa) while at the same time terminating all lingering connections to Don in this FATCA era of automatic reporting.  Don is happy with the strategy.  That will also help our profile going forward.

5.     While he did not work out in the end, I spent a lot of time fostering Charles Waters as a potential replacement.  I continue to try to identify my potential replacement.  The exercise with Charles has helped crystallize the ideas as to the sort of person we should be looking for, though I must admit to starting to understand that I have a unique set of skills.  As part of the process with Charles, I spent a lot of time with the lawyers working through the issues for renouncing US citizenship, which is information that could be beneficial in the future.

6.     I have continued working extensively with lawyers in the United States to ensure that we are fully compliant with FATCA.  This was an extensive task that saw us register a number of companies for FATCA, but managed in a way that disclosed nothing to the lawyers but the story we wanted to convey, i.e. that the various entities are all exclusively engaged in charitable activities.

7.     As part of the FATCA process, I continue to work through comprehensive reviews with most of our Banks.  This allowed me to re-establish the information which is before the banks - even for the older entities.  I have given them our version of events.  .

ET_0000024255

Exhibit A-80

8.    I have spent significant time with Bob Yekovich on the Rice University Opera House project.  I have been very supportive of Bob while he struggles with University politics.  I believe my efforts are helping to keep this project on track.  I have managed to convey to Bob Yekovich your wishes without saying anything other than I am the decision maker.  Obviously Bob knows the truth, but I have made it easy for him (and David Leebron) to maintain the position.

9.    I have maintained contact with Stuart Yudofsky and Lance Gould and followed up on the donations made to their hospitals.

10.   After many years and a great deal of work, I was instrumental in bring the Founding Partners investment to a point where we now own real and valuable assets.  I am on the board of directors of the controlling company, ensuring that we have a say in the decisions being taken including any monetization strategies.  I have developed a good knowledge of the hospital industry in the United States, which is helpful in making decisions on strategies going forward.  A significant investment of doubtful return now has a prospect of a good return (though a full return remains highly unlikely).  It might sound an excessive boast, but I do not believe that we (or any other investors) would be in this position but for my involvement.

11.   I now feel far more confident in financial reporting and have also improved the accounting for Cabot and Edge.

12.   The strategy of investing into debt has been highly successful this year.  I have managed these investments all the way through the assignment process (without incurring any outside fees).  I have good relationships with debt brokers at Deutsche Bank and Jefferies.  Debt opportunities are harder to come by now with a great deal of competition, but opportunities are still regularly offered to me.  I have been joining the various bank calls, which has vastly improved my

Exhibit A-80

knowledge on the sort of matters seen as important by those lending to businesses.

13.     One of the areas where I believe I have done very good work over the years and, in particular, last year, is the production of reports on a number of topics.  These reports are sent in a timely fashion (where the information is available) and are designed to quickly put you in a position to fully understand where we are any particular topic.  Examples of these reports are the Cash Report, the Vista Transaction Report, the Significant Transaction Report, the various Debt Reports, the Fees and Expenses Report etc.  I believe that I am also innovative in devising new reports and improving on existing reports.

14.     I continue to enjoy a very good relationship with Robert Smith and his team at Vista.  I believe that I am very strong in representing Point's interests while at the same time being responsive to the needs of Vista in carrying out their various transactions.  Our need to be involved in this area is because Point owns more than 10% of two of the funds and as such is often subject to enhanced due diligence.  I manage this process myself which is a lot more effective and ensures that only the information we are prepared to disclose is released.

15.     I have continued the process of re-structuring the entities under my control.  The number of trusts and companies have been reduced.  While some new trusts and companies have been established, these are in place to ensure that it is even more difficult for an outside regulator to connect you to activities. It is a clean start covering our tracks so that no service provider can prejudice us with information from years ago.  The key however is control of our destiny.

Exhibit A-80

16.    I have maintained my end of our computer systems without too much trouble.  Being able to work remotely and carry out changes makes maintenance and repairs much easier.  I feel very confident that I can adequately address any problem that arises (with input and guidance from you, of course).

17.    A key part in achieving the results I have was my willingness to give all the time necessary to get the work done.  This often meant working very long hours, which I do without hesitation.  It helped that I work from home so that I did not feel like I was neglecting the family.

18.    This year has seen me further establish my position as the figure head of the AEBCT and the other trusts.

19.    I have maintained in this last year a very strong and close working relationship with Carl Linnecke.  At times Carl has found himself in tricky situations, e.g. with the Aspen Valley Land Trust and Bart Chandler.  I think he appreciates the support he has got from me and that has filtered down to David Finholm and the others.

20.    The reduction in the number of outside service providers or, where we still use them, the reduction in the work they do for us also means that we control the knowledge of our affairs.  I have also ended the relationship with Peter Poole and Sable Trust save for their role as the resident representative of the some private trust companies.  That new role does not require that they have access to any financial or other data.  The substantial reduction in the work they do was made on the very amicable terms.

Exhibit A-80

21.    An important aspect to having control of our destiny and not being at the mercy of service providers is that we are less likely to suffer loss through fraud etc.  Over the past year I have seen the operation of several trust companies in Bermuda.  Unlike Grosvenor, these are trust companies run by people without the integrity of Gordon Howard.  I have seen examples of trust assets being sold without an accounting for the proceeds.  The fact is that the trust industry is filled with shady characters. This is not so much something that I am doing well, but rather the benefit of all the work that went into creating the structures as they are today.  While it means a lot more work for me, we have better control and less fees.

22.    As I reported last year, holding the key directorships that I now do, I do not have to go out to anybody to have documents signed.  We control the information.  I manage to turn documents around in minutes using digital signatures.  I no longer have to wait for documents to be signed.  This process also fits more neatly into our database as the documents are created in the database and saved there with signed copies.  This is a very streamlined process now.

23.    I continue to document the movement of assets within the group, creating a proper commercial basis for all asset movements with the paper trail. This is also supported by the Significant Transactions Report.

24.    I have maintained very good working relationships with all key people. I stay in contact regularly with Don and Cris Ruffell Smith.

25.    Maintaining the document database.  I have built a very good document describing the computer set up in Bermuda.

Exhibit A-80

26.     Continuing the control of all companies and trusts with no compliance
        problems.


27.     On a personal note the year has again been highly successful.  Family life has
        been wonderful for me.  The relationship with Sophie and the girls is
        extremely strong and we enjoy each other's company.  Poppy is an added joy.
        Sophie has been trying to make sure that I eat very well and get in some
        exercise.

# EXHIBIT

# A-82

# Exhibit A-82

| ENVELOPE TITLE | | CONTENTS | | | |
|---|---|---|---|---|---|
| CODE | NAME | DOCUMENT | ORIGINAL/COPY | OUT | RTB |
| AEBCT | | agce19811218 Stock Purchase Agreement Between RTB Bermuda Trust Company and the AEBCT | C | | |
| | | agce19870104 Draft Promissory Note Issued by the AEBCT to RTB re Loan | C | | |
| | | corp19980115 Written Resolutions of Boethberry Park Investments Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corp19980115 Written Resolutions of Hunt Investments Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corp19980115 Written Resolutions of Hunt Investments Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corp19980115 Written Resolutions of Mallery Investments Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corp19980115 Written Resolutions of Saracen Investments Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corp19980115 Written resolutions of Spanish Steps Holdings Ltd re Performance Bonus to President of US Subsidiaries | C | | |
| | | corr19810603 Letter from Carlos Kekpe to RTB re IRS Reporting Requirements for Trusts | C | | |
| | | corr19810717 Letter from Carlos Kekpe to RTB re IRS Reporting Requirements for Trusts Attaching Forms | C | | |
| | | corr19810817 Letter from Al Thorpe to RTB Enclosing IRS Forms 3520 and 3520-A for the AEBCT | C | | |
| | | corr19820223 Letter from GH, Bank of Bermuda Ltd to DJ, UCS Inc re Trustee Agreement | C | | |
| | | corr19820223 Letter from GH, Bank of Bermuda Ltd to RTB, Protector re Purchase of UCS Shares on Behalf of the AEBCT | C | | |
| | | corr19840323 Handwritten Memo from Al Thorpe to Don Jones re Financial Information from the AEBCT and the AEBCGT | C | | |
| | | corr19841011 Letter from GH, Bank of Bermuda Ltd to Don Jones re Acknowledging Receipt of Dividend and Repaying Advance and Loans | C | | |
| | | corr19871105 Facsimile from Carlos Kekpe to Gordon Howard, Bermuda Trust Company re Stock Purchase Agreement | C | | |
| | | corr19890509 Letter from Bermuda Trust Company Ltd to DJ, UCS Inc re Loan and Payment Schedule | C | | |
| | | corr19960220 Letter from IRS to Gordon Howard, St Johns re Failure to Lodge Tax Returns | C | | |
| | | corr19961105 Letter from Robert Brockman to Miller & Chevalier Attorneys re Responses to IRS from Gordon Howard | C | | |
| | | corr19970224 Facsimile from Don Jones to RTB Enclosing Documents Relating to Stock Transactions re Trust | C | | |
| | | corr19971126 Facsimile from Carlos Kepke to RTB re Affidavit of Trust Protector | C | | |
| | | corr19980415 Facsimile from Baring Trustees to RTB re Deed of Removal Appointment and Indemnity | C | | |
| | | corr19980416 Facsimile from Carlos Kepke to RTB re Execution of Deed of Removal, Appointment and Indemnity | C | | |
| | | corr19990115 Facsimile from Grosvenor Trust Company to RTB re Deed of Retirement and Appointment | C | | |
| | | corr19990210 Facsimile from Grosvenor Trust Company to Don Jones re Signed Minutes of Various BVI Companies re Performance Bonus | C | | |
| | | corr19990421 Facsimile from Carlos Kepke to Don Jones re Execution of Deed of Removal, Appointment and Indemnity in Belize | C | | |
| | | corr19990421 Facsimile from Carlos Kepke to RTB re Execution of Deed of Removal, Appointment and Indemnity in Belize | C | | |
| | | corr19990709 Facsimile from Comtex Communications to Don Jones re Jiltec Inventory | C | | |
| | | corr19990709 Memorandum from Don Jones to RTB re Jiltec Inventory Numbers | C | | |
| | | corr19990728 Letter from Bermuda Ministry of Finance to SJ John's re Request for Information | C | | |
| | | corr19990728 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990729 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990802 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990803 Facsimile from Miller & Chevalier to RTB re Response to IRS Notice for Information | C | | |
| | | corr19990803 Facsimile from Miller & Chevalier to RTB re Response to IRS Notice for Information - 2nd Copy | C | | |
| | | corr19990803 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990803 Memorandum from RTB to Brook Voght, Miller & Chevalier re Progress on IRS Issue | C | | |
| | | corr19990803 Memorandum from RTB to Don Jones re Progress on IRS Issue | C | | |
| | | corr19990804 Facsimile from Miller & Chevalier to RTB re Response to IRS Notice for Information | C | | |
| | | corr19990806 Memorandum from RTB to Don Jones re Progress on IRS Issue | C | | |
| | | corr19990815 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990818 Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |
| | | corr19990823 Handwritten Memorandum from Don Jones to RTB re Progress on IRS Issue | C | | |

# Exhibit A-82

| | | |
|---|---|---|
| | corr19990825 Facsimile from Carlos Kepke to Don Jones re IRS Notice and DocumentsRTB re Execution of Deed of Removal, Appointment and Indemnity in Re | C |
| | corr19990825 Facsimile from Carlos Kepke to Don Jones re IRS Notice and Documents | C |
| | corr19990825 Letter from Bermuda Ministry of Finance to Bank of Bermuda re Request for Information | C |
| | corr19990825 Memorandum from Don Jones to RTB re Progress on IRS Issue | C |
| | corr19990825 Memorandum from Don Jones to RTB re Progress on IRS Issue – 2nd copy | C |
| | corr19990825 Memorandum from Don Jones to RTB re Progress on IRS Issue – 2nd Memo | C |
| | corr19990826 Memorandum from Don Jones to RTB re Progress on IRS Issue | C |
| | corr19990826 Memorandum from Don Jones to RTB re Progress on IRS Issue – 2nd copy | C |
| | corr19990827 Facsimile from ET, Cox Hallett Wilkinson to Don Jones Enclosing Letter from the Bermuda Ministry of Finance | C |
| | corr19990827 Letter from Bermuda Ministry of Finance to Cox Hallett Wilkinson re Request for Information Extension of Time | C |
| | corr19990827 Memorandum from Don Jones to Carlos Kepke re Bland Partnership | C |
| | corr19990827 Memorandum from Don Jones to RTB re Facsimile to Carlos Kepke | C |
| | corr19990831 Memorandum from Don Jones to RTB re Progress on IRS Issue | C |
| | corr19990901 Facsimile from Miller & Chevalier to RTB re Settlement of Issues with the IRS | C |
| | corr19990907 Facsimile from ET, Cox Hallett Wilkinson to Don Jones Enclosing List of Documents Found During Review of Bank of Bermuda Documents | C |
| | corr19990909 Facsimile from ET, Cox Hallett Wilkinson to Don Jones Enclosing Draft Letter to the Bermuda Ministry of Finance | C |
| | corr19990928 Letter from ET, Cox Hallett Wilkinson to Karen Pettifer, Grosvenor re Legal Opinion as to the Disclosure of Documents | C |
| | corr19990929 Letter from Bermuda Ministry of Finance to ET, Cox Hallett Wilkinson re Request for Information | C |
| | corr19990929 Letter from ET, Cox Hallett Wilkinson to Bermuda Ministruy of Finance re Response to Request for Information | C |
| | corr19990929 Letter from ET, Cox Hallett Wilkinson to Grosvenor Trust Company Limited re Response to Request for Information | C |
| | corr19991001 Memorandum from Don Jones to RTB re Progress on IRS Issue | C |
| | corr19991013 Letter from Bermuda Ministry of Finance to ET, Cox Hallett Wilkinson re Request for Information | C |
| | corr19991019 Memorandum from Don Jones to RTB re Progress on IRS Issue including Attached Letter from the Ministry of Finance | C |
| | cov20010915 Letter from RTB, UCS Inc to St John's Trust Company PVT Ltd re Merger of Operating Entities Including Merger Plan | C |
| | cov20010921 Letter from St John's Trust Company PVT Ltd to RTB, UCS Inc re Merger of Operating Entities | C |
| | cov20010921 Letter from St John's Trust Company PVT Ltd to RTB, UCS Inc re Merger of Operating Entities – 2nd Copy | C |
| | misc19840808 Handwritten Note Setting Out Interest Payments on Texas Accounts | C |
| | misc19960220 Request for Information and Documents from IRS to Gordon Howard, St Johns | C |
| | misc19990728 Request for Information Under USA-Bermuda Tax Convention from Bermuda Ministry of Finance to St John's | C |
| | misc19990728 Request for Information Under USA-Bermuda Tax Convention from Bermuda Ministry of Finance to St John's – 2nd Copy | C |
| | misc19990817 Royal Gazette Newspaper Article Relating to the USA – Bermuda Tax Convention Act | C |
| | misc19990818 Initial List of Documents Created After Reviewing Files Held by the Bank of Bermuda Pertaining to the AEBCT and Related Companies | C |
| | misc19990825 Request for Information Under USA-Bermuda Tax Convention from Bermuda Ministry of Finance to Bank of Bermuda | C |
| | misc19990907 List of Documents Created After Reviewing Files Held by the Bank of Bermuda Pertaining to the AEBCT and Related Companies | C |
| | misc20020101 Detailed and Phased Plan of Merger of Operating Entities Including Merger Plan | C |
| | trst19810824 IRS Form 3520 Creation of or Transfers to Certain Foreign Trusts re AEBCT Signed by A. Eugene Brockman | C |
| | trst19810824 IRS Form 3520 Creation of or Transfers to Certain Foreign Trusts re AEBCT Signed by A. Eugene Brockman – 2nd Copy | C |
| | trst19810824 IRS Form 3520 Creation of or Transfers to Certain Foreign Trusts re AEBGCT Signed by A. Eugene Brockman | C |
| | trst19810824 IRS Form 3520 Creation of or Transfers to Certain Foreign Trusts re AEBGCT Signed by A. Eugene Brockman – 2nd Copy | C |
| | trst19971029 AEBCT Deed of Removal, Appointment and Indemnity Partially Signed and Undated – 2nd Copy from RTB Files | C |
| | trst19971206 Affidavit of Protector, RTB re Amendment to the AEBCT and the AEBGCT Deeds | C |
| | trst19990316 AEBCT Deed of Variation of Trust Executed by Cititrust International Inc | C |
| | trst19990317 Order of the Supreme Court of Belize re Variation of the AEBCT Trust Deed | C |
| | trsd20010402 AEBCT Minutes of Trustee's Meeting 2001 – From RTB Files | C |
| | trsd20010402 AEBCT Minutes of Trustee's Meeting 2001 – From RTB Files – 2nd Copy | C |
| | | |
| | | |
| CARLOS KEPKE | agre19810119 Letter from Carlos Kepke, Chamberlain, Hrdlicka to RTB re Fee Letter Agreement | C |

# Exhibit A-82

| | |
|---|---|
| 1981-1995 | agre19901101 License Agreement Between Universal Computer Consulting inc and Plattoon Investments Ltd |
| | corp19820521 Universal Computer Services Inc Restated Articles of Incorporation |
| | corr19810119 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Opinion on the Establishment of Trusts and Corporations |
| | corr19810120 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Whether Assembly of Control Boxes in Cayman Could Impact US Operations |
| | corr19810217 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re List of Permitted and Prohibited Activities |
| | corr19810401 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Enclosing Invoice for Services |
| | corr19810401 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Letter from Cayman Islands Attorney |
| | corr19810603 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Settlement of the AEBCT and the AEBGCT and Necessary Actions |
| | corr19810717 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re IRS Forms Which Must be Filed on Creation of Brockman Trusts |
| | corr19810717 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re IRS Forms Which Must be Filed on Creation of Brockman Trusts – 2nd Copy |
| | corr19810801 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Enclosing Invoices for Payment |
| | corr19811228 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re CTL Corporate Documents |
| | corr19820113 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Tax Consequences of Sale of US Stock to the AEBCT |
| | corr19820118 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Universal Computer Terminals Ltd |
| | corr19820602 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Universal Computer Services Inc Restated Articles of Incorporation |
| | corr19830908 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Whether CTL Can Place Funds on Deposit in the US |
| | corr19830927 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re US Tax Court Decision in Hospital Corporation of America v IRS |
| | corr19851122 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Completion of IRS Form 5472 |
| | corr19851126 Letter from Don Jones to Carlos Kepke re Whether IRS Form 5472 Should be Filed |
| | corr19860214 Letter from Carlos Kepke, Chamberlain, Hedlicka to Don Jones re Possible Acquisition of Canadian Dealership Using Bermuda |
| | corr19861113 Letter from Carlos Kepke, Chamberlain, Hedlicka to RTB re Effects of Tax Reform Act 1986 on CTL's Earnings |
| | corr19910827 Letter of Opinion from Travel Gambell to Carlos Kepke re Royalties Under Netherlands US Income Tax Treaty |
| | corr19910828 Memorandum from Carlos Kepke to RTB re Attribution Rules |
| | corr19910828 Letter from Don Jones to Carlos Kepke re DBA Opinion Letter from Sue Shaper |
| | corr19911205 Letter from Carlos Kepke, Margraves & Schueler to RTB re Update on Netherlands Royalties Actions |
| | corr19910913 Letter from Carlos Kepke, Margraves & Schueler to RTB re Whether Certain Entities are Related Parties |
| | corr19910913 Letter from Carlos Kepke, Margraves & Schueler to RTB re Whether Certain Entities are Related Parties – 2nd Copy |
| | corr19910913 Letter from Carlos Kepke, Margraves & Schueler to RTB re Whether Certain Entities are Related Parties – 3rd Copy |
| | corr19910913 Memorandum from Carlos Kepke to RTB re Whether Certain Entities are Related Parties – 3rd Copy |
| | corr19911212 Letter from Carlos Kepke, Margraves & Schueler to Don Jones re Tax Consequences of Sale of Shares by CTL |
| | corr19920205 Letter from Carlos Kepke, Margraves & Schueler to RTB re Wealth Planning Transfer Planning Discussion Memorandum |
| | corr19930106 Letter from Carlos Kepke to Don Jones re re Exemption for Portfolio Interests |
| | corr19930120 Letter from Carlos Kepke to Don Jones re Issue of Bearer Debt Instruments in the US |
| | corr19930407 Letter from Carlos Kepke to Don Jones re Alternatives for Repaying Primary Offshore Loans for DCS Deal |
| | corr19930504 Letter from Carlos Kepke to RTB re Steps in Changing Ownership of TIL Shares |
| | corr19940607 Letter from Carlos Kepke to Don Jones re Revenue Rulings from the IRS |
| | corr19940714 Letter from Carlos Kepke to RTB re re Intelligent Network Concentrator |
| | corr19951027 Letter from Carlos Kepke to Don Jones re Distributions from Foreign Trusts to US Beneficiaries |
| | corr19951031 Letter from Carlos Kepke to Don Jones re Payment of Funds to Beneficiary of Foreign Trust |
| | corr19951206 Letter from Carlos Kepke to Don Jones re USA – Malta Tax Treaties |
| | corr19981229 Letter from Carlos Kepke to Don Jones re Passive Foreign Investment Taint on CTL |
| | misc19810216 Copy of Cheque Paid by RTB to Chamberlain Hedlicka |
| | misc19810430 Copy of Cheque Paid by RTB to Chamberlain Hedlicka |
| | misc19810717 Copy of Cheque Paid by RTB to Chamberlain Hedlicka |
| | misc19811218 Copy of Cheque Paid by RTB to Chamberlain Hedlicka |
| | |
| | |
| CARLOS KEPKE | |
| 1996-2005 | corr1991002 Letter from AllanTiller, Chamberlain, Hedlicka to RTB re Anti-Conduit Rules Under Section 7701 IRS Code |
| | corr19960221 Facsimile from Carlos Kepke to Don Jones re Roadmap for the Computer Parts Display Project |

# Exhibit A-82

| | | corr19960412 Letter from Carlos Kepke to RTB re Wishes Letter Addressed to Gordon Howard re Various Trusts | | |
| | | corr19960521 Letter from IRS to Al Thorpe Request from IRS for Meeting Following Poor Document Response | | |
| | | corr19960523 Letter from RTB to Carlos Kepke re Letter from the IRS to Al Thorpe | | |
| | | corr19960831 Letter from Carlos Kepke to RTB re Impact of the Small Business Act | | |
| | | corr19971004 Facsimile from Carlos Kepke to RTB re Ability of IRS to Break Through Information Exchange Treaties | | |
| | | corr19970131 Letter from Carlos Kepke to RTB re Issue of RTB Remaining a Protector of Foreign Trusts | | |
| | | corr19970424 Letter from Carlos Kepke to RTB re Opinion on IRS Treating Beneficiaries of Perfected Trusts as Owners of the Assets | | |
| | | corr19970506 Letter from Carlos Kepke to RTB re Wording on Change of Deed for Trust Protector | | |
| | | corr19970610 Letter from Carlos Kepke to RTB re Affidavit to Change Protector of the AEBCT and the AEBGT | | |
| | | corr19970613 Letter from Carlos Kepke to RTB re Creation of Cloned Trusts | | |
| | | corr19970627 Letter from Carlos Kepke to RTB re Legislative Changes Before the Senate | | |
| | | corr19970725 Letter from Carlos Kepke to RTB re Appropriate Jurisdiction to Avoid US Tax Consequences | | |
| | | corr19970731 Letter from Carlos Kepke to RTB re Opinion on the Consequences on Taxation and Disclosure Under Small Business Act | | |
| | | corr19970807 Letter from Carlos Kepke to RTB re Opinion on Who is a US Person | | |
| | | corr19970827 Letter from Carlos Kepke to RTB re Appropriate Jurisdiction to Avoid US Tax Consequences | | |
| | | corr19980107 Letter from Leviz Zacks Cicerie to Carlos Kepke re the QSSS Election | | |
| | | corr19980210 Facsimile from Carlos Kepke to Don Jones re the Charges Made by Cititrust International for Trustee Work | | |
| | | corr19980210 Facsimile from Don Jones to Carlos Kepke re Belize Over Charging | | |
| | | corr19980210 Facsimile from Don Jones to RTB re Belize Over Charging | | |
| | | corr19980210 Letter from Carlos Kepke to RTB re Methods of Owning the Canadair Challenger | | |
| | | corr19980210 Letter from Don Jones to RTB re Belize Move | | |
| | | corr19980210 Letter from Glenn Godfrey to Carlos Kepke re Creation of Charitable Trust in Belize | | |
| | | corr19980216 Letter from Carlos Kepke to RTB re Hot Rod Project | | |
| | | corr19980616 Facsimile from RTB to Carlos Kepke re Insurance Company Structure | | |
| | | corr19980616 Facsimile from Carlos Kepke to Don Jones re Tax Imposed Under Section 877 IRS Code | | |
| | | corr19980616 Facsimile from Don Jones to RTB re Carlos Kepke Opinion on Assets in a Discretionary Trust | | |
| | | corr19980806 Letter from Carlos Kepke to RTB re Financial Management of Trust Assets | | |
| | | corr19981018 Letter from RTB to Carlos Kepke re Meeting with Tax Advisors | | |
| | | corr19981019 Letter from RTB to Carlos Kepke re Insurance Company Structure | | |
| | | corr19981020 Draft Letter from RTB to Carlos Kepke re Insurance Company Structure | | |
| | | corr19990112 Letter from Carlos Kepke to RTB re Moving the AEBCT and the AEBGCT to Rating Trustees to make Changes | | |
| | | corr19990223 Letter of Opinion from Thompson & Knight to Carlos Kepke re Legal Professional Privilege | | |
| | | corr19990303 Letter of Opinion from Thompson & Knight to Carlos Kepke re Legal Professional Privilege | | |
| | | corr19990324 Letter of Opinion from Thompson & Knight to Carlos Kepke re Legal Professional Privilege | | |
| | | corr19990329 Letter from Carlos Kepke to Don Jones re Opinions on Attorney Client Privilege from Thompson and Knight | | |
| | | corr19990517 Memorandum of Opinion on Attorney Client Privilege Prepared by Allan Tiller, Chamberlain Hrdlicka for Carlos Kepke and Don Jones | | |
| | | corr19990525 Letter from Carlos Kepke to RTB re Emerging Technologies Investment Fund Ltd | | |
| | | corr19990529 Letter from Carlos Kepke to Don Jones re Opinions on Attorney Client Privilege and Further Opinion | | |
| | | corr19990607 Letter from Carlos Kepke to RTB re Financial Advisor's Contract Between Carlos Kepke and Various Entities and Persons | | |
| | | corr19990608 Facsimile from Carlos Kepke to Don Jones re Providian Ltd and TIL Shares | | |
| | | corr19990707 Letter from Carlos Kepke to RTB re Structure of Emerging Technologies Ltd | | |
| | | corr19990812 Facsimile from Carlos Kepke to Don Jones re Review of Available Jurisdictions | | |
| | | corr19990819 Facsimile from Carlos Kepke to Don Jones re First Contacts With Andrew Keuls of ATU General Trust | | |
| | | corr19991006 Facsimile from Carlos Kepke to Don Jones re Using Belize for Setting Up Providian | | |
| | | corr20000119 Letter from Ernest Morrison, Cox Hallet Wilkinson to Carlos Kepke re Retention to Provide Advice for the ABECT and RTB | | |
| | | corr20000119 Letter from Ernest Morrison, Cox Hallet Wilkinson to RTB re Appointment on Behalf of RTB | | |
| | | corr20000119 Letter from Ernest Morrison, Cox Hallet Wilkinson to St Johns re Appointment on Behalf of the AEBCT | | |
| | | corr20000120 Letter from Carlos Kepke to RTB re Responses to the IRS re Interests in TIL | | |
| | | corr20000322 Facsimile from Carlos Kepke to Don Jones re Special Powers of Appointment | | |

# Exhibit A-82

| | | |
|---|---|---|
| corr20000323 Facsimile from Carlos Kepke to Don Jones re Cloning of the Aberdeen Trust and Ownership of Brooke Enterprises | | |
| corr20000901 Facsimile from Carlos Kepke to Don Jones re Responses on Issues Pertaining to Fees | | |
| corr20000901 Facsimile from Carlos Kepke to Don Jones re US Investors in Point Investments Ltd | | |
| corr20001020 Letter from Carlos Kepke to RTB re Tax Consequences of Merger of Companies into Spanish Steps Holdings Ltd | | |
| corr20011016 Letter from Carlos Kepke to RTB re Article on Section 679 of the IRS Code | | |
| corr20030728 Facsimile from Carlos Kepke to Don Jones re Termination of the Bland Partnership | | |
| corr20051104 Letter from Allan Tiller, Chamberlain, Hrdlicka to RTB re Special Testamentary Powers of Appointment | | |
| misc19981216 Affidavit Sworn by RTB as Protector of the ABICT and Changes to the Trust Deed re Capitalisation | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Chelsea Trust re Replacement of Protector for Endowment Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Chelsea Trust re Replacement of Protector for Service Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Gladstone Trust re Replacement of Protector for Philanthropic Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Gorry Trust re Replacement of Protector for the Benevolent Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Grosvenor Trust re Replacement of Protector for Maritime Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Grosvenor Trust re Replacement of Protector for the Worldwide Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Willow Trust re Replacement of Protector for Enterprise Charitable Trust | | |
| trst19970626 Letter from RTB, Protector to Gordon Howard, Willow Trust re Replacement of Protector for Lineage Charitable Trust | | |