# EXHIBIT

# A-204

Exhibit A-204

**From:** Redish
**To:** permit1@lambdaprime.org
**Date:** Saturday, June 5, 2010 3:29:21 AM

Bob,

So that you can access the Mirabaud accounts for Point and SSH Ltd, the user ID and passwords are:

Point:

User ID:
Password:

SSH Ltd:

User ID:
Password:

The website is very basic, read only account access.  You need to click on the "My Portfolios" button on the left panel to access statements.  Values are updated each day.

Evatt

MLATSW_000540

# EXHIBIT

# A-302

Exhibit A-302

# CORPORATE ACCOUNT OPENING FORM


**MIRABAUD**
1819
Banquiers Privés

ACCOUNT DESIGNATION _____

NUMBER _____

**Company name:** SPANISH STEPS HOLDINGS LTD

**Legal office/residence:** KINGSTON CHAMBERS, P.O. BOX 173, ROAD TOWN TORTOLA VG1110, BRITISH VIRGIN ISLANDS

**Correspondance**

☐     to be retained by the Bank (Mail held in Bank)

☑     to be mailed to SUITE 225, 12 CHURCH ST., HAMILTON HM11 BERMUD

     ☑ regularly    ☐ monthly    ☐ quarterly    ☐ bi-annually    ☐ annually

☐     copy to be mailed to _____

**Base currency**   USD

**Current account to be opened in:**   ☑ CHF   ☑ USD   ☑ GBP   ☑ EUR   ☑ CAD   ☐ Other

**Special instructions** _____

The account holder confirms that they have read the General Terms and Conditions of the Bank that govern their relations with the Bank and determine the applicable law and the relevant jurisdiction.

Date

Signatures

_____        _____

                                                    _____

Exhibit A-302

**DECLARATION FOR ORGANISED ASSOCIATIONS OF INDIVIDUALS, ASSETS OR PATRIMONY WITHOUT SPECIFIC BENEFICIAL OWNERS UPON OPENING A BANK ACCOUNT**



**≋MIRABAUD ᵍ**
**Banquiers Privés**

**T** ACCOUNT/SECURITIES ACCOUNT NO ▮ _7462_

CONTRACTING PARTNER
_SPANISH STEPS HOLDINGS LTD_

Pursuant to point 43 of the Agreement on the Swiss banks' Code of Conduct with regard to the exercise of due diligence (CDB 08) the undersigned hereby declare(s) that, as trustee, board member of the foundation or board member of an underlying company belonging to the trust or to the foundation, etc. known as

_A. EUGENE BROCKMAN CHARITABLE TRUST_

and, in such capacity, provide(s), to the best of his/her/their knowledge, the following information to the Bank:

1. Information pertaining to the trust, foundation, etc:

Type of entity (trust, foundation, etc.): _SPANISH STEPS HOLDINGS LTD, A BVI COMPANY AS 100% SUBSIDIARY OF SPANISH STEPS HOLDINGS LLC, A NEVIS COMPANY AS 100% SUBSIDIARY OF THE A. EUGENE BROCKMAN CHARITABLE TRUST, A DISCRETIONARY AND NON US GRANTOR TRUST EXISTING UNDER THE LAWS OF BERMUDA._

2. Information pertaining to the settlor(s) (actual, not fiduciary):

Last name(s): _BROCKMAN_

First name(s): _ALFRED EUGENE_

Date of birth: ▮ _DECEASED 2 NOV. 1986_

Nationality: _U.S. (DECEASED)_

Address and country of domicile: _DECEASED_

3. Information pertaining to the individual(s) who is/are the first beneficiary(ies) or class(es) of beneficiaries (e.g. issue of the settlor) if no specific beneficiary(ies) is/are designated:

Last name(s): _NO BENEFICIARIES_

First name(s): _____

Date of birth: _____

Nationality: _____

Address(es) and country(ies) of domicile: _____

ET_0001775889

# Exhibit A-302



4. Information pertaining to the protector(s) and/or third party(ies) disposing of a power of nomination or appointment, provided that such power obliges the representatives (trustees, board members of a foundation, etc) to dispose of the assets or to change the attribution of the assets or the appointment of beneficiaries:

Last name(s): _____ NONE _____

First name(s): _____

Date of birth: _____

Nationality: _____

Address(es) and country(ies) of domicile: _____

_____

The undersigned confirm(s) that he/she is/they are entitled to open an account with the Bank for the above-mentioned trust, foundation, etc...

The undersigned hereby undertake(s) to immediately inform the Bank of any change to the information contained herein.

Date                                          Signature(s)

_____        _____

It is a criminal offence to deliberately provide false information on this form (Art. 251 of the Swiss Penal Code, document forgery; under penalty of imprisonment or a fine).

Exhibit A-302

NON-US NON-"FLOW THROUGH" ENTITIES
Companies, Partnerships, Trusts, Foundations,
Collective Investment Vehicles, and other non-U.S. entities

U.S. TAX DOCUMENTATION
(JULY 2008)

# ASSETS AND INCOME SUBJECT TO UNITED STATES WITHHOLDING TAX DECLARATION OF NON-U.S. STATUS[1]

ACCOUNT NUMBER(S): _____ 7462

NAME OF ACCOUNTHOLDER: SPANISH STEPS HOLDINGS LTD

REGISTERED OFFICE/PERMANENT ADDRESS/ADDRESS OF TRUSTEE: KINGSTON CHAMBERS P.O. BOX 173 ROAD TOWN VG1110 TORTOLA, BRITISH VIRGIN ISLANDS

**In relation to the requirements imposed by the United States Withholding Tax Regulations and by the Qualified Intermediary Agreement the Bank has concluded with the U.S. Internal Revenue Service ("IRS"), the accountholder hereby gives the Bank the following information relating to the ownership of assets held in the above-mentioned account(s) in order to enable the Bank**
1. **to ascertain whether the accountholder is or is not a "U.S. Person", and**
2. **to determine whether the accountholder intends to claim the benefits of an Income Tax Treaty, if any, between the U.S. and the accountholder's country of tax residence.**

## I. DECLARATIONS

### A. Declaration of Non-U.S. Status

I/We the undersigned, acting for or on behalf of the accountholder whom we represent and are empowered to sign for, hereby declare that the accountholder is a ___COMPANY___ (fill in legal description of entity) organized under the laws of _BRITISH VIRGIN ISLANDS_ (fill in country), and that

| Companies, Partnerships, Collective Investment Vehicles, etc. | OR | Trusts and Similar Entities (Please check all applicable boxes) |
|---|---|---|
| ☑ The accountholder is a non-U.S. company, a non-U.S. partnership, a non-U.S. collective investment vehicle or another non-U.S. entity that 1. under U.S. tax law, is a *per se* corporation; **or** 2. has made a «check-the-box» *election to be treated as a corporation* for U.S. tax purposes; **or** 3. has not made a «check-the-box» election, but nonetheless *is treated as a corporation for U.S. tax purposes.* | | The accountholder is not an entity that is established for the purposes of carrying on business (and does not carry on business) and is treated as a non-U.S. trust for U.S. tax purposes, **and** ☐ it is NOT a «grantor» trust for U.S. tax purposes, **and/or** ☐ it is NOT a "simple" trust for U.S. tax purposes. **Note: A trust (or similar entity) will only be regarded as a Non-"Flow Through" entity for U.S. tax purposes if it has checked both boxes above** |

**NOTES**
*This Form is inappropriate and should be disregarded and replaced by other documentation in the following cases:*

*If you are signing on behalf of an entity that is, or is treated as, a **foreign partnership** for U.S. tax purposes or which has made a "check-the-box"-election to that effect, the partnership must complete and sign IRS Form W-8IMY, and appropriate documentation must be completed and signed by each partner/shareholder/member (either IRS Form W-9 for a U.S. citizen or resident, or the Bank's Form for Individuals "Declaration of non-U.S. Status" for a non-US partner). This documentation must also include certified copies of official identity documents (passports or national identity cards). If you are signing on behalf of an entity that has elected to be disregarded as an entity for U.S. tax purposes, documentation from the sole member/shareholder is required. If you are signing on behalf of an entity where no partner/shareholder/member is a U.S. citizen or resident, you yourself are responsible for obtaining additional information as to the documentation that needs to be submitted.*

*If you are signing on behalf of a **foreign "grantor trust"** in respect of which a U.S. person is the grantor, you must provide IRS Form W-8IMY signed by the trustee(s) and IRS Form W-9 signed by the grantor (i.e., the person who funded the trust). If you are signing on behalf of a foreign **"grantor trust" in respect of which a non-U.S. person is the grantor**, you must provide (1) IRS Form W-8IMY signed by the trustee(s), (2) the Bank's form "Declaration of non-U.S. Status", signed by the non-U.S. grantor and, (3) a certified copy of the grantor's passport or national identity card. If you are signing on behalf of a grantor trust where the grantor is not a U.S. citizen or resident, you yourself are responsible for obtaining additional information as to the documentation that needs to be submitted.*

*If you are signing on behalf of **foreign "simple trust"**, then you must provide (1) IRS Form W-8IMY signed by the trustee(s), (2) the appropriate documentation (either IRS Form W-9 for a U.S. citizen or resident, or the Bank's forms "Declaration of non-U.S. Status", signed by each non-U.S. beneficiary of the simple trust and (3), for each beneficiary that is a non-U.S. person, a certified copy of his passport or national identity card. If you are signing on behalf of a simple trust where none of the beneficiaries are U.S. citizens or residents, you yourself are responsible for obtaining additional information as to the documentation that needs to be submitted.*

*If you are signing on behalf of a **U.S. corporation, partnership, trust or another U.S. entity**, please submit a duly completed and signed IRS Form W-9.*

### B. "No Effectively Connected Income" Declaration

The undersigned accountholder declares that the income to which this Form relates is not effectively connected with the conduct of a trade or business in the U.S.

### C. Beneficial Ownership Confirmation

The undersigned accountholder hereby declares that, according to U.S. tax principles, it is the beneficial owner of all assets and

Exhibit A-302

## II. DISCOVERY OF STATUS AS A "U.S. PERSON" / AGREEMENT TO SELL U.S. SECURITIES UNDER DEDUCTION OF BACKUP WITHHOLDING TAX

– **If** the declarations made above become invalid after the filing of this Form with the Bank due to: (i) a change in the accountholder's status from "non-U.S. Person" to "U.S. Person"; and/or, (ii) late discovery of the fact that the accountholder's status as described in this Form has been misrepresented; **and**

– **If** either the accountholder, or its shareholder(s)/ member(s)/ partner(s)/ beneficiary(ies) which is(are) deemed the beneficial owners of the income from the account for U.S. tax purposes, is(are) determined to be (a) U.S. person(s) and if it(they) fail(s) to submit a valid IRS Form W-9 to the Bank,

**the accountholder hereby irrevocably agrees that the Bank has the right,  without prior notice, to sell all U.S. investments held (or considered to be held) in the above-mentioned account(s) and to deduct and pay to the IRS a Backup Withholding Tax of 28% (or the then applicable rate) on the income and the gross sale proceeds of such investments, as provided for under the Qualified Intermediary Agreement concluded between the Bank and the IRS[2], and the accountholder agrees that the Bank will cease to invest in U.S. investments on the accountholder's behalf.**

**The undersigned accountholder hereby expressly releases the Bank from any liability in respect of the sale of its U.S. investments and in respect of the Bank ceasing further U.S. investments pursuant to the application of this provision and undertakes to indemnify the Bank for any liability incurred under the U.S. tax rules or under the Qualified Intermediary Agreement in connection with the Bank's late discovery of the client's status as a U.S. person.**

## III. APPLICATION OF INCOME TAX TREATY RELIEF

The undersigned accountholder declares that it wishes to claim the benefits of the applicable Income Tax Treaty:
(please check **all** applicable boxes)

☑ No

☐ Yes   Please specify country: _____

and, if the answer given to the preceding question is "Yes", the undersigned accountholder declares:

☐ Yes   that the accountholder meets all provisions of the applicable Income Tax Treaty that are necessary to claim a reduced rate of withholding, including **any limitation on benefits provisions,** and derives the income within the meaning of Section 894 of the U.S. Internal Revenue Code, and the regulations thereunder, as the beneficial owner.

## IV. CHANGE IN CIRCUMSTANCES

During the contractual relationship with the Bank, the undersigned accountholder undertakes to inform the Bank, **at its own initiative and within 30 days**, of any change in circumstances which, under applicable U.S. tax regulations, modifies either (i) its own status as a "non-U.S. Person" and causes it to acquire the status of a "U.S. Person", and/or (ii) its classification as a non-"Flow Through" entity and causes it to acquire the status of a "Flow Through" entity, and/or (iii) modifies its treaty eligibility.

**The undersigned certifies that (i), if necessary, it has taken appropriate tax advice in the U.S. and/or in its country of residence or country of treaty eligibility on the issues covered herein, in particular in order to be able to confirm that it meets the conditions allowing it to claim Treaty benefits, (ii), to the best of its knowledge and belief, the information contained herein is true, correct and complete, and, (iii) no contrary information has, directly or indirectly, been provided to the Bank or to any of its officers, employees or agents.**

Date

_____

Signature(s)

_____

By _GORDON   HOWARD_

Title _DIRECTOR_

SPECIMENS SIGNATURES | Exhibit A-302 | ≈≈ MIRABAUD 1819

Account designation: SPANISH STEPS HOLDINGS LTD  Number: ████ 7462

| Name and first name (capital letters) | Handwritten signature |
|---|---|
| **Individual signature:** | |
| GORON HOWARD | |
| HEATHER CORBETT | |
| EVATT TAMINE | _[signature]_ |
| | |
| | |
| **Joint signature:** | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Date: ........................................................................  Signature(s): ................................................................

# Exhibit A-302

The signatures communicated in writing to the Bank are valid for all present and future relationship with the Bank, until receipt of a written notice of revocation, and notwithstanding different entries in the Commercial Register or in other publications.

Any damage resulting from lack of legitimation or falsification of the signatures not discovered by the Bank shall be borne by the client except in case of gross negligence on the part of the Bank.

All the contractual relationship existing between the client and Mirabaud & Cie shall be governed by the Bank's present and future General Terms and Conditions which designate, in particular, the applicable law and the competent jurisdiction.

ET_0001775894

Exhibit A-302

## SPECIAL AUTHORIZATION
## CONFERRED TO A THIRD PARTY

 **MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION _SPANISH STEPS HOLDINGS LTD_
NUMBER _____ ▮ _7462_ _____

_____

The undersigned hereby authorize(s)

Name/First name: _____ CORBETT, HEATHER JEANNE_____

Address: _C/- PANORAMA UNIT 13, 151 SOUTH ROAD, PAGET, DV04_
_BERMUDA_

to receive all information regarding the administration and management of funds deposited in the above-mentioned account.

This authorization empowers the appointed person to receive upon request any correspondence, information or document necessary to exercise his/her mandate. In this context, copies of statements of account and other related advices may be sent to him/her.

However, the appointed person has no management power over the account. He/She is not permitted to withdraw cash or securities from the account nor to buy or sell securities. He/She cannot pledge other valuables and assets, nor dispose of any other assets deposited with the Bank. Furthermore, he/she cannot sign any document in the name and on account of the undersigned.

This autorization shall not cease upon his/their death, nor by reason of his/their loss of mental capacity nor for any other cause enumerated in Articles 35 and 405 of the Swiss Code of Obligations.

This authorization remains in force until such time as Mirabaud & Cie receives written notice of revocation.The General Terms and Conditions and the Deposit Regulations governing his/their relations with the Bank remain in force in respect to the law applicable and the valid place of jurisdiction.


Date                                                    Signature(s)


_____                  _____

ET_0001775895

Exhibit A-302

## SPECIAL AUTHORIZATION
## CONFERRED TO A THIRD PARTY



**Banquiers Privés**

ACCOUNT DESIGNATION _SPANISH STEPS HOLDINGS LTD_

NUMBER _███ 7 462_

The undersigned hereby authorize(s)

Name/First name: _TAMINE , EVATT_

Address: _SUITE 609 , 12 CHURCH ST., HAMILTON HM 11 BERMUDA_

to receive all information regarding the administration and management of funds deposited in the above-mentioned account.

This authorization empowers the appointed person to receive upon request any correspondence, information or document necessary to exercise his/her mandate. In this context, copies of statements of account and other related advices may be sent to him/her.

However, the appointed person has no management power over the account. He/She is not permitted to withdraw cash or securities from the account nor to buy or sell securities. He/She cannot pledge other valuables and assets, nor dispose of any other assets deposited with the Bank. Furthermore, he/she cannot sign any document in the name and on account of the undersigned.

This autorization shall not cease upon his/their death, nor by reason of his/their loss of mental capacity nor for any other cause enumerated in Articles 35 and 405 of the Swiss Code of Obligations.

This authorization remains in force until such time as Mirabaud & Cie receives written notice of revocation.The General Terms and Conditions and the Deposit Regulations governing his/their relations with the Bank remain in force in respect to the law applicable and the valid place of jurisdiction.

Date

Signature(s)

_____

_____

Exhibit A-302

# CORRESPONDENCE
# BY ELECTRONIC MAIL (E-MAIL)

 **MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION  *SPANISH STEPS HOLDINGS LTD*

NUMBER ▮▮▮  *7462*

---

The undersigned hereby expressly authorise(s) Mirabaud & Cie, hereafter referred to as "the Bank", to correspond with the undersigned, or his/her/their duly authorised representatives, by electronic mail (e-mail) at the following address(es):

*EVATT   TAMINE*

*etamine @ logic. bm*

The Bank will only check the above-mentioned address(es) in order to confirm the identity of the sender, by analogy with article 1.3 of the general conditions.

The undersigned may request the Bank to send, by electronic mail, statements of securities deposited and/or any other information concerning the above-named account.

However, the undersigned has/have taken note of the fact that the Bank does not accept, and will not carry out, instructions given by electronic mail by the undersigned or by his/her/their duly authorised representative(s), for transfers, stock exchange orders and other banking operations.

The undersigned is/are aware of the risks associated with this method of communication (lack of confidentiality, virus etc) and hereby release(s) the Bank from any responsibility for errors of transmission, fraudulent use or loss of electronic mail messages.

The undersigned will take responsibility for, and undertake(s) to discharge the Bank in respect of, any damage, loss or claims which it might face as a consequence of the use of this means of communication.

The undersigned expressly confirm(s) that he/she/they will not claim against the Bank any breach of banking secrecy as per article 47 of the banking law, as a consequence of the use of this means of communication.

The remainder of the issue is governed by the general conditions.

The present instruction and discharge will remain in force until revoked by the undersigned.

Date

Signature(s)

Exhibit A-302

## CORRESPONDENCE
## BY ELECTRONIC MAIL (E-MAIL)



**MIRABAUD** 1819

**Banquiers Privés**

ACCOUNT DESIGNATION _SPANISH STEPS HOLDINGS LTD_

NUMBER _7462_

---

The undersigned hereby expressly authorise(s) Mirabaud & Cie, hereafter referred to as "the Bank", to correspond with the undersigned, or his/her/their duly authorised representatives, by electronic mail (e-mail) at the following address(es):

_HEATHER CORBETT_

_hcorbett @ northrock.bm_

The Bank will only check the above-mentioned address(es) in order to confirm the identity of the sender, by analogy with article 1.3 of the general conditions.

The undersigned may request the Bank to send, by electronic mail, statements of securities deposited and/or any other information concerning the above-named account.

However, the undersigned has/have taken note of the fact that the Bank does not accept, and will not carry out, instructions given by electronic mail by the undersigned or by his/her/their duly authorised representative(s), for transfers, stock exchange orders and other banking operations.

The undersigned is/are aware of the risks associated with this method of communication (lack of confidentiality, virus etc) and hereby release(s) the Bank from any responsibility for errors of transmission, fraudulent use or loss of electronic mail messages.

The undersigned will take responsibility for, and undertake(s) to discharge the Bank in respect of, any damage, loss or claims which it might face as a consequence of the use of this means of communication.

The undersigned expressly confirm(s) that he/she/they will not claim against the Bank any breach of banking secrecy as per article 47 of the banking law, as a consequence of the use of this means of communication.

The remainder of the issue is governed by the general conditions.

The present instruction and discharge will remain in force until revoked by the undersigned.

Date

Signature(s)

---

Exhibit A-302

## POWER OF ATTORNEY



**MIRABAUD** 1819

**Banquiers Privés**

ACCOUNT DESIGNATION  ▆SPANISH STEPS HOLDINGS LTD

NUMBER _____ ▆▆ 7462 _____

The undersigned  GORDON HOWARD , DIRECTOR OF SPANISH STEPS HOLDINGS LTD

hereby appoint(s) without power of substitution:
Names and first names of the attorneys

1) ___ HEATHER CORBETT _____

2) ___ EVATT TAMINE _____

| Date of birth | Nationality | indiv. or joint | Signature |
|---|---|---|---|
| 1 ▆ | BRITISH | INDIVIDUAL | |
| 2 ▆ | AUSTRALIAN | INDIVIDUAL | ~Jamie~ |

as my/our attorney(s) to represent me/us validly toward Mirabaud & Cie (hereafter the «Bank»).

☑ **General power of attorney**
for all transactions pertaining to the aforementioned account. The attorney(s) is/are in particular authorized to withdraw funds, to sell, **to pledge** securities and/or other valuables and assets, **to contract loans** and in general to dispose of any other manner of the securities, funds, valuables and other assets deposited with the Bank.

or

☐ **Limited power of attorney**
with respect to the management and administration of the funds, securities, valuables and other assets deposited in the aforementioned account. The attorney(s) is/are authorized to purchase and sell any securities, precious metals, currencies and others, as well as to effect fiduciary deposits in all countries and all currencies. **According to the present limited power of attorney, the attorney(s) is/are neither authorized to withdraw, in any manner, nor to pledge the funds, valuables or other assets deposited in the account.**

**Common provisions**
The attorney(s) is/are authorized to receive any correspondence, information or documents necessary for the exercise of the present power of attorney. In any situation, the signature(s) appearing on the present power of attorney as well as any and all other declarations and acts taken by the attorney(s) within the limitations of the present power of attorney are binding me/us validly. The present power of attorney shall not cease upon my/our death, nor by reason of my/our loss of capacity nor for any other cause enumerated in Articles 35 and 405 of the Swiss Code of Obligations. The present power of attorney shall remain in force until the Bank shall have received a written notice of revocation. The General Terms and Conditions and the Deposit Regulations govern the relations with the Bank and indicate the applicable law and the valid place of jurisdiction.

Date

Signature of account holder(s)

_____

_____

Exhibit A-302

## ORDERS TRANSMITTED
## BY PHONE OR TELEFAX



**MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION _SPANISH STEPS HOLDINGS LTD_

NUMBER _7 462_

---

The undersigned hereby expressly authorise(s) Mirabaud & Cie (hereafter, "the Bank") to accept his/her/their instructions given by phone and telefax and to execute the same immediately, under any circumstances, even if they are not followed by a written confirmation.

The undersigned assume(s) all risks, particularly those due to an error of transmission or comprehension as a result of this manner of proceeding and even in case of an error of the Bank as to his/her/their identity and relieve(s) the Bank, from now on, of any responsibility in this respect.

The present instructions and discharges remain valid until written revocation by the undersigned and are opposable him/them as well as to any representative appointed or to be appointed by him/them.

In case of written confirmations of his/her/their instructions given by phone and telefax, the letter will clearly state that it is a confirmation of such instructions, in the absence of which the undersigned assume(s) alone the risks of possible duplications.

Date

Signature

_____          _____

Exhibit A-302

# PERMANENT POWER
# TO EFFECT FIDUCIARY DEPOSITS ABROAD


**MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION  SPANISH STEPS HOLDINGS LTD

NUMBER _____ 7 462

1. The undersigned GORDON HOWARD, DIRECTOR OF SPANISH STEPS HOLDINGS LTD
   acting as principal(s) (hereinafter "the Principal") authorises Mirabaud & Cie (hereinafter "the Bank") to effect, by using all or part of the Principal's assets deposited with the Bank, fiduciary deposits in the Bank's name but for the exclusive account and risk of the Principal with banks and/or financial institutions abroad.

2. The choice of depository bank, currency, amount, interest rate and maturity (including all renewals, extension increase and reduction of the placement) as well as the implementation of any new deposit either immediately following the maturity of any previous deposit or on any later date is left to the Bank's complete discretion. The Principal stipulates the following additional/restrictive instructions:
   PRIOR APPROVAL OF GORDON HOWARD, HEATHER CORBETT
   OR EVATT TAMINE NECESSARY.

3. The Bank's sole obligation is to credit to the Principal such amounts in repayment of capital and interests which has been credited to the Bank, at its legal domicile, and which is at its free disposal.

4. All sums placed by virtue of the present power are subject to the present and future legislation applicable in the country of residence of the bank receiving the deposit as well as all regulations which apply to the currency in which payment is effected. If a foreign bank defaults on its obligations or if it only makes partial repayment of the deposit, the Bank's sole obligation is to assign to the Principal the claim held on his behalf.

5. The Principal approves in advance all transactions which the Bank shall or shall not undertake for his account under the present power and furthermore confirms expressly that the Bank will not be held liable for any decision which have been left to its discretion.

6. The funds employed for the above mentioned transactions will be booked to a fiduciary account and the interests receivable on the deposits will be credited at maturity to the Principal through the fiduciary account as soon as such interest is received.

7. At any time, the Bank shall be entitled to transfer to the Principal the claim it holds in his favour.

8. The present power shall not cease to be valid upon the Principal's death or by reason of his loss of capacity nor for any other cause enumerated in Articles 35 and 405 of the Swiss Code of Obligations. It shall remain in force until the Bank has received a written notice of revocation or until the same is cancelled by the Bank. Such revocation will not affect the operations which have not matured.
   Notice of revocation must reach the Bank at least 5 working days prior to the date of maturity of the current operation(s).

9. The General Terms and Conditions of the Bank which provide the application of Swiss law and designate the place of jurisdiction and with which the Principal recognizes to be familiar, govern the business relations between the Principal and the Bank unless this agreement stipulates the contrary.

Date

The Principal(s)

_____                    _____

Exhibit A-302

# INFORMATION DUTY OF SECURITIES DEALERS AND REPRESENTATIVES OF FOREIGN INVESTMENT FUNDS



**MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION *SPANISH STEPS HOLDINGS LTD*

NUMBER ▮▮▮ *7 462*

The undersigned hereby confirm(s) that they have received from Mirabaud & Cie (hereafter "the Bank") the Risk Disclosure Statements relating to certain operations involving risks. He/she/they undertake(s) to read them carefully and to request further explanations from the Bank if needed.

The undersigned hereby confirm(s) that he/she/they have been informed that, in the capacity of representative of foreign investment funds authorized for distribution in Switzerland (hereinafter "the Funds"), the Bank makes freely available to investors the prospectus and latest annual and interim reports of the Funds. Unless he/she/they indicate(s) otherwise, he/she/they release(s) the Bank from the requirement to issue these documents before subscribing to units/shares in the Funds. He/she/they confirm(s) that he/she/they is/are aware that the Bank will not provide him/her/them with advice or additional information in respect of the sale of the said Funds, and that he/she/they expressly accept(s) that this is the case.

Date

Signature(s)

_____

_____

Exhibit A-302

# REPRESENTATION TO THE GENERAL MEETINGS



**MIRABAUD** 1819

**Banquiers Privés**

ACCOUNT DESIGNATION *SPANISH STEPS HOLDINGS LTD*

NUMBER ███ *7 462*

---

The undersigned (hereafter the Principal) gives(give) mandate, with substitution right, to Mirabaud & Cie (hereafter the Bank) to represent at the Ordinary or Extraordinary General Meetings, without however imposing it upon them, the shares held in the Principal's name and the securities registered as being deposited in scriptural form.

☑ **General instructions**

The Principal expressly foregoes being consulted to give specific instructions to the Bank before each General Meeting in which the Bank would decide to represent his securities, and generally entrusts the Bank to vote in the sense of the Board's proposals.

☐ **Specific instructions**

The Principal wishes to be consulted before each General Meeting where the Bank would decide to represent his securities, so as to be able to give specific voting instructions.

If the Principal's instructions do not reach the Bank, or do not reach it in time, the Bank will vote in the sense of the Board's proposals.

The Principal can exercise his voting right at all times. In this case, he must ask the Bank for the participation card to the General Meeting in question, 48 hours at the latest before the date of the meeting.

The present mandate will not end in the case of the Principal's death or incapacity, or for any other cause mentioned in articles 35 and 405 of the "Swiss Code of Obligations".

Date

Signature(s)

_____

_____

Exhibit A-302

**TRANSFER ORDERS**
**IDENTIFICATION OF ORDERING CLIENT**



ACCOUNT DESIGNATION ~~SPANISH STEPS HOLDINGS LTD~~

NUMBER _____ ▓▓▓▓ 7462 _____

In accordance with the provisions contained in the General Terms and Conditions of Mirabaud & Cie (hereinafter the "Bank"), the undersigned has/have been duly informed that in the case of transfers, the Bank is required by law to specify the name, account number and address of the contracting party ordering the transfer, or even, to the extent that Swiss and foreign regulations allow, the name, account number and an identifier.

Accordingly, the undersigned hereby confirm(s) as follows:

**A. TRANSFERS IN SWITZERLAND DENOMINATED IN SWISS FRANCS**

☑  That he/they **expressly agree(s)** that the Bank may, immediately at the request of the beneficiary establishment, specify his/their name(s), address(es) and account number, as the ordering client, in the case of any transfer in Switzerland denominated in Swiss Francs.

   In this context, the undersigned hereby waive(s) his/their right to make a claim against the Bank for contravening article 47 of the banking secrecy regulations in respect of this procedure. In addition, he/they release(s) the Bank from liability for any damage that might result therefrom.

☐  That he/they **do(es) not agree** that the Bank may inform the beneficiary establishment of his/their name(s), address(es) and account number, as the ordering client. Consequently, the undersigned acknowledge(s) that he/they has/have been informed that the Bank will not be able to make any transfer in Switzerland denominated in Swiss Francs by debiting his/their account. In particular, the Bank shall not be responsible for informing the undersigned that it cannot perform transfers in Switzerland denominated in Swiss Francs from the aforementioned account in the event that it receives such a request, and will not be liable for any damage that might result therefrom.

**B. TRANSFERS IN FOREIGN CURRENCY AND/OR TO A FOREIGN COUNTRY**

☑  That he/they **expressly agree(s)** that the Bank may specify his/their name(s), address(es) and account number, as the ordering client, in the case of any transfer in foreign currency and/or to a foreign country. To the extent that Swiss or foreign regulations allow it to do so, the Bank may specify an identifier instead of the address.

   In this context, the undersigned hereby waive(s) his/their right to make a claim against the Bank for contravening article 47 of the banking secrecy regulations in respect of this procedure. In addition, he/they release(s) the Bank from liability for any damage that might result therefrom.

☐  That he/they **do(es) not agree** that the Bank may specify his/their name(s), address(es) and account number, as the ordering client, in the case of any transfer in foreign currency and/or to a foreign country. Consequently, the undersigned acknowledge(s) that he/they has/have been informed that the Bank will not be able to make any transfer in foreign currency and/or to a foreign country by debiting his/their account. In particular, the Bank shall not be responsible for informing the undersigned that it cannot perform trans-

Exhibit A-302

1819

fers in foreign currency and/or to a foreign country from the aforementioned account in the event that it receives such a request, and will not be liable for any damage that might result therefrom.

The General Terms and Conditions of the Bank which provide for the application of Swiss law and designate the place of jurisdiction, and with which the undersigned recognize(s) to be familiar, govern the business relations between the undersigned and the Bank unless these instructions stipulate the contrary.

These instructions and waivers will remain valid until withdrawn by the undersigned in writing.

Date                                                                Signature(s)

_____                  _____

ET_0001775905

Exhibit A-302

## INTERNET ACCOUNT CONSULTATION



**MIRABAUD** 1819

**Banquiers Privés**

ACCOUNT HOLDER _SPANISH STEPS HOLDINGS LTD_

NUMBER ▆▆▆ _7 462_

Mirabaud & Cie, hereinafter the "Bank", hereby permits the undersigned person(s), hereinafter the "Client", to obtain electronic services by means of secure access to its Internet site *www.mirabaud.com*, hereinafter "private space".

The Client expressly authorizes the Bank to make available, via the private space, to the Client and to any other person designated by him/her, banking data concerning him/her, as provided by the Bank and connected with the account indicated in the margin. To this end, the Bank grants the Client access to the private space. Moreover, the Bank wishes to use the secure Internet site to allow its asset managers to access the Client's data while on business trips. This kind of service is only offered for any Client who has explicitly authorized it in this document.

The Client therefore authorizes the following users to access his/her private space:

| Authorized users | Name |
|---|---|
| ☑ Accountholder(s) | |
| ☐ Bank's asset manager(s) | |
| ☐ Independent asset manager | |
| ☑ Other approved user(s)* | _HEATHER  CORBETT_ |
|    * users known to the Bank and with access to the account | _EVATT  TAMINE_ |

In order to access the private space, the Client and any Authorized Users must identify themselves by means of a user id and a password. As soon as the Bank is in possession of the necessary identification details, access to the private space is authorized. The Client is thus solely liable for the security of his/her means of identification. He/she undertakes to notify any Authorized User of the security rules to be followed and agrees to accept, both for him/herself and for any Authorized Users, liability for any loss or damage caused by failure to observe this rule.

Any connection to the Internet network entails the risk that third parties may access the computer or the data pertaining to the Client or the Authorized Users, as well as the risk that viruses are downloaded; the Client is aware of the risks associated with this means of communication and releases the Bank from any liability towards him/her or the other Authorized Users for any virus contamination, fraudulent use, software errors or IT systems errors.

Additionally, the Client undertakes not to sue the Bank for violation of bank-client confidentiality as a result of the use of this means of communication. Furthermore, the Client understands that data protection afforded by Swiss law only applies on Swiss territory. Thus, any data that reach the territory of another State are not protected by Swiss law.

**Data relating to the account indicated in the margin is provided for information purposes only and does not have any binding validity for the Bank, which moreover does not guarantee the accuracy of the information communicated by information systems.**

The Bank reserves the right to suspend or refuse access to the private space at any time if it suspects malicious conduct that may compromise the confidentiality of the private space, or for any other reason. The Bank does not accept any liability for loss or damage resulting from interruptions in communication or transmission errors. The

ET_0001775906

Exhibit A-302

1819

Client must ask the Bank without delay to block access to the private space if he/she suspects fraudulent use of his/her means of identification.

These instructions remain valid until revoked in writing by the Client. **It is hereby understood that, in the event of the revocation of an Authorized User's consultation rights or power of attorney for the account indicated in the margin, this authorization will be automatically terminated.** The Client must therefore issue revocation instructions for each Authorized User to the Bank in all such cases.

All other aspects are governed by the General Terms and Conditions, which stipulate in particular that the agreement is subject to Swiss law and designate the place of jurisdiction.

Date                                                                    Signature(s)

_____              _____

Exhibit A-302

## DEED OF PLEDGE



**MIRABAUD** 1819
Banquiers Privés

ACCOUNT DESIGNATION _SPANISH STEPS HOLDINGS LTD_

NUMBER ____ 7462

The undersigned (hereinafter the "Client") hereby declares that he/she/it gives as a pledge in favour of Mirabaud & Cie, hereinafter referred to as "the Bank", by way of surety for all debts, present or future, plus interest, commissions, costs and all accessories which the Bank may be owed by him (them) and by

_SPANISH STEPS HOLDINGS LTD ( BY ITS DIRECTOR, GORDON HOWARD )_

for whatever reason and at whatever time, all the securities, intermediated securities, assets, book-entry securities, cash in Swiss and foreign currencies, other property deposited with the bank or any current or future right and claims against the Bank, including fiduciary deposits, (hereinafter referred to collectively as the "Assets") at present deposited or which may be deposited later in his/their name or on his/their behalf both with the Bank and under its management with its correspondents.

The right of pledge given to the Bank by this deed shall extend to all interests, dividends, distributions and other due rights whatsoever, whether current or future, relating to the Assets pledged.

If the Assets should be replaced by others, the latter shall be subject to the Bank's right of pledge automatically.

If new payments are made on pledged Assets, the right of pledge shall extend to the resulting additional value.

The Client undertakes immediately, where appropriate, to perform all the formalities which may be necessary, on the Bank's first request, to allow the Bank to exercise all the rights arising to it from this pledge.

If, for any reason whatsoever, the Bank should consider that the value of the Assets pledged, taking into account the set margin of cover, is no longer adequate to cover the debt, the Client hereby undertakes to re-establish said margin within the time set by the Bank. If this request is not complied with by the set date, the debt to the Bank shall immediately fall due without any further formalities being required. On the expiry of the set period, the Bank shall be entitled without further notice and without the need to invoke the procedure provided by law for prosecution for debts and bankruptcy to realise all or part of the Assets covered by this deed in the manner, order and time convenient to it, on or off the stock exchange, and to offset their costs via the secured claim. The Bank may also appropriate all or part of the Assets to cover the value of the secured claim. In all cases, a detailed statement shall be sent to the Client.

If the pledge relates to the Client's claims against the Bank, the latter may realise these claims via cash payment, irrespective of currency, maturities and the type of claims in question.

**The Client expressly authorises the Bank to dispose, in its own name and for its own account, of all intermediated securities pledged to the Bank and, notably, to create a subsequent right of lien on the aforementioned intermediated securities.**

The Client hereby declare(s) that he/she/it waive(s) any dispute or discussion concerning the realisation of the pledges.

# Exhibit A-302



If a new pledge is made by the Client in favour of a third party, this new pledge shall be subordinate to the pledge existing in favour of the Bank, with the Bank informing the third party in question accordingly. Furthermore, if the Client sets up a new pledge on assets pledged in favour of another third party, the Client authorises the Bank to provide notice of the existing pledges to the beneficiaries of the new pledge.

The product of the realisation of the pledges shall be used to repay the principal, interest, commissions, costs and accessories of the debt to the Bank, while the Client shall remain personally liable to the Bank for any debit balance which may exist after the full realisation of the pledges.

Once the debt falls due, the Bank may, even if the margin of cover is intact, require the Client to repay it within the time set by the Bank. If this request is not complied with by the set date, the Bank shall be entitled to realise the pledges in the manner set out above.

The Client undertakes to invest his/her/its pledged assets only to an extent judged acceptable by the Bank. The Bank may object to instructions and measures decided by the Client or any agents of the Client if it believes, for whatever reason, that these instructions/measures could compromise the value of the pledged assets to an extent that the collateral margin required by the Bank is not secured in any other way.

**The Bank's General Terms and Conditions, which, in particular, stipulate that Swiss law will apply and designate the place of jurisdiction, and which the Client acknowledges that he/she/it has read and understood, govern all business relations between the Client and the Bank, except where otherwise expressly stipulated in this deed of pledge.**

Date                                                            Signature(s)

_____                                         _____

Exhibit A-302

# PROVISIONS APPLICABLE TO CUSTODY AND PRECIOUS METAL ACCOUNTS


MIRABAUD 1819
Banquiers Privés

ACCOUNT DESIGNATION  SPANISH STEPS HOLDINGS LTD

NUMBER  ████ 7462

These provisions govern the contractual relationship between Mirabaud & Cie (hereinafter « the Bank») and the depositors (hereinafter «the Depositor» ) subject to any specific agreements and bank practices.

**I. PROVISIONS APPLYING TO CUSTODY ACCOUNTS**

**A. Open custody accounts**

1. The Bank undertakes to hold all classes of securities, precious metals and any investments not represented by securities (in particular, any deposit of money market instruments and capital and securities for which certificates have not yet been issued) in an open custody and administration account. The concept of "securities" shall apply by analogy to securities, book-entry securities and intermediated securities within the meaning of the Federal Law on intermediated securities.

Any precious metals which are not in common commercial form and coins having a numismatic value shall be placed in a separate, individual custody account.

The Bank may refuse to hold all or part of the assets in a custody account, without giving any reason.

2. At least once per calendar year, the Bank shall provide the Depositor with a statement of securities and precious metals on deposit. The valuation of assets on deposits shall be provided for information purposes only and shall not be binding upon the Bank.

3. The Bank shall keep in a safe location the deposited assets entrusted to it. It shall be authorized to have the deposited securities and precious metals held in its name with correspondents in Switzerland or abroad, but for the account and at the risk of the Depositor. **In particular, the Depositor expressly authorizes the Bank to call upon a correspondent outside Switzerland which is not subject to the same prudential supervision as the Bank.** The Bank reserves the right to deposit the securities and precious metals in a collective account internally or with a central collective custodian. If the collective custody account is located in Switzerland, the Depositor becomes a joint owner of the collective custody account or accounts in proportion to his or her share of the assets. If the collective account is located abroad, the deposited assets shall be subject to the laws and customs of the place where they are held in safe-keeping. If any foreign law renders the return of the assets or the proceeds of their sale difficult or even impossible, the Bank shall only be responsible for obtaining the right to the return of the assets or the corresponding proceeds for the Depositor if that right exists and is transferable.

Securities and precious metals in custody accounts are subject to the laws and customs in effect at the place where they are held. Securities which are the subject of a drawing of lots may also be held in collective custody accounts. The Bank shall divide these assets among Depositors in an equal manner, in proportion to their positions.

**Under no circumstances is the Bank responsible for any consequences arising from a sub-depositor selected by the Depositor against the Bank's recommendation.**

4. In respect of securities that are entrusted to it in open custody accounts, the Bank shall, automatically and without assuming any responsibility for any errors or omissions, conduct any daily business operations required. Such operations include in particular the following:
   a. monitoring of coupon payment notices, lists of drawing of lots, notices relating to redemption, repayment, conversion, subscription rights, etc.;
   b. cutting off and cashing or negotiation of maturing interest and dividend coupons;
   c. renewal of coupon sheets and exchange of temporary certificates for actual securities;
   d. cashing of redeemable securities.

5. On written instructions from the Depositor given in a timely manner (in the absence of agreement to the contrary), the Bank will take care of:
   a. enforcement of rights of conversion or option rights;
   b. the exercise or sale of subscription rights. If instructions from the Depositor are not received by the Bank in time, the Bank shall have the right, but shall not be obliged, to exercise or sell the subscription right at its discretion.

As a general rule, the Bank shall subscribe to capital increases for the account of its Depositors insofar as they have available funds. It reserves the right not to do this.

6. Whenever the printing of securities is deferred, the Bank shall be authorized to:
   a. have existing securities converted by the issuer into uncertificated securities;
   b. carry out normal administrative tasks, give the issuer the necessary instructions, obtain any indispensable information;
   c. demand printing of securities by the issuer for the account of the Depositor and have such securities delivered.

7. The Depositor may only exercise its rights pertaining to intermediated securities via the Bank. In particular the Bank shall only exercise the voting rights attached to securities held in custody on the basis of written instructions from the Depositor.

Unless specifically requested to do so by the Depositor, the Bank shall not be responsible for informing the Depositor about the existence of composition proceedings, insolvency proceedings, actions commenced by any group of shareholders (so-called "class actions"), or any other similar proceedings relating to the securities deposited. Any legal proceedings to be undertaken within the framework of these actions to protect the rights associated with the deposited securities must be commenced by the Depositor directly and at the Depositor's expense.

8. If it is unusual or impossible to have the securities deposited in the name of the Depositor registered, the Bank may have the deposited securities registered in its name or the name of a third party, but always for the account and solely at the risk of the Depositor. If registered securities, once issued, are registered on a fiduciary basis in the name of the Bank or of a third party designated by the Bank for this purpose, the Bank may demand that these securities remain in a custody account with the Bank. In no circumstances can the Bank be compelled to act or to become a party to a civil, criminal or administrative suit against the issuer of the securities or any intervening third party.

The Depositor is solely responsible for taking whichever measures it deems adequate, and hereby expressly acknowledges that it could, in certain circumstances and due to the fact that the securities are registered in the name of the Bank, lose all right of action against the issuer of the securities or any intervening third-party, particularly in the event of the total or partial unassignability of securities or debt.

9. Subject to compliance with contractual deadlines, legal provisions and any rights of pledge or retention, the Bank may dispose of all of his or her assets at the time and agreed in advance with the Bank. For technical and administrative reasons, the Bank must receive sufficient advance notice before any major withdrawal is made, or if the withdrawal involves securities or precious metals deposited with third parties or abroad, in order to be able to perform the required operations at the appropriate time.

In the case of any withdrawal from a collective custody account, the Bank shall no longer physically deliver the same items, but in each case deliver securities, gold bars or coins with the same characteristics and properties as those originally deposited or purchased by the Depositor.

When metals are withdrawn, any differences between the weight and purity of the metals withdrawn and the weight and purity of the metals recorded shall be calculated at the rate in effect on the date of withdrawal.

If the Depositor requests the return of his or her assets at a place other than the place of performance, he or she shall assume the risks and expenses thereof.

At the request of the Depositor, the Bank will provide or have delivered the securities corresponding in number and type to the intermediated securities credited to his/her account:
   - if the corresponding securities are kept by the Bank or one of its sub-depositors, or
   - if the Depositor is entitled to issue securities according to the issuers' articles of association and conditions of issuance.

The securities provided conform to the norms of the market where they are traded.

**B. Special provisions for closed custody accounts**

10. All items entrusted to the Bank in a closed custody account must be in a package sealed (for instance with lead) in such a manner that it is impossible to open the package without breaking the seal (or lead). Any such custody account may include a declaration of value.

ET_0001775910

Exhibit A-302

The custody account may under no circumstances contain objects and/or materials that are flammable, dangerous or not suitable for storage in a bank. The Depositor shall be liable for any damage caused as a result of failure to observe this rule. Upon receipt of the items deposited, the Bank reserves the right to require the Depositor to provide proof of their exact nature.

**Except in the case of gross negligence on its part, the Bank may not be held liable for any damage incurred to items held in a custody account.** In all cases, the Bank's liability shall be limited to the damage proved by the Depositor, and to a maximum equal to the declared value. In particular, the Bank disclaims any liability for deterioration due to atmospheric influences or for any damage caused as a result of any handling of the items as ordered by the Depositor. On withdrawal of any items from a custody account, the Depositor must verify that the seal or lead is intact. Withdrawal from the custody account shall release the Bank from any liability. The Depositor shall be solely responsible for insuring the items held in a custody account.

## II. PROVISIONS APPLICABLE TO PRECIOUS METALS

1. Metal accounts apply to precious metals (gold, silver, platinum and palladium) that are managed in the form of an account by the Bank and do not constitute securities held in safe-keeping.

As a general rule, a statement of account is sent to the Depositor at least once at the end of each calendar year.

2. The Depositor shall have the right to withdraw a quantity of metal equivalent to that represented by the assets in the account. This quantity is expressed in units of fine gold in the case of gold, and in the gross weight of the corresponding plates or ingots in the case of other metals. The dimensions and quality of deliveries will be in accordance with market practice.

Through delivery, the Depositor acquires a right of ownership of the metal.

Upon request by the Depositor, the Bank shall also delivery metal to the Depositor at a different location, on the condition that this is physically possible and does not contravene any legislation in effect at that location.

Any delivery of dimensions smaller than usual in the market shall be made in accordance with the corresponding reduced unit, on the understanding that in such cases the Depositor shall pay any increased manufacturing costs. Any balance in favour of or payable by the Depositor shall be calculated at the market price on the date of delivery.

3. Assets in metal accounts do not bear interest.

4. On physical delivery of metals in Switzerland or abroad, the Depositor will assume all the risks associated therewith, and must pay all existing or future duties and taxes, etc., linked to this transaction. In extraordinary circumstances, such as in the event of war, limitations on transfers, etc., the Bank will have the option of delivering the metal at the Depositor's risk and expense, to such place and in such a manner as it may
consider most appropriate.

## III. COMMON PROVISIONS

**1. Modification of provisions applicable to custody accounts and metal accounts**

**The Bank reserves the right to amend these terms and conditions at any time. Any such amendments shall be communicated to the Depositor by circular letter or by any other appropriate means. Unless an objection is made within one month of issue, they will be considered as approved and will replace all previous versions.**

**The Bank's General Terms and Conditions, which in particular stipulate that Swiss law shall apply and designate the place of jurisdiction, and which the Depositor acknowledges that he has read and understood, shall govern all business relations between the Depositor and the Bank, except where otherwise expressly stipulated in these provisions.**

These General Terms and Conditions apply with immediate effect, the undersigned Depositor hereby declares that he has taken note of all clauses contained in these General Terms and Conditions and expressly approves the contents thereof.

Date

_____

Signature

_____

Geneva, 1 January 2010

Exhibit A-302

# GENERAL TERMS AND CONDITIONS



**MIRABAUD** 1819
**Banquiers Privés**

ACCOUNT DESIGNATION ⬛ SPANISH STEPS HOLDINGS LTD

NUMBER _____ ⬛ 7 462

These General Terms and Conditions shall govern all of the contractual relations between Mirabaud & Cie (hereinafter "the Bank") and its Client(s) (hereinafter "the Clients"), subject to any specific agreements and bank practices.

To make reading more fluent, the Bank will not systematically use the masculine, feminine and neuter forms in all formulas. The masculine form is implicitly considered to include the feminine and neuter forms.

The Bank's contractual documentation is available in several languages. In case of any discrepancy between the various versions, the French version shall be the sole binding version.

I. GENERAL PROVISIONS

**1. Right of disposition and Client identification**
The signatures provided to the Bank in writing are the only signatures that are binding upon the Bank until notice of revocation in writing. The Bank shall not be obliged to take into account any differing registrations contained in the Commercial Register or any other publications. Subject to any provision stating otherwise (e.g. joint account), when several persons hold a joint custody account or current account, the right of disposition over same may only be exercised by all of the depositors or current account holders. The joint depositors or account holders shall be jointly and severally liable to the Bank for all of the commitments resulting from the custody or current account.

**2. Transmission error and incorrect verification**
**Any damage resulting from the use of the postal service, telephone, fax, e-mail or any other mode of transmission, or the use of a delivery company, in particular due to any delays, losses, misunderstandings, deterioration in condition or items being transmitted or shipped twice, shall be borne by the Clients except in the case of gross negligence on the part of the Bank.**

**The Clients shall be liable for any damage arising as a result of incorrect verification of identity or forgery that was not detected, except in the case of gross negligence on the part of the Bank.**

**3. Civil incapacity**
The Clients shall be liable for any damage resulting from civil incapacity on their behalf if the Bank could not have known of this incapacity using ordinary due diligence. The Clients shall always be liable for any damage resulting from incapacity on the part of any holder of a power of attorney or third party.

**4. Communications and dormant assets**
Any communications by the Bank shall be deemed to have been validly made if sent to the last address provided by the Clients. The date appearing on the copy in the possession of the Bank shall be deemed to be the date on which the communication was sent.

However, the Bank reserves the right to notify the Clients at any time, but shall have no obligation to do so, at any place where the Bank believes it is able to contact the Clients, by using for this purpose any means of communication that it considers appropriate.

Any mail held on deposit at the Bank on the instructions of the Clients shall be deemed to have been delivered on the date which it bears.

The Clients undertake to notify the Bank spontaneously and without delay of any change in the Clients' personal status (nationality, marital status, domicile/registered office, etc.), and shall take the measures necessary to ensure that their assets cannot be considered as "dormant" within the meaning of the regulations in effect. If, despite this undertaking, contact should be broken, the Bank shall, at its own discretion or supported by a third party, undertake research in Switzerland and abroad to re-establish contact. Any expenses incurred shall be fully payable by the Clients, regardless of their amount.

If the research undertaken by the Bank is unsuccessful or, for any other reason, contact cannot be made with the Client, the Bank is obliged, in accordance with the rules of conduct of the Swiss Bankers' Association, to itemize the Clients' assets, centralize them within the Bank and report them to a research centre.

Any communications made by the Clients using e-mail shall only be binding on the Bank within the limits set out in the form authorizing this means of communication and after said form has been signed.

**5. Faulty execution of orders**
In the case of any damage incurred as a result of the non-execution, late execution or faulty execution of an order, the Bank shall be responsible only for any loss of interest unless it was warned, in a particular case, of the risk of more extensive damage. With respect to stock exchange orders, the Bank shall not be liable for omissions or errors attributable to its auxiliaries.

**6. Client complaints**
Any Client complaint relating to the execution or non-execution of any order, or any dispute of a notice or account statement, must be submitted to the Bank in writing immediately following receipt of the corresponding notice, but **no later than within 30 days from the date on which the notice was sent**. If there is no complaint within this period, the measures taken by the Bank or any non-execution of an order, or the statements prepared by it, shall be deemed to have been approved. Any damage resulting from a late complaint shall be borne by the Clients.

If the Clients do not receive a notice, they must file their complaint at the time that they would normally have received a notice. If the information is made available by way of another form or means of communication, the complaint must be made as soon as the notice was available for consultation.

**7. Right of pledge and set-off**
By way of a guarantee for all claims resulting from the Bank's business relationships with the Clients, irrespective of their due date or the currency in which they are denominated, the Clients shall grant the Bank a right of pledge and, for debts, a right of set-off in respect of all assets held in custody with it or at another location for the account of the Clients. In the event that the Clients fail to meet their commitments and by means of advance notice given to the Clients, the Bank may, in its discretion, realize the pledged assets through private sale or by way of legal proceedings. In particular, the Bank may realize the Clients' stocks (including intermediated stocks), traded on a market, by selling them in the market or by appropriating them to cover the value of the secured claim. This right applies even if the Clients are the subject of an enforcement procedure or a restructuring or protection measure.

These rights shall be valid without prejudice to any other specific or special right or guarantee that may have been provided.

If a new pledge is made by the Clients in favour of a third party, this new pledge shall be subordinate to the pledge existing in favour of the Bank, with the Bank informing the third party in question accordingly. Furthermore, if the Clients set up a new pledge on assets pledged in favour of another third party, the Clients authorise the Bank to provide notice of the existing pledges to the beneficiaries of the new pledge.

If the assets should be replaced by others, the latter shall be subject to the Bank's right of pledge automatically.

**8. Purchase and sale of securities**
The purchase and sale of securities, precious metals, foreign currencies and other financial instruments carried out through the Bank shall be governed by the customs of the stock exchanges or markets in question. In addition, the Bank reserves the right not to execute an order if it believes that to do so might contravene the rules applicable to the market concerned, or for any other reason.

The Clients confirm to the Bank that neither they, nor any designated beneficial owner, is/are persons for whom the acquisition of securities could be limited or prohibited by the rules governing certain financial markets, in particular the US rules applicable to initial public offerings (IPO) and those applicable to the "Voluntary IPO Initiative" (in the case of any doubt about this qualification, instructions may be requested from the Bank). The Clients undertake to notify the Bank promptly of any change in their status, or in that of any designated beneficial owners, that might alter this qualification. They acknowledge and agree that the Bank could be forced to sell the positions affected by these regulations without notice.

**9. Telephone conversations**
In order to guarantee transaction security, the Bank may record telephone conversations on certain lines, in particular those of the Bank's sales and trading services, and the Clients expressly accept this. The recordings are only kept for a limited period of time and the Bank will only use them in the event of any disputes or problems connected with instructions given by telephone.

**10. Bills of exchange, cheques and other similar instruments**
The Bank may debit the Clients' account for bills of exchange, cheques and other similar instruments, credited or discounted, if they were not paid when due or presented.

Until payment of the debit balance, the Bank shall however retain against any obligee pursuant to the said instrument the right to payment in full of the bill of exchange, cheque and any other similar instrument as well as payment in full of any ancillary debts.

**11. Bank remuneration and conflicts of interest**
The Bank shall be paid for the services it provides in accordance with the fees set by it. The Bank reserves the right to modify these fees at any time, as well as the dates on which debits are made from the Clients' account.

# Exhibit A-302

The Clients authorize the Bank to debit their account in respect of fees, commission and any agreed or customary expenses.

**The Clients have been informed and agree that the Bank or its affiliated companies may directly or indirectly receive payments or benefits from third parties, including in the form of commission, custody fees, retrocessions or brokerage fees. The Bank or its affiliated companies may, in particular, receive payment in respect of collective investment instruments or other financial products in which the assets of the Clients are invested. The Clients expressly accept that the Bank shall keep such payments.**

**The Bank may also engage in other business activities, particularly in the sphere of management for the benefit of third parties, which might bring its interests into conflict with those of its Clients. The Bank may also have proprietary interests which diverge from Clients' interests, particularly regarding investments in collective capital investment schemes or other financial products which the Bank manages, advises on, promotes or is connected with in any other capacity, or for which the Bank could receive payment or other benefits.**

**The Clients have also noted and accepted the fact that the Bank or its affiliated companies may have to pay remuneration to third parties.**

## 12. Treatment of Saturdays as bank holidays
In all dealings with the Bank, Saturdays are treated as if they were official bank holidays.

## 13. Current accounts
All accounts of the same Clients, regardless of their name or their reference currency, shall constitute a single current account. The Bank reserves the right to offset interest and balances between them, but shall retain the ability to claim each account balance separately.

In principle, the Bank does not pay interest on current accounts.

As a rule, statements of account are drawn up at the end of each year. The Bank shall deduct from the accounts any interest, fees, commission and agreed or customary expenses.

Any interest rates applicable are fixed by the Bank according to the market situation. The Bank reserves the right to change these interest rates at any time without notice.

Clients assets denominated in foreign currencies are deposited by the Bank in its name, but for the account and at the risk of the Clients, with correspondents within or outside the currency zone in question. In particular, the Clients shall bear the risk resulting from any legal or administrative restrictions (particularly exchange restrictions), as well as any charges and taxes levied by the countries concerned. Unless there are specific instructions from the Clients, payment of transactions entrusted to the Bank shall, in its sole discretion, be made in the currency of the transaction or converted into another currency, whether the transaction is carried out in Switzerland or abroad.

If the Clients give several orders, the total of which exceeds their available assets or the credit granted to them, the Bank may execute these orders, at its convenience, in whole or in part, and without regard to the date on which they are given nor to that on which they are received.

The Bank shall provide blank cheques to any account holder who makes a request for the same. Any Clients who receive blank cheques are required to keep them with the greatest care. The Clients must advise the Bank immediately in the event of loss of such blank cheques. When closing an account, the account holders must return any unused blank cheques to the Bank. The Clients shall be liable for any damages resulting from the loss, fraudulent use or forgery of cheques, even if the Clients are not at fault in the matter. Account holders may only draw a cheque on the Bank if they have the necessary funds available on account. Unless otherwise agreed, cheques drawn using blank bank cheques shall be honoured by the Bank without the drawer being required to give prior notice. The Bank shall be authorized to consider the bearer of a cheque issued by the Bank as being legitimately authorized to receive the amount of the cheque; however, it reserves the right to verify any signatures on cheques, but without assuming any liability in this respect.

At the end of the year, an account statement is sent to the account holders accompanied by a confirmation form (receipt slip), which the Clients are requested to return to the Bank, duly signed, after verification. If, within 30 days of the date on which the statement is sent, the Clients do not return the form to the Bank and do not submit any complaint to the Bank, the Clients shall be deemed to have accepted the account balance. Explicit or tacit acceptance of an account statement implies acceptance of all items contained therein as well as any reservations made by the Bank.

## 14. Data protection
The Bank may collect and use sensitive data relating to its Clients, in particular for internal marketing purposes, including data concerning their asset situation.

The executive bodies, employees and agents of the Bank are required by law to maintain bank-Client confidentiality. The Clients nevertheless release them from their duty of confidentiality to the extent necessary for the Bank to defend its own

legitimate interests, particularly where legal provisions or investment conditions applicable to foreign securities (or book-entry securities) transactions require disclosure of the identity of the Clients or the beneficial owner of the assets in the account, and of the composition of their portfolio.

Pursuant to Swiss legal requirements, if the Banks suspect that its Clients are involved in criminal affairs and/or that the assets deposited are of criminal origin, it shall communicate its evidence to the relevant Swiss authorities.

## 15. Identification of ordering Client
In the case of transfers, the Client acknowledge having been duly informed of the fact that the Bank is required by law to specify the name, account number and address of the contracting party ordering the transfer, or even, to the extent that Swiss and foreign regulations allow, the name, account number and an identifier.

Disclosure of client data for payment traffic, securities transactions and other operations involving SWIFT: when Clients issue the Bank with payment instructions or stock transaction orders, their personal coordinates and/or account number are transmitted to the payment traffic system operators or to SWIFT (Society for Worldwide Interbank Financial Telecommunication) and correspondent banks. Data transmitted outside or within Switzerland via SWIFT are thus no longer protected by Swiss banking secrecy laws. The Bank has an information sheet with further details on this subject which is available to Clients.

## 16. Outsourcing
In accordance with the rules of the Financial Market Supervisory Authority, the Bank reserves the right to delegate to third parties, at any time that it deems expedient, and in its discretion, the provision of certain services relating to its activity, such as the processing of accounts, the operation of hardware and software, the printing and dispatch of financial statements, securities transactions and their administration, payment services and other back-office duties.

## 17. Termination of business relations
The Bank reserves the right to terminate business relations with Clients with immediate effect, and in particular to terminate any loans extended or not grant any loans promised, in which case repayment of all debts to the Bank shall become due and payable immediately.

Any authorization given to the Bank shall remain in effect notwithstanding the Clients' death, incapacity to exercise their civil rights, or bankruptcy, until same is terminated by the Bank or revoked in writing by persons authorized to revoke it.

This provision is subject to any written agreement to the contrary.

## 18. Amendment of General Terms and Conditions
**The Bank reserves the right to amend these General Terms and Conditions at any time. Any such amendments shall be communicated to the Clients by circular letter or by any other appropriate means. Unless an objection is lodged within one month from the date of dispatch, such amendments shall be deemed to have been approved and shall replace all previous versions.**

## 19. Applicable law and jurisdiction
**All relationships between the Clients and the Bank shall be governed exclusively by Swiss law.**

**The place of performance, and the court with exclusive jurisdiction in respect of any kinds of actions and proceedings under the Swiss federal debt collection and bankruptcy act, in the latter case only in respect of Clients not domiciled in Switzerland, will be in the place where the Bank's head office or the branch, where the contractual relationship was established, is situated, subject to any appeal to the Swiss Federal Tribunal in the cases provided for by law.**

**Nevertheless, the Bank reserves the right to commence proceedings before any other court or competent authority, whether in Switzerland or abroad, in particular before the courts in the place of domicile of the Clients. In that event, Swiss law shall remain equally applicable.**

These General Terms and Conditions apply with immediate effect. The undersigned Clients hereby declare that they have taken note of all clauses contained in these General Terms and Conditions and expressly approve the contents thereof.

Date

_____

Signature

_____

Geneva, 1 January 2010