UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202-GCH |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF ROBERT T. BROCKMAN'S REPLY IN SUPPORT OF MOTION FOR
DETERMINATION ON COMPLAINT FOR JUDICIAL REVIEW AND
ABATEMENT OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY
<u>PURSUANT TO 26 U.S.C. § 7429</u>**

**<u>Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................ - 1 -

ARGUMENT .................................................................... - 4 -

I.     The Government Bears The Burden To Establish That The IRS's
       Ability To Collect Any Tax Is In Jeopardy. ......................... - 4 -

II.    The IRS's Issuance Of The Jeopardy Assessment And The Jeopardy
       Levy Was Unreasonable. ............................................. - 5 -

       A.    The government has not shown that the four real estate
             transactions referenced by the IRS support an assertion that
             Mr. Brockman is or appears to be "designing quickly" to place
             assets beyond the reach of the government. ................... - 6 -

       B.    The government has not shown that the IRS's reference to
             Bermuda court proceedings supports an assertion that
             Mr. Brockman is "designing quickly" to place assets beyond the
             reach of the government. .................................... - 11 -

       C.    The government's extensive recitation of its allegations in *U.S. v.
             Brockman* does not support an assertion that Mr. Brockman is
             "designing quickly" to place assets beyond the reach of the
             government. ................................................. - 14 -

       D.    The government has admitted that the sole allegation of current
             activity in its extensive recitation of its allegations in *U.S. v.
             Brockman* is false. ......................................... - 16 -

       E.    The government cannot prove that Mr. Brockman is "designing
             quickly" to place assets beyond the reach of the government
             based on conduct it learned from disclosures by or on behalf of
             the Brockmans. .............................................. - 18 -

       F.    The government cannot establish that collection of tax is in
             jeopardy when there is an available asset that exceeds any
             potential liability. ........................................ - 24 -

CONCLUSION .................................................................. - 25 -

## **INTRODUCTION**

The full power of what the IRS has done in this case is succinctly stated in the government's opposition:  "On September 9, 2021, the IRS levied on what it believed were all Brockman's and his wife's known U.S. financial accounts."  United States' Response In Opposition For Determination On Complaint, Dkt. No. 21 at 65 ("Opposition").  Through the use of a jeopardy assessment and jeopardy levy, the IRS is seeking to seize all assets belonging to Mr. Brockman, as well as assets belonging to Dorothy Brockman.[1]  It has already taken millions of dollars from their accounts, had Mr. Brockman's retirement compensation paid directly to the IRS, and has placed liens on their properties.

Pursuant to § 7429(b)(3) of Title 26, the Internal Revenue Code ("IRC"), it is for this Court to determine whether it was reasonable under the circumstances for the IRS to take such "extraordinary" steps.  *Fumo v. United States*, No. 13-3313, 2014 U.S. Dist. LEXIS 77082, *45, *76 (E.D. Pa. 2014).  The sole issue before this Court is whether Mr. Brockman "is or appears to be designing quickly to place assets beyond the reach of the Government."  *See* Treas. Reg. § 301.6861-1(a); Dkt. No. 10 at 2.  He is not.

The government contends that "appearances are what count," asserting that the IRS's determination need not have been based on objective facts, but on what "appeared"

---

[1] The government's cavalier position concerning Dorothy Brockman is remarkable.  In essence, the government contends that, unless it is allowed to proceed by jeopardy levy based on its unsupported contention that Dorothy Brockman is Mr. Brockman's nominee and that she does not otherwise own property that is solely in her name, the IRS will be required to make its claims directly against her (while conceding the challenge of establishing such claims, which are "'fact-intensive and involve imprecise legal rules'").  *See* Dkt. No. 21 at 57-58.  In other words, the IRS not only wants to move in a conclusory manner against Mr. Brockman, but it also wants to avoid its obligation to establish its right to seize Dorothy Brockman's bank accounts, investments, and property, by using the jeopardy levy against Mr. Brockman to grab her assets too.

reasonable to the IRS.  Dkt. No. 21 at 50.  The government cannot, however, establish the reasonableness of the IRS's extraordinary actions by ignoring readily ascertainable facts. The Jeopardy Recommendation Report ("Jeopardy Report") that accompanied the IRS's Notice of Jeopardy Assessment failed to establish any reasonable basis for the jeopardy assessment, and despite its 74-page Opposition and over 1800 pages of exhibits, the government still cannot clearly articulate why this Court should allow the jeopardy assessment and jeopardy levy to stand.

The IRS purported to base its determination on three grounds:  (1) the IRS's misperception of four transactions concerning real property long owned solely by Dorothy Brockman; (2) the IRS's misstatements concerning proceedings involving the A. Eugene Brockman Charitable Trust (the "AEBCT") before the Bermuda courts; and (3) the government's unproven allegations in *United States v. Brockman*, No. 4:21-cr-00009-GCH (SDTX) (Hanks, J.) ("*U.S. v. Brockman*").  *See* Dkt. No. 10 at 2-4 and Keneally Decl. Ex. 3 at 41-58.  The government fails, however, to address facts that were readily available to the IRS that wholly refute its purported perceptions about the real estate transactions and the Bermuda proceedings, *see* Dkt. No. 10 at 5-16, and nowhere manages to explain how conduct alleged to have occurred in or before 2018 has any bearing on whether there is a current exigency to support the jeopardy assessment and jeopardy levy.  *See id.* at 16-23.  As to the allegations in *U.S. v. Brockman*, the government has been forced to acknowledge in a Notice of Correction to the Court ("Notice of Correction") that the sole allegation concerning post-2018 activity is false. *See* Dkt. No. 34.

- 2 -

The government's attempt to augment the inadequate grounds in the IRS's Jeopardy Report by contending that the IRS has discovered additional reasons for the jeopardy assessment and jeopardy levy equally falls flat.  As with much of the IRS's prior contentions, the conduct to which the government would point was done openly, and was discovered by the IRS *because it was disclosed to the IRS* by Mr. Brockman, his wife, or the financial institutions where he holds accounts.  None of these transactions supports a conclusion, as is required, that the government can show that Mr. Brockman is or appears to be "designing quickly" to move his assets outside the reach of the government.

The IRS's jeopardy assessment, jeopardy levy, and current seizures are not justified for another reason:  central to the IRS's assertion that Mr. Brockman owes tax is its contention that he is the owner of the AEBCT and its assets.  While Mr. Brockman disputes this allegation, including whether any tax went unreported, were the IRS to prevail, then he is the indirect owner of the Reynolds and Reynolds Company ("Reynolds"), a U.S. company the value of which significantly exceeds the purported tax liability against Mr. Brockman.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *97 (rejecting jeopardy assessments when there were assets "sufficient to pay the assessed taxes if the Tax Court ultimately finds them due and owing"); Dkt. No. 10 at 4, 19.

There is no reasonable basis for the jeopardy assessment, which should be abated, or the jeopardy levy, which should be released.

- 3 -

## ARGUMENT

**I.     The Government Bears The Burden To Establish That The IRS's Ability To Collect Any Tax Is In Jeopardy.**

At the October 15, 2020 press conference announcing the Indictment, the government described *U.S. v. Brockman* as "the largest-ever tax charge against an individual in the United States."[2]   The government's Opposition begins the same way, stating:  "At over $1.4 billion in tax, fraud penalties, and interest owed, this case represents the largest jeopardy assessment in the history of the United States."  Dkt. No. 21 at 1.  While attention-grabbing, this claim does not alter the government's burden to establish that the IRS's jeopardy assessment is justified.

The Fifth Circuit has described a jeopardy assessment as "[a] weapon, little known and previously not too often employed, having atomic potentialities . . . ."  *Clark v. Campbell*, 501 F.2d 108, 110 (5th Cir. 1974).  IRC § 7429(b) provides recourse to the federal district court as the sole safeguard against the IRS's far-reaching power.  *Id*. at 121 (5th Cir. 1974); *accord, e.g.*, *Burd v. United States*, 774 F. Supp. 903, 905 (D.N.J. 1991) ("Realizing the drastic nature of this proceeding, Congress concluded that the taxpayer should be able to obtain immediate judicial review of the propriety of the jeopardy assessment."); *Modern Bookkeeping, Inc. v. United States*, 854 F. Supp. 475, 477 (E.D. Mich. 1994)(same).

---

[2] *See, e.*g., Voreacos, David and Weinberg, Neil, *Houston Tech Mogul Indicted for 'Largest-Ever Tax Charge*,' BLOOMBERG, available at https://www.bloomberg.com/news/articles/2020-10-15/tech-mogul-brockman-indicted-on-tax-evasion-laundering-charges, and attached as Frank J. Jackson Declaration ("Jackson Decl.") Ex. 1.

The government bears the burden of proving that the IRS acted reasonably in making the jeopardy assessment.  IRC § 7429(g)(1).  The reasonableness of a jeopardy assessment and jeopardy levy is subject to *de novo* review by this Court with no deference given to the IRS's administrative determination.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *49.

## II.     The IRS's Issuance Of The Jeopardy Assessment And The Jeopardy Levy Was Unreasonable.

IRC §§ 6861(a) (jeopardy assessment) and 6331(a) (jeopardy levy) allow the IRS to circumvent a taxpayer's statutory and regulatory rights under narrowly defined and extraordinary circumstances.  In this case, the IRS did not afford Mr. Brockman the right to participate in an examination of his potential tax liabilities, to seek administrative review of any asserted tax deficiency or penalty, or to seek redress before the U.S. Tax Court prior to a tax assessment.[3]  *See, e.g.*, IRC § 6213; Treas. Reg. §§ 601.105(b)(4), 601.106(b).  Rather, the IRS unilaterally made a determination as to Mr. Brockman's purported tax liability through the jeopardy assessment, and began seizing his and his wife's separate assets pursuant to the jeopardy levy.

As cited by both the government and Mr. Brockman, pursuant to Treasury Regulation § 301.6861-1(a), the IRS may make a jeopardy assessment on three conditions: "(i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself; (ii) The taxpayer is or appears to be

---

[3] The issue of whether Mr. Brockman owes additional taxes is not before this Court.  As required by IRC § 6861(b), subsequent to the jeopardy assessment the IRS issued a notice of deficiency, which triggered jurisdiction in the U.S. Tax Court.  Mr. Brockman filed a petition with the Tax Court on January 24, 2022.

designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons; or (iii) The taxpayer's financial solvency is or appears to be imperiled." *See McWilliams v. Comm'r*, 103 T.C. 416, 424 (1994) (the Treasury Regulation sets out the three exclusive conditions upon which a jeopardy assessment may be made); IRS Policy Statement 4-88 (same); Dkt. No. 10 at 2; Dkt. No. 21 at 48-49.

The government nowhere contends that Mr. Brockman is a flight risk or is insolvent. Thus the only issue before this Court is whether Mr. Brockman is or appears to be "designing quickly" to move his assets beyond the reach of the Government. No such exigency exists here, and the jeopardy assessment and jeopardy levy were unreasonable.

A.    **The government has not shown that the four real estate transactions referenced by the IRS support an assertion that Mr. Brockman is or appears to be "designing quickly" to place assets beyond the reach of the government.**

The government contends that "[s]ince his indictment Brockman, *through his wife*, is actively transferring, gifting, and attempting to sell his U.S. based real estate." *See* Dkt. No. 21 at 53 (emphasis added). The government has no basis to attribute these activities to Mr. Brockman, and no grounds for its contention that "[i]t is reasonable for the IRS and the Court to believe" that Dorothy Brockman's routine real estate transactions in her own separate property in any way indicate that Mr. Brockman "is planning to place his property beyond the government's reach." *Id*.

The four properties all belonged or continue to belong solely to Dorothy Brockman, and the transactions occurred openly, were entirely consistent with normal life events, and importantly did not place any assets outside the reach of the government's ability to collect Mr. Brockman's tax liability.

The first two transactions, the listing of the Brockmans' former residence and the sale of an adjacent vacant lot, coincided with and resulted from the purchase by Dorothy Brockman of a new home that was more manageable given her advanced age, and is closer to her son, daughter-in-law, and their growing family. *See* Dkt. No. 10 at 5-7. The fact that the Brockmans changed their primary residence was not concealed; to the contrary, Dorothy Brockman's publicly recorded purchase of a new home is noted in the Jeopardy Report, *see* Dkt. No. 10, Keneally Decl. Ex. 3 at 37, and the Brockmans' move to a new residence was reported to Pretrial Services in *U.S. v. Brockman.*

The second two transactions involve the former and current homes of Dorothy Brockman's son and daughter-in-law. Dorothy Brockman sold a townhouse that had been her son's residence prior to his marriage, and bought and gifted a new home to her daughter-in-law shortly before the birth of her first grandchild. *See* Dkt. No. 10 at 7-8. The fair market value of the rent for the townhouse, and the gift of the property, were fully disclosed on Dorothy Brockman's federal gift tax returns. *See id*. at 8.

There was nothing hidden about these transactions, and there is no reasonable basis to conclude that they were undertaken by Mr. Brockman as part of an alleged scheme to be "designing quickly" to move his assets outside the reach of the government. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *86-87 (abating jeopardy assessment when the

IRS was able to "trace Plaintiff's real property transfers using only public databases and public records"). In fact, these transactions were not undertaken by Mr. Brockman at all.

In its Opposition, the government argues that the IRS could reasonably believe that the properties belonged to Mr. Brockman and not his wife, despite a record that shows that she acquired her interests in each of the properties for value: in 1997, she acquired Mr. Brockman's interest in their then-jointly held residence at 333 West Friar Tuck Lane in exchange for stock that she owned, Dkt. No. 10, Keneally Decl. Ex. 4; in 2005, she purchased the adjacent lot at 335 West Friar Tuck Lane as her sole property, *id.*, Keneally Decl. Ex. 6; in 2019, she purchased Mr. Brockman's interest in the then-jointly held townhouse at 1731 Sunset Boulevard, *id.*, Keneally Decl. Exs. 9 & 10; and in 2020, in anticipation of the sale of the townhouse, she purchased a new residence for her son, daughter-in-law, and her expected grandchild at 3702 Inwood Drive. *Id.*, Keneally Decl. Exs. 3 at 36, 13 & 14.

The government's contention that Dorothy Brockman's routine, open, fully disclosed transactions in her separate properties—done in a manner that coincides with her advanced age, her husband's illness, and the equally major life events of her son's marriage and the birth of her first grandchild—should be disregarded essentially seeks to negate Dorothy Brockman as an independent person, capable of making decisions that serve her family's needs.[4]  Notably, before the transactions, Mr. Brockman and Dorothy

---

[4] The government's contention also flies in the face of state law. Texas, a community property state, provides that spouses may own separate property, over which they can exercise "sole management, control, and disposition." *See* Tex. Fam. Code. § 3.101. When, as here, a deed reflects that property is a spouse's separate property, it is presumed that such property is, in fact, separate property. *See Pemelton v. Pemelton*, 809 S.W.2d 642, 646 (Tex. App. Corpus Christi 1991), *rev'd on other grounds by Heggen v. Pemelton*, 836

- 8 -

Brockman lived in a home, owned by Dorothy, in Houston, and their son and daughter-in-law similarly lived in a home, also owned by Dorothy Brockman, also in Houston. Although the addresses have changed, the core facts have not: both generations of the Brockman family continue to reside in two homes in Houston.[5]

The government further seeks to negate Dorothy Brockman's independence with the erroneous allegation that Dorothy Brockman sold "their property using [Mr. Brockman's] power of attorney."  Dkt. No. 21 at 56.  The transactions involved properties solely and separately owned by Dorothy Brockman, and were not done through any power of attorney.[6]  *See* Dkt. No. 10, at 6 n.5 and Keneally Decl. Exs. 4-14. This error is critical:  a jeopardy assessment cannot be reasonable when it is based on something that simply did not happen.

Finally, the government baselessly contends that "Brockman, his wife, or his daughter-in-law could easily place any proceeds from these sales or the gifted properties [*sic*] into Brockman's offshore Trust . . . ."  Dkt. No. 21 at 58.  Setting aside whether the referenced "Trust" is Mr. Brockman's (which is unproven and disputed in *U.S. v.*

_____

S.W.2d 145 (Tex. 1992).

[5] Throughout the Jeopardy Report and the Opposition, the government attempts to bolster its contentions and feigns that assets have dissipated by looking only to one side of the ledger at sales and gifts of real property, ignoring Dorothy Brockman's open acquisition of corresponding assets in the U.S. during the same time period.  As a telling example that the IRS knew but ignored these "offsetting" purchases, the Jeopardy Report acknowledged that in 2020 Dorothy Brockman purchased a new residence in Houston, and in 2021 she bought vacation property in Colorado, both of which she currently owns.  Dkt. No. 10, Keneally Decl. Ex. 3 at 37, 39.

[6] The deed for the sale of 335 West Friar Tuck Lane in 2020 incorrectly indicated that Mr. Brockman was a "Grantor" of the property.  Contrary to the government's contention, the deed reflecting the purchase of 335 West Friar Tuck Lane in 2005, which was publicly recorded and available to the IRS, makes clear that Dorothy Brockman was the sole owner.  *Compare* Dkt. No. 10 at 6 n.5 and Keneally Decl. Ex. 6 *with* Dkt. No. 21 at 54 n.241.

*Brockman*), bare, unfounded conjecture as to what might happen cannot support the drastic remedy of a jeopardy assessment. As the court stated in *Fumo*, "the necessary showing requires more than a showing that a taxpayer's assets *could* easily be dissipated . . . . Any taxpayer could easily dissipate their assets, but that would not justify finding a jeopardy assessment reasonable without also finding that the applicable standards were met." 2014 U.S. Dist. LEXIS 77082, *100 (emphasis in original).

Perhaps not surprisingly, the government does not cite, let alone distinguish, the decision in *Burd v. United States*, 774 F. Supp. 903, 905-08 (D.N.J. 1991), in which the court found that the government's contentions that the taxpayer engaged in illegal business activity, failed to report substantial amounts of income, was reportedly planning to move to Japan, and sold her home at a discount to her daughter after the jeopardy assessment was made, who in turn sold it days later for cash, did not support a jeopardy assessment. The court in *Burd* concluded that "if the IRS had conducted a simple investigation there would have been absolutely no basis for the jeopardy assessment." *Id.* at 907; *see, e.g.*, *Hirschhorn v. United States*, 662 F. Supp. 887, 890-92 (S.D.N.Y. 1987) (the IRS's conclusions were "unreasonable," as they were made "without investigation based on information available" to it); Dkt. No. 10 at 10-11.

In *Burd*, the IRS failed to conduct an "investigation to ascertain the reasonableness of [its] fears that the tax payment was in jeopardy," rendering its conclusions baseless and its actions unreasonable. 774 F. Supp. at 907; *see also Johnson v. United States*, No. 92-15, 1993 U.S. Dist. LEXIS 2489, *7-8 (M.D. Ga. 1993) (jeopardy assessment unreasonable when largely "based on conjecture with little basis in fact"); *Pircher v.*

- 10 -

*United States*, No. 08-0835, 2008 U.S. Dist. LEXIS 101021, *9 (W.D. Tex. 2008) (concluding even speculation "[t]hat . . . may be well-grounded" is insufficient for the government to sustain its burden).  The IRS went further here, making a jeopardy assessment on allegations that were refuted on the face of the real property records on which it purported to rely.

> **B.     The government has not shown that the IRS's reference to Bermuda court proceedings supports an assertion that Mr. Brockman is "designing quickly" to place assets beyond the reach of the government.**

In the Jeopardy Report, the IRS contended that "the Brockmans" were seeking to have a new trustee appointed for the AEBCT, ostensibly to enable Mr. Brockman to gain control over the AEBCT or to move its assets outside Bermuda.  *See* Dkt. No. 10, Keneally Decl. Ex. 3 at 2, 52-52.  As detailed in the Motion for Determination, the IRS's contentions were false or—at best—misleading in every respect.  Dkt. No. 10 at 12-15.

The falsity of the IRS's conclusion was readily ascertainable had the IRS reviewed the public decisions issued by the Bermuda Court of Appeal and the Bermuda Supreme Court, which apparently it failed to do.  *See* Dkt. No. 10 at 13-16 and Keneally Decl. Ex. 15; and Ex. 17 at 2 (preamble) and ¶ 2.  Months before the IRS issued the jeopardy assessment, the Bermuda Court of Appeal conducted an extensive hearing, fully vetted BCT Ltd. ("BCT") as a potential trustee, and determined it to be a qualified, independent institution that would be bound by Bermuda law.  *See* Dkt. No. 10 at 13-16 and Keneally Decl. Ex. 15; Ex. 16 at ¶¶ 4, 23-25, 59; and Ex. 17 at 2 (preamble) and ¶ 2.

The government makes no attempt to dispute that the IRS's contentions

- 11 -

concerning the Bermuda litigation are baseless.  *See* Dkt. No. 21 at 70-73.  Rather, the government contends that, because the IRS believes that Mr. Brockman had historically controlled offshore trusts and entities (an unproven and disputed allegation), the IRS's conclusion that he was engaging in some form of misconduct in the Bermuda litigation "is not conjecture."  Dkt. No. 25 at 70.  That the government has the audacity to make this argument is astounding:  essentially, the government is asking that the Court accept the IRS's assumptions, based on erroneous conclusions, as reasonable when the true facts were readily ascertainable had the IRS simply read the public decisions by the Bermuda courts.[7]  Again, the government cannot sustain its evidentiary burden in the complete absence of even the most basic investigation.  *See Fumo*, 2014 U.S. Dist. LEXIS  77082, *19, *62-63; *Burd*, 774 F. Supp. at 907; *Hirschhorn*, 662 F. Supp. at 890-92.

The government exacerbates the problem that the IRS has created by making additional unsupported or provably false allegations:

(1)     The government incorrectly contends that "Mrs. Brockman in December 2020 petitioned the Bermuda courts to appoint Medlands to replace SJTC as the trustee of the AEBCT."  Dkt. No. 21 at 71.  This is not true, and the citation proffered by the government offers no support for this contention.  *See* Dkt. No. 21, Gov. Ex. 26 at ¶¶ 9, 13 (cited in Dkt. No. 21 at 71 and n.289).

(2)     The government baselessly contends that the IRS's belief that the independent trustee vetted by the Bermuda Court of Appeal and appointed by the

---

[7] The government also does not and cannot refute that the Department of Justice was fully aware of the Bermuda court proceedings.  *See* Dkt. No. 10, Keneally Decl. Ex. 16 at ¶¶ 5, 20, 33.

Bermuda Supreme Court was not independent because Peter Goddard, an individual associated with BCT, the new trustee, "is a past business associate of Brockman through Brockman's old nominee Don Jones."  Dkt. No. 21 at 72.  In support, the government attaches two documents dated in 1994 that on their face appear to be nothing more than arms-length communications between Mr. Goddard and Mr. Jones and one fax from 2001 that does not even reference Mr. Goddard.  Dkt. No. 21, Gov. Ex. 38 (cited in Dkt. No. 21 at 72 n.291).  That someone associated with Mr. Brockman was in communication with Mr. Goddard twenty-eight or more years ago is not a reasonable basis for any suspicions, especially given the vetting undertaken by the Bermuda courts concerning the independence of BCT.  *See* Dkt. No. 10 at 13-16 and Keneally Decl. Ex. 15; Ex. 16 at ¶¶ 4, 23-25, 59; and Ex. 17 at 2 (preamble) and ¶ 2.

(3)    The government erroneously contends that Mr. Brockman "initiated litigation in Bermuda to wind up Point Investments and move its assets to entities in other tax havens."  Dkt. No. 21 at 72.  This did not happen.  As the government's cited exhibit shows, Mr. Brockman was not a party to that action.  *See* Dkt. No. 21, Gov. Ex. 5 (cited in Dkt. No. 21 at 72 n.292).  The litigation to liquidate Point Investments—an entity indirectly owned by the AEBCT—was pursued by BCT, as the independent trustee vetted and appointed by the Bermuda courts.  In granting the liquidation, the Supreme Court of Bermuda credited the argument that the action was necessary to enable the trustee to access "effectively all of the Trust's liquid assets (more than US$1.4 billion), which are the source of the liquidity required for payment of the Trust's routine operational and legal outgoings and expenses as well as meeting the Trust's charitable commitments."

- 13 -

Jackson Decl. Ex. 2 at 7, ¶ 27(2).  Yet again, the government ignores the published findings of the Bermuda court.

While the government asserts that it needs to show no more than that the IRS's assertions were "reasonable," at a certain point the recurring falsity of the IRS's contentions refutes any assertion of "reasonableness," especially when the facts are readily ascertainable.

> **C.** **The government's extensive recitation of its allegations in *U.S. v. Brockman* does not support an assertion that Mr. Brockman is "designing quickly" to place assets beyond the reach of the government.**

Nearly forty-four pages of the government's Opposition, and the bulk of its over 1800 pages of exhibits, are dedicated to its recitation of the evidence that it believes will establish Mr. Brockman's culpability in *U.S. v. Brockman*.[8]  *See* Dkt. No. 21 at 7-47, 59-63.  The instant action, of course, is not the place to try the criminal case.

The fact of an indictment, or even a conviction, standing alone, is not dispositive of whether a jeopardy assessment is reasonable.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *88-89, n.18 ("[P]rior illegal activity . . . is not adequate to show that a taxpayer is or appears to be designing quickly to place assets beyond the reach of the government.").  The gravamen of a jeopardy assessment—which strips a taxpayer of statutory and procedural rights otherwise accorded prior to tax collection—is that the IRS must act quickly because the taxpayer is "designing quickly" to move assets outside of the

---

[8] The government's Opposition, following the Jeopardy Report, adopts the practice of referring to the assets of various entities as belonging to Mr. Brockman, and the activities of those entities or other individuals as having been undertaken by Mr. Brockman.  These contentions are disputed.

government's reach. *Id.* at \*77 (actions must "actually [be] occurring quickly," as to find otherwise "would render the modifier 'quickly' superfluous").

Even if true (which Mr. Brockman denies), the allegations in *U.S. v. Brockman*, as set out in the Jeopardy Report and repeated at length in the government's Opposition, have no bearing on the issue at hand. The Indictment was handed down nearly a year before the IRS made the jeopardy assessment, and is limited to conduct alleged to have occurred between 2004 and 2018. In no way does it address whether Mr. Brockman appeared to be "designing quickly" to move assets in September 2021, when the IRS made the jeopardy assessment. *See* Dkt. No. 10 at 16-23.

Seemingly in recognition of this limitation, and despite addressing over half of its Opposition to the Indictment's allegations, the government includes only two paragraphs at the very end of its Opposition in support of its contention that the unproven, historic acts charged in the Indictment are "a factor that courts consider" in reviewing a jeopardy assessment. *See* Dkt. No. 21 at 73-74. The cases cited by the government, however, refute that the alleged past conduct of Mr. Brockman, even if provable, provides a reasonable basis for the IRS to conclude that there is a current exigency sufficient to support the jeopardy assessment. In *Harvey v. United States*, 730 F. Supp. 1097, 1100-02 (S.D. Fla. 1990), the plaintiff had been convicted of drug smuggling, and the court extensively discussed his on-going conduct, including the complete failure by companies that he controlled to file tax returns, and his attempt to have an agent holding his power of attorney move funds after the IRS had issued a levy for those funds. In *Young v. United States*, 671 F. Supp. 1340, 1341-43 (S.D. Fl. 1987), the jeopardy assessment was

- 15 -

based on substantial amounts of cash found during two traffic stops of the plaintiff, who had also been charged with drug smuggling.  And *Camp v. United States*, 635 F. Supp. 585, 586-87 (E.D. La. 1986), involved a twice-convicted drug dealer who openly acknowledged illegally earning millions of dollars, and testified before Congress concerning his money-laundering activities.  *See* Dkt. No. 21 at 74 n.295.

The government cannot rely on alleged historic conduct as set forth in the Indictment to prevail in its contention that the IRS acted reasonably unless it can show a current exigency jeopardizing collection which it has failed to do.

**D.     The government has admitted that the sole allegation of current activity in its extensive recitation of its allegations in *U.S. v. Brockman* is false.**

The government's Opposition includes only a single allegation of recent activity in its discussion of the criminal investigation, and this allegation was so flat out false that the government has been forced to file a Notice of Correction.  *See* Dkt. No. 34.  In its Opposition, the government stated that communications continued between Mr. Brockman and Evatt Tamine, a cooperating witness identified as Individual One in the Indictment, "in April of 2020, after Mr. Brockman was aware of that he was under investigation."  Dkt. No. 21 at 23.  The government also included a chart that purported to list communications dated in "Mar. 8-April 19, 2021."  *Id.*  As the government subsequently acknowledged, however, the exhibits cited by the government were dated between March and April 2013.  Dkt. No. 34 at 1; *see* Dkt. No. 21, Exs. A-61, A-204 (cited in Dkt. No. 21 at 23 nn.91 and 92).

- 16 -

The government was compelled to correct these misstatements after receiving a letter dated February 3, 2022, three days after the Opposition was filed, from counsel for Mr. Tamine, asking that "the Department of Justice meet the obligations owed by officers of the Court and call its misstatements of fact to the Court's attention . . . ." *See* Jackson Decl. Ex. 3 at 1. Specifically addressing the misstatements concerning communications between Mr. Tamine and Mr. Brockman, the February 3, 2022 letter stated:

- On page 23 of your brief, you indicate that "some of these communications" between Mr. Tamine and Mr. Brockman directing the location of bank accounts "took place in April of 2020, after Mr. Brockman was aware that he was under investigation." *That is false* . . .

- The government also includes on page 23 of its brief a table referring to "March 8 – Apr. 19, 2021 Tamine email to Brockman discussing moving funds out of Bermuda based banks and into Switzerland to avoid asset freezing orders and investment risk." *The government is aware that no such emails exist; suggesting that they do and purporting to characterize them in this way is a misrepresentation of fact.*

*See id.* at 1 (emphasis added; bullets in original).[9]

The government's Notice of Correction offered only a half-hearted clarification, stating that the "particular emails . . . did not take place in April of 2020" and noting that the 2021 dates in the charts were in error. Dkt. No. 34 at 1. The government failed, however, even to address other misstatements described in the February 3, 2022 letter. As Mr. Tamine's counsel wrote:

It is important that I address one final matter: *the implication throughout [the Opposition] that Mr. Tamine and entities which with he is affiliated*

---

[9] The February 3, 2022 letter continues: "One of the main thrusts of the government's jeopardy assessment brief is, as I understand it, to argue that Mr. Brockman has taken post-indictment steps to place his wealth outside the reach of the IRS and continues to do so. Citing nonexistent, purportedly-recent email from April 2020 and March through April 2021 in support of this argument presents a real possibility that the Court will be misled." *See* Jackson Decl. Ex. 3 at 2.

> *continue to receive and obey Mr. Brockman's instructions and are actively assisting him to place his assets outside the reach of the IRS.  This is completely untrue.*  As the government is well aware, my client Mr. Tamine began cooperating with the Department of Justice in September 2018 and severed ties with Mr. Brockman . . . .  Moreover, neither Mr. Tamine nor entities with which he is affiliated (including but not limited to Edge Capital Investments Ltd. and Cabot Global investments Ltd.) hold any assets for the benefit, beneficial or otherwise, of Mr. Brockman or his family.  *The implication in your brief that things are otherwise is simply incorrect.*

*See* Jackson Decl. Ex. 3 at 2 (emphasis added).

Again, the government cannot prevail in its contention that the IRS acted reasonably by making allegations that are patently not true.  *Burd*, 774 F. Supp. at 907-08 (finding a jeopardy assessment unreasonable when the IRS relied on uncorroborated information that an investigation would have revealed was false).  The government contends that it need only meet a "non-rigorous" standard.[10]  *See* Dkt. No. 21 at 60.  Even if correct, that does not mean that the IRS can be found to have acted reasonably based on no standard at all.

### E.   The government cannot prove that Mr. Brockman is "designing quickly" to place assets beyond the reach of the government based on conduct it learned from disclosures by or on behalf of the Brockmans.

The government contends in its Opposition that it can retroactively establish that the IRS acted reasonably by citing to transactions that it claims "the IRS learned after it made its determination."  Dkt. No. 21 at 63.  The problem for the government, however, is that the IRS learned about the transactions on which the government would rely based

---

[10] The statute is silent, and some courts have found that the government must meet a preponderance of the evidence standard.  *See, e.g.*, *Burd*, 774 F. Supp at 905 (citing *Northeast Chemical, Inc. v. I.R.S., Dept. of Treasury*, 48 A.F.T.R.2d 81-5801 (W.D.N.Y. 1981)).  Under IRC § 7429(f), a district court's determination concerning a jeopardy assessment is not appealable, and there are no Circuit court decisions on point.

on *disclosures made to the IRS by Mr. Brockman or the counterparties to those transactions*.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *64 ("Filing forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from . . . the IRS.") (internal quotations omitted).

The government cannot reasonably conclude that Mr. Brockman can be found to be "designing quickly" to move assets beyond the reach of the government if he is at the same time telling the government what he is doing.  As the court stated in *Fumo*, the jeopardy assessment statute "'contemplates the movements of property out of reach of the government by means of underhanded maneuvering of funds into shell corporations or by the laundering of cash drawn from illicit activity.'" *Id*. at *92 (quoting *George F. Harding Museum v. United States*, 674 F. Supp. 1323, 1329 (N.D. Ill. 1987)); *accord Lindholm v. United States*, 808 F. Supp. 3, 6 (D.D.C. 1992) (rejecting jeopardy and concluding that "despite the complexity with which plaintiff arranged his assets, he apparently did not 'hide' them . . . ."); *see generally* IRC § 7429.

As the record shows:

(1)     The IRS learned about the March 2021 sale of Mr. Brockman's 1% interest in the entity that owns a corporate airplane to Reynolds, which owned the remaining 99% interest, because it was disclosed in his Request for Administrative Review of the Notice of Jeopardy Assessment and Rights to Appeal that was submitted to the IRS on October 7, 2021 ("Request for Review"), Jackson Decl. Ex. 4 at 13 n.18 (filed herein without exhibits), as well as his Motion for Determination.  *See* Dkt. No. 10 at 21 n.8.  Mr. Brockman is eighty years-old, has been diagnosed with Parkinson's disease and

Alzheimer's Disease, and is fully retired.  It defies logic to contend, as the government attempts to do, that he sold his 1% interest in an entity that owns a corporate airplane to the 99% U.S. shareholder at this stage in his life as part of his "designing quickly" to move his assets outside the reach of the government.  *See* Dkt. No. 21 at 63, 65. Moreover, the government's Opposition ignores that Mr. Brockman's indirect interest in the airplane had been repeatedly disclosed to the IRS over many years.  *See* Dkt. No. 10 at 21-22 and Keneally Decl. Ex. 3 at 31, 33.

(2)     As the IRS Jeopardy Report acknowledged, Mr. Brockman's partial interest in a company that owned a yacht was similarly reported by him on IRS Forms 8938 attached to his personal tax returns—hardly an effective means to keep something secret from the IRS.  *See* Dkt. No. 21 at 33 (chart); Dkt. No. 10 at 21 and Keneally Decl. Ex. 3 at 27.  The government now contends that "sometime in 2020 after learning that he was under criminal investigation Brockman transferred or sold his interest in the yacht Albula." Dkt. No. 21 at 65.  This is mere speculation by the government, and is incorrect.  The February 3, 2022 letter from counsel for Mr. Tamine called this error to the government's attention, stating "there are other factual errors in the [Opposition] (Mr. Brockman did not sell his interest in the Albula, for example – it was foreclosed)."[11]  *See* Jackson Decl. Ex. 3 at 1.

(3)     The government's Opposition includes a chart that it contends shows that "it appears that Brockman was taking steps to jeopardize collection of his tax liabilities

---

[11] The government's Notice of Correction made no attempt to correct its erroneous speculation as to the disposition of Mr. Brockman's partial indirect interest in the yacht.  *See* Dkt. No. 34.

by transferring, selling, and dissipating assets out of the reach of the IRS . . . ."  Dkt. No. 21 at 67.  The government's exhibits, however, establish that none of these seven transactions were hidden.  As previously discussed, Dorothy Brockman's May 2021 sale of 1731 Sunset Boulevard and December 2020 sale of 335 West Friar Tuck Lane were publicly listed and recorded, *see* Dkt. No. 21, Gov. Exs. 17, 18; Dkt. No. 10 at 5-7; Section II.A, *supra*, and the 2020 sale was reported on Schedule D of her 2020 federal income tax return.  *See* Dkt. No. 21, Gov. Ex. 32.  As discussed immediately above, the IRS learned about Mr. Brockman's sale of his 1% interest in Hardwicke, the entity that owns the corporate airplane, because the sale was disclosed in his October 2021 Request for Review and in the Motion for Determination.  *See* Jackson Decl. Ex. 4 at 13 n.18; Dkt. No. 10 at 21; Keneally Decl. Ex. 3 at 27.  The government's citations for the next three 2020 transactions—a distribution from National Financial Services, a distribution from Great-West Trust Company, and the sale of securities from Morgan Stanley, National Financial Services, and John Hancock accounts—are based on the IRS's wage and income transcript for Mr. Brockman, which indicates that Mr. Brockman was conducting these transactions with financial institutions that obviously would file IRS Forms 1099-B information reporting returns.[12]  *See* Dkt. No. 21, Gov. Ex. 33 at 8-12, 30.

---

[12] Moreover, these three 2020 transaction are not "new" evidence, and by statute cannot be relied on by the government.  Government Exhibit 33 shows that these transactions were reported to the IRS by third-party financial institutions on IRS Forms 1099-B, which would have been filed with the IRS no later than March 31, 2021, over five months before the jeopardy assessment.  IRC § 7429 (a)(1)(B) requires that "[w]ithin 5 days after the day on which such an assessment or levy is made, the Secretary shall provide the taxpayer with a written statement of the information upon which the Secretary relied in making such assessment or levy."  Because these transactions were not included in the Jeopardy Report, the government may not use them now to support the jeopardy assessment.  *See Hirschhorn*, 662 F. Supp. at 892 (insufficient notice is grounds for abatement); *Henderson v. United States*, 949 F. Supp. 473, 477 (N.D. Tex. 1996) ("The government is not allowed to seize the assets of a taxpayer and then articulate reasons to justify the action which were unknown

Finally, Dorothy Brockman's 2020 sale of securities was reported on Schedule D of her 2020 federal income tax return.  *See* Dkt. No. 21, Gov. Ex. 32.

(4)     The government cites to the creation of two foreign trusts and related foreign accounts established in July 2020.  *See* Dkt. 21 at 5, 68.  Again, the government knows about this because Mr. Brockman timely disclosed this information on IRS Form 3520, which is used to report transactions between a U.S. person and a foreign trust, and on IRS Form 8938 attached to his Form 1040 federal income tax return.[13]  *See* Dkt. 21, Gov. Ex. 1, at ¶ 58 (cited in Dkt 21 at 68 n.281).  Yet again, it defies credulity for the government to contend that Mr. Brockman was "designing quickly" to move assets outside the reach of the government while at the same time reporting those transactions to the IRS.  Moreover, months before the IRS made the jeopardy assessment, the funds at issue were moved to a U.S. bank account, further negating any basis for the IRS's contentions that assets are being dissipated.  *See* Jackson Decl. Ex. 5.

The government also fails to address Mr. Brockman's showing that entities that it claims were used to commit tax evasion were repeatedly disclosed to the IRS:

• The formation of the AEBCT was reported to the IRS when Mr. Brockman's father settled the trust in 1981, *see* Dkt. No. 10, Keneally Decl. Ex. 18, and the AEBCT structure was disclosed to the IRS during an examination of the 1992 through 1995 tax years.  *See* Dkt. No. 10, Keneally Decl. Ex. 19 at 3-17:25–3-19:8.

---

to or unconsidered by the agent at the time of the seizure.").

[13] These trusts were readily knowable by the IRS prior to the issuance of the jeopardy assessment, were not included in the Jeopardy Report or otherwise reported to Mr. Brockman so as to put him on notice, and cannot be relied on now by the government.  *See* fn. 12, *supra*.

- The main assets of the AEBCT—Universal Computer Systems Holding Inc. ("UCSH"), and its subsidiaries, including Reynolds—are U.S. companies that file and pay taxes in this country.  *See* Jackson Decl. Ex. 6 at 3-86:5–3-87:5.

- The Colorado properties—Mountain Queen and the Frying Pan Canyon Ranch— are owned by U.S. companies that file U.S. tax returns.  *See* Dkt. No. 21 at 35 (chart) and 37; Dkt. No. 10, Keneally Decl. Ex. 3 at 20-21, 27.

- Mr. Brockman's interest in the Albula was held in a U.S. company, as reported by him on IRS Forms 8938 attached to his personal income tax returns.  *See* Dkt. No. 10, Keneally Decl. Ex. 3 at 27.

- The corporate airplane has continuously been owned by a U.S. company that files U.S. tax returns, *see id.* at 31, which was included as part of the IRS's examination of Mr. Brockman's 2006 and 2007 tax returns.  *See id.* at 33.[14]

Contrary to the IRS's depiction, this is not the usual case in which a U.S. person hid assets offshore.[15]  As the Motion for Determination described, and the government has not refuted, Mr. Brockman sold the business that he founded to the AEBCT in the

---

[14] The government does not dispute that Mr. Brockman paid fair market value for the use of the Colorado properties, the yacht, and the airplane.  *See* Dkt. No. 10 at 21 and Dkt. No, Keneally Decl. Ex. 19 at 3-5:23–3-6:24 (witness at hearing to determine Mr. Brockman's competency testifying that Mr. Brockman paid fair market value for the use of the Colorado real properties).

[15] The AEBCT is a non-grantor offshore discretionary trust with U.S. individuals and U.S., British, and Bermuda charities as beneficiaries.  *See* Dkt. No. 10 at 18 and Keneally Decl. Ex. 3 at 8.  The government nowhere disputes that this is a valid structure under tax law, and that individual U.S. beneficiaries have no reporting requirement until a distribution is made.  *See, e.g.*, P.L.R. 201308016 (Feb. 22, 2013) (discretionary beneficiaries cannot "be said to hold more than an expectancy in trust property"); F.S.A. 199952014 (Sept. 23, 1999) (discretionary beneficiaries should not be treated as owners of foreign trusts); *see also* Dkt. No. 10 at 18-19. Nor does the government contend that any U.S. individual, including Mr. Brockman, ever received a distribution from the AEBCT.  *See* Dkt. No. 10 at 18.

- 23 -

mid-1980s, and it grew in value to become the U.S. company Reynolds. *See* Dkt. No. 10 at 20. Similarly, the investments cited by the IRS were made by entities within the AEBCT structure, and also grew in value within that offshore structure. *Id.*

In essence, the IRS is seeking to rely on information provided to it by Mr. Brockman to contend that he attempted to hide his assets from tax collection. This is not reasonable, and cannot support a jeopardy assessment.

### F. The government cannot establish that collection of tax is in jeopardy when there is an available asset that exceeds any potential liability.

Most fundamentally, even if the allegations in *U.S. v. Brockman* are someday proven, the IRS's ability to collect any resultant tax liability will not be jeopardized by having waited for that determination. The government contends, both in the Indictment and the Jeopardy Report, that Mr. Brockman is the owner of all assets held by the AEBCT. As the IRS stated in the Jeopardy Report, the AEBCT holds a greater than 99% interest in UCSH, a Delaware entity that in turn indirectly owns 100% of Reynolds, an Ohio company operating in Houston and Dayton, with an estimated value of approximately $5 billion. *See* Dkt. No. 10, Keneally Decl. Ex. 3 at 2-4, 8, and Ex. 16 at ¶ 25. The government does not contend that any action has occurred to conceal, dissipate, transfer, or diminish the value of Reynolds. Rather, it baselessly speculates that the AEBCT might somehow secretly sell or transfer a U.S. company, *see* Dkt. 21 at 69-70, which neither reflects any practical reality nor is grounded in the legal analysis required in considering the reasonableness of a jeopardy assessment. *See, e.g., Fumo*, 2014 U.S.

- 24 -

Dist. LEXIS 77082, at *100 (speculation that assets could be dissipated does not support a jeopardy assessment).

The IRS contends that Mr. Brockman owes over $1.4 billion in tax, penalty, and interest. The value of Reynolds, a company located in the United States, far exceeds that amount. In contrast, the IRS cannot expect to get anywhere close to that amount by pursuing collection through a jeopardy assessment and levy.[16] The government cannot avoid the fact that Reynolds, by itself, is more than sufficient to meet any tax liability, and thus collection cannot be in jeopardy. The IRS cannot use a jeopardy assessment and jeopardy levy solely because that may be its preference to do so, when in fact no jeopardy exists. The jeopardy assessment and jeopardy levy are patently unnecessary and unreasonable under these circumstances.

## **CONCLUSION**

In sum, there is a complete absence of evidence that Mr. Brockman was or appeared to be "designing quickly" to move property beyond the reach of the government. No exigency exists under IRC §§ 6861(a) and 6331(a) and Treasury Regulation § 301.6861-1(a). Nor is there any risk that the IRS would be unable to collect any liability without a jeopardy assessment. The government has not and cannot meet its burden to show that the IRS acted reasonably, and therefore the jeopardy assessment should be abated and the jeopardy levy released.

---

[16] The government's contention, in its Opposition, that Mr. Brockman has not voluntarily begun payment of the jeopardy assessment or posted a bond to stay the collection of the jeopardy assessment is clearly disingenuous, given the dollar amounts at issue. *See* Dkt. No. 21 at 69. As to the contention that Mr. Brockman has not pledged Reynolds stock to the IRS, the government has not proposed how this might be accomplished.

Dated:  February 7, 2022                    Respectfully submitted,

                                            */s/ Jason S. Varnado*
                                            Jason S. Varnado
                                            Texas Bar No. 24034722
                                            SDTX Ad. ID No. 32166
                                            Email: jvarnado@jonesday.com
                                            Julia N. Camp
                                            Texas Bar No. 24123598
                                            SDTX Ad. ID No. 3688104
                                            Email: juliacamp@jonesday.com
                                            JONES DAY
                                            717 Texas, Suite 3300
                                            Houston, TX  77002
                                            Telephone: 832-239-3939
                                            Facsimile: 832-239-3600

                                            Kathryn Keneally (*Admitted Pro Hac Vice*)
                                            New York Bar No. 1866250
                                            Email: kkeneally@jonesday.com
                                            Frank J. Jackson (*Admitted Pro Hac Vice*)
                                            New York Bar No. 2870251
                                            Email: fjackson@jonesday.com
                                            Michael J. Scarduzio (*Admitted Pro Hac
                                            Vice*)
                                            New York Bar No. 5147186
                                            Email: mscarduzio@jonesday.com
                                            Anthony J. DeRiso (*Admitted Pro Hac Vice*)
                                            New York Bar No. 5787312
                                            Email: aderiso@jonesday.com
                                            JONES DAY
                                            250 Vesey Street
                                            New York, NY 10281-1047
                                            Telephone: 212-326-3939
                                            Facsimile: 212-755-7306

                                            Irina K. Bleustein (*Admitted Pro Hac Vice*)
                                            District of Columbia Bar No. 1044772
                                            Email: ibleustein@jonesday.com
                                            JONES DAY
                                            51 Louisiana Avenue, N.W.
                                            Washington, D.C. 20001-2113
                                            Telephone: 202-879-3450

- 26 -

Facsimile: 202-626-1700

*Attorneys for Plaintiff*
*Robert T. Brockman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of February, 2022 a true and correct copy of the foregoing instrument was served on the United States via the Court's CM/ECF system and pursuant to Fed. R. Civ. P. 4(i).

*/s/ Michael J. Scarduzio*

Michael J. Scarduzio