UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202-GCH |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF ROBERT T. BROCKMAN'S REPLY TO UNITED STATES'
RESPONSE IN OPPOSITION TO PLAINTIFF'S (I) MOTION FOR LEAVE
TO FILE A SUPPLEMENTAL MEMORANDUM AND
(II) SUPPLEMENTAL MEMORANDUM FOR DETERMINATION OF
ABATEMENT OF JEOPARDY ASSESSMENT AND LEVY OR, IN THE
ALTERNATIVE, A STAY OF IRS COLLECTION**

**Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ - 1 -

ARGUMENT ............................................................................................................... - 2 -

I.     There Has Never Been Any Basis For The Jeopardy Assessment And
Jeopardy Levy ................................................................................................... - 2 -

II.    This Court Should Consider BCT's Letter As Further Support For
Abatement Of The Jeopardy Assessment And Release Of The Jeopardy
Levy .................................................................................................................... - 6 -

       A.    The government will not be prejudiced by this Court's
consideration of BCT's Letter ................................................................ - 7 -

       B.    The government mischaracterizes BCT's Letter ................................... - 9 -

       C.    BCT's Letter supports abatement of the jeopardy assessment,
release of the jeopardy levy, and an interim stay
of IRS collection ................................................................................... - 11 -

III.   The Anti-Injunction Act Does Not Bar This Court From Granting An
Interim Stay Of IRS Collection ...................................................................... - 12 -

CONCLUSION .......................................................................................................... - 15 -

## INTRODUCTION

On Monday, March 21, two events occurred in striking juxtaposition:

1.      The IRS emptied Dorothy Brockman's personal account at a Houston bank based on the jeopardy assessment and jeopardy levy that the IRS made against her husband.

2.      The government filed a memorandum in this action contending that this Court should not be allowed to consider a proposal made in the March 15, 2022 letter from counsel for BCT Limited ("BCT"), the trustee of the A. Eugene Brockman Charitable Trust (the "AEBCT" or the "Trust") to make $1.45 billion available to meet in full the as-yet unproven tax liability that it claims may someday be due from Mr. Brockman ("BCT's Letter").

To be clear, it remains Mr. Brockman's position that the IRS's decision to make a jeopardy assessment and to issue a jeopardy levy was never reasonable.  At this point, it is unfathomable that the government may turn away from a proposal that would make full collection of its asserted tax liability possible, while the IRS instead continues in its efforts to grab far lesser amounts from Mr. Brockman, his wife, and other third parties.  The government offers no basis in either fact or law as to why the IRS should be permitted to continue its collection actions.

## ARGUMENT

**I.    There Has Never Been Any Basis For The Jeopardy Assessment And Jeopardy Levy.**

As the government does not dispute, the sole issue before this Court is whether the

collection of any tax liability subsequently determined against Mr. Brockman will be

jeopardized by delay.[1]  *See* Dkt. No. 10 at 2, 23; No. 21 at 48-49; No. 35 at 1, 5-6.  The

burden is on the government to prove that the IRS's collection activities, which are based

on a jeopardy assessment and jeopardy levy, are reasonable.  *See* Internal Revenue Code

("IRC"), 26 U.S.C. § 7429(g)(1).

The government could not meet its burden even before the AEBCT trustee presented

its proposal to secure payment of any tax liability that may be determined to be owed by

Mr. Brockman.  To prevail, the government must show that the IRS is reasonable in its

---

[1] This Memorandum, which will be filed as **Dkt. No. 41**, is the eighth filing on this issue. Prior filings include:  Mr. Brockman's Motion for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy Pursuant to 26 U.S.C. § 7429 ("Motion for Determination"), **Dkt. No. 10**; United States' Response in Opposition for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy Pursuant to 26 U.S.C. § 7429 ("Opposition"), **Dkt. No. 21**; Government's Notice of Correction to the Court ("Notice of Correction"), **Dkt. No. 34**; Plaintiff Robert T. Brockman's Reply in Support of  Motion for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy Pursuant to 26 U.S.C. § 7429 ("Reply"), **Dkt. No. 35**; Plaintiff Robert T. Brockman's Motion for Leave to File a Supplemental Memorandum (1) in Support of Motion for Determination on Complaint for Abatement of Jeopardy Assessment and Jeopardy Levy or (2) in the Alternative, for a Stay of IRS Collection ("Motion for Leave to Supplement"); **Dkt. No. 37**; Plaintiff  Robert T. Brockman's Supplemental Memorandum (1) in Support of Motion for Determination on Complaint and Abatement of Jeopardy Assessment and Jeopardy Levy or (2) in the Alternative, for a Stay of IRS Collection ("Supplemental Memorandum"), **Dkt. No. 38**; and United States' Response in Opposition to Plaintiff's (I) Motion for Leave to File Supplemental Memorandum and (II) Memorandum and Request for a Stay of IRS Collection ("Opposition to Supplemental Memorandum"), **Dkt. No. 39**.

view that Mr. Brockman "is or appears to be designing quickly to place assets beyond the

reach of the Government."  *See* Treas. Reg. § 301.6861-1(a); Dkt. No. 10 at 2; No. 35 at 1,

4-5.  As discussed in Mr. Brockman's Motion for Determination and his Reply, each of the

government's arguments wholly fail to support the IRS's actions:

(1)     ***The four real property transactions cited by the government involved***

***properties belonging solely to Dorothy Brockman, were conducted openly and became***

***known to the government through public records, and did not result in any movement of***

***assets beyond the reach of the government.***  *See* Dkt. No. 10 at 2-3, 5-12; No. 35 at 6-11;

*Fumo v. United States*, No. 12-3313, 2014 U.S. Dist. LEXIS 77082, *86-87 (E.D. Pa.

2014) (abating jeopardy assessments when the IRS was able to "trace Plaintiff's real

property transfers using only public databases and public records").

(2)     ***The Bermuda litigation actions that the government alleges were taken by***

***the Brockmans in the Bermuda courts did not occur.***  Contrary to the government's

contentions, the Brockmans were never parties to *St. John's Trust Company (PVT) Limited*

*vs. James Watlington*.  *See* Dkt. No. 10 at 12-15.  As even the evidence cited by the

government established, Mrs. Brockman did not, as the government contends, "petition[]

the Bermuda courts to appoint Medlands to replace SJTC as the trustee of the AEBCT."

*Compare* Dkt. No. 21 at 71 *with* Dkt. No. 21, Gov. Ex. 26 at ¶¶ 9, 13 (cited in Dkt. No. 21

at 71 and n.289).  And, again in contradiction of the government's contentions, the

evidence cited by the government showed that Mr. Brockman did not "initiate[] litigation in

Bermuda to wind up Point Investments and move its assets to entities in other tax havens."

*Compare* Dkt. No. 21 at 72 *with* Dkt. No. 21, Gov. Ex. 5 (cited in Dkt. No. 21 at 72 n.292);

*see also* Dkt. No. 35-1, Ex. 2 at 7, ¶ 27(2); *Burd v. United States*, 774 F. Supp. 903, 907

(D.N.J. 1991) (abating jeopardy assessment on finding that "if the IRS had conducted a

simple investigation there would have been absolutely no basis for the jeopardy

assessment").

(3)     ***The Bermuda Court of Appeal ordered the appointment of BCT after fully***

***vetting and determining that BCT would serve as an independent, institutional trustee.***

In its Opposition to Supplemental Memorandum, the government disparagingly refers to

BCT as the "alleged Trustee" for the AEBCT.  Dkt. No. 39 at 1.  As it has done previously,

the government asks this Court to ignore the extensive proceedings and orders in the

Bermuda courts that properly appointed BCT as trustee.  *See* Dkt. No. 10 at 12-16 and 10-

1, Ex. 16 at ¶¶ 4, 23-25, 59; and Ex. 17 at 2 (preamble) and ¶ 2.

(4)     ***The government admitted in a Notice of Correction that the single***

***allegation of recent activity that it discussed in its nearly 44-page summary of the***

***criminal investigation was false.***  Dkt. No. 34; *see* Dkt. No. 35 at 14-16; *see also, e.g.,*

*Fumo*, 2014 U.S. Dist. LEXIS 77082, *77 and *88-89, n.18 (noting that actions must

"actually [be] occurring quickly," as to find otherwise "would render the modifier 'quickly'

superfluous" and finding that "prior illegal activity . . . is not adequate to show that a

taxpayer is or appears to be designing quickly to place assets beyond the reach of the

government"); Dkt. No. 35 at 14-16; *cf.* Dkt. No. 21 at 7-47, 59-63.

(5)     ***The government cannot prove that Mr. Brockman is "designing quickly" to***

***place assets beyond the reach of the government based on conduct it learned from***

***disclosures by or on behalf of the Brockmans.***  *See Fumo*, 2014 U.S. Dist. LEXIS 77082,

*64 ("Filing forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from . . . the IRS.") (internal quotations omitted); *George F. Harding Museum v. United States*, 674 F. Supp. 1323, 1329 (N.D. Ill. 1987) (The jeopardy assessment statute "contemplates the movement of property out of reach of the government by means of underhanded maneuvering of funds into shell corporations or by the laundering of cash drawn from illicit activity."); *Lindholm v. United States*, 808 F. Supp. 3, 6 (D.D.C. 1992) (rejecting jeopardy and concluding that "despite the complexity with which plaintiff arranged his assets, he apparently did not 'hide' them"); *see generally* IRC § 7429.

(6)     ***The government contends that Mr. Brockman owns assets currently in the United States far in excess of the asserted tax liability.***  Under the IRS's theory of liability, Mr. Brockman is the indirect owner of the Reynolds and Reynolds Company ("Reynolds"), a U.S. company the value of which significantly exceeds the purported tax liability against Mr. Brockman.  *See, e.g., Fumo*, 2014 U.S. Dist. LEXIS 77082, *97 (rejecting jeopardy when "the amount of money in Plaintiff's bank accounts alone is sufficient to pay the assessed taxes if the Tax Court ultimately finds them due and owing").  The government does not contend that any action has occurred to conceal, dissipate, transfer, or diminish the value of Reynolds.  *See* Dkt. No. 10 at 4, 19; No. 35 at 24-25.

Thus the government is disingenuous in its latest filing when it states that, "based solely on BCT's invitation to the IRS for conditional discussions, Brockman contends this Court should rely on the BCT Letter to conclude that collection of his tax liability is not in jeopardy." Dkt. No. 39 at 2.  It is Mr. Brockman's position, for all the reasons set out in

- 5 -

the prior filings—which the government seems now to ignore—that there is no basis whatsoever for a jeopardy assessment and jeopardy levy. There is no evidence that Mr. Brockman is or was "designing quickly" to move assets outside the reach of the government, and in any case there were always sufficient assets in the United States to meet any potential tax liability.

**II.     This Court Should Consider BCT's Letter As Further Support For Abatement Of The Jeopardy Assessment And Release Of The Jeopardy Levy.**

While it is Mr. Brockman's position that the record fully supported abatement of the jeopardy assessment and release of the jeopardy levy well before BCT set out its proposal to make funds available in the United States, ensuring payment of any tax liability determined to be due from Mr. Brockman, the Court should nonetheless be able to consider the potential impact of BCT's proposal.

The key points to the proposal made in BCT's Letter include:

- BCT will establish one or more accounts located in the United States;

- BCT will transfer assets of approximately $1.45 billion into the account or accounts—an amount sufficient to pay any tax liability against Mr. Brockman upon a final determination in the pending Tax Court case or the settlement of that case;

- BCT has already engaged in discussions with U.S. financial institutions that are willing to open the necessary accounts to implement its proposal;

- The investments that BCT will transfer into the account or accounts are already overwhelmingly in U.S. Treasury bills;

- BCT has already proposed several options for securing the transferred assets; and

- BCT is prepared to engage in discussions with the IRS as to the terms of the proposed agreement.

*See* Dkt. No. 38 at 1-4; 38-1, Ex. A at 1.

It is hard to see any reason why the IRS would not pursue this proposal, which would entirely protect its future ability to collect any tax liability that Mr. Brockman may be determined to owe. More to the point, nothing in the government's Opposition to Supplemental Memorandum offers a valid reason why this Court should not consider the impact of BCT's Letter in determining whether to abate the jeopardy assessment and release the jeopardy levy.

### A. The government will not be prejudiced by this Court's consideration of BCT's Letter.

The government's Opposition to Supplemental Memorandum states that "the United States may be willing to voluntarily discuss arrangements that might secure the collection of Brockman's tax liability . . . ." Dkt. No. 39 at 2 n.1. Mr. Brockman welcomes the government's openness to those discussions, but also asks that the Court be allowed to take BCT's proposal into consideration as well.

The government depicts Mr. Brockman's Motion for Leave to Supplement and his Supplemental Memorandum as "11th-hour" and "entirely untimely." Dkt. No. 39 at 1, 3. BCT's Letter was sent to the IRS, and copied to all counsel in this action, on March 15,

2022.  Dkt. No. 38-1, Ex. A.  Mr. Brockman made these filings to bring BCT's Letter to the Court's attention within three days.

In its Opposition (when the government perceived an advantage in asking this Court to consider events that occurred subsequent to the IRS's decision to make a jeopardy assessment), the government stated that this Court "should review . . . information that the IRS learned after it made its determination and made the assessment."  Dkt. No. 21 at 63.  While the government would apparently seek now to back away from this position, the law clearly supports that this Court should consider BCT's Letter in making its determination.  *See Burd*, 774 F. Supp. at 906 ("In assessing the reasonableness of the IRS's actions, the Court is not limited to consideration of the information available to the IRS at the time of the assessment but *must* also consider any subsequently available information that might impact on the reasonableness of the determinations.") (emphasis added); *Fumo*, 2014 U.S. Dist. LEXIS 77082, *52 (same); *see* Dkt. No. 10 at 15 n.6; No. 38 at 6.

The government contends that BCT's Letter "gave the IRS only *three days* to decide whether it wished to further discuss its proposal."  Dkt. No. 39 at 2 (emphasis in original).  While BCT's Letter, sent on a Tuesday, did in fact "*ask*" that IRS counsel contact BCT's counsel by the end of the week, it set no deadline for the IRS's consideration of BCT's proposal.  *See* Dkt. No. 38-1, Ex. A at 3 (emphasis added).  Nor, as the government seems to suggest, did Mr. Brockman seek to impose a time constraint on its ability to address the relevant issues before this Court.  *Compare* Dkt. No. 39 at 2-3 *with* Dkt. No. 38 at 8-9.

There is nothing stopping the government from pursuing BCT's proposal, and certainly no reason that the Court should be precluded from taking BCT's Letter into consideration.

**B.      The government mischaracterizes BCT's Letter.**

The government contends that BCT's Letter is not "specific."  Dkt. No. 39 at 1-2. To the contrary, BCT's Letter could hardly be more clear:  BCT proposes to move highly liquid, highly stable assets into an account in the United States, which would be fully available to pay any liability that the IRS contends that it may someday seek to collect. Dkt. No. 38-1, Ex. A at 2.  BCT's Letter even details several options that may be used to secure those assets.  *Id*.

The government perversely argues that BCT's Letter "supports a finding of jeopardy," based on its unsupported speculation that "when Mr. Brockman needs funds to secure the collection of his personal taxes, he uses the Trust."  *See* Dkt. No. 39 at 6-7.  The government ignores that BCT's Letter states that the independent trustee is making its proposal to protect the interests of the AEBCT.  Specifically, BCT is seeking to mitigate the impact that the pendency of the jeopardy assessment and jeopardy levy has had on the operations and charitable programs of the AEBCT.  As BCT's Letter states:  "the jeopardy assessment and related allegations have created a great deal of uncertainty about the Trust's substantial shareholding in [Reynolds & Reynolds], an operating company based in the United States that employs more than 4,400 people and [is] currently worth in excess of $5 billion, and the annual dividend distributions attached to that shareholding," and have further created  "uncertainty with finding financial institutions willing to maintain custody

- 9 -

of significant assets of the Trust," disrupting "the Trust's ability to meet existing charitable commitments and expand future charitable giving."  Dkt. No. 38-1, Ex. A at 1-2.

In the same vein, the government cites to and would fault certain conditions included in BCT's Letter, specifically noting that "[i]t is conditioned on (i) the approval of a foreign court, (ii) the IRS's agreement not to place any liens against, or encumber in any way, other Trust assets, (iii) the IRS's abatement of the jeopardy assessment, (iv) release of the jeopardy levy, and (v) release of the funds from a frozen Swiss bank account by the Swiss authorities."  *See* Dkt. No. 39 at 8.

The first of these conditions—the need to obtain approval of the Bermuda court—is also the most interesting.  In its Opposition to Supplemental Memorandum, the government asserts that the Bermuda Supreme Court "in the past has been hostile to the Department of Justice."  *See* Dkt. No. 39 at 4.  Perhaps more accurately, as noted in BCT's Letter, in appointing BCT as an independent trustee, the Bermuda Court of Appeal "treat[ed] the Trust as a valid trust under Bermuda law and recognize[ed] the Trustee as independent from Brockman."  Dkt. No. 38-1, Ex. A at 1.  BCT's Letter continues:  "Nor does Bermuda law regard the Trust as the *alter ego* of Brockman."  *Id.* (emphasis in original).  BCT's good faith proposal to go to the Bermuda court to seek permission to set up an account or accounts in the amount of $1.45 billion would appear to be the government's best opportunity for potential full collection, by eliminating a barrier to IRS collection that otherwise may be imposed under Bermuda law.  *See* Dkt. No. 38 at 5.

The next three conditions—an agreement that no other liens will be placed on Trust assets, abatement of the jeopardy assessment, and release of the jeopardy levy—follow

- 10 -

directly from BCT's express goal of removing the uncertainty that the pendency of the

jeopardy assessment has had on its ability to operate.  And as to the last of the conditions,

contrary to the inference that the government would attempt to draw, nothing in BCT's

Letter suggests that "Swiss authorities" have "frozen" a bank account, *compare* Dkt. No. 39

at 4, 8, *with* Dkt. No. 38-1, Ex. A at 3, and the government nowhere points to any pending

or anticipated action by Swiss authorities.  To the contrary, all that BCT is asking is that the

government inform the bank and, if needed, the Swiss courts or Swiss public prosecutors,

that the government is in agreement with BCT's proposed course of action.

Again, the next step toward implementing BCT's proposal, and thereby securing any

tax liability that may someday be found due and owing, is for the government to take.

C.    **BCT's Letter supports abatement of the jeopardy assessment, release of
      the jeopardy levy, and an interim stay of IRS collection.**

The government states that BCT's Letter "is merely a proposal to engage in

discussions."  Dkt. No. 39 at 8.  To the contrary, the proposal in BCT's Letter is no "mere"

thing—it presents an opportunity for the government to secure the availability of $1.45

billion as full payment of any potential tax liability that may be found against Mr.

Brockman.

The government engages in a baseless syllogism in an effort to avoid the import of

the proposal in BCT's Letter.  IRC §6861(a) allows for a jeopardy assessment when

"collection of a deficiency . . . will be jeopardized by delay."  The government puts an

unsupportable gloss on this clear language to contend that the time needed for the

implementation of the proposal in BCT's Letter "will cause significant delay."  *See* Dkt.

No. 39 at 5.  The government then speculates that this delay would allow Mr. Brockman or the Trust "to move, liquidate, and dissipate assets . . . ." *See id*. at 6.  Conjecture as to what might happen cannot support the jeopardy assessment or the IRS's ongoing collection activity.  *Fumo*, 2014 U.S. Dist. LEXIS 77082, *100 ("[T]he necessary showing requires more than a showing that a taxpayer's assets *could* easily be dissipated . . . .  Any taxpayer could easily dissipate their assets, but that would not justify finding a jeopardy assessment reasonable without also finding that the applicable standards were met.")  (emphasis in original).

Moreover, the government offers no credible basis on which to conclude that Mr. Brockman or the Trust is acting or planning to act to move assets outside the reach of the government.  To the contrary, BCT's Letter is offering to relocate assets to the United States that may otherwise not be subject to IRS collection.

## III.    The Anti-Injunction Act Does Not Bar This Court From Granting An Interim Stay Of IRS Collection.

The government errs in its contentions that IRC § 7421 (commonly called Anti-Injunction Act) or the bond provisions of IRC § 6863 limit this Court's authority to grant relief from collection pursuant to the jeopardy assessment and jeopardy levy against Mr. Brockman.

As the government acknowledges, IRC §7429(b)—the statute that provides for District Court review and abatement of jeopardy assessments and release of jeopardy levies—is expressly exempted from the provisions of the Anti-Injunction Act.  *See* IRC §

- 12 -

7421(a).  The government, however, wholly ignores case law supporting that § 7429(b)

gives this Court authority to grant interim or other relief.

As the court stated in *Mrs. Phil. Home for Senior Citizens, Inc. v. United States*, No.

93-2355, 1993 U.S. Dist. LEXIS 19501, *18-19 (D. Md. 1993), "[i]t is quite consistent

with the purpose of § 7429, which provided judicial review for I.R.S. jeopardy

assessments, for Congress to have granted the district courts the ability to check the

virtually unfettered power of the I.R.S. to cause severe hardships, even economic

destruction, to taxpayers prior to a resolution of the existence, and extent, of any tax

liability."  Thus, for example, in *DeLauri v. United States*, 492 F. Supp. 442, 446 (W.D.

Tex. 1980), the District Court allowed the IRS to maintain tax liens but enjoined

enforcement pending resolution of the taxpayer's liability by the Tax Court, concluding that

"the Government's legitimate interest in collecting its revenues must be balanced against

the taxpayer's need to continue legitimate business operations." *See also Fidelity*

*Equipment Leasing Corp. v. United States*, 462 F. Supp. 895 (N.D. Ga. 1978) (same).

Next, the government cites to IRC § 6863, which provides that collection "*may* be

stayed" by filing a bond, to argue that posting a bond is the only means by which a stay

may result—an interpretation that would obviate the relief provided by IRC § 7429(b).  *See*

IRC § 6863 (emphasis added).  The government offers no support for its contention that

IRC § 6863 somehow limits this Court's authority under IRC § 7429(b).  *See* Dkt. No. 39

at 7-8.

Perhaps recognizing that neither the Anti-Injunction Act nor the bond provisions of

IRC § 6863 prevent the collection stay sought by Mr. Brockman, the government contends

- 13 -

that Mr. Brockman "would still have to show 'sufficient grounds for equitable relief.'" *See*

Dkt. No. 39 at 8 (internal quotations omitted). The cases cited by the government,

however, are inapposite to the issue at hand. All but one of the cases cited by the

government predate the enactment of IRC § 7429 in 1976, which for the first time accorded

taxpayers the right to judicial review of jeopardy assessments and jeopardy levies.[2] *See*

Dkt. No. 39 at 7-9, citing *Bob Jones University v. Simon*, 416 U.S. 725 (1974) (predates

IRC § 7429(b), and does not address issues relating to jeopardy assessment); *Enochs v.*

*Williams Packing & Navigation Co.*, 370 U.S. 1 (1962) (same); *Sherman v. Nash*, 488 F.2d

1081 (3d Cir. 1973) (predates IRC § 7429(b)); *Bowers v. United States*, 423 F.2d 1207 (5th

Cir. 1970) (predates IRC § 7429(b), and does not address issues relating to jeopardy

assessment); *Cohen v. United States*, 297 F. 2d 760 (9th Cir. 1962) ) (predates IRC §

7429(b)); *Parenti v. Whinston*, 347 F.Supp. 471 (E.D. Pa. 1972) (same); *United States v.*

*Cooper*, 435 F.Supp. 3 (D.D.C. 1976) (same). The sole remaining case cited by the

government, *Elias v. Connett*, 908 F.2d 521 (9th Cir. 1990), did not concern a jeopardy

assessment, and even in that case the court noted that IRC § 7429 is statutorily exempted

from the Anti-Injunction Act. *Id*. at 523.

---

[2] *See, e.g., Penner v. United States*, 582 F. Supp. 432, 434 (S.D. Fla. 1984) ("The review under Section 7429 was made available in recognition of the extraordinary nature of assessments under Section 6861.") (citing S. Rep. 94-938, 363-64 (1976)); *Modern Bookkeeping v. United States*, 854 F.Supp. 475, 477 (E.D. Mich. 1994) (same); *see also* Margaret M. Armen, *Assessing Internal Revenue Service Jeopardy Procedures: Recent Legislative and Judicial Reforms*, 26 Clev. St. L. Rev. 413, n.3 (1977) (IRC § 7429 "allows for the first time judicial review of jeopardy assessments.").

The Anti-Injunction Act does not provide the refuge that the government would seek to allow the IRS to continue to collect assets from the Brockmans in the absence of even a shred of a basis to support the IRS's contention that jeopardy exists.

## CONCLUSION

As even the Internal Revenue Manual states, jeopardy assessments "are to be used sparingly" and "are to be reasonable, appropriate, and limited to amounts which can be expected to protect the government." *See* Internal Revenue Manual at 4.15.1.2; *accord Fumo*, 2014 U.S. Dist. LEXIS 77082, *45, *76. The IRS has no reason to proceed with collection pursuant to a jeopardy assessment in this case.

There is a complete absence of evidence that Mr. Brockman was or appeared to be "designing quickly" to move property beyond the reach of the government, or that any exigency exists. *See* IRC §§ 6861(a) and 6331(a) and Treasury Regulation § 301.6861-1(a). Given the presence of Reynolds in the United States—an asset that the government claims is owned by Mr. Brockman and that has a value well in excess of the tax liability asserted against Mr. Brockman—there never was any risk that the IRS would be unable to collect absent a jeopardy assessment. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, *76. BCT's Letter conclusively puts to rest any lingering argument that the government purports to have. There is simply no reason for the IRS to be allowed to continue in its current collection activities.

Accordingly, the jeopardy assessment should be abated and the jeopardy levy released. In the alternative, and at a minimum, IRS collection actions should be stayed.

- 15 -

Dated:  March 23, 2022

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
Julia N. Camp
Texas Bar No. 24123598
SDTX Ad. ID No. 3688104
Email: juliacamp@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*Admitted Pro Hac Vice*)
New York Bar No. 2870251
Email: fjackson@jonesday.com
Michael J. Scarduzio (*Admitted Pro Hac Vice*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*Admitted Pro Hac Vice*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*Admitted for Pro Hac Vice*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450

*Attorneys for Plaintiff Robert T. Brockman*

- 16 -

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of March, 2022, I electronically served this document

on all counsel of record.

/s/ *Michael J. Scarduzio*
Michael J. Scarduzio