UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:22-cv-00202-GCH |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S SECOND SUPPLEMENTAL MEMORANDUM (1) IN SUPPORT OF MOTION FOR DETERMINATION ON COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY OR <u>(2) IN THE ALTERNATIVE, FOR A STAY OF IRS COLLECTION</u>**

<u>**Expedited Time Limits Apply By Statute –** *See* **26 U.S.C. § 7429(b)(3)**</u>

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| SUPPLEMENTAL FACTS | 3 |
| ARGUMENT | 6 |
| I.  The IRS Has Never Had Any Valid Basis For The Jeopardy Assessment And Jeopardy Levy | 6 |
|    A.  The Government Wants This Court To Ignore The Existence Of Assets From Which Any Potential Tax Liability Could Be Fully Recovered. | 7 |
|    B.  The Government's Allegations That Mr. Brockman Was "Designing Quickly" To Dissipate Assets Are Wholly Baseless. | 8 |
| II. This Court Should Stay Collection Actions By The IRS | 10 |
| CONCLUSION | 12 |

## INTRODUCTION

The sole issue in this matter is whether the government can prove that Robert T. Brockman is "designing quickly" to move assets outside of the reach of the government, rendering them unavailable for collection should the government someday establish that he failed to report all of his income.

As detailed more fully in prior filings, BCT Limited ("BCT"), the trustee of the A. Eugene Brockman Charitable Trust ("AEBCT"), made a proposal to the Internal Revenue Service to place $1.45 billion in an account or accounts in the United States to be available for any liability determined to be owed by Mr. Brockman upon either the settlement or final appeal of the Tax Court case. Dkt. No. 38-1, Ex. A; *see also* No. 38 at 1–5. The government declined to consider this proposal, *see* Dkt. No. 42 at 1–2 and Attach. A, and argued that this Court should ignore its existence. *Compare* Dkt. No. 39 at 1–6, *with* Dkt. No. 41 at 6–12.

During the conference held on June 28, 2022, the Court requested supplemental briefing as to status of BCT's efforts to secure Mr. Brockman's potential tax liability until the pending Tax Court matter is fully resolved. Prior to and at the time of the conference, counsel for BCT was seeking to post a bond or obtain a letter of credit through the use of funds held in Switzerland by Mirabaud & Cie SA ("Mirabaud") in the bank account of Spanish Steps Holdings Ltd. ("SSHL"), which is wholly owned by AEBCT. Srere Decl. ¶¶ 2–3. To this end, SSHL's Swiss counsel had engaged in multiple discussions with Mirabaud concerning the documentation that Mirabaud would require, and the terms of the

proposed transaction. Srere Decl. ¶ 5. Then on Friday, July 8, 2022, Mirabaud for *the first time* informed SSHL's Swiss counsel that a freeze had been placed on SSHL's Mirabaud account by a prosecutor in Geneva in October 2020, information that SSHL's Swiss counsel promptly reported to BCT's U.S. counsel. Srere Decl. ¶¶ 6–7. SSHL's Swiss and BCT's U.S. counsel are now engaged in efforts to determine whether a portion or all of the funds in SSHL's account at Mirabaud may nonetheless be used to secure payment of any tax liability that is ultimately found to be due from Mr. Brockman. Srere Decl. ¶ 8. In short, BCT's efforts to use the funds in SSHL's Mirabaud account to post a bond with or provide a letter of credit to the IRS are very much in a state of flux, and likely will be the subject of further updates to the Court.

It is Mr. Brockman's position that, even without regard to the issue of whether and when a bond or letter of credit may be provided by BCT or SSHL, the jeopardy assessment against Mr. Brockman should be abated and the jeopardy levy should be released. First, there is no jeopardy: the government's core contention is that Mr. Brockman is the true owner of the assets of AEBCT, which includes the Reynolds & Reynolds Company ("Reynolds"), an Ohio company valued in excess of $5 billion that has operations in Houston, Texas. Dkt. Nos. 10 at 4, 19; 35 at 3, 24–25; 35-1, Ex. 4 at 2; 38 at 3. Second, and as fundamental, the government has not met its burden of showing that Mr. Brockman is "designing quickly" to put assets outside the reach of the government. Dkt. Nos. 10 at 5–24; 35 at 1–3; 41 at 1–5.

Mr. Brockman also notes that, to the extent that significant developments concerning BCT's and/or SSHL's ability to post a bond or provide a letter of credit may

- 2 -

take place over the next several weeks, it may be important for the Court to allow further supplemental briefing or status reports on this issue before conducting a hearing or making a determination on the pending motion.

## SUPPLEMENTAL FACTS

The government has contended, in prior filings and during the June 28, 2022 conference, that BCT may not be able to post a bond or provide a letter of credit because BCT's "proposal . . . appears to require the release of funds frozen in Swiss accounts by the Swiss authorities, who may have its own claim to the funds." Dkt. No. 39 at 4. The government never provided documentation of this contention, and counsel for Mr. Brockman responded that neither they nor counsel for BCT were aware of any freeze by Swiss authorities on SSHL's Mirabaud account. Dkt. No. 41 at 10–11.

On Friday, July 8, 2022, counsel for BCT informed counsel for Mr. Brockman that they had *learned that day* that the Public Prosecutor's Office of the Canton of Geneva (the "Geneva prosecutor") had in fact placed an order of attachment—in effect, a freeze—on the account on October 28, 2020, shortly after the indictment of Mr. Brockman in *United States v. Brockman*, Cr. No. 4:21-cr-0009-GCH (S.D. Tex.). Swiss counsel for SSHL had also *learned of the freeze for the first time on July 8, 2022*, in a call and subsequent correspondence with Mirabaud.[1] Srere Decl. ¶ 6 and Ex. A.

---

[1] Copies of a certified translation and French-language letter from Mirabaud on July 8, 2022 to SSHL's Swiss counsel, providing a redacted copy of the Geneva prosecutor's October 28, 2020 attachment order, are submitted as Ex. A to the Declaration of Mark A. Srere ("Srere Decl.").

- 3 -

The government contends that AEBCT is a sham, and that Mr. Brockman is the true owner of its assets, including Reynolds. Dkt. Nos. 10, Ex 3 at 43–52; 21 at 8–30. Mr. Brockman denies these allegations. From the outset of the jeopardy assessment proceedings before the IRS, Mr. Brockman has also pointed to the obvious fact that, under the government's theory, collection of any potential tax liability is not in jeopardy because Reynolds, an asset that the government contends is owned by Mr. Brockman, is located in the United States and valued well in excess of the purported liability assessed against Mr. Brockman. *See, e.g.*, Dkt. Nos. 10 at 4, 19; 35 at 3, 24-25, Ex. 4 at 2; 38 at 3.

From BCT's perspective as the trustee of AEBCT, these contentions—the government's assertion that Mr. Brockman owns Reynolds, and Mr. Brockman's response that, based on the government's position, no jeopardy can exist—pose a direct threat to AEBCT's most valuable asset, and have had an immediate and on-going impact on AEBCT. In the March 15, 2022 letter to the IRS in which BCT first raised the issue of using the funds in SSHL's Mirabaud account to ensure payment of any tax determined to be due against Mr. Brockman, BCT's counsel set out that BCT made this proposal to protect the interests of AEBCT and to address the impact that the pendency of the jeopardy assessment and jeopardy levy has had on the operations and charitable programs of the AEBCT. Dkt. No. 38-1, Ex. A at 1–2. According to BCT in the March 15, 2022 letter to the IRS, "the jeopardy assessment and related allegations have created a great deal of uncertainty about the Trust's substantial shareholding in [Reynolds ] . . . , an operating company based in the United States that employs more than 4,400 people and [is] currently worth in excess of $5 billion, and the annual dividend distributions attached to that

- 4 -

shareholding." Dkt. 38-1, Ex. A at 1-2. BCT's letter also stated that the jeopardy assessment has given rise to "uncertainty with finding financial institutions willing to maintain custody of significant assets of the Trust," disrupting "the Trust's ability to meet existing charitable commitments and expand future charitable giving." Dkt. 38-1, Ex. A at 2.

The IRS flatly refused to consider BCT's March 15, 2022 proposal. Dkt. No. 42 at 1–2; Srere Decl. ¶ 4. Subsequently, BCT's counsel engaged in further correspondence and discussion with the IRS to determine what may satisfy the IRS as a means to secure payment of any tax liability determined to be due, and to allow for release of the jeopardy assessment. Srere Decl. ¶ 4. As part of these efforts, SSHL's Swiss counsel also engaged in several discussions with Mirabaud concerning the possible manner in which the IRS's requirements may be met. Srere Decl. ¶ 5.

At no time prior to last Friday, July 8, did anyone at Mirabaud inform counsel for SSHL that the Geneva prosecutor had implemented a freeze on the account. Srere Decl. ¶ 6. Throughout, Mirabaud had multiple discussions with Swiss counsel for SSHL concerning BCT's access to the funds. Specifically, as discussed in earlier filings, there had been litigation in the Bermuda courts to determine the appointment of a trustee for AEBCT. Dkt. Nos. 10 at 12–16; 35 at 11–14, Ex. 4 at 8–11. This litigation was resolved in a series of decisions by the Bermuda courts that appointed BCT as trustee in 2021. Dkt. Nos. 10 at 12–16; 35 at 11–14. Mirabaud took the position that, before recognizing and taking direction from SSHL, it needed the decisions reduced to an order by the Bermuda court, which has recently been done, and that the Bermuda court order would need to be

domesticated as an order by the Swiss court, which is in the process of being addressed. Mirabaud was made fully aware that the purpose of BCT's efforts was to make the funds in SSHL's Mirabaud account available to secure payment of any potential tax liability determined against Mr. Brockman. Srere Decl. ¶ 5.

Since learning on Friday of the implementation of a freeze by the Geneva prosecutor, BCT's counsel and Swiss counsel for SSHL have undertaken to determine the extent to which a portion or all of the funds in SSHL's Mirabaud account may nonetheless still be used to secure payment of any potential tax liability determined against Mr. Brockman. Srere Decl. ¶ 8. It is both premature, and not Mr. Brockman's place, to comment on the potential options that may be available to BCT. It is fair to say, however, that BCT is continuing in its efforts. *See* Srere Decl. ¶ 8.

For this reason, Mr. Brockman recognizes that there may be a need to ask the Court for an additional opportunity to supplement the record, and to allow for more time to see how the circumstances evolve. Dkt. No. 38 at 7–10.

## ARGUMENT

I. **The IRS Has Never Had Any Valid Basis For The Jeopardy Assessment And Jeopardy Levy.**

Whether Mr. Brockman owes any additional taxes is not before this Court. That issue will be decided by the United States Tax Court in *Brockman v. Comm'r*, No. 764-22 (T.C.).

Rather, as the government does not dispute, the sole issue before this Court is whether the collection of any tax liability subsequently determined against Mr. Brockman

will be jeopardized by delay. *See* Dkt. Nos. 10 at 2, 23; 21 at 47–49; 35 at 1, 5–6. The burden is on the government to prove that the IRS's collection activities, which are based on a jeopardy assessment and jeopardy levy, are reasonable. *See* IRC § 7429(g)(1). To prevail, the government must show that the IRS is reasonable in its view that Mr. Brockman "is or appears to be designing quickly to place . . . property beyond the reach of the Government." *See* Treas. Reg. § 1.6851-1(a)(1)(ii); Dkt. Nos. 10 at 2; 35 at 1, 4–5.

There is and never was any evidence to support the IRS's contention that Mr. Brockman is or was "designing quickly" to place assets beyond the reach of the government. Instead, the government has relied on baseless conjecture, in the absence of evidence, to grab Mr. Brockman's bank accounts and his retirement pay, to place liens on his properties and the properties of others, and even to empty his wife's bank accounts. At the same time, the government has repeatedly asked this Court to ignore that, if the government's position as to Mr. Brockman's tax liability is correct, there are available assets in the United States that far exceed the purported tax liability.

**A.     The Government Wants This Court To Ignore The Existence Of Assets From Which Any Potential Tax Liability Could Be Fully Recovered.**

It has always been disingenuous for the government to have contended that collection of any tax that may be found to be due and owing has ever been in jeopardy.

The government nowhere disputes that, under the IRS's theory of liability, Mr. Brockman is the indirect owner of Reynolds, a U.S. company the value of which significantly exceeds the purported tax liability against Mr. Brockman. *See* Dkt. Nos. 10 at 4; 35 at 24–25; 41 at 5–6. Moreover, the government has never contended that any action

has occurred to conceal, dissipate, transfer, or diminish the value of Reynolds. *See* Dkt. Nos. 10 at 4, 19; 35 at 24–25; 41 at 5–6; *see, e.g.*, *Fumo v. United States*, No. 13-3313, 2014 U.S. Dist. LEXIS 77082, at *97 (E.D. Pa. June 5, 2014) (rejecting a finding of jeopardy when there are sufficient assets "to pay the assessed taxes if the Tax Court ultimately finds them due and owing").

### B. The Government's Allegations That Mr. Brockman Was "Designing Quickly" To Dissipate Assets Are Wholly Baseless.

Mr. Brockman's prior filings have established that the IRS has never had any valid basis to support its jeopardy assessment and jeopardy levy against him. To summarize:

- The government cited to Dorothy Brockman's three routine and public real estate transactions, and the public listing of a fourth property for sale—all done in preparation for her life after her husband's death—baselessly to contend that Mr. Brockman was somehow dissipating assets. The government offers zero evidence of any attempt to dissipate or otherwise move the proceeds from these transactions outside the reach of the government. *See* Dkt. Nos. 10 at 2–3, 5–12; 35 at 6–11; 41 at 3; *see also Fumo*, 2014 U.S. Dist. LEXIS 77082, at *86–87 (abating jeopardy assessments when the IRS was able to "trace Plaintiff's real property transfers using only public databases and public records").

- The government incorrectly described Bermuda legal proceedings, *see, e.g.*, Dkt. No. 10 at 12–16; *compare* Dkt. No. 21 at 72, *with* Dkt. No. 21, Gov't Ex. 5 (cited in Dkt. No. 21 at 72 n.292); *see also* Dkt. No. 35-1, Ex. 2 at 7, ¶ 27(2); ignored decisions by Bermuda courts, *see, e.g.*, Dkt. Nos. 10 at 12–16; 10-1, Ex. 16 at ¶¶ 4, 23–25, 59; 10-1, Ex.

17 at 2 (preamble) and ¶ 2; mischaracterized and misstated actions by Dorothy Brockman, *compare* Dkt. No. 21 at 71, *with* Dkt. No. 21, Gov't Ex. 26 at ¶¶ 9, 13 (cited in Dkt. No. 21 at 71 n.289); and in effect misrepresented the import of those proceedings, which have no bearing on whether Mr. Brockman had been "designing quickly" to move assets. *See* Dkt. No. 10 at 23–24; No. 35 at 18–24; No. 41 at 3–5; *see also Burd v. United States*, 774 F. Supp. 903, 907 (D.N.J. 1991) (abating jeopardy assessment on finding that "[i]f the IRS had conducted a simple investigation there would have been absolutely no basis for the jeopardy assessment").

- The government was compelled to file a Notice of Correction acknowledging that the single allegation of recent activity that was referenced in its nearly 44-page summary of the criminal investigation was false. Dkt. No. 34; *cf.* Dkt. No. 21 at 7–47, 59–63; *see also* Dkt. Nos. 35 at 14–16; 41 at 4; *Fumo*, 2014 U.S. Dist. LEXIS 77082, at *77 and *87 n.18 (finding that actions must "actually [be] occurring quickly" and that "prior illegal activity . . . is not adequate to show that a taxpayer is or appears to be designing quickly to place assets beyond the reach of the government").

- The government bizarrely contended that Mr. Brockman was concealing his activities based on information that the IRS learned from disclosures to the IRS made by or on behalf of the Brockmans. *Compare* Dkt. No. 10 at 5–12, 23–24, *with* Dkt. Nos. 35 at 18–24; 41 at 4–5; *see Fumo*, 2014 U.S. Dist. LEXIS 77082, at *64 ("Filing forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from . . . the IRS.") (internal quotations omitted); *Lindholm v. United States*, 808 F. Supp. 3, 6 (D.D.C. 1992) (rejecting jeopardy and concluding that "despite the complexity

- 9 -

with which plaintiff arranged his assets, he apparently did not 'hide' them"). *See generally* IRC § 7429.

In sum, the government's arguments are nothing more than an empty grab-bag of baseless allegations.

## II.     This Court Should Stay Collection Actions By The IRS.

IRC § 7429(b) provides this Court "broad discretion" in reviewing jeopardy assessment cases, allowing the Court to abate the jeopardy assessment, release the jeopardy levy, or "take such other action as the court finds appropriate." *Mrs. Phil. Home for Senior Citizens, Inc. v. United States*, No. 93-2355, 1993 U.S. Dist. LEXIS 19501, *17–18 (D. Md. 1993); IRC § 7429(b)(4).  "It is quite consistent with the purpose of § 7429, which provided judicial review for I.R.S. jeopardy assessments, for Congress to have granted the district courts the ability to check the virtually unfettered power of the I.R.S. to cause severe hardships, even economic destruction, to taxpayers prior to a resolution of the existence, and extent, of any tax liability." *Mrs. Phil. Home for Senior Citizens*, 1993 U.S. Dist. LEXIS 19501, at *18–19.  Thus, for example, in *DeLauri v. United States*, 492 F. Supp. 442, 446 (W.D. Tex. 1980), the District Court allowed the IRS to maintain tax liens but enjoined enforcement pending resolution of the taxpayer's liability by the Tax Court, concluding that "the Government's legitimate interest in collecting its revenues must be balanced against the taxpayer's need to continue legitimate business operations."

Not only is there a dearth of evidence that Mr. Brockman is "designing quickly" to move assets beyond the reach of the government, it is beyond the pale to suggest that he will undertake such action during the pendency of this motion.  Mr. Brockman is bedridden

and in home hospice care.  Simply put, he is dying.  *See Walker v. United States*, 650 F. Supp. 877, 885 (E.D. Tenn. 1987) (abating jeopardy assessment when the taxpayer was "in a questionable mental and physical state as far as his ability to dissipate assets was concerned.").

Recognizing the inevitable course of Mr. Brockman's illness, his wife Dorothy made the decision for them to move to a smaller, less expensive home closer to her son and his growing family.  She is seeking to sell their former home, which has belonged solely to her for 25 years.  She should not be put in the position of taking that step only to have the government take the proceeds of the sale.  Similarly, the main source of income for the Brockmans prior to the issuance of the jeopardy assessment was Mr. Brockman's retirement pay from Reynolds.  Today, those payments are being made directly to the government.  A stay pending the resolution of this motion would make these funds available to Mrs. Brockman during what is without question a challenging time.

Dorothy Brockman's house, the retirement payments, and all of the other bank accounts and properties that have been seized or liened by the government are the proceeds of earnings by the Brockmans in the United States.  There is no allegation that Mr. Brockman failed to pay taxes on his U.S. income, nor has there ever been any allegation of any wrongdoing whatsoever by Dorothy Brockman, who has filed separate tax returns for decades.

Moreover, even if the government seizes every last penny from the Brockmans, the total will come nowhere close to the alleged tax liability.  If the government proves its case against Mr. Brockman, however, the value of Reynolds alone—a company based in

- 11 -

Houston and Ohio—is sufficient to cover the full amount and more. Further, it is the Mirabaud account, and not the personal accounts and properties of the Brockmans, that hold funds as to which the government contends taxes were not paid. At a certain point—and we are there—the jeopardy assessment and jeopardy levy serve only to punish Mr. Brockman and his wife, and do nothing to address any valid government interest.

At a minimum, we respectfully ask that this Court stay collection during the pendency of the motion to abate the jeopardy assessment and release the jeopardy levy.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Brockman's previous filings, the jeopardy assessment should be abated and the jeopardy levy should be released. In the alternative, and at a minimum, IRS collection actions should be stayed.

Dated: July 15, 2022

/s/ *Jason S. Varnado*
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
Julia N. Camp
Texas Bar No. 24123598
SDTX Ad. ID No. 3688104
Email: juliacamp@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*Admitted Pro Hac Vice*)
New York Bar No. 2870251

Email: fjackson@jonesday.com
Michael J. Scarduzio (*Admitted Pro Hac Vice*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*Admitted Pro Hac Vice*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*Admitted for Pro Hac Vice*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450

*Attorneys for Plaintiff Robert T. Brockman*

- 14 -

## CERTIFICATE OF SERVICE

I certify that on the 15th day of July, 2022, I electronically served this document on all counsel of record.

/s/ *Michael J. Scarduzio*
Michael J. Scarduzio