**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22-cv-00202-GCH |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFF'S SECOND SUPPLEMENTAL**
**MEMORANDUM (1) IN SUPPORT OF MOTION FOR DETERMINATION**
**ON COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT**
**OF JEOPARDY ASSESSMENT AND JEOPARDY LEVY OR**
**(2) IN THE ALTERNATIVE, FOR A STAY OF IRS COLLECTION**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................4

I.   Brockman knew that the funds in the Swiss Mirabaud account were frozen when he
     incorrectly suggested to this Court that they could be used to resolve any jeopardy
     ………………………………………………………………………………...…..4

II.  The remainder of Brockman's Supplemental Memo regurgitates the same arguments he
     made in prior filings………………………………………………………………….8

III. The United States recently uncovered evidence that Brockman sold real property
     *immediately after* the jeopardy assessment, establishing the fact that he is currently
     disposing of assets and jeopardizing collection…………………………………..11

IV.  Brockman's request to stay IRS collection activity violates the Anti-Injunction Act
     and I.R.C. § 6863(a)……………………………………………………………15

CONCLUSION………………………………………………………………………..19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bob Jones University v. Simon*, 416 U.S. 725, 745-748 (1974)..............................................16

*DeLauri v. United States,* 492 F. Supp. 442, 445 (W.D. Tex. 1980)................................16, 17, 18

*Harvey v. United States*, 730 F. Supp. 1097, 1101, 1104, 1107 (S.D. Fla. 1990) ........................11

*Haskin v. United States*, 444 F. Supp. 299, 302, 304 (C.D. Cal. 1977), S. Rep. No. 94-938 at 365
......................................................................................................................................11

*LaRosa v. United States,* 841 F.2d 544 (4th Cir. 1988))........................................................ 17, 18

*Loretto v. United States*, 440 F. Supp. 1168, 1171 & n. 4, 1172, 1173 (E.D. Pa. 1977)..............11

*Mrs. Phil. Home for Senior Citizens, Inc. v. United States*, No. 93-2355, 1993 U.S. Dist. LEXIS

19501, *17–18 (D.Md. 1993) .......................................................................................... 16, 17, 18

*United States v. Brockman*, Case No. 4:21-cr-00009 (May 23, 2022) (Dkt. 263)..................14, 19

*Wellek v. United States*, 324 F. Supp. 2d 905, 911, 912, 913-914 (N.D. Ill. 2004)..................... 11

## FEDERAL STATUTES

26 U.S.C. § 6863 ............................................................................4, 7, 15, 16, 17, 18

26 U.S.C § 6863(a) ........................................................................................15

26 U.S.C § 6863(b)(3) ....................................................................................18

26 U.S.C § 7421(a) ........................................................................................14

26 U.S.C § 7429 ..............................................................................................8

26 U.S.C § 7429(b) ........................................................................................18

## FEDERAL RULE OF CIVIL PROCEDURE

Fed. R. Civ. P. 62(c) .....................................................................................17

Fed. R. Civ. P. 62(d) .....................................................................................17

Defendant, the United States of America, responds to Plaintiff, Robert T. Brockman's

("Brockman") Second Supplemental Memorandum (1) in Support of Motion for

Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment

and Jeopardy Levy, or (2) in the Alternative, for a Stay of IRS Collection, Dkt. 53,

("Supplemental Memo" or "Supp. Memo"), and states as follows.

## **INTRODUCTION**

Brockman requested supplemental briefing at this Court's status conference on June

28, 2022, to address the status of funds frozen by Swiss authorities in the bank account of

Spanish Steps Holdings Ltd. ("SSHL") at Mirabaud & Cie SA ("Mirabaud").  SSHL is

wholly owned by the A. Eugene Brockman Charitable Trust ("AEBCT"), with BCT

Limited ("BCT") acting as trustee.  Months ago, BCT sought to provide IRS a lien

against transferred assets, a control agreement, or to obtain a letter of credit as security

against Brockman's potential federal income tax liabilities using the funds in the

Mirabaud bank account in Switzerland.[1]

Brockman claims that on "Friday, July 8, 2022, Mirabaud for *the first time* informed

SSHL's Swiss counsel that a freeze had been placed on SSHL's Mirabaud account by a

prosecutor in Geneva in October 2020."  Supp. Memo, p. 2 (emphasis in original).

Brockman asserts that neither he, nor his Swiss counsel working for entities he formed,

were aware that almost *two years ago*, the Swiss froze the Mirabaud accounts.

---

[1] Dkt. #38-1, Ex. A.

Contradicting his own assertions, the United States points out that Brockman knew as early as February 2022 (and possibly as early as November 2021), that the Swiss accounts were frozen.  Brockman also recognizes that the United States further alerted him *four months ago*, on March 21, 2022, that BCT and Brockman's "proposal … appears to require the release of funds frozen in Swiss accounts by the Swiss authorities, who may have its own claim to the funds."  *See* Dkt. 39, p. 4.  Thus, Brockman knew as early as February (or at the latest March) of this year the Mirabaud funds were frozen.

Despite Brockman's claimed lack of knowledge, *nothing* has happened to further Brockman's efforts to resolve the jeopardy assessment. Although it is difficult to believe that BCT and Brockman would not have been informed by the Swiss authorities that the Mirabaud account was frozen, they now acknowledge that the account has been frozen by a Swiss prosecutor since October of 2020.  Accordingly, it is clear that BCT's alleged ability to use those funds to post a bond or provide a letter of credit to secure Brockman's tax liability was never possible.

The remainder of the Supplemental Memo regurgitates Brockman's prior arguments. He again avers that "there is and never was any evidence to support the IRS's contention that Mr. Brockman is or was 'designing quickly' to place assets beyond the reach of the government."  Supp. Memo, p. 7.  Brockman throws around words like "baseless," "disingenuous," and "bizarre" in characterizing the United States' position; yet, conspicuously absent from his Supplemental Memo is *any* evidence rebutting the substantial evidence the United States presented to the Court to meet its burden.

Brockman again uses the wrong standard in asserting that the United States must

prove that he is designing quickly to remove assets.  The actual standard is lower: the United States must prove that the IRS's belief that Brockman is designing quickly to remove assets was "reasonable."  As explained below, this is a low standard that is similar to probable cause in a criminal context.  Additionally, the standard does not require that Brockman actually be the person moving the assets away from the government's ability to collect them.  The standard is broad enough to include actions of Brockman's agents, nominees and those holding a power of attorney for him.  Relatedly, the United States recently learned of additional evidence showing that Brockman, or his agents, are liquidating assets.

Brockman also contends that there is no jeopardy because if the government's theory is correct that Brockman is the true owner of Reynolds and Reynolds Company ("R&R") through a chain of other entities, R& R's value exceeds any potential tax liability. Among other things, it is that very ownership chain of nominee entities, including a Brockman nominee that sits in a foreign tax haven, that endangers collection and creates jeopardy.[2]  While that situation exists, collection against the R&R stock, or its assets as Brockman suggests, would be difficult at best due to the layered ownership. Despite the fact that Brockman may have access to R&R stock through his nominees (though it appears he refuses to access it), this does not negate the jeopardy he created for collection of his income tax liabilities.

Finally, Brockman asks the Court to stay collection.  As explained in our prior

---

[2] Gov. Ex. 1 at paragraph 25.

briefing, staying these proceedings would violate the Anti-Injunction Act.  Brockman is

getting his due process, and he has the ability to stay collection if he posts a bond in

accordance 26 U.S.C. § 6863 and IRS procedures.

## ARGUMENT

I.   **Brockman knew that the funds in the Swiss Mirabaud account were frozen when he incorrectly suggested to this Court that they could be used to resolve any jeopardy.**

Brockman states that, on "July 8, 2022, Mirabaud *for the first time* informed SSHL's

Swiss counsel that a freeze had been placed on SSHL's Mirabaud account by a

prosecutor in Geneva in October 2020." Supp. Memo p. 2.  There are glaring problems

with this assertion.

Almost *two years* have passed since the Mirabaud funds were frozen, and Brockman

claims he just learned two weeks ago that a freeze is in place.  That two years passed

without Brockman or his Swiss counsel investigating the reason for the freeze or the

authorities who initiated it strains credulity.  Any claim that Brockman was unaware the

Swiss account was frozen would appear to be a misrepresentation to this Court, and as

shown below, Brockman knew that the funds in the Swiss Mirabaud account were frozen

when he argued to this Court that they were available to secure and resolve any jeopardy

on his U.S. tax debt.

Brockman's alleged recent discovery is not only dubious, it is also rebutted by the

very documents he previously submitted in this case.  Brockman repeatedly declares that

the government misconstrues the Bermuda litigation; yet, it is the Bermuda litigation that

demonstrates Brockman's furtiveness and contradicts his own representations about the

4

frozen Swiss account.

Counsel for Brockman represented to this Court that "[w]e are unaware of action by the Swiss Government. We are unaware of any restraint by Swiss Government in this account."  See June 28, 2022, Hearing Transcript, p. 14 at ll. 3-10.[3]  Brockman's own reply, dated February 7, 2022, cited a Bermuda Court document dated November 17, 2021, that stated "the petitioner and the Trustee are unable to access US $3 billion of the Trust's assets, including effectively all the Trust's liquid assets (more than US $1.4 billion)…." *See* Brockman Reply Dkt. 35, p. 7, ¶ 27(2) of Exhibit 2 (Dkt. 35-1).  In the very next paragraph (¶ 28(4)) the document states the "Board of the Respondent have caused the Petitioner's [Spanish Steps Holdings Ltd.] bank accounts with Bank Mirabaud and Bank of Singapore to be frozen …."[4]  It is Spanish Steps Holdings' Mirabaud account in Switzerland that was frozen by the Swiss government in October 2020.  *See* Dkt. 53-1 at paragraph 6.  This demonstrates that *Brockman knew as early as February 2022 (and possibly as early as November, 2021)* that the Swiss account was frozen.

Further, according to the affidavit of Mrs. Brockman filed in the Bermuda litigation, "[t]he trust structure also holds various amounts in bank accounts in Bermuda, Switzerland and Singapore.  The accounts in Switzerland hold approximately US $1.4 billion and the accounts in Singapore US $15 million.  It appears from what I have been told by **my legal advisors that …. these accounts are frozen and** Medlands has been

---

[3] Gov. Ex. 48, Hearing transcript
[4] Brockman Reply Dkt. 35, p. 8, ¶ 28(4) of Exhibit 2 (Dkt. 35-1).

unable to draw funds from them for many months." *See* Brockman Motion for Determination, Dkt. 10-1, Exhibit 16, pg. 10 at ¶ 25 (emphasis added).[5]

In the same Bermuda litigation, 2018 No. 376, dated March 26, 2021, BCT Limited was appointed to take over as trustee from Medlands. *See* Dkt. 10-1, Exhibit 17. Medlands, as trustee of AEBCT, could not access funds due to the frozen Swiss accounts, and it is unbelievable that BCT Limited (who took over for Medlands) was not aware, or was not informed, that the accounts were frozen. It was BCT Limited who sent, through its counsel, the March 15, 2022 letter ("BCT Letter") to the IRS knowing the Swiss accounts were frozen. This letter was later relied on by Brockman to claim there was no longer any jeopardy.

Further, even assuming Brockman did not know in February that the funds were frozen by the Swiss authorities (which is unlikely), he certainly knew as early as March, 2022, that the Swiss froze the Mirabaud account. In our brief filed on March 21, 2022, we told the Court that Brockman's proposal (i) lacked specific and necessary details, and (ii) acknowledges that its proposed ideas are "conditional" on the approval of the Supreme Court of Bermuda and Swiss authorities releasing funds. Dkt. 39, p. 4. We also stated that "[t]he proposal also *appears to require the release of funds frozen in Swiss accounts by the Swiss authorities, who may have its own claim to the funds.*" *Id.* (emphasis added).

---

[5] It appears Brockman may have known *as early as January 21, 2022,* when he filed his Motion for Determination.

Brockman pleads ignorance, asserting that the "government never provided documentation of this contention." Supp. Memo, p. 3. Notwithstanding that it is Brockman and his Swiss counsel that have access to information about his Mirabaud account, Brockman faults the United States for failing to present documentary evidence that $1.45 billion of his funds are frozen by the Swiss. This blame is misplaced, as it is Brockman and his Swiss counsel that failed to investigate the status of the Mirabaud funds. Moreover, Brockman and BCT attorneys appear to have already known of the Swiss prosecutor's involvement with the Mirabaud account in March of 2022. Otherwise, their March 15, 2022 BCT Letter would not have included a request that the IRS contact "Bank Mirabaud and the relevant *Swiss courts and public prosecutors.*" Dkt. 38-1 p. 6. (emphasis added).

In the end, the Mirabaud funds have been unavailable for use as a bond or security for a letter of credit since October of 2020. Even if we assume the veracity of Brockman's claim that he did not find out the funds were unavailable until July 8, 2022, the fact that Brockman's proposal to the government envisioned using the Mirabaud funds without first determining if the funds could even be used is itself problematic and shows the non-serious nature of Brockman's proposal. Rather, the proposal was not (i) a statutory bond required by Section 6863 to stay collection of a jeopardy assessment, (ii) a signed agreement between the parties, or (iii) an unconditional offer to secure collection of his tax liabilities. The proposal was merely a conditional invitation for further discussion that at the start was an impossibility. Additionally, the IRS rejected the proposal and Brockman has offered no other alternatives.

## II.     The remainder of Brockman's Supplemental Memo regurgitates the same arguments he made in prior filings.

Brockman argues that the United States has not met its burden of proving that he is designing quickly to move assets beyond the reach of the United States.  This is the wrong standard.  The United States need only prove that the IRS has a "reasonable belief" that Brockman appears to be designing quickly to move his assets.  That is, we must prove the jeopardy action is reasonable under the circumstances.

As we explained in our prior briefing, while Section 7429 does not set forth specific guidelines as to what constitutes "reasonable under the circumstances," the courts have determined that this term means something more than not arbitrary and capricious and something less than supported by substantial evidence.   In other words, the standard of reasonableness required to support a determination under review pursuant to § 7429 is not a rigorous one. The burden has been described as similar to probable cause in a criminal case.

The jeopardy assessment is reasonable and proper based on Brockman's past and current actions to hide his assets during the years at issue. As part of the IRS's investigation, it learned of Brockman's extensive (and unprecedented) offshore scheme using multiple foreign entities, domestic entities, and foreign accounts to hide his income and assets. Based on this investigation, the IRS learned that Brockman has:

(1) extensive involvement with setting up his business activities and transactions in the names of other entities and in an obfuscating way;

(2) significant involvement in foreign trusts and foreign businesses;

(3) access to and use of multiple foreign bank accounts; and

(4) numerous connections to, as well as having assets located in, well-known tax haven jurisdictions. These locations make the collection of assets by creditors difficult, if not impossible.

The investigation also revealed that Brockman's complex offshore empire used entities located in at least five different known tax havens: Switzerland, Bermuda, British Virgin Islands, Nevis, and the Cayman Islands. This offshore scheme consisted of at least eight different foreign trusts in Bermuda, fourteen foreign corporations in Nevis, and entities in the Cayman Islands, BVI, and Bermuda. Additionally, Brockman used nine U.S. corporations and twelve different foreign bank accounts located in Bermuda and Switzerland. Finally, he used numerous foreign accounts, foreign trusts, and foreign and domestic corporations to acquire and hold personal assets (Colorado real estate, a luxury yacht, and an airplane).  These facts are more than is needed to meet the non-rigorous, probable cause standard necessary to show that the jeopardy assessment is reasonable.

Brockman continues to repeat his claim that no jeopardy exists because if the government proves its case, then it theoretically can collect from Brockman's R&R stock. But Brockman ignores the legal standard for jeopardy assessments, the layered foreign ownership of R&R, and Brockman's current propensity to dispose of his assets.

Brockman's argument improperly nullifies the jeopardy statute by suggesting that the government must first prove nominee ownership and defeat layers of foreign ownership on one asset before ever resorting to jeopardy procedures to collect other assets.  But it should be noted that the ownership of R&R is layered up through an offshore trust and several offshore companies.  AEBCT (Bermuda) owns Spanish Steps Holdings LLC

9

(Nevis).  Spanish Steps Holdings LLC owns SSHL (BVI), which owns UCSH

(Delaware).  UCSH owns 100% of R&R.  This layered, complex ownership of R&R

supports a finding of jeopardy.

R&R is not a publicly owned company.  Thus, the entities owning it could sell or

transfer all or part of their stock, just as Brockman sold his 1% interest in Hardwicke and

property in Colorado without the IRS's knowledge.  Further, the entities owning R&R

could pledge or encumber R&R's assets wiping out any equity.  Finally, neither

Brockman nor AEBCT have used R&R stock or assets to post a bond that might stay

collection.

Brockman's improper assertion that the fact that R&R's value is worth far more

than the jeopardy assessment eliminates jeopardy is not supported by the law or the facts.

And it is spurious based on the facts underlying his theoretical proposal in the BCT

Letter.

Brockman asserted that the BCT Letter proposing to use funds from a Swiss

Mirabaud bank account provided the IRS a ready source to fully collect any liability that

may be determined against him.  The result, according to Brockman, was that "[n]o

jeopardy exists, and the jeopardy assessment must be abated, and the jeopardy levy

released." *See* Dkt. 38, p. 5.  Brockman also stated that the BCT Letter completely

resolved any concern the Court or the government may have as to whether collection will

be in jeopardy.  *Id.*  Brockman further stated that the proposal in the BCT Letter was

"wholly determinative of the issues in the complaint, and accordingly the jeopardy

assessment should be abated, and jeopardy levy released."  *Id.* p. 6.  Brockman even

asked this Court to enjoin the IRS collection based on the BCT Letter.

As the government points out, however, and which has now admitted by Brockman, the proposal contained in the BCT Letter was never possible from the start, because Swiss authorities had already frozen the bank accounts that Brockman proposed to use since October 2020.  Because the implementation of the proposal in the BCT Letter was unfeasible, it did not (i) relieve jeopardy, (ii) resolve the concerns about collectability, or (iii) provide a ready source for collection.  In sum, Brockman's assertions that the BCT Letter were dispositive of a lack of jeopardy were simply incorrect, exaggerated, and ignored the facts.  Likewise, Brockman's assertion that potential collection against R&R resolves jeopardy is likewise incorrect, unsupported, ignores facts and fails to resolve jeopardy.

### III.   The United States recently uncovered evidence that Brockman sold real property *immediately after* the jeopardy assessment, establishing the fact that he is currently disposing of assets and jeopardizing collection.

When determining whether the jeopardy assessment is reasonable, the Court can consider any relevant fact or information even if it was not known or considered at the time the IRS made its administrative determination.[6]  Brockman agrees that the Court should consider subsequently available information (*see* Dkt. 37, p. 3; Dkt. 38, p. 6) and he filed two supplement briefs to address the BCT Letter.

In his first supplemental briefing, Brockman asserts that there is a complete lack of

---

[6] *Wellek v. United States*, 324 F. Supp. 2d 905, 911 (N.D. Ill. 2004); *Haskin v. United States,* 444 F. Supp. 299 (C.D. Cal. 1977) (citing S. Rep. No. 94-938 at 365); *Harvey*, 730 F. Supp. 1097, 1104 (S.D. Fla. 1990); *Loretto*, 440 F. Supp. 1168, 1173 (E.D. Pa. 1977)

evidence that he was, or appeared to be, 'designing quickly' to move property beyond the reach of the government.  *See* Dkt. 38 p. 10.  The United States did not respond to this supplemental briefing as the Court only recently granted the motion to file such a brief.

In his most recent brief, Brockman again argues that there is no evidence to support the contention that he is or was "designing quickly" to place assets beyond the reach of the government.  However, after the United States' January 31, 2022 original response (Dkt. 21) and its March 23, 2022 response in opposition to the motion for supplemental brief, the IRS uncovered an undisclosed, post-jeopardy assessment sale of real property.

On September 23, 2010, Brockman formed Brockman Elk Creek Lot 16 LLC ("Brockman Creek"), a Texas limited liability company.[7]  Brockman was listed as its sole manager and registered agent.[8]  The IRS determined that Brockman Creek has no EIN (employer identification number) or TIN (taxpayer identification number).[9]  The IRS also determined that Brockman Creek did not file tax returns.[10]

On September 28, 2010, Brockman bought real property, Lot 16, in Elk Creek Ranch located in Rio Blanco County, Colorado, for $1,750,000 in the name of Brockman Creek ("Lot 16 Property").[11]  The Lot 16 Property appears to be a lot in Elk Creek Ranch, an exclusive fly fishing, outdoors, and sporting community on some 25,000 acres in Colorado.[12]  On October 1, 2021 (*three weeks after the jeopardy assessment*), Brockman,

---

[7] Gov. Ex. 40 at pp. 1-2.
[8] *Id.*
[9] *See* Gov. Ex. 42 at  paragraph 5.
[10] *Id.*
[11] Gov. Ex. 43
[12] *See* Elk Creek Ranch – Finest Fly Fishing & Big Game Hunting in North America – Finest Fly Fishing & Big Game Hunting in North America, https://elkcreekranch.net

through Dorothy Brockman, sold the Lot 16 Property for $1,450,000.[13]  The IRS has been unable to determine what happened to the proceeds from this property sale.

To recap, on September 7, 2021, the IRS made a jeopardy assessment against Brockman.[14]  On September 9, 2021, Brockman received personal service of the notice of the jeopardy assessment, levies and liens.[15]  Three weeks later, after holding the property for over eleven years,  Brockman quickly sold the Lot 16 Property for what appears to be a significant loss.  Although Dorothy Brockman signed the deed as manager of Brockman Creek,[16] Mr. Brockman was still listed as the manager of Brockman Creek as of April 29, 2021.[17]  And according to filings made with the Texas Secretary of State, Brockman is still listed as the manager of Brockman Creek.[18]  Additionally, it does not appear Brockman Creek is one of the entities which, on November 20, 2020, Brockman resigned control.[19]

On September 9, 2021, after service of the notice of jeopardy assessment on Brockman, the IRS filed regular notices of federal tax lien and special condition liens in Eagle, Garfield, and Pitkin Counties in Colorado.  At the time, the IRS was not aware Brockman owned the Lot 16 Property through Brockman Creek.  Accordingly, the IRS

---

[13] Gov. Ex. 44_(deed) and Gov. Ex. 45 at pp. 2.

[14] Gov. Ex. 24 at ¶ 22.

[15] *Id.* at ¶¶ 29, 30.

[16] Gov. Exs. 44 and 46.

[17] Gov. Ex. 40 at pp. 16.

[18] Gov. Ex. 47.  In addition, Brockman Creek's 2013-2021 Texas Franchise Reports filed with the Texas Comptroller of Public Accounts were signed by Carl B. Linnecke. (Gov. Ex. 40 pp. 5-16).  Linnecke was involved in other Brockman ventures.  For example, Brockman approved and appointed Linnecke to be the president of Mountain Queen Inc.  Mountain Queen Inc. held a vacation home in Aspen, Colorado, and other properties in Colorado for Brockman.  (*See* United States Response, Dkt. 21, pp. 35, 37-39 and Gov. Ex. 2, Jeopardy Report at pp. 21-23).

[19] *See* Gov. Ex. 7 at pp. 15-16.

did not file a notice of federal tax lien against Brockman in Rio Blanco County.

Thus, with no federal tax lien filed and perfected in Rio Blanco County, Brockman transferred/moved property worth $1.45 million beyond the government's reach. This occurred after he was indicted for tax evasion and immediately after the September, 2021 jeopardy assessments. Brockman's assertion that it is "beyond the pale" to suggest he will undertake any actions to move assets beyond the government's reach or hinder collection (*see* Supp. Memo, p. 10), rings hollow and ignores the evidence.

It should be noted that Dorothy Brockman is facilitating the movement of assets beyond the government's reach. The deeds transferring the real property were signed by Dorothy Brockman acting as Brockman's power of attorney. The sales documents transferring Brockman's interest in Hardwick LLC were also signed by Dorothy Brockman acting as Brockman's power of attorney. The deed for the recently discovered October, 2021 sale of the Lot 16 Property was signed by Dorothy Brockman. And the October 2021 sale of real property occurred about one month before Brockman's competency hearing in his criminal case from which the Court ultimately determined that he was competent to stand trial.[20] This is consistent with Brockman's extensive history of conducting business and sales using nominees to complete such transactions. And there is nothing to suggest that he or his agents have stopped doing so.

---

[20] *See* Dkt. 263, *Memorandum Opinion and Order*, *United States v. Brockman*, Case No. 4:21-cr-00009 (May 23, 2022).

**IV.    Brockman's request to stay IRS collection activity violates the Anti-Injunction Act and I.R.C. § 6863(a).**

Although the United States may be willing to voluntarily discuss arrangements that might secure the collection of Brockman's tax liabilities, it should not have to forego its existing collection rights as a condition of those negotiations.  A stay of collection would necessarily require an order enjoining the IRS from collecting the very tax liability for which it has made a jeopardy determination based on collection risk.  Such an order would violate the Anti-Injunction Act and the bond requirements under Section 6863.

Brockman's recurring request in his Supplemental Memo to stay IRS collection of the jeopardy assessment is unsupported by anything other than the fact that Brockman wants relief from IRS collection and he wants to retain the funds from which the IRS is collecting.  This request violates the Anti-injunction Act and the bond requirements under Section 6863.

The Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person …."  26 U.S.C. § 7421(a).  The United States briefed for the Court both the requirements of the Anti-Injunction Act and Section 6863, as well as the reasons why Brockman's request violates these provisions in Dkt. 39, pp.7-10.  We will not repeat those arguments here, except to state that there is nothing new in Brockman's Supplemental Memo that changes the applicability of the Anti-Injunction Act and Section 6863.

Brockman again failed to allege or establish that he will suffer irreparable injury.  Rather, Brockman appears to assert some type of financial difficulty or delay.  To wit, he

asserts that Dorothy Brockman cannot sell their former residence, the IRS seized their bank accounts, and the IRS is seizing his retirement payments.  Brockman essentially asks this Court to enjoin collection because they have little to no funds or that any available funds should be made available to them.  These are not irreparable injuries, as mere financial hardship is insufficient to allege irreparable injury.[21]

Brockman cites to *Mrs. Phil. Home for Senior Citizens, Inc. v. United States*, No. 93-2355, 1993 U.S. Dist. LEXIS 19501, *17–18 (D.Md. 1993) and *DeLauri v. United States*, 492 F. Supp. 442, 446 (W.D. Tex. 1980) as authority for the Court to enjoin collection of taxes. Neither case supports this argument. The *Mrs. Phil* court noted that it did not have the authority to take the action it wished and the *DeLauri* court merely told the IRS to do what 26 U.S.C. § 6863 already required.

First, Brockman quotes a sentence from *Mrs. Phil.*, but that quote is contrary to the ultimate holding. ECF 53 at 10. Even though that court was concerned with the immediate physical welfare of third parties, it still determined that it lacked the authority to enjoin collection. *Mrs. Phil.*, 1993 U.S. Dist. LEXIS 19501, *16–17. The taxpayer there was a charity that operated a nursing home. *Mrs. Phil.*, 1993 U.S. Dist. LEXIS 19501, *2. That court noted that "individuals […] diverted income and [hid] assets of Mrs. Philippines for personal benefit," and that "the record does not support a belief that there is, or is likely to be, any current or future tax or collection evasion action by the corporation." *Id*. at *16.  Meanwhile, the court was concerned that an IRS seizure of the

---

[21] *Bob Jones University v. Simon*, 416 U.S. 725, 745-748 (1974).

operating account would cause "undue hardship to the residents of the senior citizens' home and those operations of Mrs. Philippines which are, in fact, legitimate and truly charitable." *Id*. at *17. Even though the court believed that there were unusual circumstances that warranted taking action to prevent collection, it held that it lacked the authority to do so. *Id*. at 21–22 citing *LaRosa v. United States,* 841 F.2d 544 (4th Cir. 1988). Instead, the district court did used a questionable alternative. It granted a temporary injunction under former Fed. R. Civ. P. 62(c) (now Rule 62(d)) while the taxpayer appealed. The appellate docket reflects that the appeal was dismissed. *Mrs. Phil. v. U.S.*, Case No. 94-1094 Dkt. 45 (4th Cir. 1994). The stay in *Mrs. Phil* would not work in this case because this Court's decision on the jeopardy levy is not appealable and because Rule 62(d) currently requires the posting of a bond or security to secure the unpaid taxes.  Similar to the existing provision of Section 6863 allowing a stay only if a bond is posted, Fed. Rule 62(d) also requires a bond.  In any event, *Mrs. Phil.* was unique and not like this case. Here, there is no evidence that collecting on the jeopardy assessment will subject third parties to physical danger. Nor does the evidence here show that Brockman's AEBCT Trust is "in fact, legitimate and truly charitable." The evidence shows quite the opposite. Even if the AEBCT Trust has engaged in some charitable activities, the evidence shows that it was controlled and operated for Brockman's benefit.

Next, Brockman cites *DeLauri v. United States*, as authority for enjoining collection but this argument is misplaced. 492 F. Supp. 442, 446 (W.D. Tex. 1980). In *DeLauri*, the taxpayer sold several real estate parcels while he was under criminal investigation for tax evasion. He then placed the proceeds of those sales into his doughnut business. When the

17

court decided the matter, the taxpayer's only remaining assets were one parcel of real estate and a note receivable from a failed business, and his doughnut shop. *DeLauri*, 492 F. Supp. at 445. The court's order was that the IRS "shall not enforce its liens by any seizure or sale of Plaintiffs' assets pending the determination by the Tax Court of the actual deficiencies owed by the Plaintiffs." *DeLauri*, 492 F. Supp. at 446. That order is unremarkable because 26 U.S.C. § 6863(b)(3), already prevents the IRS from selling property to enforce its liens until after the District Court and the Tax Court proceedings have ended. The court may have cited to 26 U.S.C. § 7429(b) but it merely reiterated what was already required by § 6863. What is notable about *DeLauri* is that the court held "[t]he transfers of property already accomplished, and any possible future transfers of the remaining property, could seriously jeopardize the collection of any taxes." *DeLauri*, 492 F. Supp. at 446. That court found the jeopardy assessment reasonable even though it questioned the "quickness" of the sales, noting that their timing was suspicious. *Id*. The timing of the sales in *DeLauri* is like the timing of the sales here. In both cases, they occurred while the taxpayer knew he was under criminal investigation for tax evasion. *Id.* at 445.

The authority Brockman cites does not support enjoining tax collection. Instead, as the court in *Mrs. Phil.* noted, "if a district court has determined that . . . the making of the jeopardy is reasonable, the court lacks authority to fashion any remedy." *Mrs. Phil.*, 1993 U.S. Dist. LEXIS 19501, *22 *citing LaRosa v. United States,* 841 F.2d 544 (4th Cir. 1988) (the *LaRosa* Court also disavowed the remedy in *DeLauri* at 546).

As a final note, Brockman once again urges the Court to reject the IRS jeopardy

assessment based on his health. Supp. Memo, pp. 10-11.  The United States notes that the Court recently determined that Brockman was competent.  Dkt. 263, *United States v. Brockman*, Case No. 4:21-cr-00009 (May 23, 2022).  This is therefore not a basis to delay or abate the jeopardy proceeding.

## CONCLUSION

The Court should find that the jeopardy assessments and levies are reasonable, and the tax assessments are appropriate.  The Court should also deny Brockman's request to stay IRS collection of the jeopardy assessments.

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ *Herbert W. Linder*
HERBERT W. LINDER
Ohio Bar No. 0065446
Jonathan L. Blacker
State Bar No. 00796215
John P. Nasta, Jr.
Fla Bar No. 1004432, SDTX 3735958
Attorneys, Tax Division
Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas  75201
(214) 880-9754
(214) 880-9774 (facsimile)
Herbert.W.Linder@usdoj.gov
Jonathan.blacker2@usdoj.gov
John.nasta@usdoj.gov

ATTORNEYS FOR UNITED STATES

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2022, I filed the foregoing document by electronic means on all parties who have entered an appearance through the Court's ECF system, including the following:

Jason S. Varnado
Julia N. Camp
Kathryn Keneally
Frank J. Jackson
Michael J. Scarduzio
Anthony J. DeRiso
Irina K. Bleustein
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Attorneys for Plaintiff

/s/ Herbert W. Linder
HERBERT W. LINDER