UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202-GCH |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF SECOND SUPPLEMENTAL
MEMORANDUM (1) FOR DETERMINATION ON COMPLAINT
FOR JUDICIAL REVIEW AND ABATEMENT OF JEOPARDY
ASSESSMENT AND JEOPARDY LEVY OR (2) IN THE
<u>ALTERNATIVE, FOR A STAY OF IRS COLLECTION</u>**

**<u>Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................5

I.    The Government Has Not Met Its Burden To Sustain The Jeopardy Assessment And Jeopardy Levy. ..................................................................5

    A.    The Government Cannot Meet Its Burden Based On Speculation Or Allegations That Are Proven Wrong. ..................................6

    B.    None Of The Government's Many Prior Contentions Support The IRS's Jeopardy Assessment And Jeopardy Levy. ...............................7

    C.    The Government's New Contention That The Sale Of The Lot 16 Property Supports The IRS's Jeopardy Assessment And Jeopardy Levy Is Baseless. ...........................................................................11

    D.    The Government's Attacks On Dorothy Brockman Are Unwarranted. ..............................................................................12

II.    The Government Misstates The Standard For Determining Whether Jeopardy Exists. ...............................................................................13

III.    The Anti-Injunction Act Does Not Bar This Court From Granting An Interim Stay Of IRS Collection. ...............................................................15

IV.    The Government Is Wrong In Its Contention That Mr. Brockman Knew That The Funds In The Account Of SSHL At Mirabaud Were Frozen Prior To July 8, 2022. ..............................................................................18

CONCLUSION .....................................................................................................24

## INTRODUCTION

The only basis on which the IRS purported to issue a jeopardy assessment and jeopardy levy against Robert Brockman is its contention that he was or is "designing quickly" to move assets outside the reach of the government.  The government bears the burden of proving that the IRS's conclusions were "reasonable under the circumstances." *See* IRC § 7429(g)(1).  Despite repeated attempts, the government has not met its burden.

Mr. Brockman is in home hospice care, bedridden, and dying.  The issue of whether his estate will owe taxes is already pending before the Tax Court.  The government has failed to demonstrate any conduct to support its current contention that Mr. Brockman is "designing quickly" to prevent the government from collecting any tax liability that may be determined by the Tax Court.  In addition, the government cannot refute that there is an asset readily available to ensure collection should the government ultimately prevail in the Tax Court case.

As even the cases cited by the government show, the jeopardy assessment and jeopardy levy provisions exist in the Internal Revenue Code to protect against exigent circumstances—e.g., unexplained cash found in a search, illegal drug-dealing, and the like.[1]

---

[1] *See* Dkt. No. 21 at 73–74 and 74 n.295, *relying on Harvey v. United States*, 730 F. Supp. 1097, 1100–02 (S.D. Fla. 1990) (drug smuggler who did not file tax returns); *Young v. United States*, 671 F. Supp. 1340, 1341–43 (S.D. Fla. 1987) (cash found during two traffic stops of drug smuggler); *Camp v. United States*, 635 F. Supp. 585, 586–87 (E.D. La. 1986) (twice-convicted drug dealer who openly acknowledged illegally earning millions of dollars, and testified before Congress concerning his money-laundering activities); *see also* Dkt. No. 35 at 15-16.

Nothing like this is present in this case.  Rather, the government's arguments for the jeopardy assessment appear to be based on a remedy in search of a reason.

In the Jeopardy Recommendation Report that accompanied the jeopardy assessment and jeopardy levy, the IRS set out three purported grounds for its actions:  (1) four real property transactions conducted by Dorothy Brockman; (2) alleged activity by the Brockmans in Bermuda litigation; and (3) the allegations in *United States v. Brockman*, No. 4:21-cr-00009 (SDTX) (Hanks, J.).  Dkt. No. 11, Ex. 3 at 1–2, 41–58.  As discussed in previous filings and summarized below, none support a jeopardy assessment.

In sum, none of the grounds originally asserted by the IRS show that Mr. Brockman is "designing quickly" to move assets beyond collection:

- Dorothy Brockman's four property transactions—two sales, one listing for sale, and one gift—were all publicly recorded.  *See, e.g., Fumo v. United States*, No. 13-3313, 2014 U.S. Dist. LEXIS 77082, at *86–87 (E.D. Pa. June 5, 2014) (abating jeopardy assessments when the IRS was able to "trace Plaintiff's real property transfers using only public databases and public records"); Dkt. No. 10 at 8–9 and citations therein; No. 35 at 7–8 and citations therein; No. 53 at 8 and citations therein.  Moreover, the gift was reported to the IRS by Mrs. Brockman on a gift tax return.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *64 ("Filing forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from . . . the IRS.") (internal quotations omitted); Dkt. No. 10 at 8–9 and citations therein; No. 35 at 18–19 and citations therein; No. 53 at 9–10 and citations therein.

- The IRS's allegations concerning litigation in Bermuda are fully refuted by the most basic review of the orders issued in Bermuda courts, and provide no basis for a jeopardy assessment. *See Burd v. United States*, 774 F. Supp. 903, 907 (D.N.J. 1991) (abating jeopardy assessment and finding "[i]f the IRS had conducted a simple investigation there would have been absolutely no basis for the jeopardy assessment"); *Hirschhorn v. United States*, 662 F. Supp. 887, 890–92 (S.D.N.Y. 1987) (finding the IRS's conclusions were "unreasonable," as they were made "without investigation based on information available" to it); *see* Dkt. No. 10 at 10–12 and citations therein; No. 35 at 10–11 and citations therein; No. 53 at 8–9 and citations therein.

- The latest activity charged in *United States v. Brockman*, or referenced in the Jeopardy Recommendation Report's discussion of the IRS's investigation of Mr. Brockman, is alleged to have occurred in 2018—which cannot support a finding that Mr. Brockman was "designing quickly" at the time of the jeopardy assessment or is doing so today. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *77 and *87 n.18 (finding that actions must "actually [be] occurring quickly" and that "prior illegal activity . . . is not adequate to show that a taxpayer is or appears to be designing quickly to place assets beyond the reach of the government"). Dkt. No. 34; *cf*. Dkt. No. 21 at 7–47, 59–63; *see also* Dkt. No. 35 at 14–16; No. 41 at 4; No. 53 at 9.

In the United States' Response in Opposition for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy Pursuant to 26 U.S.C. § 7429 ("Opposition"), the government listed a number of additional transactions that it contended showed current action by Mr. Brockman. Dkt. No. 21 at 63–68. In every

case, however, the transaction had been reported to the IRS by Mr. Brockman or someone acting on his behalf—which refutes any argument that he was acting to conceal assets from the government.  Dkt. No. 35 at 18–24; No. 41 at 4–5; No. 53 at 9–10; *see also Fumo*, 2014 U.S. Dist. LEXIS 77082, at *64 (finding that a jeopardy assessment cannot be sustained based on transactions that were reported to the IRS).

In its most recent submission, the government claims to have discovered a recent sale of property by Mr. Brockman, and contends that it lacks knowledge as to where the proceeds from this sale went.  Dkt. No. 54 at 11–14.  As set out in more detail below, the proceeds of this sale—which was first contemplated in 2019—went into Mr. Brockman's personal bank account, where they were seized by the IRS.  Mr. Brockman was not "designing quickly" to move anything beyond the reach of the government.  Rather, with full awareness of the jeopardy levy, the funds remained in his bank account.

The government also ignores that there is no jeopardy, because there is an asset readily available—the Reynolds and Reynolds Company—that is present in the United States and far exceeds in value the tax liability alleged against Mr. Brockman.  *See* Dkt. No. 10 at 4, 19–21; No. 35 at 3, 24–25; No. 53 at 2–3, 7–8, 11–12.

Similarly, the government continues to ignore that BCT, the trustee for AEBCT, is continuing in its efforts to make funds available to secure any potential tax liability that may be found against Mr. Brockman.  *Compare* Dkt. No. 53 at 2; No. 53-1 at ¶ 8, *with* Dkt. No. 54 at 7.  Instead, the government has elected to engage in a baseless attack on counsel for BCT as well as Mr. Brockman's counsel and, as set forth below, in doing so misstates the documents on which it would purport to rely.

Mr. Brockman's motion for abatement of the jeopardy assessment and release of the jeopardy levy is important, but it is not as complex as the government's massive filings attempt to suggest. Since issuing the jeopardy assessment and jeopardy levy, the IRS has essentially seized all of Mr. Brockman's liquid assets, taken funds belonging to his wife, cut off his retirement pay by having it directed to the IRS, and liened against his property and the property of his family members. Contrary to the government's contentions, this Court has and should exercise its authority to issue an interim stay of collection until this matter may be resolved.

## <u>ARGUMENT</u>

**I.     The Government Has Not Met Its Burden To Sustain The Jeopardy Assessment And Jeopardy Levy.**

The government acknowledges, as it must, that the government bears the burden of proof. Dkt. No. 54 at 8; IRC § 7429(g)(1). Then without citation, the government seeks to circumscribe its burden, stating that "[t]he United States need only prove that the IRS has a 'reasonable belief' that Brockman appears to be designing quickly to move assets." Dkt. No. 54 at 8. Section 7429(g)(1), however, does not speak in terms of "belief," but rather requires that the government prove that the IRS's actions are "reasonable under the circumstances." The government cannot sustain the jeopardy assessment and jeopardy levy on "belief" alone. The use of these extraordinary remedies must be grounded in fact, a burden that the government has yet to meet.

## A.      The Government Cannot Meet Its Burden Based On Speculation Or Allegations That Are Proven Wrong.

The reasonableness of the jeopardy assessment and jeopardy levy is subject to de novo review by this Court with no deference given to the IRS's administrative determination. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at \*49 (citing *George F. Harding Museum v. United States*, 674 F. Supp. 1323, 1326 (N.D. Ill. 1987)).

A jeopardy assessment allows the IRS to circumvent a taxpayer's substantial procedural and substantive rights and proceed to immediate collection of a taxpayer's assets.  For this reason, jeopardy assessments are regarded as "extraordinary measures" that are meant to be used "sparingly" and only in light of "exigent circumstances." *Fumo*, 2014 U.S. Dist. LEXIS 77082, at \*45, \*76; *see Clark v. Campbell*, 501 F.2d 108, 110 (5th Cir. 1974) (describing a jeopardy assessment as "[a] weapon, little known and previously not too often employed, having atomic potentialities. . . .").

As the government does not and cannot dispute, the only ground for the IRS's actions in this case is its contention that Mr. Brockman "is or appears to be designing quickly to place his . . . property beyond the reach of the Government . . . ."  26 CFR (Treasury Regulation) § 301.6861-1(a) (cross-referencing Treas. Reg. § 1.6851-1(a)(1)(i)–(iii)); Dkt. No. 10 at 2; No. 21 at 48–49.

The IRS cannot base a jeopardy assessment on speculation. *Johnson v. United States*, No. 92-15, 1993 U.S. Dist. LEXIS 2489, \*7–8 (M.D. Ga. 1993) (jeopardy assessment unreasonable when largely "based on conjecture with little basis in fact"); *Pircher v. United States*, No. 08-0835, 2008 U.S. Dist. LEXIS 101021, \*9 (W.D. Tex.

- 6 -

2008) (concluding even speculation "[t]hat . . . may be well-grounded" is insufficient for the government to sustain its burden); *see also* Dkt. No. 10 at 10–12; No. 35 at 12–13.

Moreover, the IRS's actions cannot be deemed "reasonable" when a simple investigation of available information would readily disclose facts that disprove its view that a taxpayer is "designing quickly" to move assets. *See Burd,* 774 F. Supp. at 907 (abating jeopardy assessment when a simple investigation would have established a lack of basis for the IRS's contentions); *Hirschhorn*, 662 F. Supp. at 890–92 (same); *see* Dkt. No. 10 at 10–12; No. 35 at 10–11; No. 53 at 9.

### B.  None Of The Government's Many Prior Contentions Support The IRS's Jeopardy Assessment And Jeopardy Levy.

The government has made a lot of allegations over the course of these proceedings, but none hold up to meet its burden to establish the basis for the IRS's jeopardy assessment.

(1)  The IRS, in its Jeopardy Recommendation Report, purported to base its jeopardy assessment on three routine and public real estate transactions, and the public listing of a fourth property for sale—all involving property owned by Dorothy Brockman and transactions undertaken by her in preparation for her life after her husband's death. Dkt. No. 11, Ex. 3 at 2, 52; No. 35 at 6–11. To this day, the government has proffered no evidence of any attempt to dissipate or otherwise move the proceeds from these transactions outside the reach of the government. *See* Dkt. No. 10 at 2–3, 5–12; No. 35 at 6–11; No. 41 at 3; No. 53 at 8. More pointedly, the government nowhere refutes that transactions that are conducted openly and are readily traceable cannot support a jeopardy

assessment.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *86–87 (finding no jeopardy assessment when the IRS could trace real property transfers through public records); Dkt. No. 10 at 8–9; No. 35 at 7–8; No. 53 at 8.

(2)     Next, the Jeopardy Recommendation Report's purported reliance on the IRS's contentions that the Brockmans are somehow attempting to gain control over the AEBCT in Bermuda legal proceedings is contradicted by the records of those proceedings. *See* Dkt. No. 10 at 12–16; No. 10-1, Ex. 15–17; No. 35 at 11–14; No. 35-1, Ex. 2.  The allegations in the Jeopardy Recommendation Report were based on multiple errors, including:

- the IRS incorrectly described Bermuda legal proceedings; *see, e.g.*, Dkt. No. 10 at 12–16; *compare* Dkt. No. 21 at 72, *with* Dkt. No. 21, Gov't Ex. 5 (cited in Dkt. No. 21 at 72 n.292); *see also* Dkt. No. 35-1, Ex. 2 at 7, ¶ 27(2);

- the IRS ignored decisions by Bermuda courts; *see, e.g.*, Dkt. No. 10 at 12–16; No. 10-1, Ex. 16 at ¶¶ 4, 23–25, 59; No. 10-1, Ex. 17 at 2 (preamble) and ¶ 2; and

- the IRS mischaracterized and misstated actions by Dorothy Brockman; *compare* Dkt. No. 21 at 71, *with* Dkt. No. 21, Gov't Ex. 26 at ¶¶ 9, 13 (cited in Dkt. No. 21 at 71 n.289); *see* Dkt. No. 53 at 8–9.

The government has never addressed, let alone refuted, these fundamental failings in the Jeopardy Recommendation Report.  Nor can the government now contend that the jeopardy assessment is "reasonable" based on contentions by the IRS that are simply

wrong. *See Burd*, 774 F. Supp. at 907; *Hirschhorn*, 662 F. Supp. at 890–92; *see also* Dkt. No. 10 at 23–24; No. 35 at 18–24; No. 41 at 3–5; No. 53 at 9.

(3)   The bulk of the IRS's Jeopardy Recommendation Report, along with the government's initial Opposition, were dedicated to recitations of the government's investigation and allegations in *United States v. Brockman*. *See* Dkt. No. 11, Ex. 3 at 1–2, 41–51, 53–58; No. 21 at 7–47, 59–63.   Indeed, of all of its prior contentions, this is the *only factor* that the government continues to discuss at length in its most recent filing. *See* Dkt. No. 54 at 8–9.

None of these unproven allegations, however, support a conclusion that Mr. Brockman is "designing quickly" to move assets outside the reach of the government. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *77 and *87 n.18 (finding prior illegal activity, and even a prior conviction, inadequate to support the IRS's contention that a taxpayer was "'designing quickly'" to move assets).   The October 1, 2020 indictment in *United States v. Brockman* alleges acts only through 2018.   The government at one point attempted to allege more recent activity, but was compelled to file a Notice of Correction acknowledging that the stated contention was wrong.   Dkt. No. 34; *cf.* Dkt. No. 21 at 7–47, 59–63; *see also* Dkt. No. 35 at 14–16; No. 41 at 4; No. 53 at 9.

The government cannot prevail by attempting to write the "designing quickly" requirement out of its own Treasury Regulation. *See* Treas. Reg. § 301.6861-1(a) (cross-referencing Treas. Reg. § 1.6851-1(a)(1)(i)–(iii)); *McWilliams v. Comm'r*, 103 T.C. 416, 424 (1994) (the Treasury Regulation sets out the three exclusive conditions upon which a jeopardy assessment may be made); IRS Policy Statement 4-88 (same).

- 9 -

(4)     In its Opposition, the government listed a number of transactions in an attempt to allege grounds for the jeopardy assessment beyond those cited in the IRS's Jeopardy Recommendation Report.  *See* Dkt. No. 21 at 63–68.  As shown by Mr. Brockman, however, the government learned of every one of these transactions from disclosures made by or on behalf of the Brockmans.  *Compare* Dkt. No. 10 at 5–12, 23–24, *with* Dkt. No. 35 at 18–24; No. 41 at 4–5; *see* Dkt. No. 53 at 9–10.  The government nowhere disputes that a jeopardy assessment cannot be based on filings made with the IRS. *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *64 (finding that jeopardy assessment cannot be sustained when transactions were reported to the IRS); *Lindholm v. United States*, 808 F. Supp. 3, 6 (D.D.C. 1992) (rejecting jeopardy and concluding that "despite the complexity with which plaintiff arranged his assets, he apparently did not 'hide' them"); *see generally* IRC § 7429.

Notably, the government erroneously contends that "conspicuously absent from [Mr. Brockman's] Supplemental Memo is *any* evidence rebutting the substantial evidence the United States has presented to the Court to meet its burden."  Dkt. No. 54 at 2 (emphasis provided by government).  The government ignores that Mr. Brockman's supplemental memorandum extensively cited the prior filings and evidence in the record, as the instant reply does again.  *See* Dkt. No. 53 at 8–10 and record citations therein.  It is the government that has failed to respond on each of these issues, and as a result the government has failed to meet its burden.

**C.     The Government's New Contention That The Sale Of The Lot 16 Property Supports The IRS's Jeopardy Assessment And Jeopardy Levy Is Baseless.**

The government's allegations concerning the sale of property identified as Lot 16, located in Rio Blanco County, Colorado (the "Lot 16 Property") are factually incomplete, and the government's conclusion is unsupported in law.

The government contends that "[t]he IRS has been unable to determine what happened to the proceeds from this property sale." Dkt. No. 54 at 13.  The proceeds were paid to Mr. Brockman, and deposited into Mr. Brockman's account at Wallis Bank.[2] Keneally July 27, 2022 Decl. Exs. A, B.  By levy dated March 16, 2022, the IRS seized the funds in Mr. Brockman's personal account at Wallis Bank, including the proceeds from the sale of the Lot 16 Property. *See* Keneally July 27, 2022 Decl. Exs. C–E.  In other words, knowing that the IRS was in the process of levying and seizing funds in Mr. Brockman's accounts, the funds nonetheless remained in an account in his name, available for collection.  There was no effort to move these funds beyond the reach of the government, quickly or otherwise.

The government's allegations concerning the Lot 16 Property repeat the same errors made by the IRS throughout its pursuit of the jeopardy assessment.  The transaction was not hidden, but rather readily traceable and indeed traced by the government through publicly available records.  *See Fumo*, 2014 U.S. Dist. LEXIS 77082, at *86–87 (no jeopardy assessment when assets can be traced through public records).  The assets were

---

[2] Exhibits A through E are attached to the July 27, 2022 Declaration of Kathryn Keneally ("Keneally July 27, 2022 Decl.").

not dissipated, but were readily available for collection, and indeed were seized by the IRS. Keneally July 27, 2022 Decl. Exs. C–E.  *See Burd*, 774 F. Supp. at 907 (no jeopardy assessment when a simple investigation would have disclosed facts); *Hirschhorn*, 662 F. Supp. at 890–92 (same).

In sum, the government's contentions are based on speculation that is not only unsupported, but in fact refuted.  *See Pircher,* 2008 U.S. Dist. LEXIS 101021, at *9 (concluding that speculation is insufficient for the government to sustain a jeopardy assessment).  Nothing in this newly made argument supports the jeopardy assessment.

### D.    The Government's Attacks On Dorothy Brockman Are Unwarranted.

Without a single citation to the record or to case law, the government contends that Dorothy Brockman "is facilitating the movement of assets beyond the government's reach."  Dkt. No. 54 at 14.

The government contends that the "deeds transferring the real property were signed by Dorothy Brockman acting as Brockman's power of attorney."  Dkt. No. 54 at. 14.  As set out by Mr. Brockman in a previous filing, this contention is baseless.  The transactions involved properties solely and separately owned by Dorothy Brockman, and were not done through any power of attorney.  *See* Dkt. No. 35 at 9 and n.6.

The government contends that Dorothy Brockman signed the "sales documents transferring Brockman's interest in Hardwick LLC  . . . ."  Dkt. No. 54 at 14.  Nothing in the Hardwicke sale supports a finding of jeopardy, however.  Hardwicke owns a corporate jet.  Mr. Brockman held a 1% interest in Hardwicke, and Reynolds owned the remaining 99%.  Mr. Brockman's interest in Hardwicke was repeatedly disclosed on tax filings with

the IRS over many years. *See* Dkt. No. 10 at 21–22; No. 10-1, Ex. 3 at 31, 33; No. 35 at

19–20. And the IRS learned about Mr. Brockman's sale of his 1% interest in Hardwicke to

Reynolds because it was disclosed by Mr. Brockman's counsel. *See* Dkt. No. 35 at 19; No.

35-1, Ex. 4 at 13 n.18. Mr. Brockman was eighty years-old and in rapidly failing health

when Reynolds bought his interest in Hardwicke; nothing in these circumstances supports

that the sale occurred because he or his wife were "designing quickly" to move assets

beyond the reach of the government. *See* Dkt. No. 35 at 19–20.

As its final swipe at Dorothy Brockman, the government notes that she signed the

deed for the sale of the Lot 16 Property, which was done in her capacity as the manager of

the entity that held title to the property. *See* Dkt. No. 54 at 14 and No. 54-1, Gov't Ex. 46.

Neither she nor her husband took any steps to move the proceeds of the sale beyond the

reach of the IRS, which has in fact seized those proceeds. *See* Keneally July 27, 2022

Decl. Exs. A–E.

The government has, throughout these proceedings, repeatedly made baseless

accusations against Dorothy Brockman. Dkt. No. 21 at 5, 56–58, 65–68. In doing so, the

government has also ignored fundamental legal principles, including Texas law. Dkt. No.

35 at 8–9 and n.4. The most recent accusations are more of the same—undignified

personal attacks on Mrs. Brockman that are factually incorrect and legally ungrounded.

## II.    The Government Misstates The Standard For Determining Whether Jeopardy Exists.

A jeopardy assessment cannot be sustained in the absence of proof that tax

collection is, in fact, in jeopardy.

The government does not dispute that, if it proves its case, it will have established that Mr. Brockman is the indirect owner of Reynolds, a company located in the United States and valued far in excess of the asserted tax liability.  *See, e.g.*, Dkt. No. 54 at 9.  Nor does it suggest how, if it is then armed with the judgment of a U.S. court finding that Mr. Brockman owns Reynolds, it will be hindered from executing that judgment against his interests in Reynolds.  A jeopardy assessment cannot be sustained when there are sufficient assets to pay any assessed taxes that may be determined by the U.S. Tax Court.  *See, e.g., Fumo*, 2014 U.S. Dist. LEXIS 77082, at *97.

The government has never contended that any action has occurred to conceal, dissipate, transfer, or diminish the value of Reynolds.  Rather, it continues to speculate that "the entities owning [Reynolds] could pledge or encumber [Reynolds's] assets wiping out any equity."  Dkt. No. 54 at 10; *see* Dkt. No. 21 at 69–70.  The government's speculation as to what might happen, however, cannot support a jeopardy assessment.  *See, e.g., Fumo*, 2014 U.S. Dist. LEXIS 77082, at *100 (finding that "the necessary showing requires more than a showing that a taxpayer's assets *could* easily be dissipated" as "[a]ny taxpayer could easily dissipate their assets, but that would not justify finding a jeopardy assessment reasonable without also finding that the applicable standards were met") (emphasis in original); *Johnson*, 1993 U.S. Dist. LEXIS 2489, *7–8; *Pircher*, 2008 U.S. Dist. LEXIS 101021, *9; Dkt. No. 35 at 10–11, 20, 24–25.

The IRS cannot use a jeopardy assessment and jeopardy levy solely because that may be its preference to do so, when in fact no jeopardy exists.

## III.   The Anti-Injunction Act Does Not Bar This Court From Granting An Interim Stay Of IRS Collection.

The government again ignores the plain language of IRC § 7421 (commonly called the Anti-Injunction Act) and the IRC § 6863 bond provisions and instead advances—for the second time—an erroneous standard that would limit this Court's discretion and authority to enter an interim stay.  As Mr. Brockman has already explained, the Anti-Injunction Act provides an explicit statutory exemption for actions brought to this Court under IRC § 7429(b).[3]  *See* Dkt. No. 41 at 12–13.  The government has twice failed to address this point.  *See* Dkt. No. 49 at 7–10; No. 54 at 15–19.

The government instead argues that Mr. Brockman must "allege or establish that he will suffer irreparable injury."  *See* Dkt. No. 54 at 15.  This is not the standard under the Anti-Injunction Act, and—at least with respect to jeopardy assessment cases—has not been for over 40 years.  *See* Dkt. No. 41 at 13–14; *see also* Tax Reform Act of 1976, Pub. L. 94-455, § 1204 (1976) (exempting jeopardy assessment actions brought under IRC § 7429(b) from the Anti-Injunction Act).  Nonetheless, the government has chosen to double down on its claim.

In addition to ignoring the plain language of the Anti-Injunction Act, the government repeats its baseless argument that the bond provisions in IRC § 6863 place a restraint on the ability of this Court to stay collection in a jeopardy assessment action.  *See*

---

[3] "*Except as provided in sections . . . 7429(b) . . . ,* no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  IRC § 7421(a) (emphasis added).

Dkt. No. 54 at 15.  The government ignores the precedent cited by Mr. Brockman refuting this position.  *See* Dkt. No. 41 at 13.  While IRC § 6863 provides a stay in certain situations upon the posting of a bond, nowhere does the statute provide that it is the *exclusive* remedy available for a taxpayer to stay a jeopardy assessment action.  *See* IRC § 6863 (providing that collection "*may* be stayed" by filing a bond) (emphasis added); *see also Mrs. Phil. Home for Senior Citizens, Inc. v. United States*, 1993 U.S. Dist. LEXIS 19501, at *19–20.  The government fails to cite authority finding otherwise.  *See* Dkt. No. 39 at 7–8; No. 54 at 15–18.

The government also fails in its attempt to distinguish the cases supporting Mr. Brockman's position.  The government notes that the court in *Mrs. Philippines Home for Senior Citizens* held that it lacked authority to enjoin IRS collection.  *See* Dkt. No. 54 at 16–17.  The government overlooks, however, that the court in that case was bound by Fourth Circuit precedent in *LaRosa v. United States*, 841 F.2d 544 (4th Cir. 1988) that is inapplicable here and that neither court was relying on, *or even discusses*, the Anti-Injunction Act.  *Mrs. Philippines Home for Senior Citizens*, 1993 U.S. Dist. LEXIS 19501, at *21–*22 (citing *LaRosa*, 841 F.2d at 544).  Importantly, the Fourth Circuit in *LaRosa* held that "[a] district court has no jurisdiction to 'fashion an appropriate order' *in circumstances where the assessment has been ruled reasonable and appropriate*."  *LaRosa*, 841 F.2d at 546 (emphasis added).  Unlike in *Mrs. Philippines Home for Senior Citizens* and *LaRosa*, this Court has not yet rendered a decision on the reasonableness of the jeopardy assessment.  Moreover, as the government concedes, the court did in fact ultimately order a temporary injunction of IRS collection.  *Id.* at *22–*27; *see* Dkt. No. 54

at 17.

Moreover, nothing in the government's argument prevents this Court from following the persuasive reasoning in *Mrs. Philippines Home for Senior Citizens*: "It is quite consistent with the purpose of § 7429, which provided judicial review for I.R.S. jeopardy assessments, for Congress to have granted the district courts the ability to check the virtually unfettered power of the I.R.S. to cause severe hardships, even economic destruction, to taxpayers prior to a resolution of the existence, and extent, of any tax liability." 1993 U.S. Dist. LEXIS 19501, at *18–19.  Similarly, the government's contention that the court in *DeLauri v. United States* only enjoined the IRS from doing what it may already have been prohibited by statute from doing is undercut by the fact that the *DeLauri* court concluded that it had the authority to enjoin collection in the context of a jeopardy assessment.  492 F. Supp. 442, 446 (W.D. Tex. 1980); *see* Dkt. No. 54 at 17–18.

This is the eighth substantive filing relating to Mr. Brockman's motion for abatement of the jeopardy assessment and release of the jeopardy levy.  Dkt. No. 10; No. 21; No. 35; No. 38; No. 39; No. 41; No. 53; and No. 54.  It is Mr. Brockman's position that the IRS's actions were unreasonable when undertaken, and nothing in the government's multiple filings has refuted that point.  Mr. Brockman also recognizes the importance that the Court have a full opportunity to give careful consideration to this record.  Moreover, the issue of whether funds to secure any potential tax liability may be provided by AEBCT remains open and subject to on-going efforts.

The government makes an inapposite reference to this Court's determination regarding Mr. Brockman's competency in *United States v. Brockman*.  Dkt. No. 54 at 19.

- 17 -

The government fails to address, however, that Mr. Brockman is now in hospice care and near death.  *See* Dkt. No. 53 at 10–11.  Under these circumstances, it is more than reasonable for this Court to grant an interim stay until this matter is resolved, so that Mr. Brockman may receive his retirement pay and Dorothy Brockman may sell their former home free and clear.

## IV.   The Government Is Wrong In Its Contention That Mr. Brockman Knew That The Funds In The Account Of SSHL At Mirabaud Were Frozen Prior To July 8, 2022.

The only point concerning SSHL's funds at Mirabaud that is relevant to the proceedings before this Court is that, as counsel for BCT has attested, SSHL's Swiss and and BCT's U.S. counsel continue to engage in efforts to determine whether a portion or all of the funds in SSHL's account at Mirabaud may nonetheless be used to secure payment of any tax liability that is ultimately found to be due from Mr. Brockman.  *See* Dkt. No. 53 at 6; Dkt. No. 53-1, ¶ 8.  The government prefers to ignore this fact.

Instead, the government has chosen to engage in a pointless and ultimately unsupportable sideshow attacking the veracity of counsel for BCT, as well as counsel for Mr. Brockman.  Dkt. No. 54 at 4-7.  Unfortunately, this baseless attack cannot go unanswered.

SSHL is owned by AEBCT, and has substantial funds at Mirabaud.  BCT, as trustee for AEBCT, has determined that the pendency of the jeopardy assessment against Mr. Brockman is hindering the operation of AEBCT, and in particular is posing a threat to the U.S.-based Reynolds, AEBCT's most valuable asset.  Dkt. No. 38 at 3–5; No. 38-1, Ex. A; No. 53 at 4–5; No. 53-1, ¶ 3.  As a result, counsel for BCT reached out to the IRS in an

effort to make the funds in SSHL's account available to secure any potential tax liability that may ultimately be determined against Mr. Brockman, and counsel for SSHL reached out to Mirabaud for the same purpose.  Dkt. No. 38 at 2–5; No. 38-1, Ex. A; No. 53 at 3–6; No. 53-1, ¶¶ 3–5.

Based on correspondence and other communications with Mirabaud, counsel for BCT understood that access to the funds was blocked by Mirabaud pending Swiss court recognition of the Bermuda court's appointment of BCT as trustee.  Srere July 27, 2022 Decl. ¶ 4 and Exs. 1, 2.  However, at the time, and until very recently, neither counsel for BCT nor SSHL knew that SSHL's funds at Mirabaud were subject to a freeze by the prosecutor in Geneva.  Dkt. No. 53-1 at ¶¶ 6–7; Srere July 27, 2022 Decl. ¶ 4.

By declaration dated July 15, 2022, counsel for BCT attested to the fact that BCT learned for the first time on July 8, 2022, that the Geneva prosecutor had placed a freeze on SSHL's Swiss account, when Mirabaud for the first time told Swiss counsel for SSHL about the existence of the freeze.  Dkt. No. 53-1, ¶ 6 and Ex. A.  The government refuses to accept that this declaration is truthfully stated.[4]

Instead, the government contends that the assertion that Mirabaud first disclosed the existence of the freeze on July 8, 2022 has "glaring problems" and is "unbelievable," and describes Mr. Brockman's claim that he was previously unaware of the existence of the

---

[4] The government also refuses to accept that the Bermuda Court of Appeal expressly found BCT to be independent, and instead insists on repeatedly referring to SSHL's Swiss counsel as Mr. Brockman's Swiss counsel, rather than as counsel for an entity that belongs to AEBCT, which is in turn controlled by BCT.  *See* Dkt. No. 54 at 1, 4, 7.

freeze as "difficult to believe," "appear[ing] to be a misrepresentation to this Court . . . ."
and "dubious."  Dkt. No. 54 at 2, 4, 6.  The government's asserted basis for making these
accusations, however, is its own misreading of documents filed in Bermuda proceedings.
Specifically, the government avers that these documents demonstrate Mr. Brockman's
earlier knowledge of the prosecutorial freeze, when they do no more than describe
Mirabaud's unilateral action to block the account pending determination of the identity of
the trustee as the proper entity responsible for the account.[5]

First, the government cites to a November 17, 2021 determination by the Supreme
Court of Bermuda in *Spanish Steps Holdings Ltd. v. Point Investments Ltd.*, 2020:  No. 300
(Civil Jurisdiction Commercial Court Companies Act (Winding Up) ("*SSHL v. PIL*"),
which was provided as an exhibit to an earlier filing in this Court by Mr. Brockman.  *See*
Dkt. No. 54 at 5, referencing Dkt. No. 35-1, Ex. 2.  In *SSHL v. PIL*, SSHL was seeking the
liquidation of Point Investments Ltd. ("PIL"), an entity in which it held complete financial
interest but over which it lacked control.  As is clear from the Bermuda Supreme Court's
decision, SSHL successfully demonstrated that the board of directors of the entity in

---

[5] The government also engages in a circular argument that Mr. Brockman somehow should
have divined the existence of a prosecutorial freeze from the request by BCT that the IRS
support its efforts to access the funds with Mirabaud and Swiss authorities, and the
government's vague statement that BCT's "'proposal . . . appears to require the release of
funds frozen in Swiss accounts by Swiss authorities, who may have its [*sic*] own claim to
the funds.'"  *See* Dkt. No. 54 at 6–7, quoting without citing Dkt. No. 39 at 4.  If the
government knew that there was a Swiss prosecutorial freeze on SSHL's Mirabaud
account, it should have clearly stated as much to the Court, as well as to Mr. Brockman and
BCT's counsel.

control of the operations of PIL was hindering SSHL's ability to use its funds, which precipitated SSHL's petition to liquidate PIL.  Dkt. No. 35-1, Ex. 2 at ¶¶ 23–28.

The government quotes the following language from the *SSHL v. PIL* decision: "'the petitioner and the Trustee are unable to access US $3 billion of the Trust's assets, including effectively all of the Trust's liquid assets (more than US $1.4 billion) . . . .'" and the "'Board of the Respondent have caused the Petitioner [Spanish Steps Holdings Ltd.] bank accounts with Bank Mirabaud and Bank of Singapore to be frozen . . . .'"  Dkt. No. 54 at 5 (quoting Dkt. No. 35-1, Ex. 2, ¶¶ 27(2), 28(4)).  The government elides over the fact that, as the Bermuda Supreme Court makes clear, the reason given by the Bermuda court as to why SSHL could not access its funds at Mirabaud had nothing to do with any freeze by the Geneva prosecutor, but rather was attributed solely to the conduct of the then-board of directors of PIL, the "Respondent" referenced in the quoted language.  *See* Dkt. No. 35-1, Ex. 2, ¶¶ 27(2), 28(4).  In the most simple of terms, it is disingenuous for the government to contend, as it does, that this document supports knowledge by anyone that there was a prosecutorial freeze over SSHL's Mirabaud account.

The government next quotes the affidavit of Dorothy Brockman, submitted in *St. John's Trust Company (PVT) Ltd. v. Medlands (PTC) Ltd.*, Civil Appeal No. 8 of 2020 (Bermuda Court of Appeal), ("*SJTC v. Medlands*"), as stating: "[t]he trust structure also holds various amounts in bank accounts in Bermuda, Switzerland and Singapore.  The accounts in Switzerland hold approximately US $1.4 billion and the accounts in Singapore US $15 million.  It appears from what I have been told by **my legal advisors that …. these accounts are frozen and** Medlands has been unable to draw funds from them for many

- 21 -

months." Dkt. No. 54 at 5–6, quoting Dkt. 10-1, Ex. 16 at ¶ 25 (emphasis added by government).   Again, the government ignores the context of the language that it quotes.   At issue in *SJTC v. Medlands* was the appointment of a trustee for AEBCT.   SJTC, a former trustee of AEBCT, and Medlands, the trustee of AEBCT at the time, were engaged in litigation on multiple fronts.   Dkt. No. 10-1, Ex. 16 at ¶¶ 7, 59(a).   Dorothy Brockman submitted her affidavit to support the appointment of an independent trustee, noting among other issues that the continuing disputes between SJTC and Medlands were causing the banks to refuse access to AEBCT's funds.   Dkt. No. 10-1, Ex. 16 at ¶ 23   The language quoted by the government sets out Mrs. Brockman's understanding, through counsel, that Mirabaud had acted unilaterally to freeze access to SSHL's account.   Dkt. No. 10-1, Ex. 16 at ¶ 25 ("It appears from what I have been told by my legal advisors that *in response to the uncertainty over the proper trustee of the Trust and its subsidiaries*, these accounts were frozen . . . .") (emphasized language omitted by the government).   Contrary to the government's contention, the affidavit in no way indicates that Mrs. Brockman had any knowledge of a prosecutorial freeze, but instead demonstrates an understanding that the freeze related to the identification of the proper trustee.

Prior to July 8, 2022, it was the understanding of BCT's and SSHL's counsel that the hold placed by Mirabaud on the account was based solely on Mirabaud asking to be satisfied as to the identity of the trustee, and had nothing to do with a prosecutorial freeze.[6]

---

[6] Copies of correspondence from Mirabaud to LALIVE SA are attached as Exs. 1 and 2 (respectively) to the July 27, 2022 Declaration of Mark Srere ("Srere July 27, 2022 Decl.").

Srere July 27, 2022 Decl. ¶ 4 and Exs. 1, 2.  Thus Mirabaud wrote to Swiss counsel for

SSHL on July 15, 2021, seeking documentation with regard to BCT's appointment, and

stating:  "Until receipt of the above-mentioned documents, you will understand that our

Bank will maintain its blocking of the account [number redacted] until it has been provided

with satisfactory documentation."  Srere July 27, 2022 Decl. Ex. 1.  By letter dated

December 17, 2021, Mirabaud again wrote to Swiss counsel, making a further, specific

request:  "[W]e kindly ask you to provide us with the confirmation that i) the Order of the

Court of Appeal dated 2 February 2021 has become final and executory and ii) it has been

validly enforced in Switzerland."  Srere July 27, 2022 Decl. Ex. 2.  The December 17, 2021

letter continued:  "We thank you for your understanding that we will not execute any

instructions from BCT Limited until receipt of the above-mentioned documentation."  *Id*.

As part of BCT's proposal to the IRS to use the funds in SSHL's account to secure

any payment of tax that may be due from Mr. Brockman, SSHL's Swiss counsel engaged

in discussions with Mirabaud expressly concerning the use of the funds for this purpose.

Dkt. No. 53 at 5–6; No. 53-1 ¶ 5.  Prior to Mirabaud's disclosure of the Geneva

prosecutor's freeze on July 8, 2022, BCT's counsel understood that the only barrier was

Mirabaud's requirement that Bermuda Court of Appeal decisions appointing BCT as

trustee be reduced to an order by the Bermuda court and domesticated as an order by the

Swiss court, as is stated in Mirabaud's December 17, 2021 letter.  Srere July 27, 2022 Decl.

¶ 4 and Ex. 2.  The requisite Bermuda court order has been obtained, and the Swiss court

order is in the process of being addressed.  Srere July 27, 2022 Decl. ¶ 4; *see* Dkt. No. 53 at

4–5.  And most significantly, efforts are on-going with the Geneva prosecutor as to whether

some or all of the funds in SSHL's account may be available to secure any tax liability that may be found due from Mr. Brockman.  Dkt. No. 53-1, ¶ 8.

It is disheartening whenever an adversary takes quotes out of context to misstate the clear import of documents.  It is all the more disconcerting when the government does so in an effort to attack the creditability of other counsel.  Either the government has failed to read the documents carefully, or was hoping that no one else would do so.

## CONCLUSION

The government has yet to establish either that collection of tax is in jeopardy, or that Mr. Brockman is "designing quickly" to move assets beyond the IRS's ability to collect.   And there is nothing to fear that Mr. Brockman—who is on his deathbed—will engage in any future actions to move assets beyond the reach of the government.

In the interim, however, the IRS has seized funds from the bank accounts of Mr. Brockman and his wife—taking money on which taxes were indisputably paid.  The IRS has also cut off Mr. Brockman's main source of current income—directing that his retirement payments be made directly to the IRS.  And the IRS has made it impossible for Dorothy Brockman to be paid the proceeds from the sale of a home she has owned for decades and where the Brockmans no longer live.  All of this is occurring despite the presence of a multi-billion dollar asset in the United States from which, if the government were to prevail in its tax case against Mr. Brockman, any judgment could be fully satisfied.

For the foregoing reasons, and for the reasons set forth in Mr. Brockman's previous filings, the jeopardy assessment should be abated and the jeopardy levy should be released. In the alternative, and at a minimum, IRS collection actions should be stayed.

Dated:  July 27, 2022

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
Julia N. Camp
Texas Bar No. 24123598
SDTX Ad. ID No. 3688104
Email: juliacamp@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*Admitted Pro Hac Vice*)
New York Bar No. 2870251
Email: fjackson@jonesday.com
Michael J. Scarduzio (*Admitted Pro Hac Vice*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*Admitted Pro Hac Vice*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*Admitted for Pro Hac Vice*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450

*Attorneys for Plaintiff Robert T. Brockman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of July, 2022, I electronically served this document on all counsel of record.

*/s/ Michael J. Scarduzio*
Michael J. Scarduzio
