UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT T. BROCKMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-00202-GCH |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S THIRD SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
MOTION FOR DETERMINATION ON COMPLAINT FOR JUDICIAL REVIEW
AND ABATEMENT OF JEOPARDY ASSESSMENT**

**Expedited Time Limits Apply By Statute – *See* 26 U.S.C. § 7429(b)(3)**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ................................................................ 1

**SUPPLEMENTAL FACTS** .................................................. 1

    **A.**    **The Brockmans Left More Than $27 Million In Their Bank Accounts In Houston For Over Eight Months After The Issuance Of The Jeopardy Assessment And Jeopardy Levy, Until Those Funds Were Seized By The IRS.** ............................................ 3

    **B.**    **The Proceeds Of The Three Propert Sales Cited By The Government Were Deposited Either Into An Amegy Account That Was Transferred To Wallis Bank, Or Directly Into Subsequently Seized Accounts At Wallis Bank.** ............................................ 5

**ARGUMENT** ...................................................................... 7

    **A.**    **The Government Cannot Rely On Mrs. Brockman's Real Property Sales Or The Lot 16 Sale To Support The Jeopardy Assessment And Jeopardy Levy.** ............................................ 8

    **B.**    **The Government Has Failed To Show Any Basis To Sustain The Jeopardy Assessment And Jeopardy Levy.** ............................. 9

**CONCLUSION** .................................................................. 12

## INTRODUCTION

The sole issue in this matter is whether the government can prove that Robert T. Brockman is "designing quickly" to move assets outside of the reach of the government, rendering them unavailable for collection should the government someday establish that he failed to report all of his income.

Mr. Brockman died on August 5.

The jeopardy assessment and jeopardy levy at issue in this matter were served on Mr. Brockman in September 2021.  The IRS subsequently seized funds from accounts belonging to both Mr. Brockman and his wife, Dorothy Brockman, and placed liens on real property in their names.  Nonetheless, knowing that the IRS was seizing their assets elsewhere, the Brockmans left over $27 million in accounts at a bank in Houston, where the funds remained until the IRS ultimately seized those accounts eight months after the jeopardy assessment and jeopardy levy issued.

This conduct is the antithesis of "designing quickly" to move assets outside the reach of the government.

## SUPPLEMENTAL FACTS

The government has persistently argued that certain real estate transactions engaged in by Mr. Brockman's now-widow, Dorothy Brockman, should be viewed as acts by Mr. Brockman to move assets outside the reach of the government.  *See, e.g.*, Dkt. No. 11, Ex. 3 at 2, 52; No. 21 at 53–58; *compare* Dkt. No. 54 at 14 *with* Dkt. No. 35 at 6–11 and n.6; No. 41 at 3; No. 53 at 8.  During the August 3, 2022 hearing on Mr. Brockman's motion to abate the jeopardy assessment and release the jeopardy levy, the government contended

- 1 -

that the IRS did not know where the proceeds from the real property sales had gone, *see* Aug. 3, 2022 Tr. at 16:3-8, and speculated that "it is not unlikely that funds could have been moved offshore," citing to Mr. Brockman's now-closed accounts at Amegy Bank. *Id*. at 16:22-17:1. The Court allowed Mr. Brockman additional time to supplement the record on these points. Dkt. No. 63 (Minute Order).

As detailed below:

(1) the proceeds from the real property sales cited by the government were paid into personal bank accounts in either Mr. Brockman's or Mrs. Brockman's name at either Amegy Bank or Wallis Bank;

(2) accounts held by the Brockmans at Amegy Bank were closed at the insistence of the bank following Mr. Brockman's indictment;

(3) the funds from the Brockmans' Amegy Bank accounts were transferred to new accounts at Wallis Bank in Houston in early 2021; and

(4) on May 6, 2022, over sixteen months after the Brockmans placed millions of dollars into accounts at Wallis Bank in their own names, and eight months after the IRS's issuance of the jeopardy assessment, the IRS seized over $27 million from the Wallis Bank accounts.

A. **The Brockmans Left More Than $27 Million In Their Bank Accounts In Houston For Over Eight Months After The Issuance Of The Jeopardy Assessment And Jeopardy Levy, Until Those Funds Were Seized By The IRS.**

After Mr. Brockman was indicted in October 2020, Amegy Bank informed the Brockmans that the bank would be closing their accounts. D. Brockman Decl. at ¶ 2.[1]  The Brockmans transferred their accounts to Wallis Bank, a bank located in Houston. As examples, a bank statement for Mrs. Brockman's personal account at Wallis Bank shows the transfer of her personal funds from Amegy Bank to Wallis Bank, and a bank statement for Mrs. Brockman's personal account at Amegy Bank shows the same transfer.[2]  D. Brockman Decl. at ¶ 4 and Ex. 1.

In total, the Brockmans had six accounts at Wallis Bank during 2021 and 2022. Four accounts were opened in January 2021—a joint checking account, a joint money market account, and separate bank accounts for each of them. A fifth account was opened in Mr. Brockman's name to receive the proceeds from the sale of the Lot 16 Property in

---

[1] Bank records submitted with the declaration of Dorothy Brockman have been redacted in compliance with Federal Rule of Civil Procedure 5.2, as well as to show only relevant transactions.

[2] The government has also questioned the disposition of funds held at a now-closed Wells Fargo account. Aug. 3, 2022 Tr. at 16:22-17:1. In July 2021, Wells Fargo Asset Management notified the Brockmans that funds held by it would be "rebranded" as Allspring Funds. The bank required that existing accounts be closed, and that funds be transferred to Allspring Funds, which was done later in 2021. D. Brockman Decl. at ¶ 11 and Ex. 8. Although the investments have decreased in value, no withdrawals have been made, and the funds remain at Allspring today. D. Brockman Decl. at ¶ 11.

Colorado,[3] and a sixth account was opened personally by Mrs. Brockman.  D. Brockman

Decl. at ¶ 6.

By two letters dated March 24, 2022, Wallis Bank separately informed Mr.

Brockman and Dorothy Brockman that the IRS had issued levies on all six accounts.  The

two Wallis Bank letters specifically identified the six accounts and the then-current

balances, which totaled $27,017,293.  D. Brockman Decl. at ¶ 7 and Exs. 3–4.

On May 6, 2022, the IRS seized the funds in all six accounts, which by then totaled

$27,020,546.54.  Keneally August 12, 2022 Decl. at ¶ 2, Ex. A.[4]  The transcript maintained

by the IRS for Mr. Brockman's account sets out this seizure of $27,020,546.54 on May 6,

---

[3] The sale of real property identified as Lot 16, located in Rio Blanco County, Colorado (the "Lot 16 Property"), is discussed more fully below.  This transaction was first raised by the government on July 22, 2022, in United States' Response to Plaintiff's Second Supplemental Memorandum (1) in Support of Motion for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Abatement of Jeopardy Assessment and Jeopardy Levy or (2) in the Alternative, for a Stay of IRS Collection ("Government's Response to Second Supplemental Memorandum"), *see* Dkt. No. 54 at 11-14, and was fully explained in Plaintiff's Reply in Support of Supplemental Memorandum (1) for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Abatement of Jeopardy Assessment and Jeopardy Levy or (2) in the Alternative, for a Stay of IRS Collection, filed on July 27, 2022 ("Plaintiff's Second Supplemental Reply").  *See* Dkt. No. 55 at 11-12, No. 55-1, Exs. A-E.

[4] As the IRS seized funds from the Brockmans, it attributed those funds to 2004, the earliest of the tax years for which the IRS contends taxes are due.  Attached as Ex. A to the August 12, 2022 Declaration of Kathryn Keneally, submitted herewith, is a copy of a transcript of the IRS's account for Mr. Brockman, showing the IRS's collection activities to date.  The IRS transcript has been redacted in compliance with Federal Rule of Civil Procedure 5.2, as well as to show only relevant transactions.

2022, and also shows 21 additional seizures of funds in 2021 and 2022 totaling another $8,987,610.69.

The availability of over $27 million in the Wallis Bank accounts—plus the additional funds of nearly $9 million in other accounts held by the Brockmans in their own names—for seizure by the IRS wholly undercuts the IRS's contention that Mr. Brockman was "designing quickly" to defeat collection.

**B.    The Proceeds Of The Three Real Property Sales Cited By The Government Were Deposited Either Into An Amegy Account That Was Transferred To Wallis Bank, Or Directly Into Subsequently Seized Accounts At Wallis Bank.**

In its Jeopardy Recommendation Report, and in the government's filings in this action, the government cited to Mrs. Brockman's sale of a vacant lot at 335 West Friar Tuck Lane in Houston, next to the Brockman's prior residence, and to her sale of a townhouse located at 1731 Sunset Boulevard, also in Houston.  *See, e.g.*, Dkt. No. 11, Ex. 3 at 2, 52; No. 21 at 54; *compare* Dkt. No. 54 at 14 *with* Dkt. No. 53 at 8.

Both transactions involved properties owned solely by Mrs. Brockman.  The real property listings and sales were public and readily traceable.  *See* Dkt. No. 10 at 2–3, 5–12; No. 35 at 6–11; No. 41 at 3; No. 53 at 8; No. 55 at 7–8.

During argument on this motion before the Court on August 3, 2021, the government cited again to these two sales of properties, contending that the IRS did not know where the proceeds from these sales had gone.  *See* Aug. 3, 2022 Tr. at 16:3-8.  In response, counsel for Mr. Brockman noted that substantial sums—well in excess of the real property transactions at issue—were seized by the IRS from accounts at Wallis Bank.  *Id.*

- 5 -

at 36:9-37:1.  A review of the records and the declaration of Dorothy Brockman, submitted herewith, establishes that proceeds from these two real property sales were deposited into accounts in her name at Amegy Bank and Wallis Bank.  As previously discussed, at the insistence of Amegy Bank, the Brockmans closed their accounts at that bank, and opened new accounts at Wallis Bank.

Specifically:

- A bank statement for Mrs. Brockman's personal account at Amegy Bank shows a deposit of $3,798,006.92 on December 11, 2020, in connection with the sale of the vacant lot at 335 West Friar Tuck Lane.  D. Brockman Decl. at ¶ 8 and Ex. 5.

- Bank statements for Mrs. Brockman's personal accounts at Amegy Bank and Wallis Bank show the transfer of $11 million—well in excess of the proceeds from the sale of 335 West Friar Tuck Lane lot—from her account at Amegy Bank into her account at Wallis Bank.  D. Brockman Decl. at ¶¶ 4–5 and Exs. 1–2.

- A bank statement for Mrs. Brockman's personal account at Wallis Bank shows a deposit of $1,202,598.58 on May 11, 2021, in connection with the sale of the townhouse at 1731 Sunset Boulevard.  D. Brockman Decl. at ¶ 9 and Ex. 6.

- Correspondence from Wallis Bank and the IRS transcript of Mr. Brockman's account establish that the IRS seized in excess of $27 million from the Brockmans' accounts at Wallis Bank—again a sum far in excess of the proceeds of Mrs. Brockman's two property sales.

The government's citation to sale of the Lot 16 Property in Colorado is similarly unavailing as a basis to justify the IRS's jeopardy assessment.  In the Government's

- 6 -

Response to Second Supplemental Memorandum, the government contended that "[t]he IRS has been unable to determine what happened to the proceeds from this property sale." Dkt. No. 54 at 13.  Bank records previously submitted in support of Plaintiff's Second Supplemental Reply, however, clearly established that the proceeds from this sale were paid into a personal account in Mr. Brockman's name at Wallis Bank in Houston.  *See* Dkt. No. 55 at 11–12, No. 55-1, Exs. A–B; *see also* D. Brockman Decl. at ¶ 10 and Ex. 7. Those funds fully remained in Mr. Brockman's Wallis Bank account until they were seized by the IRS.  *See* D. Brockman Decl. at ¶ 10; *see also* Dkt. No. 55 at 11–12, No. 55-1, Exs. C–E.

## ARGUMENT

The IRS cannot base a jeopardy assessment on speculation.  *Pircher v. United States*, No. 08-0835, 2008 U.S. Dist. LEXIS 101021, *9 (W.D. Tex. 2008) (concluding even speculation "[t]hat . . . may be well-grounded" is insufficient for the government to sustain its burden); *Johnson v. United States*, No. 92-15, 1993 U.S. Dist. LEXIS 2489, *7– 8 (M.D. Ga. 1993) (jeopardy assessment unreasonable when largely "based on conjecture . . . ."); *see also* Dkt. No. 10 at 10–12; No. 35 at 12–13.  The IRS's actions in seizing and levying against assets cannot be sustained when the facts disprove the IRS's view that a taxpayer is "designing quickly" to move assets.  *See Burd v. United States*, 774 F. Supp. 903, 907 (D.N.J. 1991) (abating jeopardy assessment when an investigation established a lack of basis for the IRS's contentions); *Hirschhorn*, 662 F. Supp. 887, 890–92 (S.D.N.Y. 1987) (same); *see* Dkt. No. 10 at 10–12; No. 35 at 10–11; No. 53 at 9; No. 55 at 6–7.

**A.** **The Government Cannot Rely On Mrs. Brockman's Real Property Sales Or The Lot 16 Sale To Support The Jeopardy Assessment And Jeopardy Levy.**

The government cannot rely on Mrs. Brockman's real property transactions to support the jeopardy assessment and jeopardy levy. The transactions were undertaken in the ordinary course of Mrs. Brockman's life, allowing her to move closer to her son and daughter-in-law as she prepared for the death of her husband of 54 years and the birth of her two grandchildren. *See* Dkt. No. 10 at 5–7; No. 35 at 9; No. 54 at 11.

Moreover, as the bank records and the IRS transcript show, the proceeds from the two properties that she sold—335 West Friar Tuck Lane and 1731 Sunset Boulevard—as well as the proceeds from the Lot 16 property, were not dissipated or moved outside the reach of the government. Rather, Mrs. Brockman deposited the proceeds from the sale of her properties into bank accounts in Houston in her name. D. Brockman Decl. at ¶¶ 6, 8–10 and Exs. 5–7. While not every penny has been traced, as Mrs. Brockman understandably may have used some funds for routine and necessary expenses, funds far in excess of the proceeds of these sales were in the Wallis Bank accounts when the IRS executed its levies. D. Brockman Decl. at ¶ 7 and Exs. 3–4.

Nor can the government rely on the sale of the Lot 16 Property to support the IRS's actions. The proceeds from that sale were deposited into Mr. Brockman's personal account at Wallis Bank, where they were available for seizure and were in fact seized by the IRS. D. Brockman Decl. at ¶¶ 6, 10 and Ex. 7; *see also* Dkt. No. 55 at 11–12; No. 55-1, Exs. A–E.

More precisely, the Brockmans were put on notice of the IRS's collection activities in September 2021, and nonetheless had over $27 million on deposit in their names in accounts at a bank in Houston for over six months before the IRS executed the levies in March 2022, and nearly eight months before the IRS seized the funds in May 2022.

Instead of moving assets beyond the reach of the government, Mr. Brockman properly sought recourse before this Court.  *See, e.g., Clark v. Campbell*, 501 F.2d 108, 110 (5th Cir. 1974) (IRC § 7429(b) is the sole safeguard for a taxpayer to seek abatement of a jeopardy assessment and release of a jeopardy levy); *Burd,* 774 F. Supp. at 905 ("Realizing the drastic nature of this proceeding, Congress concluded that the taxpayer should be able to obtain immediate judicial review of the propriety of the jeopardy assessment."); *Modern Bookkeeping, Inc. v. United States*, 854 F. Supp. 475, 477 (E.D. Mich. 1994)(same).

### B.   The Government Has Failed To Show Any Basis To Sustain The Jeopardy Assessment And Jeopardy Levy.

The government has had ample opportunity to offer some reason to sustain the jeopardy assessment, but has failed in all of its efforts.

The government's contentions concerning proceedings in Bermuda have been disproven by orders issued by the Bermuda courts months prior to the issuance of the jeopardy assessment.[5]  *See Burd*, 774 F. Supp. at 907) (abating jeopardy assessment on

---

[5] *See, e.g.,*  Dkt. No. 10 at 12–16, 23–24; No. 10-1, Ex. 16 at ¶¶ 4, 23–25, 59; No. 10-1, Ex. 17 at 2 (preamble) and ¶ 2; No. 35 at 18–24; No. 35-1, Ex. 2 at 7, ¶ 27(2); No. 41 at 3–5; No. 53 at 5–6; No. 55 at 20–22; *compare* Dkt. No. 21 at 71–72, *with* Dkt. No. 21, Gov't Ex. 5 (cited in Dkt. No. 21 at 72 n.292) and Gov't Ex. 26 at ¶¶ 9, 13 (cited in Dkt. No. 21 at 71 n.289).

finding that "[i]f the IRS had conducted a simple investigation there would have been absolutely no basis for the jeopardy assessment").

The government's extensive discussion of the investigation and indictment in *United States v. Brockman*, Cr. No. 4:21-cr-0009-GCH (S.D. Tex.) offers no allegation of recent acts, or indeed of any acts later than 2018.[6]  *See Fumo v. United States*, No. 13-3313, 2014 WL 2547797, at *77 and *87 n.18 (E.D. Pa. June 5, 2014) (finding that actions must "actually [be] occurring quickly" and that "prior illegal activity . . . is not adequate to show that a taxpayer is or appears to be designing quickly to place assets beyond the reach of the government").

And the government learned of myriad other transactions to which it would cite, including Mr. Brockman's sale of a 1% interest in a company, Dorothy Brockman's real property gift to her daughter-in-law, and various securities and banking transactions, from disclosures made to the IRS by or on behalf of Mr. Brockman—hardly the conduct of someone trying to hide assets from the government.[7]  *See id.*, 2014 U.S. Dist. LEXIS 77082, at *64 ("Filing forms with the IRS concerning [transfers of] particular properties undermines any notion of a plan to hide assets from . . . the IRS.") (internal quotations omitted); *Lindholm v. United States*, 808 F. Supp. 3, 6 (D.D.C. 1992) (rejecting jeopardy

---

[6] *See, e.g.*, Dkt. No. 21 at 7–47, 59–63; No. 34; No. 35 at 14–16; No. 41 at 4; No. 54 at 9–10; No. 55 at 3.

[7] *Compare* Dkt. No. 10 at 5–12, 23–24, *with* Dkt. No. 35 at 18–24; No. 41 at 4–5; *see* No. 53 at 9–10; No. 55 at 2.

and concluding that "despite the complexity with which plaintiff arranged his assets, he apparently did not 'hide' them"). *See generally* IRC § 7429.

Thus the government's only remaining contention is that a jeopardy assessment may be based on the IRS's speculation—without more—that the proceeds from the real property transactions and the closing of Amegy Bank accounts may have resulted in the dissipation of assets.  The facts, however, disprove this bare speculation.  The proceeds from the real property transactions were deposited either into the Amegy or Wallis accounts, and the balances of the closed Amegy accounts were deposited into the Brockmans' accounts at Wallis Bank.  Not only were substantial funds *not* moved outside the reach of the government, over $27 million sat in accounts in the Brockmans' names at Wallis Bank in Houston *for months* following the issuance of the jeopardy assessment and jeopardy levy, where they were found and seized by the IRS.

Regardless of whether the IRS may have initially acted in good faith, the government cannot continue to seize and lien against assets in the absence of support for the IRS's actions.  It is time that the jeopardy assessment be abated, and the jeopardy levy released.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Mr. Brockman's previous filings, the jeopardy assessment should be abated and the jeopardy levy should be released. In the alternative, and at a minimum, IRS collection actions should be stayed.

Dated:  August 12, 2022

/s/ Jason S. Varnado
Jason S. Varnado
Texas Bar No. 24034722
SDTX Ad. ID No. 32166
Email: jvarnado@jonesday.com
Julia N. Camp
Texas Bar No. 24123598
SDTX Ad. ID No. 3688104
Email: juliacamp@jonesday.com
JONES DAY
717 Texas, Suite 3300
Houston, TX  77002
Telephone: 832-239-3939
Facsimile: 832-239-3600

Kathryn Keneally (*Admitted Pro Hac Vice*)
New York Bar No. 1866250
Email: kkeneally@jonesday.com
Frank J. Jackson (*Admitted Pro Hac Vice*)
New York Bar No. 2870251
Email: fjackson@jonesday.com
Michael J. Scarduzio (*Admitted Pro Hac Vice*)
New York Bar No. 5147186
Email: mscarduzio@jonesday.com
Anthony J. DeRiso (*Admitted Pro Hac Vice*)
New York Bar No. 5787312
Email: aderiso@jonesday.com
JONES DAY
250 Vesey Street
New York, NY 10281-1047
Telephone: 212-326-3939
Facsimile: 212-755-7306

Irina K. Bleustein (*Admitted for Pro Hac Vice*)
District of Columbia Bar No. 1044772
Email: ibleustein@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: 202-879-3450

*Attorneys for Plaintiff Robert T. Brockman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 12th day of August, 2022, I electronically served this document on all counsel of record.

*/s/ Michael J. Scarduzio*
Michael J. Scarduzio
