**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ROBERT T. BROCKMAN, )<br>　　Plaintiff, )<br>　　　　　　　　　　　　　　 )<br>v. 　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　 )<br>UNITED STATES OF AMERICA )<br>　　Defendant. 　　　　　　　 ) | Case No. 22-cv-00202-GCH |

**<u>UNITED STATES' RESPONSE TO PLAINTIFF'S THIRD SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF MOTION FOR DETERMINATION
ON COMPLAINT FOR JUDICIAL REVIEW AND ABATEMENT
OF JEOPARDY ASSESSMENT</u>**

i

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.   Since 2020, Brockman was taking steps to jeopardize collection of his tax liabilities by transferring, selling, and dissipating assets in excess of $15 million out of the reach of the IRS.
     …………………………………………………………………………...…...2

II.  The IRS levy on the Wallis Bank account does not negate jeopardy, but it shows that the jeopardy assessments and levies were necessary.
     …………………………………………………………………………………..8

III. Brockman's attempts to evade collection are not absolved by the IRS levies.
     ……………………………………………………………………………………11

CONCLUSION……………………………………………………………………..14

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Bean v. United States*,
   618 F. Supp. 652 (N.D. Ga.1985) ................................................................................ 12

*Golden ADA, Inc. v. United States*,
934 F. Supp. 341 (N.D. Cal. 1996) ....................................................................................9, 12

*Kalkhoven v. United States*, 2021 WL 4206767, (E.D. Cal., 2021) ............................................12

*Revis v. United States*, 558 F. Supp. 1071, 1077 (D. R.I. 1983). ........................................ 12

**FEDERAL STATUTES**

26 U.S.C. § 6861 ...............................................................................................................10

26 U.S.C § 6863 ................................................................................................................10

26 U.S.C § 7429 ................................................................................................................10

Defendant, the United States of America, responds to Plaintiff, Robert T. Brockman's ("Brockman") Third Supplemental Memorandum in Support of Motion for Determination on Complaint for Judicial Review and Abatement of Jeopardy Assessment and Jeopardy Levy, and states as follows.

## INTRODUCTION

Brockman's recent supplement attempts to trace for the Court the funds from the sales of various properties and other transactions. He points to the Wallis Bank account as the repository for these funds. But this "tracing" not only raises additional questions, as shown below, it is also clear that there are still millions of dollars, in excess of $15 million, that are unaccounted for and missing. The end result is that Brockman moved, spent, or dissipated millions of dollars around the time of his indictment in 2020 and the jeopardy assessment in 2021.

Brockman's recent supplement also misstates the standard that applies to jeopardy assessments. Whether Brockman in fact intended to liquidate his assets and place them beyond the reach of the IRS, thereby avoiding payment of its taxes, is irrelevant. It is the appearance of such things that is relevant and controlling. In order to establish that the making of a jeopardy assessment is reasonable under the circumstances, the IRS need only establish that Brockman's circumstances appear to be jeopardizing collection of his taxes, not whether they definitely do so. In short, the IRS acted reasonably in believing that Brockman appeared to be designing quickly to place his assets beyond the reach of the government such that the jeopardy assessments were reasonable.

# ARGUMENT

**I.     Since 2020, Brockman was taking steps to jeopardize collection of his tax liabilities by transferring, selling, and dissipating assets in excess of $15 million out of the reach of the IRS.**

At oral argument Brockman argued for the first time that there is no jeopardy because the IRS seized millions of dollars from the accounts at Wallis bank. Brockman requested leave to supplement the Court's record by providing Wallis bank documents.[1] Brockman now argues in his Supplemental Memo that the IRS "speculated" there has been a dissipation of assets. In this supplement, Brockman provides, for the first time, a declaration of Dorothy Brockman and heavily redacted bank documents in an attempt to trace two recent real property sales.[2] These 11th-hour arguments and submission of heavily redacted documents neither remove the appearance of jeopardy nor excuse actual jeopardy from Brockman's actions.

Further, Brockman's supplement does not provide the Court with a complete picture. For example, Brockman's assertion that the amounts in the Wallis bank accounts exceed the sales proceeds from his properties misses the mark. A closer examination demonstrates that Brockman has dissipated or failed to account for amounts in excess of $15 million.

---

[1] August 3, 2022, Hearing Transcript, pg. 36 ln. 23 to pg. 37 ln. 21.
[2] It should be noted that Mrs. Brockman's declaration is completely devoid of any support for arguments made by Mr. Brockman's attorneys that "The transactions were undertaken in the ordinary course of Mrs. Brockman's life, allowing her to move closer to her son and daughter-in-law as she prepared for the death of her husband of 54 years and the birth of her two grandchildren. See Dkt. No. 10 at 5–7; No. 35 at 9; No. 54 at 11." Dkt. 66 at 8. In fact, the citations to prior docket numbers are nothing more than citations to counsel's prior arguments and not evidence supporting those arguments.

The Brockmans had net wage earnings, stock sales, distributions, state tax refunds, interest income, and distributions from what appears to be savings bonds that were available to be deposited during 2020 and 2021.[3] In total, it appears that the Brockmans had over of $62.1 million in domestic funds available to be deposited into their accounts as follows:[4]

Chart 1-available deposits

| | Type | Amount | Source | | |
|---|---|---|---|---|---|
| RTB- 2020 | ORDINARY DIVIDENDS | $5,064.00 | FORM 1099-DIV | | |
| | INTEREST INCOME | $15,068.00 | FORM 1099-INT | | |
| | WAGES (NET OF W/H) | $12,866,218.00 | FORM W-2 | | |
| | SOCIAL SECURITY | $28,203.00 | FORM SSA-1099 | | |
| | GROSS DISTRIBUTION | $1,301,315.00 | FORM 1099-R | National Financial Services | |
| | NET DISTRIBUTION | $1,217,056.00 | FORM 1099-R | Great West Trust | |
| | STOCK SALE PROCEEDS | $1,115,942.00 | FORM 1099-B | | |
| | PROCEEDS- SALE OF PROPERTY | $3,798,007.00 | PROPERTY: 333 WEST FRIAR TUCK | | |
| | PROCEEDS- SALE OF PROPERTY | $1,202,599.00 | PROPERTY: 1731 SUNSET BLVD | | |
| RTB- 2021 | ORDINARY DIVIDENDS | $1,019.00 | FORM 1099-DIV | | |
| | INTEREST INCOME | $30,212.00 | FORM 1099-INT (WALLIS BANK; ZIONS BANK) | | |
| | WAGES (NET OF W/H) | $11,011,484.00 | FORM W-2 | | |
| | SOCIAL SECURITY | $53,545.00 | FORM SSA-1099 | | |
| | STATE REFUND OHIO | $42,166.00 | FORM 1099-G REFUND | | |
| | MSA GROSS DISTRIBUTION | $45,981.00 | FORM 1099-MSA HSA | | |
| | QTIP DISTRIBUTION | $16,579.00 | FORM 1099-Q | | |
| | STOCK SALE PROCEEDS | $67,962.00 | FORM 1099-B | | |
| | PROCEEDS- 1% HARDWICK | $288,858.00 | 1% HARDWICKE | | |
| | SALE OF ELK CREEK LOT 16 | $1,450,000.00 | PROPERTY: ELK CREEK LOT 16 LLC | | |
| DB- 2020 | INTEREST/DIVIDENDS | $385,723.00 | FORM 1099-INT | | |
| | SAVINGS BOND INTEREST | $512,597.00 | FORM 1099-INT | | |
| | STOCK SALE PROCEEDS | $8,589,225.00 | *FORM 1099-B | | |
| | SAVINGS BOND PROCEEDS | $10,000,000.00 | FORM 1099-B (LONG) BUREAU OF THE FISCAL SERVICE | | |
| DB- 2021 | | | | | |
| | INTEREST/DIVIDENDS | $19,668.00 | FORM 1099-INT/DIV | | |
| | GROSS DISTRIBUTION | $2,508.00 | FORM 1099-R | Zions Bank | |
| | STATE REFUND OHIO | $26,029.00 | FORM 1099-G REFUND | | |
| | STOCK SALE PROCEEDS | $512,267.00 | FORM 1099-B (LONG) | | |
| | SAVINGS BOND INTEREST | $186,305.00 | FORM 1099-INT | | |
| | SAVINGS BOND PROCEEDS | $7,000,000.00 | FORM 1099-B (LONG) BUREAU OF THE FISCAL SERVICE | | |
| | TREAS. REFUND | $313,213.00 | IRS RECORDS | | |
| | TOTAL | $62,104,813.00 | | | |

---

[3] Gov. Ex. 49 Hunt declaration at ¶¶ 15, 16. Based upon data reported by third parties to the IRS in 2020 and 2021 See also Gov. Ex. 50, Agent Paxton Declaration at ¶¶ 5-7.
[4] Gov. Ex. 50 at ¶ 7. *See also* Gov. Ex. 32 and 33.

On September 9, 2021, the IRS issued levies on all of Brockmans' *known* U.S. bank accounts and financial institutions.[5] The levies did not include Wallis Bank because these accounts were unknown to the IRS at the time. The IRS also levied upon Reynolds and Reynolds ("R&R") in September of 2021, and received $1,998,402.54.[6] Thus, this amount from R&R could not have been deposited by the Brockmans into any accounts and is included in the chart below to avoid double counting. In 2020, the Brockmans gifted $3.6 million in property to their daughter in-law[7] and purchased a property in Colorado for $3.5 million.[8] In January 2021, the Brockmans purchased the property located at 3465 Overbrook Lane, Houston TX for $6.3 million.[9]

For purposes of this response (and viewed in the light most favorable to Brockman), some of the amounts for these three transactions could have come from Brockman's offshore network of entities and nominees, but have been added back into the chart below to ensure there would be no double counting, as these amounts could have come from 2020 and 2021 domestic amounts available for deposit.[10] Likewise, in the most conservative vein, this analysis adds back the $169,816.50 amount received from Regions bank even though it was unknown when these amounts were deposited. In

---

[5] Dkt. Gov. Ex. 24 RO Sandles Dec.at ¶¶ 33-36. Gov. Ex. 2 at pgs. 33 and 34.
[6] Gov. Ex. 49 at ¶ 11.
[7] Brockmans purchased this property on January 17, 2020. See Gov. Ex. 19.
[8] Gov. Ex. 21 and Gov. Ex. 24 at ¶42 (gift); Gov. Ex. 2 at pg. 39, #11 (Colorado property). Brockman's assertion that these are Dorothy Brockman's separate properties is rebutted by evidence submitted by the United States. For purposes of this analysis, however, the U.S. is taking these properties into account in favor of Brockman.
[9] Gov. Ex. 2 at pg. 37.
[10] To be clear, if the funds came from offshore, the missing domestic funds would be larger.

total, the IRS obtained funds from Brockman's known U.S. accounts, and Wallis Bank as follows:[11]

Chart 2- funds accounted for:

| Amounts secured by levy and other sources | | |
|---|---|---|
| Amount | Source/account | Evidence cite |
| $3,000.00 | Morgan Stanley | Gov. Ex. 24 at ¶ 35 |
| $1,912.84 | Morgan Stanley | |
| $45,981.54 | HSA | Gov. Ex. 24 at ¶ 35 |
| $67,963.07 | John hancock | Gov. Ex. 24 at ¶ 35 |
| $46,462.18 | Lord abbot | Gov. Ex. 24 at ¶ 35 |
| $518,552.14 | B of K | Gov. Ex. 24 at ¶ 36 |
| $16,588.05 | National Finance Services | Gov. Ex. 24 at ¶ 36 |
| $251,061.62 | B of A | Gov. Ex. 24 at ¶ 36 |
| $500,044.98 | Jp morgan | Gov. Ex. 24 at ¶ 36 |
| $1,000,041.54 | Fidelity | Gov. Ex. 24 at ¶ 36 |
| $1,998,402.54 | Reynolds and Reynolds | Gov. 49 at ¶12 |
| $27,020,546.54 | Wallis | Gov. 49 at ¶8 |
| $169,816.50 | Regions Bank | Gov. 49 at ¶12 |
| $3,567,218 | Gifted real estate -2020 | Gov. Ex. 32 |
| $3,500,000 | Colorado r/e purchase | Gov. Ex. 2 at pg. 39 |
| $6,300,000 | 3465 Overbook purchase | Gov. Ex. 2 at pg. 37 |
| $622,500 | RB tax pmts. made 2020 | Gov. 49 at ¶14 |
| $372,727 | DB tax pmts. made 2020 | Gov. 49 at ¶14 |
| $102,175 | DB tax pmts. made 2021 | Gov. 49 at ¶14 |
| $680,000 | DB tax pmts. made 2021 | Gov. 49 at ¶14 |
| $92,514 | DB tax pmts. made 2021 | Gov. 49 at ¶14 |
| $46,877,507.54 | TOTAL | |

The domestic funds that appeared to available for deposit in 2020 and 2021 totaled $62,104,813.[12] Yet, the amounts captured by levies, payments to the IRS plus alleged substitute purchases account for only $46,877,507.54.[13] The difference between these

---

[11] Gov. Ex. 49 at ¶ ¶12, 14.  The above chart also includes property purchases and estimated tax payments. Id. at ¶ ¶12, 13 and 14.  See also, Gov. Ex. 24 RO Sandles Dec.at ¶¶ 55-65.
[12] Chart 1, above.  Gov. Ex. 50 at ¶ 7.
[13] Chart 2, above.  Gov. Ex. 49 at ¶ 12.

two numbers indicates that there is $15,227,305.46 in unaccounted for, dissipated, or missing domestic funds. In summary, when considering deposits, property sales, stock sales, distributions, and the other activities around the time of Brockman's indictment and jeopardy assessment, there appear to be domestic funds totaling in excess of $15 million that are missing.

As shown in the United States' original response (Dkt. #21) and the evidence submitted, Brockman was taking steps at that time to jeopardize collection of his tax liabilities by transferring, selling, and dissipating assets out of the reach of the IRS in an amount totaling $18,685,952.[14] Yet, at that time, the IRS levies on the Brockmans' known financial accounts secured only $2,449,695.12.[15] Thus, the obvious question was where was the other $16,236,256.88? Brockman's latest attempt to answer that question in order to demonstrate that there was no jeopardy falls short. Even when considering the levies on Wallis Bank and other transactions, this unexplained difference is still some $15,227,305.46. Even if Brockman could now explain the location of the still unaccounted for funds, that does not change the fact that these missing funds and other transactions mentioned by the government along with Brockman's continued ability to send funds offshore to trusts and other entities reasonably appeared to be jeopardizing the IRS's ability to collect his tax liabilities.

---

[14] See Dkt. #21 at pgs. 65-67.
[15] Gov. Ex. 24 at ¶¶ 35 and 36. Amount did not disclose the Wallis bank accounts.

Likewise, Brockman's attempt to include $9 million that the IRS obtained from levies again is incomplete.[16] Most of the additional funds received from the jeopardy levies were from Brockman's R&R retirement and not deposited into accounts.[17] The additional funds of $8,987,610.69 were considered in the excess of $15 million "missing funds" analysis.[18]

Brockman's actions demonstrate that it was reasonable to believe he appeared to be designing quickly to move his assets out of the reach of the government. For example, the Elk Creek Lot 16 property was sold for $1,450,000[19] but only $1,054,921.21 was transferred to the new Wallis bank account.[20] Consequently, $400,000 is missing from this sale.

In another example of dissipation, shortly before his indictment, Brockman transferred approximately $200,000 from his U.S. Amegy Bank account into the names of trusts in the Cayman Islands.[21] Brockman asserts there is no jeopardy because the funds were ultimately returned to the United States. The funds were not returned to his U.S. accounts. Instead, they remain in the names of trusts even if the funds have been moved back to bank accounts for those trusts in the U.S.[22] Moreover, a closer look reveals that only $169,838.58 returned to U.S. accounts held in the name of various

---

[16] Supplemental Memo, Dkt 66 at pg. 5.
[17] Gov. Ex. 49 at ¶ 12.
[18] *Id.*
[19] Gov. Ex. 45
[20] Dkt. 55-1, Exhibit A.
[21] Gov. 24 at ¶57 and Dkt. 35-1, Exhibit 5. See also Gov Ex. 1, Paxton Declaration at ¶¶ 58 and 60.
[22] Dkt. 35-1, Plaintiff's Ex. 5 at pgs. 69, 79 of 93.

trusts.[23] Although the amount of the dissipation may be small ($30,161.42) it still shows dissipation by Brockman. If nothing else, this demonstrates the ease at which he could and did move his funds to trusts in an offshore system and control them in that offshore system well enough to bring them back into the U.S. in the names of different account holders – such as trusts.

The jeopardy assessment and levies on the Wallis Bank account do not relieve jeopardy and in fact highlight the need for the jeopardy levy. In short, the fact that the IRS was able to capture the Wallis Bank funds shows that the jeopardy levies and assessment worked exactly how they were designed to work.

**II.     The IRS levy on the Wallis Bank account does not negate jeopardy, but it shows that the jeopardy assessments and levies were necessary.**

Brockman's 11th-hour explanation of the location of sales proceeds through heavily redacted, partial bank documents is disingenuous, raises more concerns, and actually supports a jeopardy determination. Redacting over 90 percent of the other transactions in a bank statement does not support Brockman's argument that he was hiding nothing and moving nothing out of the reach of the IRS. Brockman alleges that the Wallis Bank accounts were opened in early 2021 and thereafter they moved other bank funds and proceeds of property sales or transfers to these Wallis bank accounts.

The Wallis Bank account and the location of certain assets' sales proceeds were still unknown to the IRS at the time of the jeopardy assessment on September 7, 2021.

---

[23] Dkt. 35-1, Exhibit 5.

On October 7, 2021, Brockman filed a written protest challenging the jeopardy assessments. In a footnote, Brockman mentions the sale of the 1% interest in Hardwicke LLC, but he failed to disclose the whereabouts of any sales proceeds, including the Hardwicke sales proceeds. The protest also failed to disclose the Wallis Bank accounts.

Similarly, Brockman's motion for determination failed to disclose the alleged transfers or deposits of sales proceeds into the Wallis Bank accounts. On January 31, 2022, the United States filed a response in opposition to Brockman's motion (Dkt. #21). The United States' response specifically pointed out the IRS did "not know what happened to the proceeds from these property sales, securities sales, and distributions. It appears funds are being dissipated or transferred to unknown accounts or recipients."[24]

On February 7, 2022, Brockman filed his reply and again failed to disclose any funds transfers or deposits of sales proceeds into the Wallis Bank accounts. In March 2022, Brockman filed supplemental briefing without disclosing any sales proceeds going into the Wallis Bank accounts. Importantly, at no time did Brockman (i) offer to pay over to the IRS any sales proceeds from any of the assets sold, (ii) disclose where any sales proceeds of suspect asset transfers were being held. The court in *Golden ADA, Inc. v. United States* found that a taxpayer selling properties while offering to pay no part of the proceeds to the government was a factor supporting the jeopardy assessment.[25]

---

[24] See Dkt. #21 at pg. 67.
[25] *Golden Ada, Inc., v. United States*, 934 F.Supp. 341, 345 (N.D. Cal. 1996).

On March 29, 2022, the IRS issued levies to Wallis Bank. Around May 22, 2022, the funds in Wallis Bank were turned over to the IRS after a 45-day holding period.

Two months later, after the IRS had levied on the Wallis Bank accounts, Brockman finally disclosed that sales proceeds from his hidden Lot 16 Elk Creek Ranch property sale were deposited into a Wallis Bank account. Brockman only disclosed the location of these proceeds *after* the IRS obtained them from levying on Wallis Bank.

The IRS levies prevented further dissipation of funds and captured undisclosed sales proceeds. The IRS jeopardy assessment and levies worked. Brockman seeks to be rewarded (through having the jeopardy assessment abated) because the IRS collection actions were successful. He argues that the IRS can make a jeopardy assessment but cannot successfully take actions to collect or prevent the movement or dissipation of funds because that action would negate jeopardy. In other words, because the IRS made a jeopardy assessment and levy and obtained funds through that levy, jeopardy is now eliminated and the captured funds must be returned so that he can again move them as he pleases. This is not the law.

Nowhere in 26 U.S.C. §§ 6861, 6863, 7429 or the Treasury Regulations does it suggest that the IRS should only collect after a court has determined such assessment is valid. In fact, the entire structure of these code sections supports the opposite conclusion - that collection can and should occur immediately after a jeopardy assessment has been made. Section 6863 only provides a stay of collection upon posting of a bond. Brockman's argument essentially nullifies the jeopardy assessment statute and its purpose

10

(which is to preserve collection) and penalizes the IRS (by seeking abatement of the jeopardy assessment) for successfully doing is statutory duty.

Finally, the Brockmans' explanation as to the Amegy Bank closure and opening of the Wallis Bank account raises questions. Dorothy Brockman asserts that the Amegy Bank accounts were closed at the request of Amegy Bank when the October 2020 indictment became public.[26] Brockman's indictment became public by October 15, 2020.[27] However, as reported to the IRS, Brockman's Amegy Bank account was closed on May 25, 2021.[28] That it took seven months to close the account after Amegy Bank's request raises questions regarding the reasons behind, and the timing of, the opening of the Wallis Bank accounts.

### III. Brockman's attempts to evade collection are not absolved by the IRS levies.

Brockman asserts that there is no jeopardy because there was $27 million in accounts for the IRS to levy upon and therefore he was not designing quickly to defeat collection.[29] Brockman again misstates the law by arguing that the United States must prove he was actually moving assets or he was actually designing quickly to move assets. This is not the law.

The question is whether the taxpayer appears to be manipulating his property in such a manner as to place them beyond the reach of the government. Whether Brockman in fact intended to liquidate his assets and place them beyond the reach of the IRS thereby

---

[26] Dkt. #66-1, Exhibit 1 at ¶3
[27] Dkt. #35-1 Plaintiff's exhibit 1, Bloomberg New Article.
[28] Gov. 49 at ¶17. Gov. Ex. 51.
[29] Dkt. #66 at pg. 5.

11

avoiding payment of its taxes is irrelevant. It is the appearance of such things that is relevant and controlling.[30] Thus, in order to establish that the making of a jeopardy assessment is reasonable under the circumstances, the Service "need only establish that the taxpayer's circumstances appear to be jeopardizing collection of a tax—not whether they definitely do so."[31]

Around his indictment and after the jeopardy assessment, Brockman took several steps that reasonably appeared to jeopardize collection of his tax liabilities by transferring, selling, gifting and dissipating assets out of the reach of the IRS as follows:

| Amount | Date | Description of Asset or property | Evidentiary Cite |
|---|---|---|---|
| $1,375,000 | May 2021 | 1731 Sunset Blvd, Houston TX 77005 | Gov. Exs. 17, 18 |
| $4,100,000 | December 2020 | 335 West Friar Tuck Lane, Houston TX 77024 | Gov. Ex. 32 |
| $3,567,218 | December 2020 | 3702 Inwood Drive, Houston TX 77019 gifted to daughter-in-law | Gov. Ex. 20, 21 |
| $ 288,858 | March 2021 | 1% interest in Hardwicke (Bombardier jet) | Gov. Ex. 7 |
| $15,350,000 | May 17, 2021 | 333 West Friar Tuck Lane, Houston TX, principal residence listed for sale | Gov. Exs. 17, 18 |
| $1,301,319 | 2020 | distribution from National Financial Services LLC | Gov. Ex. 33 at pg. 30. |
| $1,217,056 | 2020 | distribution Great-West Trust Company | Gov. Ex. 33 at pg. 30. |
| $1,115,942 | 6/2020 through 9/2020 | Sales of securities from Morgan Stanley, National Financial Services and John Hancock accounts | Gov. Ex. 33 at pgs. 8-21. |
| $9,287,777 | 10/20/2020 through 12/31/2020 | Sales of securities by Dorothy Brockman | Gov. Ex. 32 |
| $1,475,000 | 10/1/2021 | Sale of Lot 16 of Elk Creek Ranch | Gov. Exs. 44, 45 |

---

[30] *Golden Ada, Inc., v. United States*, 934 F.Supp. 341 (citing *Revis v. United States*, 558 F. Supp. 1071, 1077 (D. R.I. 1983)).
[31] *Bean v. United States*, 618 F. Supp. 652, 658 (N.D. Ga. 1985), *Kalkhoven v. United States*, 2021 WL 4206767, at *2 (E.D. Cal., 2021).

Brockman also transferred control of his offshore empire to another tax haven locale (Cayman Islands). And shortly before his indictment, he created two new offshore trusts with foreign accounts and transferred funds from his Amegy bank accounts in the U.S. to these offshore trusts.

Brockman wants the Court to ignore his past conduct. But as shown above, Brockman and his wife (i) sold two Houston properties, (ii) gifted another Houston property to their daughter-in-law, (iii) listed his Houston residence for sale, (iv) sold his interest in the jet, (v) sold the hidden Lot 16 Elk Creek Ranch Lot (vi) transferred control of his offshore empire to another tax haven locale (Cayman Islands), (vii) created two new offshore trusts with foreign accounts and transferred funds from the U.S. to them, and (viii) appears to have dissipated or transferred to unknown accounts in excess of $15 million from their U.S. based financial accounts.

In essence, Brockman seeks an abatement of the jeopardy assessment based on a misreading argument of the law in that he urges the Court to adopt a new standard that the IRS must prove Brockman was *actually* designing quickly, rather than focusing on whether it appears he was designing quickly. Or as Brockman's counsel explains in an example:

> "the only times we see jeopardy assessments made, there's cash at the Border, there's a stop and there's cash in the trunk of the car, there's a gambling operation, there's illegal source income, and you grab that money. And from the enforcement point of view, that makes sense."[32]

---

[32] August 3, 2022, hearing transcript, pg. 31 lns. 7-13.

Brockman wants the Court to ignore the sales, gifts, and transfers of property, because the IRS jeopardy assessment and levies were actually successful in capturing a significant amount of funds that appeared to be easy to move offshore into Brockman's network of offshore nominees and trusts. Brockman essentially argues that, because the IRS caught him and found his cash, he could not have been designing quickly to move his funds, and thus there is no jeopardy. In sum, "you caught me" therefore "you have to let me go."

As explained above, Brockman clearly appeared to be dissipating assets at the time of the jeopardy assessment. Although the IRS was partially successful in preventing some of that dissipation, this only illustrates that the jeopardy assessment and levies were necessary and actually worked. Thus, it is clear the IRS acted reasonably in believing that Brockman appeared to be designing to place his assets beyond the reach of the government such that the jeopardy assessments were reasonable.

## CONCLUSION

The Court should find that the jeopardy assessments and levies are reasonable, and the tax assessments are appropriate. The Court should also deny Brockman's request to stay IRS collection of the jeopardy assessments.

>DAVID A. HUBBERT
>Deputy Assistant Attorney General
>
>/s/ *Herbert W. Linder*
>HERBERT W. LINDER
>Ohio Bar No. 0065446
>Jonathan L. Blacker
>State Bar No. 00796215
>John P. Nasta, Jr.
>Fla Bar No. 1004432, SDTX 3735958
>Attorneys, Tax Division
>Department of Justice
>717 N. Harwood, Suite 400
>Dallas, Texas 75201
>(214) 880-9754
>(214) 880-9774 (facsimile)
>Herbert.W.Linder@usdoj.gov
>Jonathan.blacker2@usdoj.gov
>John.nasta@usdoj.gov
>
>ATTORNEYS FOR UNITED STATES

## CERTIFICATE OF SERVICE

I certify that on August 17, 2022, I filed the foregoing document by electronic means on all parties who have entered an appearance through the Court's ECF system, including the following:

Jason S. Varnado
Julia N. Camp
Kathryn Keneally
Frank J. Jackson
Michael J. Scarduzio
Anthony J. DeRiso
Irina K. Bleustein
JONES DAY
717 Texas, Suite 3300
Houston, Texas 77002
Attorneys for Plaintiff

15

/s/ Herbert W. Linder
HERBERT W. LINDER